**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ALACRITECH, INC., | |
| *Plaintiff*, | |
| v. | |
| TIER 3, ET AL., | 2:16-cv-00693-JRG (LEAD CASE) |
| WISTRON CORPORATION ET AL., | 2:16-cv-00692-JRG |
| DELL INC., | 2:16-cv-00695-JRG |
| *Defendants.* | |

## JOINT MOTION FOR ADOPTION AND RESOLUTION OF DISPUTED ISSUES WITH RESPECT TO PROTECTIVE ORDER

Plaintiff Alacritech, Inc. ("Alacritech") and Defendants Tier 3, et al., Wistron Corporation, et al., and Dell Inc. (collectively, "Defendants"), hereby jointly move the Court for entry of a Protective Order in this case.[1]  The Parties have reached agreement on all but two issues for the order.  The first dispute relates to two sentences which are proposed by Defendants in Paragraph 6 concerning when P.R. 3-1 and 3-3 contention claim charts are eligible for designation under the Protective Order.  The second dispute relates to printing of Source Code in accordance with Paragraph 10(h).  The proposed Protective Order is attached hereto as Exhibit A, with the disputed provisions and the Parties' proposals identified.  The Parties' positions on these issues are set forth below.

---

[1]   The Court's Order of August 1, 2016 set a deadline of September 20, 2016 for entry of the Protective Order.  On September 20, 2016, the parties filed an Unopposed Motion for Extension of Time, seeking to move the deadline for filing the Protective Order to September 27, 2016.  *See* Unopposed Motion for Extension of Time, 9/20/16, Dkt No. 46.  The motion is pending.

**Alacritech's Position on Paragraph 6**

I.    **Claim Charts Should Be Eligible for Designation under the Protective Order**

Plaintiff's position is that all documents and information, including claim charts, should be eligible for designation under the Protective Order if they contain confidential information as defined in the order.  As such, Plaintiff requests that the Court reject the two sentences proposed by Defendants that set a blanket prohibition on designating claim charts under the order.

This Court considered this identical issue in *ExitExchange Corp. v. Casale Media Inc.*, and held that claim charts, in general, are eligible for protection under a Protective Order.  No. 2:10-cv-297, Dkt. No. 223 (E.D. Tex. May 20, 2011).  The Court made clear that protection is appropriate and allowed where "documents such as claim charts [] contain information that is confidential technical or business information that is not generally known, that would not normally be revealed to third parties, and for which its disclosure would be detrimental to the party's business."  *Id*.  This *ExitExchange* standard governing the types of documents and information that can be designated under a Protective Order is specific and reasonable, and it is nearly identical to the below standard in the Parties' proposed Protective Order for this case:

> A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material constitutes confidential or proprietary technical, scientific, or business information …, that is not generally known, that would not normally be revealed to third parties, and disclosure of which would be competitively detrimental to the conduct of the Party's … business.

*See* Ex. A ¶6.

There is no reason for the Court to deviate from *ExitExchange*'s holding that claim charts, like any other category of documents or information, are eligible for designation and protection under a protective order if they meet the protective order's standard for designation.

There is no support in the Federal Rules, Local Rules, this Court's form Protective Order or this Court's prior rulings to make such general categories ineligible for protection under an order.

Defendants' first proposed sentence—"The parties' infringement and invalidity contentions may be designated only insofar as they cite to confidential information"—is unnecessary given that the above standard already defines what is eligible for protection. The proposed sentence also improperly limits protection to portions of claim charts that cite underlying confidential information. A plaintiff's claim charts, for example, often contain a confidential description of how, in the plaintiff's view, the defendants' accused instrumentalities satisfy the asserted claims. This description may include parts that, taken separately, would not be confidential, such as excerpts from the patent claims, website screen captures, links, and code put together by the plaintiff from various public sources. Confidentiality may derive from building blocks that are not independently confidential, just as a business' customer list or supplier list may be comprised entirely of the names of companies that are well-known to the general public but still be highly confidential.

Defendants' second proposed sentence—"For the avoidance of doubt, the parties' legal theories of infringement and invalidity are not themselves designatable material"—is similarly unnecessary because it excludes a category of documents that could meet the standard in the Parties' proposed Protective Order. There is nothing improper about protecting claim charts that contain a confidential description of how a defendant's accused instrumentalities satisfy the asserted claims provided that the information in the claim charts as a whole is not generally known, that such information would not normally be revealed to third parties, and disclosure of such information would be detrimental to the designating party's business. Indeed, this is the linchpin of this Court's holding in *ExitExchange*. No. 2:10-cv-297, Dkt. No. 223, at 1; *see also*

*ExitExchange Corp. v. Casale Media Inc.*, No. 2:10-cv-297, 2012 WL 996960, at *1-*2 (E.D. Tex. Mar. 23, 2012) (rejecting defendants' motion to remove confidentiality designations).

Defendants' reliance on *Net Navigation Sys., LLC v. Alcatel-Lucent USA Inc.*, No. 4:11-cv-00663, Dkt. No. 107 (E.D. Tex. Sept. 19, 2012) to distinguish *ExitExchange* is misplaced. The *Net Navigation* court entered the parties' agreed upon protective order, which was more stringent than the one proposed in this case, requiring documents to be "especially sensitive" and capable of causing "significant competitive harm if disclosed" in order to be eligible for protection.  No. 4:11-cv-00663, Dkt. No. 107, at 2.  The court subsequently denied a motion to maintain the "confidential" designation of the plaintiff's claim charts because, in that court's view, that plaintiff's claim charts in *Net Navigation* did not meet the "especially sensitive" standard in the protective order in that case and disclosure would not cause that plaintiff significant competitive harm.  *Id.* at 2.

Even if *Net Navigation*'s holding were not specific to the protective order standard and claim charts in that case, the *Net Navigation* court's basis for distinguishing *ExitExchange* was that the plaintiff in that case apparently was a non-operating entity without competitors and therefore in that court's view could not be harmed.  *Id.*  By contrast, for nearly 20 years Alacritech has been and continues to be an operating company in the network acceleration industry with real products, customers and competitors.  Exh. B, Decl. of Larry Boucher, ¶¶2-3. *Net Navigation* is thus distinguishable and this Court should follow *ExitExchange*'s holding that claim charts are not *per se* ineligible for protection and can be designated if they meet the definition of confidentiality in the protective order.

Defendants' other cases are similarly unavailing.  None of the cases cited by Defendants below were decided by this Court, as was *ExitExchange*, and they are based on different

protective orders, claim charts and/or facts particular to those cases.  For example, the *Fractus* case was distinguished and rejected by this Court in *ExitExchange* because it involved a different protective order.  *ExitExchange*, No. 2:10-cv-297, Dkt. No. 223, at 1; 2012 WL 996960, at *1 n.1.  The *Constellation* case involved an non-operating entity, like in *Net Navigation,* and the court ordered disclosure since the plaintiff in that case "identified no actual harm it would suffer."  2007 WL 7658921, at *3.  Similarly, the *Medtronic* case turned on the absence of harm to that plaintiff.[2]  No. 08-cv-1512, Dkt. No. 75 (S.D. Cal. Aug. 13, 2009).  Finally, the unpublished *HTC* case actually allowed claim charts and analysis to be designated as confidential; the court in that case disapproved only of designating underlying public information as confidential and only allowed the accused infringer's suppliers to view the patentee's claim charts because it was the supplier's product that was accused of infringement.  2009 WL 1392513, at *2.  By contrast, Alacritech has produced without designation all public documents and information cited in its claim charts and given express permission to Defendants to disclose such documents and links to third parties.  In addition, Alacritech has accused Defendants' products and services of infringement, not individual third party suppliers' components.

In sum, there is no reason to treat claim charts differently than any other documents or information under the protective order.  As in *ExitExchange*, if a party believes claim charts have been improperly designated confidential, the protective order provides a mechanism for challenging the designation.  *See* Exh. A ¶19.  This procedure allows for challenges to and review of specific designations without prejudging entire categories of documents or information.  Defendants' attempt to bypass that procedure by adding specific carve-outs to the

---

[2]  The *GoDaddy.com* case did not even involve a motion for protective order or motion to de-designate.  Rather, the motion before the court in that case was to seal claim contentions filed in the court's public docket.  2016 WL 1158851.

protective order should be rejected.  Litigating confidentiality designations through the addition of such carve-outs serves only to multiply disputes over the form of protective orders, delaying their entry and impeding discovery.

For all the above reasons, Plaintiff Alacritech requests that the Court issue the proposed Protective Order in this case without the two sentences in Paragraph 6 proposed by Defendants.

## II.    Alacritech's Designation of Its Contentions under the Protective Order Is Proper

Defendants have objected to the designation of Alacritech's claim charts as "Confidential" but have yet to file a motion to de-designate as required under the Parties' proposed Protective Order.  Accordingly, although the Court should defer consideration of Defendants' objection until such a motion is filed, Alacritech briefly addresses the propriety of its designation below since Defendants have done the same.  In short, Alacritech's charts plainly satisfy the requirements for a "Confidential" designation under the *ExitExchange* standard in the Protective Order.  *See* Exh. A ¶6.  And this Court, in *ExitExchange*, considered and denied such a motion to de-designate the plaintiff's claim charts on nearly identical facts to this case.  *See ExitExchange*, No. 2:10-cv-297, 2012 WL 996960 (E.D. Tex. Mar. 23, 2012).

### A.    Alacritech's Contentions Are Not Generally Known Or Shared

Alacritech's claim charts as a whole contain confidential descriptions of how, in Alacritech's view, the defendants' accused instrumentalities satisfy the asserted claims of the patents-in-suit.  Alacritech does not generally disclose these charts or this type of information to third parties.  Exh. B ¶4.  Alacritech's charts in this consolidated action are nearly 5000 pages in length and have only been disclosed on a "Confidential" basis pursuant to the Local Rules and

the proposed Protective Order.[3]   *Id.*   Alacritech has never disclosed and does not intend to disclose its charts, or the confidential descriptions in them, to third parties.   Accordingly, the information in Alacritech's claim charts is "Confidential" information that is not generally known or revealed to third parties.

### B.   Disclosure Would Be Competitively Detrimental to the   Conduct of Alacritech's Ongoing Business

Alacritech is not a patent troll.   For nearly 20 years Alacritech has been and continues to be an operating company in the network acceleration business.   Exh. B ¶2.   Alacritech has real products and real customers that have bought Alacritech's products and Alacritech continues to support them to this day.   Alacritech has many competitors and seeks to control the market for its patented network acceleration technologies to maintain a competitive edge.   *Id.* ¶¶3-4. Alacritech does this by restricting the terms under which competitors may offer Alacritech's network acceleration technologies to the market and by enforcing its patents.   *Id.*   Alacritech plans to continue this business and grow and expand its operations over time.   *Id.* ¶2.   Central to these significant and competitive business goals is Alacritech's power to maintain the confidentiality of claim charts like those at issue in this case.   *Id.* ¶4.

If Defendants are permitted to disseminate freely or publicly file Alacritech's claim charts, Alacritech's competitors may use these charts to file interferences or mount validity challenges, file anticipatory declaratory judgment actions in other jurisdictions, or procure

---

[3]   To the extent that Defendants argue that the information in Alacritech's charts became generally known when it filed its complaints, the argument fails.   The allegations required to meet pleading requirements, *see* Fed. R. Civ. P. 8(a), are small in number and detail compared to Alacritech's P.R. 3-1 claim charts.   No one can credibly argue that 5000 pages of claim charts is generally known as a result of a few allegations in the complaints.   Moreover, this Court in *ExitExchange* considered and rejected the "public notice" policy argument advanced by Defendants in this case.   The notice function is met by the claims, specification, and the prosecution history.   There is no statutory, case or public policy requirement that a patentee also publicize a chart explaining how exemplary products infringe.

blocking patents to force cross-licensing, all of which would be detrimental to Alacritech's competitive position in the network acceleration industry by shrinking its market share, negatively affecting its patent positions, and causing direct financial harm.  Alacritech does not have the resources of its large competitors to simultaneously compete against any number of these obstacles as it also continues to grow its competitive position in the industry.

In sum, disclosure of its claim charts would be competitively harmful to Alacritech's ongoing business.

### C. Maintaining the Confidentiality of Alacritech's Contentions Does Not Prejudice Defendants

Finally, Alacritech's "Confidential" designation of its claim charts has no effect on Defendants' ability to defend themselves or otherwise participate in the litigation.  On the contrary, since the Parties' proposed Protective Order gives Defendants' attorneys, expert consultants, and designated in-house representatives full access to such "Confidential" information, Defendants' ability to prepare their case and produce documents is not impaired. Exh. A ¶5.  Moreover, to the extent any Defendant has a particularized need to disclose the information to an additional designated employee, that Defendant may do so with Alacritech's prior written consent as was the case in *ExitExchange*. *Id*. ¶5(d).

Defendants' only claim of prejudice is that they supposedly need to obtain information and documents from suppliers of certain components in Defendants' accused network systems and services.  Even setting aside the unlikelihood that Defendants do not have information and documents in their possession explaining how their own network systems and services work, the confidential designation of Alacritech's claim charts does not prevent Defendants from asking their suppliers for information and documents about any component in Defendants' accused network systems and services; it simply prevents Defendants from sharing the claim charts, and

summaries, extracts and digests thereof, with third parties.[4]   And contrary to Defendants'
assertions, Alacritech has accused a variety of complex combined products and services, all of
which are designed, developed and operated by the Defendants in this case, not individual third
party suppliers of components to these accused instrumentalities.  The accused instrumentalities
have many components but Alacritech has only accused combined products and services of
infringement.  Defendants' arguments to the contrary does not make it true.

Neither the CenturyLink nor Wistron Defendant groups (totaling 6 of the 7 Defendants in
this case) have identified a third party with a particularized need to see Alacritech's claim charts.
In fact, these Defendants admit that they want to be able to disclose the charts to third parties for
reasons unrelated to this consolidated action and their initial disclosures show that none of them
has indemnity from any third party.  And although Dell has claimed certain third parties may be
responsible for paying part of a recovery against Dell in this matter, Dell has not produced any
evidence of any such agreements with third parties (despite Alacritech's request).  As such, it
remains to be seen whether any third party has any legitimate need to see Alacritech's claim
charts.


**Defendants' Position on Paragraph 6**

Alacritech's proposed language for this portion of the Protective Order is designed to
allow it to designate its infringement contentions as Protected Material even where they are not
based on confidential information.  This would deny the real parties in interest (the third party
suppliers of the relevant components identified in the infringement contentions) from seeing and

---

[4]   Moreover, contrary to Defendants' assertion, Alacritech has offered to prepare a list of
standalone components in Defendants' accused network systems and products that Defendants
can provide to their suppliers in connection with a request for information and documents about
such components if the Defendants believe it is necessary to prepare their defenses in this case.

responding to the allegations against them.  Defendants' proposed language, on the other hand, balances the parties' interests by allowing contentions to be designated confidential but only to the extent they actually cite confidential information.  Defendants' language is consistent with this District's precedent on this issue, and it allows the real parties in interest to respond to the allegations against them.  It also preserves the public notice functions of patents, which allows people to understand the purported scope of patent rights.  Even if everything Alacritech argues is taken as true, the law should not permit Alacritech to specifically mention a third party's product in infringement contentions and then use a confidentiality designation to refuse that party the right to see and respond to the allegations against it.  This dispute has a material impact on these cases given the nature of Alacritech's infringement allegations.

The functionality underlying all of Alacritech's infringement allegations takes place within network controllers.  Instead of suing the manufacturers/suppliers of these network controllers, Alacritech chose to sue customers or end users.[5]  None of the named defendants actually makes the network controllers at the heart of Alacritech's infringement allegations.

Alacritech's infringement allegations are based entirely on publicly available information.[6]  Alacritech specifically named the suppliers/manufacturers of these network controllers in its infringement contentions, but then Alacritech marked the infringement contentions as Protected Material and has not been willing to de-designate and now seeks a protective order allowing them to maintain that designation, so the defendants cannot show the

---

[5] For example, Dell buys its network controllers from suppliers like Intel, Broadcom, QLogic, and Emulex.  Wistron also buys its controllers from third party suppliers, and the CenturyLink defendants buy servers from HP, Dell, and others.

[6] Defendants can submit the infringement contentions under seal or for *in camera* review if the Court so desires.

allegations of infringement to the real parties in interest – the manufacturers/suppliers of these network controllers.

Alacritech's proposal will have an unfairly prejudicial impact on defendants in a number of ways.  For example, Defendants have various indemnities owed to them by the manufacturers/suppliers of the network controllers.  Those indemnitors, however, understandably want to see what they are accused of doing to evaluate the indemnity demands.  Alacritech's proposed system of designation will prevent these discussions.  Alacritech has even refused to allow defendants to show the indemnitors a list of the network controllers and adapters accused of infringement in the contentions even though all of this is public information.

Moreover, if Alacritech's Protective Order language is permitted, the parties cannot have meaningful settlement discussions.  The real parties in interest are the indemnitors.  Depending on the scope of Alacritech's allegations, they may have rights to control the defense and to direct settlement, but Alacritech's designation denies defendants the ability to have the suppliers/manufacturers at the table for any discussions.  Three suppliers of the accused network controllers (Broadcom, Emulex, and QLogic) have existing licenses with Alacritech, but Alacritech will not allow defendants to show the infringement contentions to them so they can evaluate their license defenses and potential exhaustion issues.

The Defendants also cannot fully prepare their defense because the understanding of how the accused products operate, and the core discovery, comes from the third party suppliers/manufacturers, but the defendants cannot develop their technical theories of the case— which will rely primarily on information from their suppliers about how their products actually operate with respect to the accused functionalities—because of Alacritech's confidential designation of these contentions.  Alacritech's designation seems designed simply to prevent

defendants from fully developing their case.  Alacritech's proposed compromise to provide a list of components to its suppliers would still prevent Defendants from discussing substantive defenses against Alacritech's infringement claims with its suppliers.

Alacritech's only stated justification for this designation is that this Court allowed contentions to be designed confidential once before in the 2012 case *ExitExchange Corp. v. Casale Media Inc.*, No. 2:10-CV-297, 2012 WL 996960 (E.D. Tex. Mar. 23, 2012) (J. Gilstrap) ("*ExitExchange*"); *ExitExchange Corp. v. Casale Media Inc.*, No. 2:10-CV-297, CM/ECF No. 223 (E.D. Tex. May 19, 2011) (J. Ward) ("*ExitExchange* PO Ruling").  The facts of that case, however, are quite different from the situation here.

In *ExitExchange*, J. Ward held that the Court would not impose a blanket rule in a protective order that contentions can *never* be confidential; there are circumstances (*e.g.*, where contentions depend on confidential information) where contentions can properly be designated confidential.  *ExitExchange* PO Ruling, at *2 ("[T]he Court will allow, generally, documents such as claim charts to be deemed confidential.  However, to the extent Defendants feel that Plaintiff is abusing this ruling, the protective order in paragraph seven allows a party to challenge confidential designations.  The Court is only ruling here that claim charts, *in general*, may be confidential and designated in accordance with the protective order.").  Further, the Court noted that the defendants would not be prejudiced and prevented from sharing the infringement contentions with their suppliers because the existing protective order allowed designated material to be shared with written consent (implying that such consent should be granted in that situation). *ExitExchange*, at *2.  That is not the case here, however, as the contentions are based entirely on publicly available information, and Alacritech refuses to allow defendants to share the

contentions with the suppliers whose products are accused of infringement in Alacritech's contentions.

These cases are more analogous to another case from this District, *Net Navigation Systems v. Alcatel-Lucent USA Inc.*, Case No. 4:11-cv-00663 (E.D. Tex. Sept. 19, 2012) (J. Mazzant), where J. Mazzant ruled on the exact issue of whether *ExitExchange* meant that infringement contentions based on only public documents could properly be designated confidential. J. Mazzant applied *ExitExchange* and held that it was not proper to designate infringement contentions confidential where they are based on only non-confidential information. *Id.* Defendants' proposed language for the protective order would allow a party to mark contentions confidential insofar as they are based on confidential information, but disallow designation if they are not, which is consistent with both *Exit Exchange* and *Net Navigation*.

Indeed, the decision in *Net Navigation* accords with decisions from district courts across the country that infringement contentions based on public information should not be sealed from the public or designated confidential under a protective order's provisions. *See, e.g.*, *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 1158851, at *6 (D. Ariz. Mar. 24, 2016) (denying motion to file excerpt from infringement contentions under seal); *Medtronic Sofamor Danek USA, Inc. v. Nuvasiv, Inc.*, Case No. 08-cv-512-MMA-AJB (S.D. Cal. Aug. 13, 2009) (finding that preliminary infringement contentions based on publicly available information should not be protected, and defendants should not need to ask permission to share them with their employees); *HTC Corp. v. Tech. Properties*, No. C08-00882 JF (HRL), 2009 WL 1392513, at *2 (N.D. Cal. May 14, 2009) (ordering disclosure of infringement contentions to third party manufacturers and noting the court would be inclined to grant a motion for complete de-designation of the infringement contentions because the counter-

plaintiff had not "shown the court anything that looks remotely confidential or worthy of any

protection" and rejecting counter-plaintiffs argument that the analysis they added to the publicly

available documents made the PICs worthy of protection, while allowing temporary protection

for reverse engineering reports allegedly created by the PICs' creators); *see also Fractus SA v.*

*Samsung Electronics Co., Ltd.*, Case No. 6:09-xc-00203-LED-JDL, CM/ECF No. 410, at *2

(E.D. Tex. June 7, 2010) ("Plaintiff's analysis of the accused products is merely a legal

infringement position and not confidential."); *Constellation, LLC v. Avis Budget Grp., Inc.*, No.

5:07-CV-38, 2007 WL 7658921, at * 3 (E.D. Tex. Oct. 30, 2007) ("Constellation has not

established that the infringement contentions contain trade secrets or other information entitled to

the 'Confidential' designation. . . . Once disclosed to the opposing party, such 'legal strategy' is

not inherently worthy of the 'Confidential' designation.").

      Alacritech cannot carry its burden to show that these contentions are confidential.  In any

case, even if they were, courts in this District have held that the burden on the defendants (who

would be unable to share the contentions with interested third parties or the PTO) outweighed

any confidentiality interest of the plaintiff.  *See Constellation, LLC v. Avis Budget Grp., Inc.*, No.

5:07CV38, 2007 WL 7658921, at *2-3 (E.D. Tex. Oct. 30, 2007).  This is exactly the case here.

      Although Alacritech's theories of infringement might have been confidential and

protected work product before they were served on Defendants, once Alacritech filed a

complaint identifying its theory of infringement and served infringement contentions, it lost the

right to hide its theories from those suppliers whose components they accuse of infringement, as

well as from the public (including the USPTO).  Alacritech's proposal attempts to circumvent

the primary goal of a patent, which is to put the world on notice as to what would and would not

infringe, by concealing their legal arguments from the public regarding what they believe the

patents cover.  *See id.* at *3 ("If the infringement contentions are de-designated, the public can better ascertain what Constellation believes is the scope of its patent, allowing the public to avoid infringing activity and/or acquire a license.")  It seems unlikely Alacritech would be permitted to seal the Courtroom during its infringement case, especially if it was presenting publicly available information, so Alacritech should not be allowed to effectively seal its infringement case from the real parties in interest now.  *Cf.* Standing Order Regarding Protection of Proprietary and/or Confidential Information to Be Presented to the Court During Motion and Trial Practice (June 1, 2016) (information should not be protected unless it is "of such a sensitive nature that its disclosure creates a risk of harm that outweighs the strong presumption in favor of public access to judicial proceedings").

Alacritech's contentions are based entirely on publicly available information, so there is no justification for a confidentiality designation at all.  As a matter of sound public policy, and to comport with due process, Alacritech should not be permitted to accuse products of infringement and then hide behind a designation that prohibits the real parties in interest from seeing and responding to those allegations.  Defendants should be free to show these infringement contentions to any party that is specifically mentioned in them (or whose products are identified in them).  Defendants' proposed language for the Protective Order facilitates this.

**Alacritech's Position on Paragraph 10(h)**

Defendants have requested and Plaintiff has agreed to a number of changes in the Court's standard paragraph 10 of the form Protective Order for patent cases, including in disputed subsection (h), in order to accommodate Defendants' concerns about the review and use of

Source Code in this case.[7]  The Parties' only dispute generally concerns Defendants' demand to place roadblocks on when, and how much, a receiving party may print Source Code in accordance with Paragraph 10(h).

Alacritech's proposed Paragraph 10(h) is consistent with this Court's standard Paragraph 10(h), which provides that "[t]he receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material," and, at Defendants' request, Alacritech's proposal goes a step further in specifying a presumptively reasonable limit of 40 pages of continuous block Source Code that a receiving party may print.  *Compare* Exh. A, Alacritech's Proposed ¶10(h) *with* this Court's form Protective Order for patent cases.  At Defendants' request, Alacritech's proposal also includes a variety of other protections:  (i) the printed Source Code must be reasonably related to the issues in the case; (ii) it must be solely for use in this Action; (iii) it cannot be printed for the purpose of reviewing blocks of Source Code elsewhere in the first instance; (iv) the limits cannot be circumvented by printing substantially consecutive blocks of continuous block Source Code; and (v) the producing party is provided a procedure for objecting and seeking relief from the Court.  These protections go beyond what this Court has determined is necessary in the past, and they are more than sufficient in this case.

Defendants have no serious explanation why these protections are insufficient.[8]  Instead, Defendants' proposed Paragraph 10(h) attempts to impose unnecessary delay and procedures impinging on a receiving party's right to prompt discovery in the form of printing Source Code

---

[7]  Contrary to Defendants assertion, Plaintiff believes the Court's standard paragraph 10 of the form Protective Order would be fine as-is for this case.

[8]  Plaintiff is confident the Parties can work together to agree on such trivial issues as who provides the printer, the paper, and technical support for paper jams.  Likewise, the proposed Protective Order includes a number of protections that would foreclose any possibility of attorneys or experts "walking straight out of the building" with a parties' Source Code.

at the time of review.  A receiving party should not have to wait for a producing party to consider a request to print Source Code and potentially not receive the documents for weeks or months if the producing party objects to the printing request.  Discovery Order, Dkt. No. 50, ¶3 ("Without awaiting a discovery request, each party will … produce or permit the inspection of all documents, electronically stored information, and tangible things … that are relevant to the pleaded claims or defenses involved in this action … .").  This delay would be especially problematic and inefficient during the expert phase of the case where time can be of the essence with respect to an expert's access to Source Code.

Defendants' desire to shift "control" of printing to the producing party, which is inconsistent with the Court's standard Paragraph 10(h), will undoubtedly lead to highly subjective disputes about whether a receiving party is entitled to receive printed Source Code, which, in essence, would improperly shift the burden of discovery to the receiving party contrary to the Discovery Order.  *Id*.  And contrary to Defendants' assertion, Alacritech's proposal provides a mechanism to challenge abuse of the protections in the order.  If during Source Code review a producing party determines that a receiving party's experts are printing an inordinate number of pages of Source Code, the Protective Order has a mechanism for the producing party to object and seek a protective order at that time, as explained above.

For all the above reasons, Alacritech requests that the Court issue the proposed Protective Order in this case with Alacritech's proposed Paragraph 10(h).

**Defendants' Position on Paragraph 10(h)**

Given the highly sensitive nature of Source Code, the Parties agree that special protections governing the production, printing, and control of Source Code are warranted in this

action. The Parties dispute, however, (i) which Party should be in control of the actual printing of any Source Code that may be produced and (ii) whether the Producing Party should be given the opportunity to object to the printing of Source Code *before* the Source Code is printed and provided to the Receiving Party. Defendants' proposal strikes the appropriate balance between granting the Producing Party control over sensitive technical material while ensuring that the Receiving Party is provided with the materials needed to pursue its case in a timely manner. Plaintiff's proposal, by contrast, introduces unnecessary logistical and security concerns while, at the same time, leaving the Producing Party no real recourse to prevent unreasonable and indiscriminate printing of Source Code.

The Parties' first dispute is straightforward: Defendants believe that the Producing Party should be in control of printing the portions of Source Code selected by the Receiving Party three business days after it is requested. In contrast, Plaintiff believes that the Receiving Party should be able to print the source code and walk out the door the same day without giving the Producing Party a meaningful opportunity to review and object.  Plaintiff's proposal presents a number of logistical and security issues, which are obviated by Defendants' solution. First, Plaintiff's proposal is unclear which Party must provide the printer, paper, or other materials needed for printing. Because Source Code will be produced on stand-alone computers in the offices of the Producing Party's counsel, the most logical solution is to have the Producing Party manage the printing process after the Receiving Party completes its review. If the Receiving Party is performing the actual printing of Source Code during the review, there will undoubtedly be issues and complaints from the Receiving Party about printer jams, paper availability, and other technical issues that will unnecessarily delay the review.

Moreover, allowing the Receiving Party to indiscriminately print paper copies of whatever portions of Source Code it desires has the serious potential to cause significant security issues undoing many of the agreed protections for controlling the production of Source Code. Under Plaintiff's proposal, a Receiving Party could conceivably print extremely large and unreasonable swaths of Source Code and simply walk out of the building, without giving the Producing Party reasonable opportunity to review and object to the printing and removal of highly sensitive technical information. Allowing the Producing Party to control printing alleviates these security concerns, by giving the Producing Party an opportunity to object *before* printed Source Code is removed from the Source Code computer.

While Defendants have no intention of unreasonably refusing to provide printed copies of source code, Defendants should have at least a few business days to review what was requested and confirm it is reasonable and being requested for a permitted purpose. Plaintiffs' proposal gives the Producing Party no recourse to object to unreasonable amounts of source code being printed. Instead, the Receiving Party may simply select which files to print, print the files, and walk out of the building without providing the Producing Party any information or copies of the Source Code that were printed. Under Plaintiff's proposal, an objection may only be lodged *after* the files have been printed. The only justification provided by Plaintiff for allowing such unrestrained printing is that it would like to review, print and walk away with Source Code the same day if the need arises as the Parties face the close of discovery and expert reports. This speculative concern can easily be obviated by Plaintiff being diligent with reviewing any Source Code that may be produced. Defendants' proposal, by contrast, allows a Producing Party a limited amount of time (three business days) to evaluate a Receiving Party's print request, compile the requested files, and either deliver printed copies or object to the request. This

proposal grants a modicum of control to a Producing Party in determining what Source Code is removed from the Source Code computer in printed form, while at the same time ensuring that all disputes are raised in a timely manner with the Court.

        The parties respectfully request that the Court resolve their disputed issues and enter the Protective Order.


Dated: September 27, 2016                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP

                                             /s/ Claude M. Stern w/permission Joseph
                                             Paunovich.
                                             Claude M. Stern
                                             California State Bar No. 96737
                                             claudestern@quinnemanuel.com
                                             QUINN    EMANUEL    URQUHART    &
                                             SULLIVAN, LLP
                                             555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
                                             Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100
                                             Joseph M. Paunovich
                                             joepaunovich@quinnemanuel.com
                                             California State Bar No. 228222
                                             Jordan Brock Kaericher
                                             California State Bar No. 265953
                                             jordankaericher@quinnemanuel.com
                                             QUINN    EMANUEL    URQUHART    &
                                             SULLIVAN, LLP
                                             865 South Figueroa Street, 10th Floor
                                             Los Angeles, CA 90017
                                             Telephone:  (213) 443-3000
                                             Facsimile:  (213) 443-3100

                                             T. John Ward, Jr.
                                             Texas State Bar No. 00794818
                                             jw@wsfirm.com

Claire Abernathy Henry
Texas State Bar No. 24053063
*claire@wsfirm.com*
Andrea L. Fair
Texas State Bar No. 24078488
*andrea@wsfirm.com*
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone:  (903) 757-6400
Facsimile:  (903) 757-2323


Attorneys for Plaintiff ALACRITECH, INC.


Dated: September 27, 2016                    COOLEY LLP

                                            /s/ Jonathan G. Graves   (w/permission Joseph
                                            Paunovich).

                                            Jonathan G. Graves (VA Bar 46136)
                                            Frank V. Pietrantonio (VA Bar 25473)
                                            COOLEY LLP
                                            One Freedom Square
                                            Reston Town Center
                                            11951 Freedom Drive
                                            Reston, VA 20190-5656
                                            Telephone: (703) 456-8000
                                            Facsimile: (703) 456-8100
                                            *jgraves@cooley.com*
                                            *fpietrantonio@cooley.com*

                                            Phillip E. Morton (DC Bar 1032243)
                                            COOLEY LLP
                                            1299 Pennsylvania Ave., N.W., Suite 700
                                            Washington, D.C. 20004-2400
                                            Telephone: (202) 842-7800
                                            Facsimile: (202) 842.7899
                                            pmorton@cooley.com

                                            Attorneys for Defendant CENTURYLINK,
                                            INC.

Dated: September 27, 2016

K&L GATES LLP

/s/ Harold H. Davis (w/permission Joseph Paunovich).

Lei Howard Chen (TEX Bar 24009953)
Harold H. Davis, Jr (CA Bar 235552)
(admitted E.D. Tex)
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
11951 Freedom Drive
Reston, VA 20190-5656
Tel: 415.882.8200
Fax: 415.882.8220
*howard.chen@klgates.com*
*harold.davis@klgates.com*

Ravi S. Deol
Texas State Bar No. 24090073
K&L Gates LLP
1717 Main Street, #2800
Dallas, Texas 75201
Tel: 214.939.5976
Fax: 214.939.5849
*ravi.deol@klgates.com*

Attorneys for Defendants WISTRON
CORPORATION, WIWYNN
CORPORATION, AND SMS INFOCOMM
CORPORATION

Dated: September 27, 2016

ALSTON & BIRD LLP

/s/ David M. Stein (w/permission Joseph Paunovich).

David M Stein
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile:  (213) 576-1100
*david.stein@alston.com*

Deron R Dacus
THE DACUS FIRM, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
Telephone:  (903) 705-1117
Facsimile:  (903) 581-2543
*ddacus@dacusfirm.com*

Attorneys for Defendant DELL INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 27th day of September, 2016.

/s/ Joseph Paunovich