**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ALACRITECH INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-00693-JRG-RSP |
| | § | (lead case) |
| CENTURYLINK, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this patent case, the Court will now consider Intel's Motion to Strike a Portion of

Alacritech's Patent Rule 3-1 Infringement Contentions [Dkt. # 259]. After considering the

parties' briefing and arguments of counsel, the Court will **GRANT** the motion **IN PART**.

## I.   BACKGROUND

The technology at issue concerns transferring and storing data within a network.

Compl. ¶ 16. According to Alacritech, traditional methodologies wasted too much pro-

cessing power performing brute-force processes for transfer and storage. *Id.* To address

that waste, Alacritech developed the use of dedicated network interface controllers (NICs)

to more efficiently handle the processing. *Id.* By offloading processing tasks to a dedicated

NIC implementing the methodologies taught by the asserted patents, data transfer between

devices is accelerated and the host CPUs retain more processing power to perform other

more substantive tasks. *Id.*

In June 2016, Alacritech sued Dell in Case No. 2:16-CV-00695, which was later consolidated with this action. Intel moved to intervene because many of Alacritech's infringement claims against Dell targeted networking technology supplied by Intel. Intel's Mot. to Intervene [Dkt. # 71] at 4. In fact, Alacritech specifically accuses certain Dell products of infringement based on their use of Intel NICs. *Id.*

In December 2016, Alacritech served Intel with its original P.R. 3-1 Infringement Contentions. Intel's Motion [Dkt. # 259] at 1. Those contentions identified at least 90 products purporting to infringe 117 claims across 7 patents. *Id.* Alacritech, however, only charted a single Intel product for each patent—the 82599 controller. *Id.*

As to the other 89 products, Alacritech alleged in footnotes they meet the same limitations. *Id.* At the time, Intel notified Alacritech this was not sufficient disclosure under the local patent rules, but Alacritech responded that charting a single product was enough. *Id.* (citing Letter from Counsel for Alacritech to Counsel for Intel (Feb. 28, 2017) [Dkt. # 259-2] at 7).

Intel later provided Alacritech with interrogatory responses that detailed a number of differences between the 82599 controller and the uncharted products. *Id.* (citing Intel's Supp. Interrog. Resps. [Dkt. # 259-3]). Based on those responses, Alacritech removed some instrumentalities from the contentions and served amended contentions. *Id.* at 2. But according to Intel, the amended contentions are also insufficient. *Id.* at 1.

To address those insufficiencies, Intel asks the Court to (1) strike the portions of Alacritech's amended contentions that refer to any products other than the products for

which Alacritech has provided a claim chart; and (2) limit Alacritech's contentions to the only operating system Alacritech identified in its charts. *Id.* at 2–3.

## II.   APPLICABLE LAW

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). "Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005).

Patent Rule 3-1 governs the initial explanation of a plaintiff's infringement theories. Under that rule, the plaintiff must specifically identify each accused product, process, or other instrumentality by name or model number. P.R. 3-1(b). The plaintiff must also provide a chart showing specifically where each element of each asserted claim is found within each accused instrumentality. P.R. 3-1(c). But "[i]nfringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case.'" *Roy-G-BIV Corp. v. ABB Ltd.*, 63 F. Supp. 3d 690, 698 (E.D. Tex. 2014) (quoting *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010)).

Some courts have excused plaintiffs from charting each instrumentality if the charts would be identical or if one instrumentality is sufficiently representative of others. *See,*

*e.g.*, *UltimatePointer, LLC v. Nintendo Co., Ltd., et al.*, No. 6:11-CV-496, [Dkt. # 269] at 5 (E.D. Tex. May 28, 2013) (contemplating a plaintiff could designate and chart only an exemplar accused product if the plaintiff also provided an explanation of the technical and functional identity of the products represented); *see also, e.g., Infineon Tech AG v. Volterra Semiconductor*, No. C-11-6239, 2013 WL 5366131, at *4 (N.D. Cal. July 31, 2013) (holding a claim chart for a single product was adequately representative of all accused products when the plaintiff provided nearly 50 pages of analysis supporting its position); *Implicit Networks Inc. v. Hewlett–Packard Co.*, No. 10-CV-3746 SI, 2011 WL 3954809 (N.D. Cal. Sept. 7, 2011) (approving use of a single claim chart to represent 120 products where patentee did not reverse engineer any products and instead relied primarily on citations to manuals and other documentation to explain characteristics of other accused products); *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466, at *4 (N.D. Cal. Nov. 10, 2004) (finding a patentee presented sufficient evidence to accuse 160 products in a single claim chart where patentee reverse engineered only 3 products and provided declarations in support of contentions that all products infringe). But even then, the contentions must be "reasonably precise and detailed to provide a defendant with adequate notice of the plaintiff's theories of infringement." *Roy-G-BIV Corp.*, 63 F. Supp. 3d at 698 (internal citations omitted).

"Striking infringement contentions is an extreme decision comparable to determining 'whether evidence should be excluded for discovery violations.'" *Eolas Tech. Inc. v.*

*Amazon.com, Inc.*, 6:15-cv-1038, 2016 WL 7666160, at *1 (E.D. Tex. Dec. 5, 2016) (quoting *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007)). Courts are thus hesitant to strike contentions without evidence of unreasonable delay and prejudice. *Id.*

## III.   DISCUSSION

### A.   Whether Alacritech Has Sufficiently Identified the Allegedly Infringing Intel Products Under P.R. 3-1(b)

According to Intel, Alacritech has not identified the allegedly infringing Intel products as required by P.R. 3-1(b). Specifically, Intel takes issue with Alacritech's use of catch-all language identifying the Accused Instrumentalities as

(i)      any version of [Intel's] controller, card, or adapter products capable of providing, or configured to provide, infringing LSO functionality in combination with an associated server or computer (e.g., [list of more than 90 products]); and

(ii)     any of its other activities, products and/or services that use servers or computers to practice and/or support infringing LSO functionality.

Intel's Motion [Dkt. # 259] at 4.

The Court agrees Alacritech's use of this catch-all language does not satisfy P.R. 3-1(b), because it does not provide adequate notice to Intel of the allegedly infringing devices. Instead, this language puts the onus on Intel to determine what devices infringe—which is contrary to the intent of the Patent Rules. *See Tivo Inc. v. Samsung Elecs. Co., Ltd.,* No. 2:15-cv-1503-JRG, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016) ("[Plain-

tiff] cannot simply rely on the 'same or similar functionality' language to sweep in additional products that have not been identified with sufficient specificity in the Original Contentions."). Accordingly, the Court finds this catch-all language, either in Alacritech's current contentions or in any future contentions, has no effect under the rules and may be disregarded by Intel. For clarity, however, Alacritech's list of products within the parenthetical—that is the "e.g., [list of 90 products]"—*is* a sufficient identification under P.R. 3-1(b).

**B.     Whether Alacritech Has Sufficiently Charted the Allegedly Infringing Intel Products Under P.R. 3-1(c)**

Intel next argues that, except for the 82599 and Infiniband controllers, Alacritech has not charted the accused instrumentalities as required by P.R. 3-1(c). Intel's Motion [Dkt. # 259] at 5–11. Instead, says Intel, Alacritech simply charted the 82599 and Inifiband controllers and then relied on the same references for the other accused instrumentalities. *Id.*

Alacritech responds it has provided detailed charts for exemplary products and included footnotes identifying on a claim-element-by-claim-element basis the supporting evidence for all the accused products. Alacritech's Resp. [Dkt. # 279] at 8–12. According to Alacritech, Intel's complaints are based on immaterial differences and, in most cases, the product document for each of the accused products is exactly the same. *Id.* at 9. Finally, Alacritech contends the differences noted in Intel's motion have no relationship to Alacritech's infringement theories. *Id.* at 10.

A number of district courts have addressed similar situations. In *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005), the plaintiff alleged over 100 Cisco products infringed 120 claims from four patents. *Connectel*, 391 F. Supp. 2d at 527. The plaintiff's contentions included four charts—one for each category of products—but the court found the charts simply parroted the claim language rather than explain how the accused products infringed. *Id.* Moreover, the plaintiff's citations to Cisco product manuals and third-party publications did not specifically identify where any elements of the asserted claims were found. *Id.* Based on these deficiencies, the court ordered the plaintiff to designate exemplar products and compare those products to each asserted patent on a claim-by-claim, element-by-element basis. *Id.* at 528. The court indicated its expectation to see "great specificity," but did not articulate how many exemplar products the plaintiff must analyze. *Id.* at 529.

In *UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496 (E.D. Tex.), the plaintiff argued there was no need to occupy thousands of pages of similar screenshots when its infringement theories were otherwise clear. *UltimatePointer, LLC*, No. 6:11-CV-496 [Dkt. # 269] at 5. The court noted that breadth of the accused products does not excuse a plaintiff from providing infringement contentions that are reasonably precise and detailed to provide defendants with adequate notice of the plaintiff's theories of infringement. *Id.* The court stated broad conclusory allegations that the products are similar does not satisfy the rules, but contemplated that a plaintiff could designate and chart only an exemplar accused product if the plaintiff also provided an explanation of the technical and functional identity

of the products represented. *Id. See also, e.g.*, *Infineon Tech AG v. Volterra Semiconductor*, No. C-11-6239, 2013 WL 5366131, at *4 (N.D. Cal. Jul. 31, 2013) (holding a claim chart for a single product was adequate when the plaintiff provided nearly 50 pages of analysis supporting its argument the product was representative of the other products); *Implicit Networks Inc. v. Hewlett-Packard Co.*, No. C 10-3746 SI, 2011 WL 3954809, at *2 (N.D. Cal. Sept. 7, 2011) (approving use of a single claim chart to represent 120 products where the patentee did not reverse engineer any products and instead relied primarily on a narrative explanation with citations to HP documentation); *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466, at *4 (N.D. Cal. Nov. 10, 2004) (finding that patentee presented sufficient evidence to accuse 160 products in a single claim chart where patentee reverse engineered only 3 products and provided declarations in support of contentions that all products infringe).

Here, the Court agrees with Alacritech that it need not necessarily chart every accused instrumentality if its contentions otherwise provide sufficient notice to Intel of its infringement theories. Alacritech claims the differences between the identified NICs and the 82599 and Infiniband controllers are immaterial, and that the product documentation for different products describes the relevant functionalities in "exactly the same manner." The Court finds Alacritech's briefing on this point persuasive. *See, e.g.*, Alacritech's Resp. [Dkt. # 279] at 9 (comparing Ex. G with Ex. R).

The Court, however, is not convinced Alacritech's contentions sufficiently explain

the basis for the equivalency and why the 82599 and Inifiband controllers are representative of the other accused instrumentalities. The Court will therefore order Alacritech to either (1) chart every model of the Intel accused instrumentalities or (2) explain and support, as part of its contentions, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between the accused instrumentalities that affect its infringement theories for the uncharted products. If Alacritech elects to proceed under the second option, it must also specifically address in detail the allegedly material differences raised by Intel in its motion and correspondence.

### C.     Whether Alacritech should be limited to Windows Server 2012

Finally, Intel contends Alacritech has not sufficiently identified what operating systems satisfy the limitations of the asserted claims. Intel's Motion [Dkt. # 259] at 11–15. Intel asserts that, while Alacritech cites to several Microsoft documents, nowhere does Alacritech describe a non-Windows OS or discuss how other operating systems satisfy the claim limitations. *Id.* at 12. Thus, argues Intel, Alacritech should be limited to Windows Server 2012, the only operating system Alacritech charted.

But according to Alacritech, the asserted claims don't require a specific operating system. Alacritech's Resp. [Dkt. # 279] at 13. Alacritech instead contends the claims are all "OS-agnostic"—that is, *any* computer functioning with Intel's network controllers will have memory and/or network software that satisfies the associated claim limitations regardless of the specific operating system. *Id.* at 14 n.17 (reciting elements from the asserted claims).

Given that Alacritech asserts the claims are OS-agnostic, Alacritech need not specifically identify every potential operating system in its infringement contentions. Alacritech, however, must at least include within its contentions a detailed explanation of the basis for its assertion the claims are OS-agnostic and that any computer functioning with Intel's accused network controllers will have the requisite memory, network software, protocol stack, and other claim limitations regardless of what OS is used.

## IV.   CONCLUSION AND ORDER

Having considered the parties' briefing and arguments of counsel, the Court **GRANTS-IN-PART** Intel's Motion to Strike a Portion of Alacritech's Patent Rule 3-1 Infringement Contentions [Dkt. # 259]. First, the Court finds the catch-all language used by Alacritech in its infringement contentions has no effect under the rules and may be disregarded by Intel. For clarity, however, Alacritech's list of products within the parenthentical—that is the "e.g., [list of 90 products]"—*is* a sufficient identification under P.R. 3-1(b).

Second, the Court **ORDERS** Alacritech within 14 days to either (1) chart every model of the identified Intel accused instrumentalities or (2) explain and support, as part of its contentions, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between the accused devices that affect its infringement theories for the uncharted products relative to the charted products. If Alacritech elects to proceed under the second option, it must also specifically address the allegedly material differences raised by Intel in its motion and correspondence.

Finally, the Court **ORDERS** Alacritech within 14 days to include within its contentions at least a detailed explanation of the basis for its assertion the claims are OS-agnostic and that any computer functioning with Intel's accused network controllers will have the requisite memory, network software, or other elements regardless of what operating system is used.

**SIGNED this 14th day of July, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE