# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ALACRITECH INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-00693-JRG-RSP |
| | § | (lead case) |
| CENTURYLINK, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this patent case, the Court will now consider Defendants' Motion to Transfer Venue to the Northern District of California [Dkt. # 59]. For the reasons set forth below, the Court concludes the movants, none of whom are based in that district, have not shown the Northern District of California is a clearly more convenient forum than this District and will deny the motion.

## I. BACKGROUND

### A. The Technology

The technology at issue concerns transferring and storing data within a network. Compl. [Dkt. # 1] ¶ 16. According to Alacritech, traditional methodologies wasted too much processing power performing brute-force data transfer and storage. *Id.* ¶ 18. To address that waste, Alacritech developed the use of dedicated network interface controllers (NICs) to more efficiently handle the processing. *Id.* Offloading processing tasks to a dedicated NIC implementing the methodologies taught by the asserted patents accelerates data

transfer between devices and allows the host CPUs to keep processing power for more substantive tasks. *Id.*

### B. The Parties[1]

Defendant Dell is a Delaware corporation headquartered in Round Rock, Texas. Dell sells computers, monitors, servers, and other devices it sources and assembles from third-party suppliers. Alacritech's infringement allegations against Dell are directed to the network adapters included in various Dell products.

Defendants Tier 3, Inc., Savvis Communications Corp., and CenturyLink Communications LLC (collectively, "the CenturyLink Defendants") are operating entities that share a common holding company parent, CenturyLink, Inc. Tier 3 is a Washington corporation with its principal place of business in Bellevue, Washington. Savvis is a Missouri corporation with its principal place of business in Town & Country, Missouri. CenturyLink Communications is a Louisiana corporation with its principal place of business in Monroe, Louisiana. *Id.*

The CenturyLink Defendants provide cloud, colocation, and hosting services to customers globally. Alacritech's infringement allegations against the CenturyLink Defendants are directed to servers that CenturyLink buys from Dell and Hewlett Packard, and which include network devices supplied by other third parties, including Intel, Broadcom,

---

[1] At the time Defendants filed the present motion, Intel had not yet intervened. Because "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted,'" *In re EMC Corp.,* 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)), the Court will consider Intel a third party in its analysis.

QLogic, and Mellanox.

Defendant Wistron Corporation is a Taiwanese corporation with its principal place of business in Taipei. Wistron sells electronic equipment such as televisions, notebook PCs, servers, storage systems, and networking devices to branding companies such as Dell. Wistron's COO works in Grapevine, Texas.

Defendant Wiwynn Corporation, an affiliate of Wistron, is a Taiwanese corporation with its principal place of business in Taipei. Wiwynn is involved in the cloud computing business, and provides products and services directly to end users.

Defendant SMS InfoComm Corporation, a subsidiary of Wistron, is a Texas corporation with its principal place of business in Grapevine, Texas. SMS warehouses products for Wistron and provides after-sale service of products sold by Wistron.

Plaintiff Alacritech is a California corporation with its principal place of business in San Jose, California. The majority of its former and current employees live in the San Francisco Bay area, as do five named inventors of the asserted patents. Alacritech's founder and president is one of those inventors.

### C. Third Parties

Collectively, the parties identify these specific third-party (i.e., not a party employee) witnesses[2]:

---

[2] Defendants contend five of the six named inventors are former Alacritech employees. The evidence, however, suggests only Clive Philbrick and Steve Blightman no longer work for Alacritech. *See* [Dkt. # 59-3] (identifying Peter Craft as a current Alacritech employee); [Dkt. # 59-4] (identifying Clive Philbrick as an employee of F5 Networks); [Dkt. # 59-5] (identifying Larry Boucher as President of Alacritech); [Dkt. # 59-6] (identifying Steve

- Clive Philbrick, a named inventor on all asserted patents, who lives in the San Francisco area;

- Steve Blightman, a named inventor on some of the asserted patents, who lives in the San Francisco area;

- Mark Lauer, prosecuting attorney for some of the asserted patents, who works in Pleasanton, CA;

- Michael Lazorik and Manish Mehta, former Dell employees living in Austin who communicated with Alacritech's CFO;

- Robert Winter, a former Dell network engineer from Austin who was involved in testing of Alacritech's technology; and

- Mark Underwood, a former Dell employee now living in Boston who acted as a primary contact for the technical team that interacted with Alacritech.

Defendants identify Intel, Broadcom, and Qlogic as designers and manufacturers of accused network interface devices. Intel headquarters in Santa Clara, California, but has a major presence in Texas and employs 2300 people in Austin and Plano. Broadcom is headquartered in San Jose, California. QLogic's headquarters are in Aliso Viejo, California.

Defendants also identify Nexenta Systems, Inc., Scality Inc., and Mellanox Technologies as suppliers of network controllers and software potentially implicated by Alacritech's infringement claims. Nexenta's headquarters is in Santa Clara, California. Scality's headquarters is in San Francisco, California. Mellanox's U.S. headquarters is in Sunnyvale, California, but Mellanox has a regional office in Austin. The parties' submitted initial disclosures do not identify Nexenta Systems or Scality as having relevant documents, but do

---

Blightman as an Oracle employee); [Dkt. # 59-7] (identifying David Higgen as an Alacritech employee); [Dkt. # 59-8] (identifying Daryl Starr as an Alacritech engineer).

identify Mellanox.

Defendants also identify Glenn Connery and Paul Sherer, who currently reside in Northern California and are named inventors on U.S. Patent 5,937,169. Defendants contend the '169 Patent is a highly relevant prior-art patent, and that Connery and Sherer have knowledge of both the '169 Patent and its impact on the validity of the asserted patents. James Binder, another inventor of the '169 Patent, lives in Tennessee.

Defendants also identify Microsoft as a potentially relevant third party. In 2004, Alacritech sued Microsoft in Northern California, alleging infringement of two patents in the same family as some of the asserted patents in this case. Ultimately, Alacritech granted a license to Microsoft. Defendants contend Microsoft's license will be highly relevant to this case and that Microsoft will have documents relevant to damages and exhaustion. Microsoft's headquarters are in Redmond, Washington.

## II. APPLICABLE LAW

Regardless of whether the plaintiff's chosen venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). A court should grant a motion to transfer under § 1404(a) if the transferee venue is clearly more convenient than the plaintiff's chosen venue. *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Fifth Circuit applies the "public" and "private" factors for determining forum *non conveniens* when deciding a § 1404(a) question. *In re Volkswagen*, 545 F.3d at 314 n.9. The "private" interest factors include: (1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The "public" interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re Volkswagen,* 545 F.3d at 315.

The plaintiff's choice of venue is not a factor in this analysis. *Id.* at 314–15; *id.* at 314 n.10. Instead, the plaintiff's choice of venue contributes to the defendant's burden in proving the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). And though the private and public factors apply to most transfer cases, they are not exhaustive or exclusive and no single factor is dispositive. *In re Volkswagen*, 545 F.3d at 315.

"Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.,* 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

## III. DISCUSSION

### A. Whether this case could have been brought in the Northern District of California

Defendants contend this matter could have been brought in the Northern District of

California, and Alacritech does not contest this.[3]

> B. **The Private Interest Factors**
>
> > *(1) the relative ease of access to sources of proof*

Courts analyze this factor in light of the distance that evidence must be transported to the trial venue. *See In re Volkswagen*, 545 F.3d at 316; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (noting the bulk of the relevant evidence in patent infringement cases usually comes from the accused infringer). *But see In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (noting that documents moved to a particular venue in anticipation of a venue dispute should not be considered).

Here, the bulk of relevant evidence will most likely come from Defendants as the accused infringers, and the Court presumes the bulk of the discovery material relating to each party is located at each Defendants' corporate headquarters. In addition, the Court agrees with Defendants that Intel, Broadcom, Mellanox, and QLogic likely have a substantial amount of relevant documents given they supply a significant number of the network adaptors at issue. The Court, however, also agrees with Alacritech that Defendants are likely to have significant documents relevant to this case given the Accused Instrumentalities include entire computer systems, and because Defendants will have information key to Alacritech's damages calculations.

---

[3] The record on this issue is not well-developed, but the Court will assume without deciding that venue would be proper in that district.

The Court, however, discounts the notion that Microsoft has a significant amount of information relevant to this case that should be considered in the Court's analysis. Although Defendants contend Microsoft's license may be highly relevant to this case, the Court does not anticipate Microsoft's license will require large amounts of information to be transferred from Microsoft's headquarters.

The distances between the parties[4] and the venues at issue are:

| Party (Headquarters) | Distance in Miles as the Crow Flies | |
|---|---|---|
| | **San Francisco, CA** | **Marshall, TX** |
| Dell (Round Rock, TX) | 1497 | 241 |
| Tier 3, Inc. (Bellevue, WA) | 810 | 1788 |
| Savvis (St. Louis, MO) | 1743 | 481 |
| CenturyLink (Monroe, LA) | 1744 | 131 |
| SMS InfoComm (Grapevine, TX) | 1463 | 160 |

---

[4] The Court disregards Wistron and Wiwynn in its analysis given that documents located at their headquarters in Taiwan would be required to travel a significant distance regardless of venue. *See In re Genentech*, 566 F.3d at 1345–46 (discounting European witnesses and documents transported from Washington D.C. in the analysis when reviewing a denial of transfer from Texas to California). Also, Alacritech "waives" any inconvenience to it stemming from its selection of this District. Alacritech's Resp. [Dkt. # 65] at 6 ("Having chosen this venue, Alacritech does not contend there is any inconvenience to making its witnesses or evidence available in this District.").

Here, most of the Defendants are located in or near this District, and third parties Intel and Mellanox have significant presences in Texas. CenturyLink maintains facilities and infrastructure in Beaumont and Longview, and Wistron's COO is located in Grapevine. While a number of potentially relevant third parties are in or near Northern California, overall the Court concludes this factor weighs against transfer.

> *(2)* *the availability of compulsory process to secure the attendance of witnesses*

The Fifth Circuit values absolute subpoena power when deciding motions to transfer, *In re Hoffman–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009), but parties can secure the depositions of non-party witnesses regardless of the trial venue. Under amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition is to be taken within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial. Fed. R. Civ. P. 32(a)(4) (allowing a party to use the deposition of a witness if the witness is more than 100 miles from the location of the hearing or trial).

Here, both parties have indicated their willingness to produce their party-affiliated witnesses in the forum for which they advocate. *See* Defs.' Motion [Dkt. # 59] at 12 ("Defendants' party witnesses are willing to travel to NDCAL . . . ."); Alacritech's Resp. [Dkt. # 65] at 6 ("Having chosen this venue, Alacritech does not contend there is any inconvenience to making its witnesses or evidence available in this District."). So far as third parties are concerned, Defendants identify two of the inventors and the patent attorney responsible

for prosecution as located in the San Francisco area. Alacritech identifies Michael Lazorik, Manish Mehta, and Robert Winter as former Dell employees residing in Austin that interacted with Alacritech. Alacritech's Resp. [Dkt. # 65] at 10 (relying on Fed. R. Civ. P. 45(c)(1)). Thus, there are roughly the same number of witnesses that would be subject to absolute subpoena power regardless of which venue is chosen. This factor is neutral.

*(3)    the cost of attendance for willing witnesses*

A court should analyze this factor by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen*, 371 F.3d 201, 204 (5th Cir. 2004). The court should consider all potential material and relevant witnesses, regardless of the likelihood of their being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen*, 371 F.3d at 204–05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Under that rule, the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If they are, the court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551

F.3d at 1320. Generally, the 100-mile rule favors transfer if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech,* 551 F.3d at 1320.

Importantly, however, the 100-mile rule should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. For example, when a particular witness would be required to travel a significant distance regardless of the chosen venue, that witness is discounted for purposes of the analysis. *Id.* at 1345–46 (discounting European witnesses and documents transported from Washington D.C. in the analysis when reviewing a denial of transfer from Texas to California). Also, when inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other's is insufficient to affect a transfer of venue analysis. *In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011).

Here, the Court discounts a number of potential witnesses in its analysis of this factor. First, the Court does not consider Mark Underwood, who resides in Boston, given that he would travel a significant distance regardless of the chosen venue. *See In re Genentech*, 566 F.3d at 1345–46.

Second, Defendants note that two "prior artists," Glenn Connery and Paul Sherer, reside in Northern California. Connery and Sherer are named inventors on U.S. Patent 5,937,169, but these are only two inventors on one of a number of prior-art references. The Court discounts these prior-art witnesses because Defendants have failed to specifically allege why their testimony is important, especially in light of the quantity of prior art at

issue in this case. Moreover, "[p]rior art inventors, while theoretically relevant, rarely testify, and their locations should be given little weight." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 852, 857 (E.D. Tex. 2013).

As already noted, there are six third-party witnesses identified by the parties the Court finds have potentially relevant testimony and that should be considered. Defendants identify two of the inventors and the patent attorney responsible for prosecution as being located in the San Francisco area. Alacritech identifies Michael Lazorik, Manish Mehta, and Robert Winter as former Dell employees residing in Austin that interacted with Alacritech.

Applying the 100-mile rule to these witnesses is effectively a wash. Some third-party witnesses will be inconvenienced regardless of the chosen venue. Merely shifting inconvenience from one set of third-party witnesses to another set of third-party witnesses does not affect a transfer of venue analysis. The Court therefore concludes this factor is neutral.

> *(4)    all other practical problems that make a trial easy, expeditious and inexpensive*

This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). The "consideration of

the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–21 (7th Cir. 1986)).

Defendants argue the Northern District of California is more familiar with the patent families, technology, and key claim terms at issue because of the 2004 case between Alacritech and Microsoft. Alacritech responds that Defendants rely on a decade-old case before Judge Whyte, who has since retired from the bench.

Here, the Court agrees with Alacritech. The prior case to which Defendants refer is too far removed in time to weigh in favor of transfer. Moreover, the case was resolved quickly and the presiding judge has since retired.

The Court also notes this is a consolidated case with a number of defendants concerning the same eight patents. The Court could consider venue on a defendant-by-defendant basis, but concludes judicial efficiency warrants considering the defendants collectively to prevent severing cases involving precisely the same issues—here, claim construction and validity of the same eight patents—and avoid wasting time, energy, and money. *See In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) (concluding the trial court did not abuse its discretion in refusing to sever and transfer the petitioners' claims because "judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective"). Overall, this factor weighs against transfer.

### C. The Public Interest Factors

#### (1) *the administrative difficulties flowing from court congestion*

This factor considers the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Generally, this factor weighs in favor of the venue with the faster time to trial, but the speed of the transferee district court should not alone outweigh the other factors. *Id.*

Here, Defendants cite to statistics this District ranks third in the country in terms of weighted filings per judgeship, whereas Northern California ranks twenty-eighth. Defs.' Motion [Dkt. # 59] at 14. Defendants note the average time to disposition and trial in this District is almost the same as Northern California. *Id.* But from filing to trial in a civil case, Northern California is thirty-one months whereas this District is nineteen months. http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf at 35 (Texas Eastern), 66 (California Northern). Because this factor is primarily concerned about speed to trial (as opposed to judges' workloads), this factor weighs against transfer.

#### (2) *the local interest in having localized interests decided at home*

This factor considers the connection of the chosen venue's locality to the events giving rise to the suit. *See In re Volkswagen*, 371 F.3d at 205–06; *In re TS Tech*, 551 F.3d at 1321 (concluding where the accused products were sold nationally, the citizens of this District had no more or less of a meaningful connection to the case than any other venue). After all, "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *In re Volkswagen*, 371 F.3d at 206 (citing

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue. *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). But if there are significant connections between a particular venue and the events giving rise to a suit, this factor should be weighed in that venue's favor. *Id.* For example, when the company asserting harm and many of the companies alleged to cause the harm are all residents of that district, as are the inventor and the patent prosecuting attorney whose work may be questioned at trial, the local interest favors transfer. *Id.*

Here, the company asserting harm (Alacritech) is a resident of Northern California, as are some of the inventors and the prosecuting attorney. But the companies alleged to have caused the harm are not residents Northern California. This is not sufficient to weigh this factor in favor of transfer. Instead, given the nationwide sales of the products at issue, the Court concludes this factor is neutral.

>   *(3)    the familiarity of the forum with the law that will govern the case*

Patent claims are governed by federal law, and both courts are capable of applying that law to infringement claims. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). This factor is neutral.

>   *(4)    the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law*

Neither party has identified any specific conflicts-of-laws issues. This factor is neutral.

## IV. CONCLUSION

The Court concludes that movants have not demonstrated the Northern District of California is clearly more convenient than this District and **DENIES** Defendants' Motion.

**SIGNED this 19th day of September, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE