ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4   ALACRITECH, INC.          )(

 5        Plaintiff,           )(  CIVIL DOCKET NO.

 6                             )(  2:16-CV-00693-JRG-RSP

 7   vs.                       )(  MARSHALL, TEXAS

 8                             )(

 9   TIER 3, ET AL             )(

10        Defendants,          )(

11   and                       )(

12   INTEL CORPORATION, ET AL   )(

13        Intervenors          )(  SEPTEMBER 14, 2017

14

15                     MOTIONS HEARING

16           BEFORE THE HONORABLE ROY S. PAYNE

17            UNITED STATES MAGISTRATE JUDGE

18

19   APPEARANCES:

20   FOR THE PLAINTIFF:  (See sign-in sheets docketed in
                          minutes of this hearing.)
21

22   FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
23
     COURT REPORTER:  Ms. Tammy L. Goolsby, CSR
24
     Proceedings taken by Machine Stenotype; transcript was produced
25   by a Computer
```

1                          **I N D E X**

2

3    SEPTEMBER 14, 2017:

4                                                    PAGE

5    Appearances                                      1

6    Hearing                                          3

7    Court Reporter's Certificate                   117

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S

 2          COURT SECURITY OFFICER:  All rise.

 3          THE COURT:  Good morning.  Please be seated.

 4          For the record, we're here for the motion hearing in

 5   Alacritech versus Tier 3, et al, or maybe it's CenturyLink, et

 6   al.  Anyway, Lead Case No. 2:16-393.

 7          Could counsel note their appearances for the record?

 8          MS. HENRY:  Good morning, Your Honor.  Claire Henry

 9   on behalf of Alacritech, joined by my co-counsel Claude Stern

10   and Joe Paunovich.

11          MR. STERN:  Good morning.

12          MR. PAUNOVICH:  Good morning.

13          THE COURT:  All right.  Good morning, and thank you,

14   Ms. Henry.

15          MS. SMITH:  Good morning, Your Honor.  On behalf of

16   Cavium, Melissa Smith and Karineh Khachatourian, and we're

17   ready to proceed, Your Honor.

18          THE COURT:  All right.  Thank you, Ms. Smith.

19          MS. KHACHATOURIAN:  Good morning.

20          THE COURT:  Good morning.

21          We've got three motions on the docket and a couple of

22   related motions that we might be able to take up as well.

23   Unless counsel have a better idea, we can just start with the

24   earliest of them, which I think is the motion regarding the

25   infringement contentions.  I guess I'd like to get Cavium's
```

 1   position on that now.

 2            MS. KHACHATOURIAN:  Your Honor, I want to update you

 3   on some developments that just occurred within the last 24

 4   hours.

 5            We received Alacritech's supplemental infringement

 6   contentions that are comprised of those two boxes on the floor.

 7   We were served by electronic mail around midnight on the 12th.

 8   I got on a plane six hours later to join you all yesterday.  It

 9   took a day to print them out.

10            And so I'm in no position, frankly, to review them to

11   see whether the issues that we've been complaining about and

12   that your Court -- Your Honor acknowledged in the order

13   regarding Intel and its motion to strike infringement

14   contentions has been cured.

15            So I think the best way to proceed would be with

16   respect to the contentions to carry it over until we've had a

17   chance to review the contentions.

18            THE COURT:  All right.  Thank you, Ms. Khachatourian.

19            MR. PAUNOVICH:  Good morning, Your Honor.  Joe

20   Paunovich.

21            We would disagree with counsel's recommendation to

22   carry over the motion.  The motion that is pending by Cavium is

23   directed to our February 2017 contentions which were served on

24   them.

25            When Your Honor entered your order regarding Intel's

1   motion to strike the contentions directed to Intel, you gave

2   very specific instructions that the parties should chart every

3   model of the identified Intel accused instrumentalities or,

4   two, explain and support as part of its contentions with

5   specificity and supporting documentary or declaratory

6   evidence -- declaratory evidence, its assertions that there are

7   no material differences between the accused products -- accused

8   devices that affect its infringement theories for the uncharted

9   products relative to the charted products.

10          We took Your Honor's order to heart.  We promptly

11  updated our contentions to Intel.  Without any motions to

12  strike pending by any other Defendant, we reached out to each

13  of the Defendants in light of your Court's guidance and agreed

14  and suggested that we update our contentions for everyone based

15  on that order.

16          That's exactly what we've done.  We've served,

17  putting side the dramatic effect, 47 charts to every single

18  accused product that is currently identified in this case,

19  although we'll get to in our motion the failure of Cavium to

20  identify additional products that are accused.

21          But even for those, the ones that we've been able to

22  discover, we've charted all those and included them as part of

23  a separate chart, all supported by an expert declaration and

24  detailed evidentiary analysis analyzing exactly the differences

25  that Cavium, which are very few, identified alleged difference

1    between those products.

2            If we look at the contentions and we look at what

3    Cavium has done and said in its interrogatory responses,

4    they've said for all their accused product fall into seven

5    product families.  This is not our creation of some

6    representative nature of the products, but that's what they

7    said, and that's how we have charted them.

8            And we have further supported that, not just saying

9    here's a family and take our word for it, but rather detailed

10   evidence that we've been able to gather from the productions in

11   the case, as well as our source code review, and, frankly, we

12   think it's more than sufficient.

13           We've done the same thing for each of the Defendants

14   at this point.  To my knowledge, we haven't had any complaint

15   from any of the other Defendants, and wouldn't expect there to

16   be, and certainly not briefed in this motion.  I don't think it

17   would be we can come back on this motion to the extent they do

18   try to identify any distinctions.

19           THE COURT:  Mr. Paunovich, the -- the concern I guess

20   I have primarily about the contentions is simply the timing of

21   it.

22           This hearing has been set for, I guess, about two

23   weeks, and obviously you knew that these new contentions would

24   not have reached counsel in time for them to have analyzed them

25   in advance of this hearing, so I wish that either you had done

1   that sooner or, if that was not possible, had at least notified

2   the Court so we could see whether the hearing could be

3   scheduled at a time when Cavium would have had time to review

4   this.

5            But I hear what you're saying about the fact that the

6   motion is directed at the original contentions, but I'm not

7   sure what the purpose of going through that would be now that

8   you've supplanted those with these supplemental contentions.

9   Just check on the word.

10           MR. PAUNOVICH:  May I comment on the timing, Your

11  Honor?

12           THE COURT:  Go ahead.

13           MR. PAUNOVICH:  The -- we tried to avoid burdening

14  the Court with this very issue by reaching out to each of the

15  Defendants, including Cavium, about supplementation right away,

16  and they knew from literally a day or two, if I'm recalling it

17  correctly, after the Court's July 14th order that we would

18  agree to supplement our contentions.

19           Part of the -- part of the issue here and actually

20  what is really at the core of this hearing -- and you'll hear

21  from Mr. Stern shortly -- unlike the other Defendants, we've

22  been fighting tooth and nail with Cavium for literally eight

23  months in this case to get the information that would allow us

24  to supplement these contentions, specifically, as Your Honor

25  may recall, the RTL code.

1        The differences that they have identified in their

2   interrogatory, which is what Your Honor's order to Intel

3   requires us to address in our contentions, is directed to the

4   RTL code, which they refuse give us despite court order and

5   eventually did.

6        In addition to that, there's a number of

7   interrogatories that we've had pending for basic technical

8   information design guides and specifications for 61 accused

9   products that put us in a position -- a very awkward position,

10  frankly, where we -- we simply, unlike all the other Defendants

11  where we had the documents, they agreed to give us the code,

12  gave us the documents, we could simply start working on their

13  contentions right away.

14       So we met and conferred extensively with Cavium's

15  counsel about these issues.  We asked them to please give us

16  these technical documents so that we can go ahead and make this

17  a fulsome -- the best possible update that we can.  We don't

18  want to do this serially.  We were unable to reach an

19  agreement.

20       Nevertheless we said we don't want to end up in

21  motion practice here, so if you want us to do it serially, when

22  or if you're required to produce these documents, we'll go

23  ahead and update now based on what we have, the code that we do

24  have and the documents that we do have.

25       We told them that.  We said if you file this

1   motion -- and here's when we're going to produce it, in early,

2   first week of September.  And if you file the motion, it's

3   going to be a moot motion because that's when we're going to

4   supplement.  That's the timing of when we're able to do that

5   and how we staggered our production of these based on the

6   depositions that are scheduled.

7            We're weeks away from Cavium's -- any -- any Cavium

8   witness depositions.  There's absolutely no prejudice to them.

9   We told them exactly what we were going to do, asked them not

10  to file the motion.

11           THE COURT:  All right.  I have seen some of this

12  recounted in briefs, but what I'm going to do at this point is

13  just say that the motion is moot as to the original

14  contentions, and I will carry the motion to allow Cavium to

15  supplement it if they continue to have issues that they want to

16  litigate regarding the amended contentions.

17           But I -- I think that's all I can accomplish on that

18  at this time, and we'll take up the timing of this when we get

19  to the end of the hearing as far as whether we're going to

20  schedule another event or whether set a deadline for Cavium to

21  notify you or the Court or both if there are further issues

22  with the amended contentions.

23           MR. PAUNOVICH:  Thank you, Your Honor.

24           One point of clarification on this before I step

25  away.

 1              THE COURT:  All right.

 2              MR. PAUNOVICH:  In our opposition to their motion --

 3    and it was unclear to us because of the posture of not having

 4    an order directed to all Defendants -- the contentions that we

 5    served on all Defendants -- we would just ask for some

 6    clarification whether you want a formal separate motion for us

 7    to amend to adopt the new contentions or if this would, in

 8    essence, serve as an adoption of those contentions, subject, of

 9    course, to counsels raising any issues in the carried motion.

10              THE COURT:  You're talking about whether you need a

11    motion for leave to supplement your contentions?

12              MR. PAUNOVICH:  Correct.

13              THE COURT:  As to Cavium, we can take that up here.

14    Obviously if -- if you get an agreement from the other

15    Defendants that they have no objection to your service of the

16    amended contentions, then you don't need to file a motion for

17    leave.

18              MR. PAUNOVICH:  Okay.

19              THE COURT:  But I don't want to take that up with the

20    other Defendants being absent, but I -- if you don't get

21    agreement from them, then you should file a motion for leave.

22              MR. PAUNOVICH:  Okay.  Thank you, Your Honor.

23              THE COURT:  All right.

24              MS. KHACHATOURIAN:  Your Honor, I don't -- if the

25    Court would like me to go through the actual events that

1   occurred, Mr. Paunovich misstated many facts, but I think for

2   the Court's efficiency, I'll just move on from that, but please

3   understand I don't agree.

4        THE COURT:  And I do understand that, and I'll ask do

5   you object to the service of the amended contentions?  If not,

6   I'm going to say that they're -- I guess they have a motion --

7   well, I don't know.  I guess that it is, in effect, an oral

8   motion for leave to serve them, and I'll rule on that, but I

9   want to give you a chance to be heard first.

10       MS. KHACHATOURIAN:  Thank you, Your Honor.

11       Well, my understanding -- I have not looked at the

12  contentions yet obviously, but my understanding, at least from

13  Intel, I believe Alacritech filed a motion to amend with

14  respect to Intel because they actually added new products.

15       So they took the Court's order as an opportunity to

16  now expand the case and add new products.  I suspect they've

17  done the same with us.  I can't confirm that yet.

18       They also served supplemental contentions on Dell.

19  Your Honor may recall Dell joined in Intel's motion, and the

20  Alacritech and Dell came to a stipulation after Your Honor's

21  order, and they agreed to serve supplemental contentions on

22  August 25th.

23       As a note, some of those contentions included Cavium

24  products.  As the Court may remember, Cavium intervened in this

25  lawsuit because of products it sold to Dell.  They have added

1  new Cavium products in Dell's contentions.

2            So while we do not object to the service of the

3  contentions, we may very well have objections to the content,

4  including adding new products at this late date without seeking

5  a formal motion to amend, so we may end up doing what Intel is

6  doing.  Dell may do the same thing.  It's unclear.  I know

7  CenturyLink was served with their supplemental contentions I

8  believe on Monday.

9            We had been asking for supplemental contentions two

10  hours after Your Honor's order came out.  We asked that they be

11  served the same time as Dell.  Alacritech refused.  Then they

12  said they were going to serve September 5th.  That didn't

13  happen.  Then they said they were going to serve September 8th.

14  That didn't happen.  And the Friday before Labor Day, Mr. Stern

15  informed me that we wouldn't get the contentions until the 12th

16  because of expert scheduling.  They were busy apparently.

17            THE COURT:  Well what I'll do then is carry the

18  motion for leave to serve the amended contentions until a date

19  that we'll set to get a response from you.

20            MS. KHACHATOURIAN:  I appreciate that, Your Honor.

21  Thank you.

22            THE COURT:  Okay.

23            MS. KHACHATOURIAN:  So then I believe, unless the

24  Court has a different thought, the next thing up is Cavium's

25  motion to compel interrogatory responses against Alacritech.

1          THE COURT:  I'm happy to start with that.

2          MS. KHACHATOURIAN:  Thank you, Your Honor.

3          The two interrogatories at issue -- and this was

4   attached to our brief -- is -- the first one essentially has to

5   do with pre-lawsuit communications and offers of licensing

6   between Cavium and QLogic and Alacritech given that they have

7   alleged inducement, willful infringement, contributory

8   infringement, and this should all be information that's in

9   Alacritech's possession as they are the ones putting forth

10  these communications presumably.

11         The second one was frankly an opportunity and a try

12  to -- to get more notice or any notice of Alacritech's actual

13  infringement allegations against us because, as the Court is

14  aware, since March we have been asking for supplemental

15  contentions, and we don't believe that we're still on notice of

16  their infringement contentions, and that's what interrogatory

17  number two involves.

18         With respect to interrogatory number one, we did

19  receive a response -- I'm working off of the Appendix A -- that

20  Alacritech submitted, and so there is a response, but the key

21  facts that Alacritech needs to put forth to prove willful

22  infringement, inducement, contributory infringement, are

23  lacking in this response, even though it is called for and

24  should be in their possession.

25         For example, the second paragraph refers to

 1  representative patents in the portfolio, Alacritech's patent

 2  portfolio, network acceleration technologies.  Then on the

 3  right side, Alacritech's patent portfolio.  They need to define

 4  what Alacritech's patent portfolio is.

 5          Is it the Patents-in-Suit?  Are there other patents?

 6  Doing a PTAB search, there's over 40 or 50 patents in

 7  Alacritech's name.  I'm not entirely sure how wide the

 8  portfolio is.  I don't know what they mean by patent portfolio.

 9          And given that this is relevant to damages, because

10  if they offered Cavium a license for their patent portfolio and

11  there was a number given, then that would certainly be relevant

12  to this litigation.  The -- the -- the specific patents are

13  clearly relevant as well, and yet it's not in the response.

14  And then there's a vague reference to network acceleration

15  technologies.  Not sure what that means.

16          Then right down here, the very last paragraph of page

17  one, says -- has a reference to evidence of infringement, and

18  then when we turn the page, it's double sided, so -- there's

19  references to still reviewing the three patents, Alacritech's

20  portfolio, accused of infringing, RSC, LSO.  I'd like to call

21  those acronyms alphabet soup because there is a lot of them.

22          And then there's a reference to Mr. Hein offered to

23  provide Cavium with an NDA that would allow Alacritech to share

24  its licensing terms and complete infringement analysis with

25  Cavium.

 1          Okay.  Well, you accuse Cavium of infringement?  Did

 2   you provide infringement analysis?  What was shared?  Because

 3   pause obviously if they didn't make a charge of infringement

 4   against Cavium, well, then their willfulness, their inducement,

 5   and their contributory infringement claims may fail.

 6          So all that we're asking for is more facts that were

 7   called for by the interrogatory and that are pertinent that it

 8   appears that Alacritech is attempting to avoid.

 9          THE COURT:  Well, Ms. Khachatourian, is that

10   interrogatory response merely describing the documents that are

11   attached to it or is it talking about things that are not

12   evidenced in the documents?

13          MS. KHACHATOURIAN:  Your Honor, Alacritech did not

14   attach any documents to its response.  There are a few, I

15   believe, that are attached by Bates number.

16          But ultimately these issues of charge of infringement

17   and the licensing terms and the -- I guess the number of

18   patents in the portfolio may be on the priv log because there

19   are documents that Alacritech is alleging as privileged.  How,

20   I'm not sure, and this may come before Your Honor.

21          But the answer to your question is we believe no.

22   The answers to these questions are not in the documents that we

23   have had access to and have been provided.

24          THE COURT:  All right.

25          MS. KHACHATOURIAN:  Not fully.  So all we're asking

 1   for is additional information, and their response is, well,

 2   you're going to be taking Mr. Hein's deposition, so why don't

 3   you take the deposition and then we'll supplement, which I find

 4   rather curious because when it comes to Cavium's responses to

 5   interrogatories and information that we need or when we say,

 6   well, actually that's more appropriate for deposition,

 7   Alacritech turns around and says, no, we want written fulsome

 8   responses.

 9           So we would like additional facts to the extent they

10   have them that are relevant to the claims that they've asserted

11   against my client in terms of what patents were part of the

12   portfolio, did you make a charge of infringement, what patents

13   did you talk about, what products of Cavium's did you discuss.

14   None of that is in the response.

15           Now, we could ask Mr. Hein these questions, but a

16   preview is I think they're going to object and instruct not to

17   answer based on privilege, and if that's the case, then I would

18   like to know that now.  If that's not the case, then I would

19   like the information before the deposition.

20           THE COURT:  All right.  And have you attached the

21   interrogatory and response to your motion?  I know there are

22   limits on how much you can do, but I just would like to have

23   them in front of me.

24           MS. KHACHATOURIAN:  Your Honor, Appendix A, which

25   Alacritech filed in opposition to our motion, is a true excerpt

 1 │ of their response, and we provided a true and full excerpt of

 2 │ the actual interrogatories and the definitions in -- as an

 3 │ attachment to our motion to compel.

 4 │          THE COURT:  All right.  I see there an appendix.

 5 │ You're saying that is the response?

 6 │          MS. KHACHATOURIAN:  Yes, Your Honor.  The appendix is

 7 │ an accurate representation of the response.

 8 │          THE COURT:  So I can get the interrogatory from your

 9 │ motion and that response.

10 │          MS. KHACHATOURIAN:  Correct.

11 │          THE COURT:  All right.

12 │          MS. KHACHATOURIAN:  I can check to see if I have the

13 │ identity here and I can check to see if I have a full copy of

14 │ it.

15 │          THE COURT:  I think I can work from this.  It's just

16 │ helpful when I'm listening to arguments to have them in front

17 │ of me.  All right.

18 │          MS. KHACHATOURIAN:  Thank you, Your Honor.

19 │          THE COURT:  Thank you.

20 │          MR. PAUNOVICH:  Your Honor, regarding this

21 │ interrogatory, I almost feel like we're talking about a

22 │ different interrogatory response because I think if Your Honor

23 │ reviews our complete response, what you'll see is that we've

24 │ provided an extremely fulsome and detailed response of all the

25 │ information currently in Alacritech's possession, custody, and

1    control.

2            What counsel pointed to and takes issue with, if you

3    look at the specific paragraphs, for example, they take issue

4    with, for example, this paragraph that talks about the parties,

5    and the parties are referring to a third party, Mr. Andrew Hein

6    and an employee of Cavium Mr. Albert Harnois conducting a

7    telephone conference.

8            I don't have Mr. Hein's personal conversations, much

9    less Mr. Harnois, their employee's personal conversations in my

10   possession, custody, and control.  Both individuals have been

11   noticed for deposition, will have their depositions taken.

12           The suggestion that we have claimed privilege over

13   any of this material is entirely false.  We have identified

14   every single communication between these individuals, who are

15   the only two individuals who have had these discussions, in our

16   interrogatory response and produced them.

17           There's absolutely nothing that I'm aware of on our

18   privilege log, nor would there be a reason to claim on our

19   privilege log that a communication between a third party that's

20   not Alacritech and a representative of Cavium is privileged,

21   nor would we instruct a witness at deposition who had a

22   conversation between third parties to not answer based on

23   privilege.

24           So we have -- and Your Honor hit the nail on the

25   head.  What we've described in a very fulsome, detailed

1    response is -- describes exactly what is available and cited to

2    and produced in the Bates numbers identified in our

3    interrogatory response.

4           This includes the presentation that Mr. Hein

5    apparently gave to Mr. Harnois.  It includes the identification

6    of patents, including those that are in suit.  It includes

7    other topics of their conversation of everything that we have

8    in our possession, custody, or control.

9           And if Your Honor wants even to see even a further

10   contrast of this, you would have to go no farther than Cavium's

11   response to our common interrogatory number eight.  Whereas we

12   provided five pages of detail cited documents of everything

13   that we could find, they have about a paragraph describing

14   these very same events.  They supplemented it once.  It's a

15   very short description.  It's probably a quarter of the size of

16   that description that we have provided based on the very same

17   document.

18          So we -- we have done everything that we can possibly

19   do in this instance.  What they're demanding is, in essence,

20   that we state some sort of legal conclusion in this, that we

21   have to take a position before either of the two relevant

22   parties have been deposed as to exactly what was said in that

23   conversation.  I don't know what more we could do in advance of

24   the depositions that are going to occur in the next few weeks.

25          THE COURT:  Is it your understanding that when Mr.

 1   Hein referred to Alacritech's patent portfolio that he was

 2   referring to it in that manner, or is there some additional

 3   specificity about what patents were being talked about?

 4          MR. PAUNOVICH:  Sure.  So in our -- in our response,

 5   we identify a presentation which is an attachment or referred

 6   to in the emails that he exchanges with Mr. Harnois, so that --

 7   that's a presentation we can all look at with our -- with our

 8   own two eyes, and you see patents identified, and you see

 9   the -- in that presentation you see the presentation referring

10   broadly to the portfolio.

11          There is then subsequent communications, emails

12   between them that we do have in our possession.  We identified

13   and described them.  Then we identify specific Patents-in-Suit

14   and specific technologies that they're relevant to, what

15   counsel calls alphabet soup, and we all have been functioning

16   with for over a year, very clearly defined functionalities,

17   RSC, LSO, Infiniband.  They're spelled out in about black and

18   white in the email with the Patents-in-Suit.

19          THE COURT:  So the -- you will rely on those

20   documents which you have already turned over to provide the

21   specificity about which patents were subject to these

22   discussions?

23          MR. PAUNOVICH:  That's correct.  We've also noticed

24   Mr. Harnois' deposition for early October.  We intend to take

25   his deposition and explore these communications further.

1          Cavium's counsel has subpoenaed a third party Mr.

2   Andrew Hein.  We've offered dates for him.  They asked for

3   additional dates.  We've provided those dates.  They have not

4   accepted a date yet.  They're intending to take his deposition.

5   He's identified on our initial disclosures.  He's not an

6   employee of Alacritech.

7          THE COURT:  All right.  Do you contend that any of

8   these communications constitute a charge of infringement

9   against Cavium?

10          MR. PAUNOVICH:  I think that we have spelled that out

11   as best we can from these communications based on as we read

12   them.

13          THE COURT:  Can you show me where you address that?

14          MR. PAUNOVICH:  Bear with me just one moment, Your

15   Honor.

16          THE COURT:  All right.

17          MR. PAUNOVICH:  So I've done this rather quick, but

18   it is a fulsome response, Your Honor, so there may be other

19   areas.

20          For example, the part that I've highlighted here

21   talks about during a May 1 call, so this is a verbal

22   conversation that none of us other than Cavium's employee

23   participated in and third party Mr. Hein.

24          And he's asking Cavium about the status of their

25   investigation of Alacritech's portfolio and patented

1  technologies because we have an email from Mr. Harnois back to

2  Mr. Hein saying we're going to investigate these patents, and

3  this is after he's received this original sort of omnibus

4  portfolio presentation.

5          We've alleged and provided here, Mr. Hein reiterated

6  that Cavium should license Alacritech's portfolio, and they

7  discuss certain Alacritech patents.  I don't know what those

8  patents are, but it's clear from the emails that they scheduled

9  a call to discuss some of the patents that were in the

10 portfolio.

11         That -- that is clear from the face of the emails,

12 which we've identified in this response, and that he continued

13 to express an interest in that additional section.

14         This is later, a few weeks or months had passed, and

15 then they get down to the specific technologies that are at

16 issue in this case, and, again, it's clear, at least at a high

17 level, from the emails they're talking about RSC, LSO,

18 Infiniband.

19         Mr. Hein we can tell from those emails is talking

20 about them with Mr. Harnois and asking them to take a license.

21 He emails Mr. Harnois, Alacritech patents that they discuss

22 covering these technologies.  The email identified two

23 Patents-in-Suit, that's on the face of the email, the '241 and

24 the '699 patent.

25         And in that email, we can also see in black and white

1    he identifies to Mr. Harnois the so-called alphabet soup

2    technologies that are at issue that he needs to take a license

3    to.

4              I can't -- I don't see the words in those emails

5    charge of infringement, but we're going to get to depose

6    Mr. Harnois and we're going to get to depose Mr. Hein, and they

7    can provide further context for these verbal conversations that

8    they clearly had as evidenced by the emails.

9              THE COURT:  So is it fair to say that any evidence

10   about a pre-suit charge of infringement would come from Mr.

11   Hein or Mr. Harnois?

12             MR. PAUNOVICH:  That's -- that's correct.  We -- I

13   think our position is as well that these emails do evidence

14   that they have been put on notice of their infringement and

15   need to take a license vis-a-vis these emails, which is

16   supplemented by their conversations as evidenced by the emails.

17             THE COURT:  All right.  So it would be in the emails

18   that you have identified by Bates number that have been

19   provided to Cavium or it would be in the oral testimony of

20   these two witnesses?

21             MR. PAUNOVICH:  That's correct.  And the point I

22   think here, Your Honor, is it's not going to be just a he said,

23   he said situation.  This is a situation where we'll have

24   witnesses testifying and corroborating their story or Mr.

25   Hein's story presumably are the emails that were exchanged

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                                 24

1    between them.

2              THE COURT:  And is it fair to say that you are at

3    this point taking this position -- and when I say you, I mean

4    the Plaintiff -- that there was in these communications a

5    charge of infringement against Cavium on the asserted patents?

6              MR. PAUNOVICH:  That's correct.  That would be our

7    position, which is why we have alleged willfulness and induced

8    infringement going back to at least this time.

9              THE COURT:  And what about the subject of a monetary

10   offer?  Is there any information about a monetary offer that is

11   not in the documents that you've identified in this

12   interrogatory response?

13             MR. PAUNOVICH:  So Cavium's response to common

14   interrogatory number eight does allege that there was such a

15   monetary offer.  It's nowhere in the emails.  It's not

16   corroborated in the emails, and, frankly, I don't believe that

17   that did occur, a monetary offer.

18             There was a demand or an offer to license, as I

19   understand it.  There's no evidence of any monetary offer ever

20   being offered, other than -- that I'm aware of, other than

21   Cavium's uncorroborated interrogatory response.

22             THE COURT:  All right.

23             MR. PAUNOVICH:  Your Honor, would you like me to

24   address the other interrogatory at this point or give counsel

25   you a chance to respond?

1          THE COURT:  I would like to take care of this one

2   before we move on to the next one.

3          But tell me what is the relationship between the

4   entity that Mr. Hein worked for A-Tech and Alacritech?

5          MR. PAUNOVICH:  At one point in time, certain

6   Alacritech patents -- and there are documents which we produced

7   which evidence all of this, so I don't want to mischaracterize

8   it.  Ultimately there's documents that tell this story.

9          But certain Alacritech patents were assigned to

10  A-Tech for a period of time, and Mr. Hein was a member of

11  A-Tech that -- while it owned those patents, and during that

12  time is when he reached out to Mr. Harnois and Cavium to have

13  these conversations that are evidenced in the emails.

14         Sometime after that, the patents were assigned back

15  to Alacritech prior to filing this suit, and A-Tech was

16  dissolved.

17         THE COURT:  Is there a common ownership between

18  A-Tech and Alacritech, or was there --

19         MR. PAUNOVICH:  You know, I -- I don't know.  I don't

20  want to misspeak here without having the documents in front of

21  me.  I -- I don't believe so, but, again, this is something I

22  would have to check.

23         I think it was a simple assignment of the patents and

24  there was an agreement embodying that assignment in terms of

25  how -- what was meant by that and the purpose of that at some

 1  level, and then it ultimately came back to Alacritech.

 2          But during that time, Alacritech continued to exist,

 3  and I believe -- and I may be over my skis here, but I don't --

 4  I don't believe that, for example, the owners of Alacritech --

 5  I don't believe that they were members of A-Tech at that time,

 6  but I don't know.  I'm just --

 7          THE COURT:  All right.  I will accept the

 8  representation in that spirit.  That answers my question.

 9  Thank you.

10          MR. PAUNOVICH:  Thank you, Your Honor.

11          MS. KHACHATOURIAN:  Your Honor, I think a little bit

12  of background would be helpful here.

13          First of all, Quinn Emanuel represents Andrew Hein.

14  They are Andrew Hein's attorneys.  Therefore, they have access

15  to Andrew Hein, and they have access to his notes.  They have

16  access to speak to him.  They have access to ask him questions

17  to respond to this interrogatory for him.

18          THE COURT:  The question really isn't about what

19  access Quinn Emanuel has.  It's about Alacritech.

20          MS. KHACHATOURIAN:  Well, to that second point, this

21  is an interrogatory directed to Alacritech, and they are

22  directing us to a third party who doesn't speak for Alacritech,

23  who apparently is not employed by Alacritech, who was a

24  licensing agent for Alacritech at one time.

25          Therefore, they can disavow his testimony, accept his

1    testimony.  They can do whatever they like because he does not

2    speak for the company.

3           Now, in terms of the initial disclosures, after we

4    subpoenaed Andrew Hein in terms of timing, that was probably

5    three weeks to a month ago.  They amended their initial

6    disclosure to add Andrew Hein.  He was not on their initial

7    disclosures before that.

8           THE COURT:  Well, I guess what I want to focus on now

9    is the sufficiency of their interrogatory answer.

10          MS. KHACHATOURIAN:  Your Honor, first of all, the

11   emails that they are pointing to we don't believe support what

12   they're saying in terms of there was a charge of infringement,

13   an identification of patents.  What might be helpful is our

14   response, so they can be -- you can --

15          THE COURT:  Well, the fact that you don't agree with

16   their discovery response is completely predictable.

17          MS. KHACHATOURIAN:  True.  But what I'm saying is the

18   emails that were produced don't accuse Cavium of infringement.

19          THE COURT:  Okay.

20          MS. KHACHATOURIAN:  Don't identify what the patent

21   portfolio is.

22          In other words, as Alacritech has said, if these --

23   if these facts were verbal, then you need -- and you're relying

24   on Mr. Hein, then you need to ask him these questions and

25   provide us with a response or say you don't have it in your

1    possession.

2              But then if you don't have it in your possession,

3    then that's a little tricky, isn't it?  Then why did you sue us

4    for willful infringement, why did you sue us for inducement,

5    why did you sue us for contributory infringement if now the

6    information is with a third party and not you and you can't

7    answer it?

8              You heard Mr. Paunovich say we don't know.  You'll

9    find out in deposition.  That's not good enough when we're

10   talking about a party rog and you're pointing me to a third

11   party.

12             You need to know did you accuse Cavium of

13   infringement of the Patents-in-Suit, did you offer to license

14   the patents and what was the monetary amount, in the PowerPoint

15   is there any reference to infringement?  I would submit to Your

16   Honor no.

17             Is there a discussion of all the Patents-in-Suit?

18   No.  And, in fact, Alacritech even says they have information

19   of infringement, and if there was an NDA, they would share it,

20   which presumes that they never did.

21             And, by the way, on the privilege log, there are

22   documents being withheld under a common interest, which we're

23   probably going to attack.

24             This is a person Mr. Hein who -- who was a licensing

25   agent, and what happened was -- is Alacritech transferred these

 1  patents, whatever those patents are, because we still haven't

 2  had them fully identified, to A-Tech.

 3          A-Tech was their licensing agent.  There's an

 4  agreement between them.  There is a financial arrangement

 5  between them, and then A-Tech was supposed to go out, I guess,

 6  and monetize the patents and charge people with infringement on

 7  Alacritech's behalf.

 8          We're asking basic questions.  What are the patents,

 9  did you make a monetary offer.  If the answer is no, say so.

10  But what they're doing is they're voiding the key facts, and

11  they're hoping that A-Tech will just fill it in when I depose

12  Mr. Hein.

13          I want these answers up front so that people can't

14  change their stories because I'm asking for an answer from

15  Alacritech, not from A-Tech.  What did you do?

16          THE COURT:  I think the key at this point in

17  discovery is have they disclosed to you the documents and

18  information that they have.

19          And in looking at this discovery response, I think

20  that it adequately discloses to you, based on the

21  representations that I've heard here, all the documents they

22  had that bear on it and the identity of the witnesses.

23          The witnesses are not, as far as I can determine,

24  their employees, and I -- so I -- I don't think this is a

25  situation where they're saying we have the information, you

```
 1    need to come and get it.  I'm satisfied based on what I've

 2    heard that they've given you an adequate accounting of the

 3    evidence that they have on this.

 4            I understand that whether or not these communications

 5    amount to a charge of infringement may be a summary judgment

 6    matter.  I don't know.  But unless the Plaintiff relies upon

 7    information beyond that which is set out in the interrogatory

 8    response, I don't think they have violated their discovery

 9    obligation.

10            MS. KHACHATOURIAN:  Then, Your Honor, what I would

11    say is that they have represented in their opposition to our

12    motion to compel that they're going to supplement this response

13    after Andrew Hein's deposition, and what I would ask then is

14    that they are not permitted to do that.

15            Either you provide us the information in response to

16    this interrogatory and live with it, or you can't supplement

17    after his deposition because you're basically saying you've

18    provided all of the information that you have.  Okay.  Fine.

19    But then you can't then say, well, after Andrew Hein gets

20    deposed, I'm going to supplement and add more.  That's not

21    fair.

22            Either he's in your possession, custody, or control,

23    or he's not.  If you're saying that he's not, then you can't

24    provide that information later, and if you're saying that he

25    is, then provide it.
```

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                    31

```
 1              THE COURT:  If they're saying that he's not, then

 2   they don't currently have the information.  After his

 3   deposition, they will have the information.  It will be in the

 4   deposition, so I don't think that's inconsistent.

 5              Now, if you determine during the deposition that they

 6   have had -- that their relationship with Mr. Hein is such that

 7   this is knowledge and information that they should be charged

 8   with, then there may be a different issue.

 9              MS. KHACHATOURIAN:  Okay, Your Honor.  Then that's

10   what we'll plan to do because as we see it, he, Andrew Hein,

11   was Alacritech's licensing agent, and they have a contractual

12   agreement.

13              Quinn Emanuel represents Andrew Hein, so I think on

14   its face it appears difficult to then claim that Andrew Hein is

15   not in their possession, custody, or control.  I don't think

16   it's any coincidence that Quinn Emanuel is representing Andrew

17   Hein.

18              THE COURT:  Well, I'm not going to draw any

19   inferences from the fact of representation, but I hear you.

20              With respect to the second interrogatory, what was --

21              MS. KHACHATOURIAN:  The second interrogatory

22   essentially asks for more information about their infringement

23   contentions, and since we've gotten supplemental contentions, I

24   think that should be carried over as well.

25              THE COURT:  All right.  Well, I -- frankly, I think
```

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                    32

```
 1   that the contentions are an adequate answer to that, and if you

 2   have a problem with the contentions, I think you should raise

 3   it in the context of the contentions, but I'll take those

 4   contentions as an adequate answer to the second interrogatory.

 5            MS. KHACHATOURIAN:  Thank you, Your Honor.

 6            THE COURT:  All right.  Thank you.

 7            Let's see.  We have then Alacritech's motion to

 8   compel.  Mr. Stern?

 9            MR. STERN:  Good morning, Your Honor.

10            Mr. Paunovich will handle the bulk of this motion,

11   but I'm going to start it off, if that's all right with Your

12   Honor.

13            THE COURT:  All right.

14            MR. STERN:  I want to -- if I'm going to be

15   addressing anything, Your Honor, I think it's more of the

16   tonality of our motion and it's the -- what I think is the

17   difficulty that brings us here.

18            I want to pocus on, if I can, the motion to compel

19   with respect to common interrogatory number seven and with

20   respect to party interrogatory one and four, and I didn't know

21   if you have those in front of you, Your Honor.  We have

22   attached them to our motion, but I want to make sure you have

23   them before you.  We have copies of them here if that would be

24   most helpful to you.

25            THE COURT:  If you have paper copies, I would be
```

1   happy to --

2              MR. STERN:  Your Honor, what I'm going to ask

3   Mr. Paunovich to do, if he has permission to approach, we will

4   provide Your Honor the following:  These are the two documents

5   which are most recent copies.  One is the second supplemental

6   response to Plaintiff's first set of common interrogatories,

7   and then also Cavium's response to Plaintiff's first set of

8   party interrogatories.

9              So you're going to get their second supplement to the

10  common and their first response to the party, which is the

11  latest versions that we have.

12             THE COURT:  All right.

13             MR. STERN:  Does Your Honor have those?

14             THE COURT:  I do.

15             MR. STERN:  So just by way of background, this has

16  been a long fought battle to try to get information, which we

17  should have gotten months ago.

18             Cavium, as you know, voluntarily, deliberately,

19  consciously interceded into this case.  They decided to

20  intervene in the case.

21             In February, seven months ago, we served on them the

22  common interrogatories, actually seven months ago to the day.

23  On June 1st, which is now two and a half months ago, we served

24  them the party interrogatories.

25             So I give this as background, Your Honor.  These

1    people have had between two and a half and seven months to

2    respond to the questions that we've provided.  There's no

3    question about burdensome or difficulty of having the time to

4    respond to them.

5           Now, the questions -- what we're asking for them to

6    do is our client has, through its own diligence, discovered

7    certain products that it believes are infringing, but there

8    were a variety of products, and obviously right now, you, Your

9    Honor, or any person would be able to find out only certain

10   limited information about what any parties' products are based

11   on conventional tools, like the internet, for example.

12          What these interrogatories seek to do is to find out

13   additional information about additional products that practice

14   what we believe are the functions that ultimately are the heart

15   of this case.

16          In interrogatory seven of the common interrogatories,

17   Your Honor -- and I don't know if you have that in front of

18   you.

19          THE COURT:  I do.

20          MR. STERN:  This was the subject of the motion that

21   was heard before you on June 15th, and here is a -- here is

22   that -- here is that interrogatory, and in that interrogatory,

23   we asked for Cavium to identify each product or combination of

24   products that you make -- have made used in connection with any

25   services, support, operations, or facilities that you provide

1    with or using accused instrumentalities, practicing, and/or

2    supporting, infringing RSC, LSO functionality or Infiniband

3    and/or RoCE or RoCE2 compliant connectivity functionality, et

4    cetera.

5           That's what we asked them to do because we only have

6    certain products, so we want to know from the very gate, from

7    the moment that they came into the case, what are the other

8    products that you have that we don't know about that practice

9    these functionalities.

10          Now, on June 15th, Your Honor, we were here, and

11   Cavium's counsel made the argument that the reason they

12   couldn't answer this is because answering this interrogatory

13   would be an implicit admission of infringement.

14          And the reason that they were taking that position

15   was because this interrogatory used the word, used the phrase,

16   as Your Honor sees right here, infringing RSC, if Your Honor

17   sees that.

18          At that hearing on June 15th, I made a statement on

19   the record, which I think, I hope, with Your Honor carries some

20   weight, and I made the following statement.  After -- after

21   Cavium's counsel made that comment, I made the following

22   statement, which I think everyone could represent is

23   unequivocal.  It's on page 135 of the transcript of the

24   June 15th hearing.

25          I said, I will do, Your Honor, in an effort to try to

1   resolve that, we'll strike the word infringing.  We will

2   consider that to be stricken.  I said that on the record.  I

3   didn't say we have to talk about it later on.  I didn't say,

4   you know, there's some sort of qualification.  I said it's

5   stricken, consider it stricken.  So on June 15th, the world had

6   notice that for that interrogatory, for interrogatory number

7   seven, that word was stricken infringing.

8            Now, after that date, after June 15th -- I should say

9   before I go to that, ignoring interrogatory number seven, even

10  ignoring interrogatory seven, as of June 1st, we had served on

11  them the party interrogatories.  These are unique to Cavium.

12           Now, Your Honor, obviously on June 15th, that was too

13  early to have any response from Cavium to those

14  interrogatories, so we didn't have a response to their

15  interrogatories.

16           But I want to show you, Your Honor, if I can -- and

17  I'm directing Your Honor to the party interrogatories.  I'm

18  going to give you some examples.  We've moved them on one and

19  four, but I'd like to focus on interrogatory four.

20           Interrogatory four, which is in front of you, Your

21  Honor, says identify name, model number, and any unique

22  identifiers, all Cavium products or services that were made,

23  used, imported, offered for sale and/or sold, from June 2010 to

24  the present that support, practice, or enable the identified

25  functionalities, and it goes on.  I want to stop there because

 1   we asked for all sorts of other things as well, but I want to

 2   just focus on that.

 3            Now, the phrase identified functionalities, Your

 4   Honor, is a defined phrase, and everyone can admit that the

 5   definition of identified functionalities doesn't include the

 6   word infringing.  The identified functionalities are things

 7   like the LSO, the RSC, the RoCE, the RoCE2, the Infiniband.

 8   Those were all defined that way.

 9            Now, I say this because I want to make clear to Your

10   Honor that what we tried in the party interrogatories -- I'm

11   sorry -- in the common interrogatories, we had already said on

12   June 15th infringing is stricken, tell us all the products that

13   practice these functionalities.

14            In the -- in the party ones on June 1, we didn't have

15   any such problem with respect to the word infringing, or I say

16   alleged problem.  They similarly said identify these products

17   that perform these functions.

18            Now, I think it's telling, Your Honor, about this.

19   In response to interrogatory number seven, one of the

20   objections that was made by Cavium -- this is the word used in

21   the infringing.  They made the following objection:  Cavium --

22   I'll put it here, Your Honor.  They said Cavium objects to the

23   interrogatory to the extent it assumes facts not in evidence,

24   including without limitation with regard to alleged

25   infringement.

1              In other words, they -- they preserved an objection

2    that, you know, they have a problem with interrogatory number

3    seven because it uses the word infringement in it, but, of

4    course, that was cleaned on June 15th.  That was gone on

5    June 15th.

6              If Your Honor looks at Cavium's responses to

7    interrogatories one and four of the party interrogatories, Your

8    Honor will find that there is no such -- there is no such

9    objection made.  Here's, for example, the response to

10   interrogatory number four, which I have.

11             They said -- excuse me, Your Honor.  They say

12   everything -- they have all sorts of problems with this, and

13   this is the totality of the problem they have on accused

14   instrumentalities.  It's in front of Your Honor right there.

15             They say they dump accused instrumentalities in with

16   a bunch of other language.  And they say Cavium further objects

17   to this interrogatory on the grounds that the accused

18   instruments, identified functionalities, Cavium products, terms

19   of each relevant sale or offer to sale, and unique identifiers

20   are vague, ambiguous, and overly broad, substantively and

21   temporally, and to the extent they seek information not in

22   Cavium's possession, custody, or control.  They don't say

23   anything about a problem with these things suggesting or

24   assuming infringement.

25             Now, we have been pushing on Cavium to produce to us

1    these interrogatories -- to identify these products which

2    practice these various different features, the identified

3    functionalities.  It's been more than two and a half months.

4    Discovery ends in a month, Your Honor.  Discovery ends in a

5    month.

6              Cavium has gone out of its way to do whatever it can

7    to simply avoid this, and I think what's remarkable is the

8    positions they've taken here before Your Honor.  This is what

9    they've told Your Honor.

10             First they told Your Honor that this problem still

11   persists.  I -- I'm not making this up.  They say -- this is

12   their motion.  This is their opposition to this motion.  They

13   say -- this is on page four of their opposition to our motion.

14   It says -- I don't know if Your Honor can read this.

15             It says, however -- bottom of the page, very bottom

16   of the page on page four -- any supplement must be subject to

17   correction as to the defects of the interrogatories' use of

18   infringe, which infects each interrogatory at issue, numbers

19   three, five and seven, those are of the common, and numbers one

20   and two, these are the accused instrumentalities.

21             What's remarkable about this, Judge, is, first of

22   all, it ignores the complete fact that we told Your Honor on

23   the record that we told them that the word infringing is

24   stricken.  We told them on the record.

25             But, Your Honor, it's more than that.  We didn't just

1  sit on our hands after that hearing.  Your Honor -- does the

2  Court have this document?  Your Honor, I'd like you to see this

3  letter.  This was a letter that was sent on September 7th,

4  which recounts what we went through on this particular issue,

5  if I may.

6          THE COURT:  All right.

7          MR. STERN:  Now, this is written on September 7th,

8  Your Honor.  This is almost three months after my statement on

9  the record that the word infringing is stricken.  This is what

10 we have to tell them because they are persistently saying you

11 still have a problem with the word infringing.

12          I think it's important that what we do is we write

13 them a letter.  This is written by my partner -- I'm sorry --

14 by my -- by my colleague Brian Dunn, and in this, we first

15 start off in writing by confirming what the content of seven is

16 without the word interrogatory -- without number seven --

17 without the word infringing.

18          I don't know what just happened here.  You have it in

19 front of you.  This is -- if you see the word infringing, do

20 you see that interlineated on the first page?

21          THE COURT:  I see it.

22          MR. STERN:  So we emphasized it to them.  We've

23 already done this.  But more to the point, Your Honor, if Your

24 Honor turns the page and Your Honor sees at the top is my

25 statement on the open record on June 15th.

1          On July 16th, a month after I made that statement to

2    Your Honor on the record, a month after that, two months ago

3    today, we wrote them an email that says -- and if I can read

4    it, it says, as we have clarified on several occasions now, we

5    are only seeking identification of all products that Cavium has

6    sold, supplied, used, made, or imported during the relevant

7    time period that provide, implement, or support the relevant

8    functionalities, that is, send side coalescing known as LSO,

9    GSC, et cetera, receive side coalescing, often known as RSC,

10   LSO, et cetera, or RoCE, Infiniband functionalities.

11         We have also told you multiple times that we

12   understand that by identifying such products, Cavium does not

13   admit that they are infringing.  It goes on and continues, it

14   says, in this motion that we filed, we have made that

15   representation.

16         But, Your Honor, it doesn't really make a difference

17   what we tell Cavium in writing.  It doesn't make a difference

18   what we tell Your Honor.  Their position is we're simply not

19   going to produce the information, and what we're going to do is

20   we're going to wreak havoc, we're going to hang our hat on the

21   use of this word infringing in an interrogatory which has been

22   formally -- the word has formally been stricken on the record.

23   That's point number one.

24         Point number two, with respect to the rogs one and

25   four of the party interrogatories, there is no use of the word

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                42

 1   infringing.  So what do they do?  Your Honor, they make up a

 2   new excuse, and here's the latest excuse.

 3          The latest excuse is, you know what?  Infringing may

 4   not be used in interrogatory one and four, but the word

 5   infringing is used in the phrase accused functionalities --

 6   accused instrumentalities.  That's what they say.  That's the

 7   new argument.

 8          Well, a couple of points in response to that.  I

 9   pointed out, Your Honor, that when they made objections to

10   interrogatories one and four, they never asserted this

11   objection.  Nowhere did they assert this objection.

12          Now, it's Fifth Circuit law, I can get a citation to

13   Your Honor.  In Re United States 864 Fed 2nd 1153 at 1156,

14   quote, We readily agree with the District Court that as a

15   general rule when a party fails to object timely to

16   interrogatories, production request, or other discovery

17   efforts, objections, therefore, are waived.

18          This latest concoction that accused instrumentalities

19   is subject to a problem because they use the word infringing,

20   they didn't -- they never told you that on June 15th.  They

21   didn't say that to you on June 15th.  They haven't put that in

22   their objections to answers to interrogatories.  They made that

23   up so that they can continue this onslaught.

24          But here what's really remarkable, Your Honor, is

25   that the portion I read of the interrogatory number four, party

1    interrogatory number four, party interrogatory four, the

2    portion I read doesn't use the word accused instrumentalities.

3    It used the phrase identified functionalities, and, Your Honor,

4    identified functionalities doesn't use the word infringing.

5            So -- but what we're facing here is this problem:  Is

6    they simply do not want to do what we have asked them to do now

7    for seven months, is identify the products of which we're

8    unaware that practices these identified functionalities.

9            And the proof of that, the proof that they -- what

10   they are doing here is an email chain -- the proof of what's

11   really going on here is reflected in an email chain that is now

12   three days old.

13           In an attempt to resolve this, we made abundantly

14   clear the word infringing is gone.  It's gone, it's gone, it's

15   gone.  There's no basis not to do it, and this is what he got

16   back.

17           Now, of course, this is an email chain that starts at

18   the back.  We have -- it actually starts with an email from

19   Cavium's counsel.  No, it actually starts with -- I'm sorry --

20   with an email from Mr. Dunn, -- I'm sorry -- which says, please

21   see the attached correspondence regarding Cavium's false

22   assertion of Alacritech's interrogatory use the word

23   infringing, and that's at the very last -- that's the last

24   page.

25           If you turn to the next two pages, you see the

1   response from Cavium's counsel.  And in that response, Cavium

2   says -- they take the position that the word infringing is

3   still in the interrogatory.

4           But I want -- if -- I want Your Honor to look at

5   the -- if I could, this portion of their answer.  It's on page

6   six of this document.  Directing your attention to the very

7   bottom.  Do you see the paragraph that says nonetheless?

8           THE COURT:  I do.

9           MR. STERN:  After telling us that the word infringing

10  is still in the interrogatory, which is categorically,

11  unqualified false with respect to party interrogatories one and

12  four, they say this: -- and, of course, ignores what happened

13  on June 15th.  They say this:  Nonetheless, in the spirit of

14  cooperation, it is our understanding that Alacritech has

15  accused the 5709 product against Dell.  While Alacritech has

16  never accused the 5709 product against Cavium, it is our

17  understanding that the 5709 was sold by QLogic to Dell.

18  Therefore, we are amenable, subject to our objections, to amend

19  our response to interrogatory number seven to include the

20  accused product 5709.

21          Now, Your Honor, we're seeing what's going on here.

22  I'll tell you what's going on here, Your Honor.  Their answers

23  to interrogatories one and four and answer to interrogatory

24  seven are being held hostage.  We're essentially being

25  extorted.

1          We're being told, look, here's the deal.  We will

2    agree to identify one product, and if you -- if we identify

3    this one additional product, which you have not accused of

4    ours, then we'll consider the entire interrogatory one and four

5    of the party interrogatories and interrogatory seven of the

6    common interrogatories resolved, which means a couple of

7    things.

8          They know exactly what we're looking for.  The

9    argument that they don't know what we're looking for -- by the

10   way, in this motion in their opposition, they make the unholy

11   argument in their opposition to our motion that they don't even

12   understand what LSO is, what RSC is, that these terms are terms

13   that they're really not historically acquainted with.

14         What we really need, Your Honor, is an order from

15   Your Honor telling Cavium that they are to post-haste identify

16   all documents and provide all other information requested in

17   common interrogatory number seven and in party interrogatories

18   number one and four.

19         And, Your Honor, you know, I know -- I know Your

20   Honor likes to see the parties try to work these sorts of

21   situations out.  We can't.  It's -- it's four weeks to the end

22   of the race on discovery.  We've been waiting for this stuff

23   for months.  Other Defendants have produced this information to

24   us.  Cavium is the party that is simply resisting and refusing

25   to provide this sort of information.

 1          With that, Your Honor, I'm going to turn this over to

 2   my -- my colleague Mr. Paunovich to address the rest of the

 3   motion.

 4          THE COURT:  All right.

 5          MR. PAUNOVICH:  Just to -- just to add a small amount

 6   of detail on this issue and then there's a few issues in our

 7   motion.

 8          But, for example, Your Honor, continuing to what

 9   Mr. Stern said, we are -- we have become aware through

10   discovery and further diligence, for example, of new products

11   that Cavium just released, for example, in June of this year,

12   documents that have just appeared within the last two months on

13   the internet that they have not produced in the case, have not

14   identified, for example, the 41000 series of products, any

15   models, all of these.

16          It's very clear from those very recent documents that

17   have now popped up on the internet that these products use the

18   very acronyms that they say they don't understand, LSO, RSC,

19   Infiniband, RoCE.  We included those.  There's no hiding the

20   ball in our infringement contentions that we served.  There are

21   new products.  They've not identified them.

22          There's other products as well.  There's the 5709,

23   which they mention in their email correspondence, as well as

24   the 5708 series, the 5716 series.  And all -- there's

25   numerous -- as we understand it, there's perhaps multiple

 1    versions of these products that -- with different nomenclature.

 2          You know, we just don't know because they've refused

 3    and it's not opaque.  It's not like with Intel where they have

 4    Intel.ark that you can go to and look up every product.

 5          THE COURT:  Mr. Paunovich, why don't you address

 6    first interrogatory number one, the response they provided, and

 7    tell me where it is lacking.

 8          MR. PAUNOVICH:  Sure.  Interrogatory response number

 9    one, what they have told us over and over again is that they've

10    complied with it because they basically take the information

11    that's already in our contentions and they parrot it back to

12    us.

13          So they said, great, you found these products X, Y,

14    and Z, and I see them in your contentions, so I'm going to

15    respond to interrogatory one by just providing a list of X, Y,

16    and Z that's in your contentions, but that's not what we're

17    asking for.  We're asking for what we don't know.

18          THE COURT:  Where in their response do they limit it

19    in that fashion?  That's what I'm looking for is what you find

20    objectionable in their response.  I've got it in front of me

21    now.

22          MR. PAUNOVICH:  So, of course, Your Honor, they don't

23    say it in that interrogatory.  This is through months of meet

24    and confer that we've had to draw this information out.

25          What I would demonstrate to the Court is if you look

 1   at that interrogatory, what you won't find is the 5709 product

 2   series.  What you won't find is the 5708 product series.  What

 3   you won't find is the 5716 series.  Nowhere are these

 4   identified.  You won't find are the 41000 product series and

 5   any models within these series.

 6            We now have those in your contentions.  We should

 7   have gotten the information about that months ago in our first

 8   motion to compel and in response to these interrogatories.  We

 9   don't know what else doesn't exist even beyond those.

10            THE COURT:  All right.  Well, so what I'm hearing is

11   that this is a categorical response, but you claim it is

12   complete.

13            MR. PAUNOVICH:  That -- that we can demonstratively

14   show it is incomplete because they have other product series

15   models that we see from their data sheets have these

16   functionalities.

17            And at meet and confers they've told us we didn't go

18   back to identify the things that we know about that you don't

19   know because it's not public.  Instead, we identified the

20   products that you, Alacritech, identified in your infringement

21   contentions.

22            But that's not what we're seeking.  We're seeking to

23   know what we can't know, what is non-public.

24            THE COURT:  Well, so there is no improper objection

25   that they're relying upon or some other limitation to their

1  response.  You're saying that it is just factually incorrect.

2           MR. PAUNOVICH:  Well, it's exactly what Mr. Stern

3  went over, and he deferred to me on the product names and

4  models numbers, but the -- the basis of their refusal to

5  provide this additional identification of models --

6           THE COURT:  Well, where -- where is that refusal

7  shown in their response?

8           MR. PAUNOVICH:  I mean, it's from the June 15th

9  hearing when they -- they've said they can only identify those

10 products in our contentions because in their view the

11 interrogatory includes the word infringing.  And so they will

12 only identify, as they represented to the Court, those products

13 which we identified in our contentions, so it's a sort of

14 chicken before the egg.

15          THE COURT:  Does this answer, this response, say that

16 they are only identifying what is set out in Plaintiff's

17 contentions?

18          MR. PAUNOVICH:  It does not.  That has come out

19 through meet and confers and then was discussed and briefed

20 extensively in the first motion to the Court, 264, which was

21 then the subject of extensive argument at the June 15th hearing

22 and is then teed up and evidenced by the attachments that are

23 part of the instant motion on this issue.

24          THE COURT:  All right.  Point me to that part of your

25 motion that identifies the evidence you have that there are

1   other responsive products that have not been identified in this

2   interrogatory answer.

3            MR. PAUNOVICH:  As an example -- if I may, Your

4   Honor, I know you asked for the motion.  Because we had so many

5   issues that we're taking up, it's not detailed in the motion.

6            We have, for example, the email communication, the

7   string which Mr. Stern just went over with you.  And in that,

8   on page six, Ms. Khachatourian acknowledges that, for example,

9   the 5709 is not in their interrogatory response.

10           They know that it's an infringing product, that it

11  has the identified functionalities.  They know that we've now

12  accused Dell of infringing that and them in our contentions

13  because we had to discover this in a round about way.  In

14  addition, they say that may hold true for the 5708 and the

15  5716.  We're still investigating.

16           Subsequent to filing our motion, we also learned of

17  this 4100 series of products which were just recently released.

18  Their data sheets indicate very clearly that they provide LSO,

19  Infiniband, RoCE and functionality.

20           THE COURT:  Is there any evidence you have on that or

21  is it --

22           MR. PAUNOVICH:  I have some slides that I can pull up

23  if I could hook in my computer here.  I actually do have some

24  data sheets that we've been able to pull down from the internet

25  on that series as an example.

1          THE COURT:  Well, I -- Mr. Paunovich, I need

2    something to rely upon other than the argument that you're

3    offering that these responses are incomplete, and if there's

4    nothing from the Plaintiff -- I mean, from the Defendant

5    relying on some limitation, all I have is at this point your

6    representation that there are other responsive products.

7          I see what you've said about 5709 being mentioned in

8    that, and I can get a response to that.  What evidence do you

9    have on this 4100 series?

10         MR. PAUNOVICH:  If I may, Your Honor, as I said,

11   there are some slides which we have and I'm going to -- if I

12   can, is there a cord that I can plug in and display?  Right

13   there.  Perfect.

14         THE COURT:  Okay.  I guess for the record it's 41000.

15         MR. PAUNOVICH:  Correct.  So -- and that is a --

16   refers to a series of products.

17         So as you can see here, Your Honor, this is a recent

18   publication by Cavium, June 27th, 2017, they released the Fast

19   Link 4100 series of products, which we understand refers to

20   multiple product model numbers.  It's a series.

21         This document was not produced in the litigation.

22   They released a users guide associated with that.

23         THE COURT:  Have you put the Defendant on notice of

24   your contention that this 41000 series of products is accused?

25         MR. PAUNOVICH:  Yes.  That's part of our contentions,

```
 1   and these, among others, were discussed during the meet and
 2   confers on this subject.
 3           The -- the issue has and always been their contention
 4   that our interrogatories call for a, quote, infringing product,
 5   which Mr. Stern, I hope, has dispelled the Court of any notion
 6   that that is included.
 7           THE COURT:  I understand that.  What I haven't seen
 8   is a real reliance upon that, and that's what I'm looking for,
 9   is some indication that discovery has been withheld on that
10   basis.
11           MR. PAUNOVICH:  So we will flip through the hearing
12   transcript from June 15th.  I think that will more than
13   elucidate their reliance on that.  That, as I understand it --
14   and I don't want to misquote it -- but was the very clear basis
15   that they represented to the Court why they couldn't respond to
16   either interrogatory number one.
17           And in their motion papers, as Mr. Stern just put up,
18   their opposition to this motion, they've said the reason that
19   they can't respond is because the word infringing infects all
20   of these.
21           THE COURT:  They have responded; right?
22           MR. PAUNOVICH:  They've only responded to identify
23   what they claim are infringing functionalities, i.e. the ones
24   that are identified in our earlier contentions, or now,
25   apparently, they would only identify those that are in our
```

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                                53

 1    current contentions.  They won't tell us what their historical

 2    product offerings are.

 3            So this is -- this is an example, the 4100.  In

 4    addition, for example, I mentioned the 5706, 5708, 5709, 5716.

 5    These are products which were purchased as part of a Broadcom

 6    set of business acquisitions, and we -- we have come to learn

 7    that they have been rebranded.

 8            We don't know how or if those have continued to be

 9    sold.  Those are also -- they're now part of our contentions.

10    They were not identified in response to the interrogatory

11    because of this notion that we hadn't previously accused them

12    of infringing.

13            And -- and, I mean, Ms. Khachatourian will have an

14    opportunity to state for the Court whether or not they have

15    been relying on this word infringing.  We would respectfully

16    submit, given their opposition and the representations that

17    they've made in the hearing, that this is the basis -- the sole

18    basis of their reliance on their current response.

19            They have told us -- and I can represent to you as an

20    officer of the Court, Your Honor, because I've had this

21    conversation with Ms. Khachatourian, not only the local, but

22    her and I personally when she first produced financials to us,

23    which is one of our other motion issues and we'll talk about,

24    and I asked her, is this the entire universe of products that

25    have the functionalities which we have accused in this case or

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                          54

1   is it the -- only those products that we've identified in our

2   contentions.

3           And she told me -- and I'm representing to you as an

4   officer of the Court.  You can take may bar license if I was

5   lying -- that it was only those that were in our contentions

6   and that they would not identify any that go beyond that, and

7   as we have learned, there are clearly products that go beyond

8   it.

9           MR. STERN:  Your Honor, if I may?

10          THE COURT:  All right.

11          MR. STERN:  Your Honor asked for -- this is from page

12  131 through 133 of the prior hearing, June 15th hearing before

13  Your Honor.  This is after I argued, and this is Ms.

14  Khachatourian.  I can put this up if Your Honor wishes to see

15  this.

16          With respect to it, it says -- Your Honor says, What

17  about the products?  I mean, what about the identification of

18  products?

19          Ms. Khachatourian says -- this is on page 131, line

20  14.  So with respect to the products, I'd like to go to

21  interrogatory number seven.

22          The Court, Yes.

23          Ms. Khachatourian, They didn't ask for identity --

24  I'm reading this.  They didn't ask for identified products that

25  are substantially similar.  What they asked for is identify all

 1    your products -- other -- your other products that infringe.

 2              So if you looked at interrogatory number seven and

 3    you actually look at the language of it, it says identify each

 4    product or combination that you have made -- and Your Honor

 5    says try to speak slower.  I'm sorry, court reporter, et

 6    cetera, et cetera.  Supporting infringing RSC and/or LSO

 7    functionality.

 8              In order for me to respond to this interrogatory

 9    based on the way it's drafted I would be admitting

10    infringement.

11              So they are -- at this place in the hearing, Your

12    Honor, she -- she tells Your Honor that -- that the reason they

13    cannot answer this is because they would be admitting

14    infringement.

15              THE COURT:  I understand that, and that's an argument

16    against a motion to compel, but what I'm dealing with now is

17    the response.  So they clearly have responded, and the question

18    is the sufficiency of that response.

19              But I will hear from Ms. Khachatourian about whether

20    they are relying upon that objection to withhold other

21    responsive information.

22              MS. KHACHATOURIAN:  Your Honor, if you would just

23    give me a moment, that was a very long presentation, and I have

24    a lot to say, so I would just like to gather my things.

25              THE COURT:  Well, why don't -- we're about due for

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                   56

```
 1    the morning recess.  I'll give you a chance to gather your

 2    things and --

 3             MS. KHACHATOURIAN:  Thank you.

 4             THE COURT:  -- we'll come back and hear it.

 5             MS. KHACHATOURIAN:  Thank you, Your Honor.

 6             THE COURT:  Thank you.  We'll take the recess.

 7             COURT SECURITY OFFICER:  All rise.

 8             (Break taken.)

 9             COURT SECURITY OFFICER:  All rise.

10             THE COURT:  Thank you.  Please be seated.

11             Ms. Khachatourian?

12             MS. KHACHATOURIAN:  Thank you, Your Honor.

13             Let me just cut to it.  We did not withhold responses

14    based on the term infringing.  A lot was said here today, and I

15    would ask the Court's indulgence in letting me clarify and

16    correct the record because a lot was said today that frankly is

17    not true.

18             So let me start with how we responded to these

19    interrogatories.  We responded to these interrogatories based

20    on what we understood their infringement contentions to be at

21    the time, which, by the way, your Court has found with the

22    other Defendants, particularly Intel, to be deficient, and

23    Alacritech knows full well what our issues are with their

24    interrogatories.

25             But the response I get from them time and again in,
```

 1    frankly, very short lead local calls from Mr. Stern, when can I

 2    file my motion, can I file my motion, when can I file my

 3    motion?  That has been the approach to meet and confer in this

 4    case.

 5            I have never seen those slides they put up there

 6    about this 4100.  They've never discussed it with me.  I

 7    haven't spoken to Mr. Paunovich since April.  Mr. Stern and I

 8    do lead local calls that don't last very long because the

 9    response is when can I file my motion?

10            With respect to the emails with Brian Dunn and all

11    the rest of it I'll get to, but just to assure the Court that

12    we did not withhold information because of the term infringing.

13    We responded based on what we understood, and we did the best

14    we could with respect to their infringement theories, and

15    that's how this starts.

16            I think Alacritech has lost sight of the fact that

17    the scope of discovery and what's disclosed is based on your

18    understanding of the infringement theories and whether you have

19    fair notice, and so I'm going to go through that with Your

20    Honor, if you'll indulge me.

21            I don't want to waste too much time on the infringing

22    issue, but Mr. Stern did not read the rest of the transcript

23    that's pertinent here where when he said he would strike

24    infringing to interrogatory number seven, Your Honor looked at

25    me at that hearing, and I shrugged my shoulders because there

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                                58

1   was far more wrong with the interrogatory at that time.

2            And you directed Mr. Stern to speak with me and try

3   to resolve it, and that conversation never occurred.  The Court

4   stated on page 135, right after the portion that Mr. Stern read

5   to Your Honor, okay.  Well, go ahead and you can talk with Ms.

6   Khachatourian about how to resolve number seven, but I'll await

7   any further supplemental brief after you've received in two

8   weeks the supplemental responses.

9            Mr. Stern never spoke to me.  Instead, we ended up

10  responding to interrogatory seven the way I said we would,

11  which is we don't infringe -- we believe any other products

12  infringe because they didn't engage in that process with us.

13           And what we're being vilified for now is actually

14  providing responses the best we could based on the notice that

15  we had, and now they're trying to use, you know, you didn't

16  have this objection and first party rog and then you had it

17  here and all of this.  We responded the best we could based on

18  deficient infringement contentions and what we understood to be

19  the infringement theories here.

20           And with that, I will go to the interrogatories.

21  Your Honor will see in all of their interrogatories that were

22  served prior to the June 15th hearing and shortly thereafter

23  have the same definitions.

24           There's LSO functionality that is defined with other

25  alphabet soup, large segmentation offload, large segment

1    offload, large send offload, TCP segmentation offload, generic

2    segmentation offload, and any reasonably similar technique, and

3    that goes on for all of these accused functionalities.

4          And in the definition of accused instrumentalities,

5    they used the term infringing RSC and LSO functionality, so the

6    accused instrumentalities by definition already infringe the

7    alphabet soup.

8          In the correspondence between me and Mr. Dunn on

9    September 11th, I was trying resolve this, and I said, are you

10   striking infringing from all of the -- the interrogatories?

11   And he said, seven and maybe three, and it's in the email, and

12   I will put it up on the Elmo.

13         But it doesn't matter.  As an offer of compromise, I

14   said, well, since I understand that you're accusing this 5709

15   product and apparently these two others that you just slipped

16   in to Dell's infringement contentions, I will amend to include

17   that since you're now contending it infringes.  Based on what

18   theories, I don't know because I have two boxes of contentions

19   to look at.  But, nonetheless, I'm happy to amend it to include

20   it, and I was told no.

21         THE COURT:  Well, let's talk about a specific

22   interrogatory, and what I'd like to find out is whether you

23   answered with respect to your understanding of what RSC and/or

24   LSO functionality, for instance, is or whether you answered

25   with respect to your understanding of their infringement

 1  theory.

 2          MS. KHACHATOURIAN:  Your Honor, it's one and the

 3  same.  We responded with respect to our understanding of their

 4  infringement contentions, but let me explain why they're one

 5  and the same.

 6          THE COURT:  All right.

 7          MS. KHACHATOURIAN:  So here's some excerpts from the

 8  February infringement contentions that we moved to strike, and

 9  you'll see in the first chart it says infringing RSC

10  functionality.

11          You'll see that there is no discussion of the patent

12  claims.  There's no discussion of tying the patent claims to

13  actually what we do.  It just says you fringe because you do

14  infringing RSC functionality, and then there's a --

15          THE COURT:  Where is that?  I'm not seeing it.

16          MS. KHACHATOURIAN:  It's right here.  Let me fix it.

17  Do you see that?

18          THE COURT:  All right.  Okay.

19          MS. KHACHATOURIAN:  I'm happy to provide you copies

20  of these, if that will be helpful, but you probably have enough

21  paper, frankly, but if you would like a copy, I'll provide it.

22          So then they define footnote five what RSC

23  functionality is, and, again, it is the definition of the

24  alphabet soup.  They don't actually provide definitions of what

25  receive side coalescing, receive segment coalescing, large

 1  receive offload.  It's just like their rogs.  Okay?

 2          As we continue on --

 3          THE COURT:  Well, is it your position that persons of

 4  ordinary skill, including your company's employees, don't

 5  understand the meaning of those terms, RSC, LSO, and the like?

 6          MS. KHACHATOURIAN:  Your Honor, our -- our position

 7  is that every engineer has a different idea of what that means

 8  and every company does.

 9          This is not a standards case.  Alacritech is pursuing

10  this case as if it's a standards case.  If you do RSC, if you

11  do, you know, LRO, then you infringe.

12          But at the time the patents were filed -- and I'll

13  walk Your Honor through this -- these terms were not used.

14  They're modern day terms, and depending on which engineer you

15  ask and which company, they'll all have a different response.

16          And, in fact, Your Honor, I have an email among

17  engineers, HP, Microsoft, and QLogic where -- and I'm sorry the

18  print is so small, but essentially folks from Microsoft and

19  QLogic are talking about an acronym, and essentially the guy

20  from Microsoft says what is RSC?  And this is in 2014.

21          So these engineers are debating what these acronyms

22  mean back then.  So what I would submit to Your Honor -- and

23  even in Alacritech's infringement contentions, there's

24  different definitions of what these acronyms stands for.

25          So here's some more infringing RSC functionality.

1   Then here they're citing to an Intel document -- you'll see it

2   right here, the Intel -- and saying that our -- our product

3   works the same, so now it's their definition, Intel's

4   definition.

5            So there's all these mental gymnastics that we have

6   to go through to try to figure this all out, and I'll show you

7   some other examples.

8            THE COURT:  So tell me, did you resolve that problem

9   by deciding to restrict your answers to the products that they

10  have accused in their contentions?

11           MS. KHACHATOURIAN:  Your Honor, we did not do that.

12  What we did was based on our understanding, as I told the Court

13  on June 15th, we don't believe any other products infringe.

14           Now, they've identified other products.  Under what

15  definition, I don't know, and they're now in the contentions,

16  so we're going to look at them.  We need to talk to our

17  engineers.  We need to speak to our experts.

18           But I will tell you, having spoken to our engineers

19  and having spoken to our experts and having spoken to other

20  people in the field, there is no standard definition of these

21  terms, and that's even shown in the original infringement

22  contentions.

23           THE COURT:  Well, what I need to understand is that

24  you have answered these interrogatories relying upon your

25  engineers' understandings of these terms, if necessary, but not

1    relying on whether or not you believe that the functionality of

2    your products infringes.

3            MS. KHACHATOURIAN:  Your Honor, we answered the

4    questions based on our understanding of what these

5    functionalities are to the extent that we know.

6            THE COURT:  All right.  So --

7            MS. KHACHATOURIAN:  We did not withhold information

8    because the term infringing wasn't in there -- was in there.  I

9    told Your Honor that I was going to supplement the responses on

10   June 30th, and as you can see, we provided multiple responses.

11           We've never once not provided a response in this

12   second supplemental response.  We answered, and we are

13   preserving our objections, but we didn't withhold information

14   based on the term infringing.

15           What we did is -- like any other person would do is

16   based on our understanding on the information that what we've

17   been provided, we responded.

18           THE COURT:  All right.  And address, if you would,

19   the specific products that -- that have been identified in the

20   argument here.  I think you've referred to the 5709 and

21   following by saying that you included those because they had

22   been accused in connection with Dell.

23           MS. KHACHATOURIAN:  Yes, Your Honor.  On August 25th,

24   Alacritech served amended contentions to Dell, and in our

25   review of that, with respect to products that were

1    identified -- and, by the way, those products were never

2    identified against Cavium in this case at all.  They were

3    identified against Broadcom and Dell.

4           We saw that -- when we got that information, we

5    researched it and saw that we actually sell those products to

6    Dell, and so I offered to amend them, amend the response to

7    include them, but that offer was rejected.

8           THE COURT:  Why weren't they included in your

9    original answers?

10          MS. KHACHATOURIAN:  Your Honor, because we did not

11   believe based on what we understood the infringement

12   contentions to be and these functionalities to be to -- to be

13   responsive.

14          THE COURT:  All right.  So it's not a question of

15   whether you felt they infringed, but you didn't believe that

16   they included the RSC or LSO functionality or whatever the

17   functionality was that was asked for?

18          MS. KHACHATOURIAN:  Correct, Your Honor, based on our

19   understanding.  Now, that's the biggest problem here.  Okay?

20   Is their understanding and our understanding and everyone

21   else's understand is different.

22          And, by the way, all the other Defendants got

23   supplemental contentions way before we did, so, you know, I'm

24   not privy to what the other Defendants did.  I don't have

25   access to that information other than with respect to Dell and

1    the supplemental contentions vis-a-vis Cavium.

2              But at the end of the day what they're doing here is

3    they're using this alphabet soup and they're using it

4    interchangeably with their patents, but, as I will show Your

5    Honor, none of these words are actually in the patent claims.

6    None of them at all.

7              THE COURT:  Well, I understand.  Tell me now what

8    about this 41000 series that they've identified that has been

9    apparently publicized by Cavium in late June?

10             MS. KHACHATOURIAN:  Your Honor, it's the first I've

11   heard of it.  At no point did Quinn ever mention the 4100 to

12   me, and as you know, I haven't been able to look at the

13   supplemental contentions because there's two boxes there that

14   were provided, you know, at midnight before I was about to come

15   here, so I haven't had a chance to look into it, frankly.  I've

16   never -- I've never heard it before.

17             THE COURT:  All right.

18             MS. KHACHATOURIAN:  But what I can tell you is based

19   on our understanding of these functionalities, we provided a

20   response.

21             Now, they may disagree with what we believe; and, in

22   fact, Your Honor, when we defined these terms, they've

23   objected, and I can pull their objections up for Your Honor,

24   but they've essentially objected when we've tried to get some

25   clarity on these terms.

 1              And if you look at the infringement contentions,

 2      they're differing definitions even in their own infringement

 3      contentions, so here's a definition of receive segment

 4      coalescing, and they cite to a Microsoft document, and then

 5      there's another definition that goes on.  So, I mean,

 6      throughout their -- even their own infringement contentions,

 7      they -- they give us differing definitions.

 8              So, what, I have to go read the Microsoft document.

 9      I have to read the infringement contentions.  I have to go talk

10      to my engineers.  I have to -- I mean, there's a lot of mental

11      gymnastics here, so we probably do not have a meeting of the

12      minds in terms of what these words mean.

13              THE COURT:  Where have you set out your understanding

14      of them?  I think you were referring to one.

15              MS. KHACHATOURIAN:  It's -- it's in our responses,

16      Your Honor.  I'll -- I'll locate that.  I don't think that

17      we've fully articulated, frankly, like, by every -- every word

18      of our definition, but, Your Honor, we can do that.

19              But at this point, you know, it's their burden to

20      tell us what their infringement theories are and what these

21      words mean, and they never have, as you can see from their

22      interrogatories.  They just assumed that if you do any of

23      these, it's all the same definition and that you infringe.

24              And by the way, Your Honor, they propounded new

25      discovery on us yesterday where they try to fix these defects.

1   They make out the word infringing in all the interrogatories.

2   I would say about two-thirds of the interrogatories deal with

3   non-infringement contentions and our position on

4   non-infringement, and they take out the word infringing.

5           And they also try to tie these functionalities to the

6   claims where they call them LRO claims, RSC claims, and they

7   identify the actual claims, but they don't go as far as to

8   provide what the definition is of these functionalities.

9           THE COURT:  All right.

10          MS. KHACHATOURIAN:  So if for whatever reason they

11  think that these products should be accused products and we

12  don't, it's because there's no meeting of the minds whether in

13  the industry or whether in this litigation as to what these

14  terms mean.

15          THE COURT:  All right.

16          MS. KHACHATOURIAN:  But, Your Honor, a lot was said,

17  and so I'd also like to discuss a few other things.

18          There was a lot of discussion about what we have done

19  and haven't done in discovery, and a picture is being painted

20  that we are not being cooperative and that we have not provided

21  information, and that is simply not true, and so I would just

22  like to take a little bit of time to explain what we've done

23  and where they're wrong essentially.

24          We have produced 18 million lines of code, including

25  the RTL code, since the last hearing, and we have accommodated

1    their experts, and here is the sign-in sheet of all of the

2    times their expert has come to our office to review the code.

3    You can see it's May, June, July, and August, with the last

4    date being August 17th, 2017.  We have never denied them access

5    to our code, and they have spent a significant amount of time

6    with the code, and there are no deficiencies in terms of what

7    code we have provided.

8            So they came in here and said the RTL code was the

9    most important thing for them to understand how all the

10   products work, and they received it.  In addition, in their

11   motion they keep complaining about financials, and

12   Mr. Paunovich made the bold statement about his bar license and

13   said I had a conversation with him about the financials, which,

14   frankly, I don't believe I had.

15           But, nonetheless, here are examples of the financials

16   we've produced.  It's 354 pages long.  It shows the customer.

17   It shows the model number.  It shows the series number.  It

18   shows the quantity sold.  It shows the revenue amount.  It

19   shows the cost.  It shows the revenue margin.  It shows the

20   ship date and the fiscal year.

21           We actually served two days ago a supplement to this

22   because they had asked for us to supplement our financials to

23   get it up to the most recent quarter, and we provided the same

24   information and supplemented.

25           And we actually made it easy for them.  Instead of

1    giving them two separate spreadsheets, we actually read it

2    again from beginning to June and provided to them all in one

3    spreadsheet, so the idea that they don't have financial

4    information is just not true.  And, in fact, it's very similar

5    to the type of financials they provided.

6          Their comptroller testified a few days ago that she

7    generated spreadsheets for fiscal year 2012 and on because we

8    didn't have that information, and they produced it right before

9    the deposition, on the eve, and said she had spent all time

10   preparing those spreadsheets, so every -- the financials -- our

11   financials are no different from theirs.  We've provided it in

12   the same manner they have and did it promptly.

13         Then they're complaining about alleged documents that

14   were on the source code computer that were never produced.

15   What these documents are, sometimes in the code there will be

16   non-source code documents embedded in the code, and sometimes

17   there's -- there's -- they would be in other folders because

18   they're relevant to the code.

19         They asked us about that information in June and

20   brought it to your Court's attention, and, of course, I told

21   them prior to the hearing that we had produced all of that

22   information they requested on June 13th.

23         They then came back and said, no, you didn't and, by

24   the way, we want more based on our newest inspections.  No

25   problem.  We turned it around in three days, and we told them

 1   most of what you're asking for is duplicative of what we

 2   produced on June 13th, but we're just going to produce

 3   everything to you again because it's just not worth it.

 4          So here's some examples of the dupes that we told

 5   them, and they just didn't believe us.  I personally don't

 6   think they actually know the documents that they have.

 7          So here is NIC Multi TC Firmware Interface Version 2.

 8   I'm just showing the cover pages because the documents are very

 9   voluminous.  There's a Bates number here.  It's 26160.  That's

10   from the June 13th production.  The next document has the same

11   title.  This is NIC Multi Function TC Firmware Interface

12   Version 2.0, and the Bates number is 48253.

13          Because when they asked us again to produce in

14   August, we turned it around, and even though it was a dupe and

15   we already gave it to them, we said, here, we're just going to

16   produce it all again.  And so that the Court knows that this

17   just isn't a coincidence, I could have brought a mountain of

18   dupes, but I picked three just to make my point.

19          Here is the Hilda T10 Interface document, Rohan

20   Patil, 1/24/2012, Bates number 27749.  That's from the

21   June 13th production.  Your Honor will see there's another

22   document with the same name, same author, same date, with a

23   later Bates number 50910.  There's other examples I could

24   provide, but I think everyone gets the point.

25          So they complain in their motion that they didn't

 1   receive this information and that we should be compelled, but

 2   we've provided it twice now, so I don't think there's anything

 3   left for us to do there.

 4          In addition, they complain that there's 60 products

 5   that we didn't produce designer guides and all kinds of things

 6   for.  Again, not true.  They have this idea, just like they do

 7   with the functionalities, that everyone is the same.  Everyone

 8   is going to have the same categories of documents.  Everyone is

 9   going to name everything the same, and that's simply not true.

10          So, for example, here is an email from a Quinn

11   Emanuel partner Michelle Clark, and in her email, she asked us

12   to identify certain design guides for products by Bates number,

13   and it's a pretty long list.  We had already told them that we

14   didn't withhold any technical information.  We also explained

15   to them how we did our search.

16          And I want Your Honor to know because they're

17   painting this picture like we're not taking our discovery

18   obligation seriously, but we are.  None only did we talk to the

19   heads of -- of -- of the VP's and heads of the engineering

20   grounds for these product lines, we searched every possible

21   repository where these documents would be, and we searched

22   Wiki.  We searched Share Point.  We went to the heads of

23   engineering, asked them are there any additional documents.

24          We spent a lot of time gathering everything we

25   possibly could, and we did not withhold.  If there was a

 1   technical document, we produced it, and we also explained to

 2   them that there is no formal naming process at Cavium in terms

 3   of the types of documents that are created.  Sure, an engineer

 4   could just create whatever they want and call it a design guide

 5   or design spec, but there's no formal process at Cavium or

 6   QLogic in terms of a naming convention.

 7          So the fact that you may have design guides for

 8   certain products and not others doesn't mean we withheld

 9   anything.  In fact, it's quite the opposite.  But, nonetheless,

10   we did our best to look into the homework we got, which was a

11   lot, and you'll see three highlighted products, the 57800S, the

12   57810S, and the 57840S where they claim they do not have design

13   guides.

14          I'm now going to show Your Honor the actual design

15   guides for those products that they've had in their possession

16   for a very long time.  Here is the designers guide for the

17   57810S.  Here is the designers guide for the 57800S.  Here is

18   the designers guide for 57840S.

19          And, of course, we produced other technical

20   documents.  I just bring them so the Court can get a feel for

21   it, and this by no means is the limit, reference guides,

22   developer guides, other designer guides, designer guides,

23   designer guides, ethernet driver developer guide.

24          So the idea that they don't have any technical

25   documents or source code is just not true.  They have

 1   everything they need and more to do what they need to do in

 2   this case, and hopefully they did in their supplemental

 3   contention.

 4          In addition, they claimed in their motion and in

 5   argument today that there's all these code names that weren't

 6   disclosed, we didn't work with them.  Despite all these

 7   obstacles, they were able to persevere.  To give you an idea of

 8   Cavium's approach to all of this, if -- if we're asked a

 9   question, we try to respond and we try to resolve these things

10   informally.

11          So on June 8th, someone at Quinn Iman emailed and

12   asked about certain code names they needed translation of in

13   order to help with the source code inspection, and they

14   conceded in there that what had happened was that the

15   interrogatory, which is actually interrogatory one that

16   apparently was slipped into this rushed motion that Alacritech

17   filed, our response wasn't due yet, so could they please have

18   the information.

19          Did we say no?  No, that's not what happened.  We

20   responded on June 9th, and we provided a translation of the

21   code names.  So this idea that Cavium isn't cooperating in

22   discovery -- this is just one example, I could give you

23   mountains of them -- is simply not true.  We have bent over

24   backwards to provide information on reasonable discovery.

25          THE COURT:  All right.  Well, let -- at this point I

 1   want to make sure that we just focus on the matters at issue on

 2   the motion, and I -- I gave you a chance to respond because I

 3   think it was fair to do so, but let's move to what is at issue.

 4         MS. KHACHATOURIAN:  Your Honor, that was at issue in

 5   their motion to compel.

 6         THE COURT:  I -- I'm not doubting that there are

 7   references in their motion, but at the hearing now, I'm calling

 8   upon them to tell me what it is they want, and so that's what I

 9   want to focus on, and I -- I have some more questions for the

10   Plaintiff, and I promise I'll give you a chance to respond.

11         MS. KHACHATOURIAN:  Okay, Your Honor.  If I could

12   just say, and I'll yield, is their motion to compel also talked

13   about email production and apparently compelling of depositions

14   that we knew nothing about and never had a dispute with.

15         So it would be great to hear from Alacritech actually

16   what's now the subject of the motion because the night before

17   they filed their motion, we gave them dates for five witnesses

18   that they accepted, and then all of a sudden they move to

19   compel against us, which we never really understood.

20         THE COURT:  All right.  Thank you.

21         MR. PAUNOVICH:  Your Honor, if it's okay with the

22   Court, I think it would be best if we just proceed with the

23   specific things that we're trying to compel.

24         THE COURT:  And that's fine.  Let me just --

25   Mr. Paunovich, I -- the opening part of your argument centered

1   on this issue about whether infringing was affecting the

2   responses.  I think what I've heard indicates to me is the

3   Defendant is contending that they did not limit their responses

4   in that way, and you have not shown me anything in the written

5   responses that indicates they did.

6         So before we move from that, do you have anything

7   else that you want to offer on that issue?

8         MR. PAUNOVICH:  Yes, Your Honor, and I appreciate the

9   opportunity to do that.

10        I didn't have it at my fingertips before.  I do

11  apologize for the writing.  What I'm about to put on the Elmo

12  is a marked up copy of the Cavium Defendant's second

13  supplemental responses to the first set of common

14  interrogatories, and specifically on page 28, their second

15  supplemental response to interrogatory number seven.

16        THE COURT:  All right.  I have that in front of me.

17        MR. PAUNOVICH:  So contrary to what is being

18  represented to the Court, this is -- so this is the sum total

19  of what has been provided to us after the June 15th hearing

20  where the word infringing was stricken, where they subsequently

21  had to respond to party interrogatory number four, which does

22  not include the word infringing.

23        This is the supplement that we got.  They didn't

24  change any identification of products whatsoever.  They say

25  Cavium denies that it infringes and, therefore, does not make

 1 | and has not made or used, and they quote back the portion of

 2 | our interrogatory.  They literally made no supplement

 3 | whatsoever since the last hearing, notwithstanding the issue

 4 | with the infringing language.  This is what they are relying

 5 | upon.

 6 |            Now, I understand that counsel has made that

 7 | representation here today, and they've raised a new argument

 8 | which has never been previously raised before that they don't

 9 | understand or know what the definitions are.  When, for

10 | example, we refer to LSO functionality, she said, well, what

11 | does that mean.

12 |            If Your Honor -- and I forget if we handed up a copy

13 | of our original request.  They include the same definitions.

14 | They define what these terms are.  It says -- so just taking

15 | LSO functionality as an example, because that's what's being

16 | asked for, products that have this functionality.

17 |            And it says they'll be understood to be these handful

18 | of things.  LSO could mean any one of these things, and the

19 | notion that Cavium doesn't understand what those are is simply

20 | not true.  If --

21 |            THE COURT:  Mr. Paunovich, I guess the problem I'm

22 | having is that they have given responses that on their face are

23 | complete, and it is true they object to language used in the

24 | interrogatory, but there's nothing in here that says they're

25 | withholding production based on those objections, and counsel

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                    77

1    has told me that, in fact, they're not.

2           So I think the next step is when you take the

3    depositions, if you determine that they have not provided

4    complete discovery, then there will be an issue to take up; but

5    at this point, I don't have a record that supports further

6    action by the Court.

7           And if you disagree, tell me what that is, but I'm

8    looking for something that indicates that what Ms.

9    Khachatourian has told me is not accurate.

10          MR. PAUNOVICH:  Yes, Your Honor.  I do have something

11   to say on that.  If we -- if I could impose upon the clerk to

12   give the screen to the computer?

13          So what I understood Ms. Khachatourian to represent

14   to the Court -- while this is coming up, what I understood her

15   to represent to the Court is what they answered on is based on

16   their understanding of the defined terms of LSO functionality.

17          And she said we don't -- we don't understand that

18   it's anything more -- you know, we -- we couldn't have

19   understood, for example, that the 4100 series offered these

20   functionalities, and if I weren't having technical difficulties

21   right now, --

22          THE COURT:  Well, --

23          MR. PAUNOVICH:  -- a slide that I put up before uses

24   the exact terminology that's in our definition.  It reads,

25   performance features, TCP segmentation offload, large segment

 1  offload, generic segment offload, large receive offload,

 2  receive segment coalescing.  It's the exact definitions.

 3         We don't have any declaration from a Cavium witness,

 4  we don't have any evidence that Cavium -- not the Duane Morris

 5  firm, but that Cavium's engineers do not understand when they

 6  look at and see in our definitions to identify any product that

 7  has something called large segment offload that they are

 8  confused somehow in going back to their data sheets where it

 9  uses the very same language.

10         THE COURT:  I am assuming that Cavium's engineers

11  have an understanding about what those terms mean, and my

12  understanding is that Cavium is taking the position that they

13  have responded to your discovery consistent with Cavium's

14  engineers' understanding of those terms.

15         If you determine in your depositions that that's not

16  right, that their engineers understand that the terms cover

17  things that they have not produced, then you've got a basis for

18  me to act on.

19         I understand you have something about this 41000

20  series that appears to have been issued June 27th or

21  thereabouts; and that is, I guess, right about the time these

22  answers are being put together.

23         But is that the only indication you have that they're

24  not complete?

25         MR. PAUNOVICH:  The -- the various model numbers that

```
1    I read -- the series that I read into the record earlier, Your

2    Honor.  So we have the 41000 series, the 5706, 5708, 5709,

3    5716.

4            The trouble is, Your Honor, those I'm very confident

5    that we'll be able to go to deposition and demonstrate from the

6    documents -- some of the documents we have that those products

7    at least in high level marketing indicate that they have these

8    very same functionalities.

9            The trouble is they're withholding then that broader

10   set of technical documents relating to those, and what's more,

11   what I won't be able to determine in deposition is, putting

12   these aside, what more don't we know about.

13           And we've raised this with Cavium's counsel because,

14   for example, if we look at the total financials that they have

                              REDACTED BY ORDER OF THE COURT
15   for their ethernet products, it represents less than ███████

16   ███████████████     over a short period of time, and we go to there

17   10K's, and they say in their 10K's that what they call their

18   advanced connectivity platform represents their ethernet

19   business.  It's basically all of the accused products.

20           And if we look over even just a three-year period, so

21   not the entire infringement period here, we see revenues over

22   $500 million, and I've asked the question point blank, I can't

23   make sense of this because your 10K's represent that all of

24   your ethernet products do about $500 million in business.  You

25   are only identifying a smaller portion that does this certain
```

1    amount of business.  Where's those other products?  We don't

2    know them because we've gone on --

3            THE COURT:  I understand that, and that's great

4    fodder for depositions.  What am I supposed to do with that?

5            MR. PAUNOVICH:  Respectfully, Your Honor, what we

6    would like is an order that they identify any product that has

7    the functionalities that we've identified.  Party interrogatory

8    number four is not infected with the word infringing.  It's

9    very clear.

10            THE COURT:  And do they limit their answer in a way

11    that is objectionable?  In other words, what is there to show

12    me in that answer that they have not properly answered it?

13            MR. PAUNOVICH:  Okay.  So if I can impose upon the

14    clerk again to turn the focus back to the Elmo?

15            So you have in -- we handed up to you Cavium's

16    response to common interrogatory -- I'm sorry -- party

17    interrogatory number four.  As a refresher on that, it asks

18    them to identify by name, model number, and any unique

19    identifiers all Cavium products or services that were made,

20    used, imported, offered for sale or sold during the

21    infringement period that support, practice, or enable the

22    identified functionalities.

23            The identified functionalities -- this is going back

24    to the definitions.  You can see at the top here said that

25    those should be understood to mean LSO functionality, RSC

```
 1  functionality, et cetera.  We look at those, and there's no

 2  mention of the word infringing.  We look at those

 3  functionalities --

 4          THE COURT:  I know, but --

 5          MR. PAUNOVICH:  No -- I'm getting to that.  I

 6  apologize.  I know your question, Your Honor, and I just want

 7  to make sure you had the context.

 8          So now we look at the response to interrogatory --

 9  party interrogatory number four, Cavium's objections, entire

10  first paragraph after -- this is page 43.  Then we go to the

11  second paragraph, more objections, page 44.  I'm sorry.

12          They -- they respond to another portion of the -- of

13  that interrogatory and describe what series refer to the

14  internal names; but then for the identification, i.e. tell us

15  what products that you offer that have these functionalities,

16  they refer -- they invoke Rule 33D, and they identify the

17  products that can be found at this Cavium Bates range.

18          That Cavium Bates range is the products -- it's the

19  financials for the products that we had in our infringement

20  contentions.  It's nothing more.  It is literally just what we

21  have accused, nothing more.  They've been asked in very clear

22  terms, and they haven't identified anything beyond what we're

23  able to identify ourselves publicly, and it excludes all of the

24  examples that we've given already.

25          THE COURT:  All right.
```

1          MR. PAUNOVICH:  Unless Your Honor wants to hear more

2   on common interrogatory one and party interrogatory four, we'll

3   move on to the next subject.

4          THE COURT:  Well, let me get a response on number

5   four, and that is -- I have a question.  Ms. Khachatourian, --

6          MR. PAUNOVICH:  Thank you, Your Honor.

7          THE COURT:  -- are you representing that the response

8   to interrogatory number four that is contained in your

9   responses to the first set of party interrogatories lists all

10  the products that your client believes contain these accused

11  functionalities?

12         MS. KHACHATOURIAN:  Your Honor, the answer is --

13  based on our understanding of these functionalities, the answer

14  is yes.

15         I will point out to Your Honor that we never

16  discussed these rogs with Alacritech before they filed their

17  motion.  We were actually surprised that it was part of their

18  motion.

19         But just to rebut what Mr. Paunovich is saying, the

20  accused instrumentalities, which is referenced in interrogatory

21  number four, actually continues to have the infringing

22  definition, which, frankly, at this point I think we've talked

23  about enough.

24         THE COURT:  Well, what -- what I am inclined to do is

25  to direct that Cavium put in their answer to interrogatory

```
 1    number four that they have identified all of their products

 2    that include the accused -- the identified functionalities.

 3           And you can put whatever language you want to in

 4    there about not admitting infringement, but there needs to be

 5    something that makes it clear that your company is taking the

 6    position that this identification is all of the company's

 7    products that include these identified functionalities, and if

 8    there are more, then they should be added to it.

 9           But I think that they do have the right to have a

10    definitive answer to that, which should not be burdensome, if,

11    in fact, all that's doing is clarifying what you've already

12    done.

13           MS. KHACHATOURIAN:  Your Honor, what I would say

14    about that is I've just been served two boxes of supplemental

15    infringement contentions, and in order to provide that kind of

16    statement, I need to look at those contentions.

17           THE COURT:  Well, I don't --

18           MS. KHACHATOURIAN:  I can --

19           THE COURT:  Defined functionalities is a defined term

20    in this interrogatory set, so --

21           MS. KHACHATOURIAN:  But, Your Honor, we go back to

22    the same issue, which is it's just alphabet soup.  Our

23    understanding of these terms is different from other people's

24    understanding.  It's different.  They've never actually

25    identified it.
```

 1          THE COURT:  And you have -- your engineers have the

 2   obligation to answer this consistent with their understanding

 3   of these terms.  I -- I understand that, but I don't think that

 4   we have to get an industry-wide agreement on what these terms

 5   mean for Cavium to answer.

 6          And as long as your engineers can defend the position

 7   they take in giving their answer, then, you know, you have not

 8   violated your discovery obligation, but I do believe that you

 9   cannot tell from this answer whether or not it is definitive,

10   and I think they're entitled to have that.

11          MS. KHACHATOURIAN:  Your Honor, it's a -- these

12   questions are the same as the other interrogatories, and they

13   have the same defect.  So then on the record I would just like

14   to make it clear then infringing has been stricken, and, you

15   know, we'll -- we'll provide a response as you suggest.

16          But I would ask that in our party rogs to Alacritech

17   concerning willfulness, that they have to put in a statement

18   that they have provided all the information that they have

19   because I actually don't think that's the case.

20          THE COURT:  Well, I guess I will deal with that when

21   it is put before me, but right now I'm just dealing with this

22   motion and interrogatory number four.

23          I will hear whether there is a similar complaint

24   about any of the other interrogatories that are at issue in

25   this motion, but that will be the order as to number four.

1          Let me hear from the Plaintiff about the other

2     interrogatories as issue and then I'll give you a chance to

3     respond.

4          MS. KHACHATOURIAN:  Your Honor, before I yield, I'd

5     just like to say the statement that I'm asking for with respect

6     to our party rogs to Alacritech is actually the subject to our

7     motion to compel.

8          THE COURT:  Okay.

9          MS. KHACHATOURIAN:  So I think that would resolve the

10    issue if they are able to make a similar statement in terms of

11    their response.

12         THE COURT:  I will go back to that if we need to,

13    but --

14         MR. PAUNOVICH:  Your Honor, the next discovery topics

15    that I would turn to -- and I think these can be fairly

16    quick -- are common interrogatory number one and common

17    interrogatory number two.  The -- for all the briefing about

18    these, we really take issue with a very small point about both

19    of these.

20         In the second supplemental responses that Cavium has

21    provided to each of these interrogatories, they -- and just for

22    clarification, common interrogatory number one is directed to

23    what distinctions or differences Cavium believes exist between

24    its accused products that are material to infringement in this

25    case, and interrogatory number two is directed to their

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                                                    86

 1   non-infringement positions.

 2          We don't take issue that they didn't provide a

 3   substantive response, but what we take issue with is they say

 4   that their response is by non-limiting example.

 5          We dealt with this issue with Cavium and some of the

 6   other Defendants before where basically, as we understood at

 7   least your Court's prior rules, having that sort of catch all

 8   hold aside of, you know, I'm giving you examples, but I might

 9   have more, isn't sufficient to preserve the identification of

10   some other examples, and I can show you just as an example

11   here.

12          This is their second supplemental response to

13   interrogatory number one when they're identifying alleged

14   differences between their products and they say for a

15   non-limiting example.  The same thing is true for interrogatory

16   number two.  We get a bunch of repeated examples for their

17   non-infringement positions they say by non-limiting example,

18   another non-limiting example, next page more non-limiting

19   examples.

20          So we don't take issue with -- I mean, we'll

21   certainly oppose and rebut the -- the issues that they have

22   raised, but our motion to compel isn't directed to those so

23   much as it is you can't provide non-limiting examples on these

24   interrogatory responses.

25          They either have additional distinctions and

 1   differences in response to interrogatory number one that they

 2   should and need to identify now or later on they're going to

 3   have to move with good cause to add that.  You know, we're very

 4   far along in the case, and they should know this.

 5          Same thing is true for the non-infringement

 6   arguments.  We provided our contentions.  None of our theories

 7   have changed, even in our supplemental contentions.  If they

 8   have non-infringement arguments that they're sitting on that

 9   are part of those examples that they have not provided, then we

10   would ask that they be provided.

11          If, on the other hand, this is just sort of standard

12   boiler plate that us lawyers are -- all of us are sometimes

13   guilty of doing then, saying we're giving you our reasons, but

14   we don't want to limit ourselves, but those aren't sufficient

15   to preserve anything that's not identified, then -- then we're

16   okay with that.

17          As I understand it, that would be consistent with the

18   Court's prior rulings on these sorts of hold off statements

19   that have been in interrogatories, so I'll rest on these two

20   for the moment because that is the dispute here on these two.

21          THE COURT:  Mr. Paunovich, we do not as a district

22   require non-infringement contentions, and those typically -- at

23   least the most complete statement of those positions typically

24   come from the experts.

25          I understand that if the party itself already has

1  knowledge on these things, there's no reason that they

2  shouldn't provide it, but I don't see how this is going to

3  limit their ultimate position, which would be based on what the

4  expert has to say.

5         MR. PAUNOVICH:  And that would be -- I take your

6  point, Your Honor, with respect to interrogatory number two,

7  and certainly experts, by all means, sometimes come forward

8  with additional opinions than what the parties are able to

9  identify.  And if that's the case, so be about it.

10         We don't want to get into a situation where, you

11  know, the expert's relying on, for example, some interview with

12  the Cavium witness, some information that he or she has

13  gathered from -- from Cavium that was not disclosed to us

14  earlier on so that we could then cross-examine that witness

15  when we're deposing them in a few weeks.

16         With respect to common interrogatory number one, this

17  is, I believe, a slightly different issue.  We have asked them

18  for the purposes of trying to streamline this case, because we

19  do believe that this functionality, as our expert has supported

20  now in voluminous supplemental contentions to all Defendants,

21  that the functionalities do, in fact, function materially in

22  the same way for purposes of infringement, and that's supported

23  by code, documents, et cetera.

24         And part of what we did in those supplementations is

25  address the alleged differences between the accused products

1    that the Defendants each have identified in response to common

2    interrogatory number one.

3            So we have done that for Cavium contentions as well

4    as the others, and to the extent it's been applicable, we've

5    tried to -- even where one party's identified alleged

6    differences, we've tried to port that over to others, even if

7    they haven't raised that themselves.

8            So here we just -- we don't want to be surprised --

9    you know, we've taken a position based on the differences that

10   the Defendants and Cavium identified.  We don't want to be

11   surprised later given that our experts have taken a position

12   that, oh, you know, we -- there's this other non-limiting

13   example that we didn't tell you about as to how our products

14   are different that, you know, shakes the tree of your

15   representative product framework.

16           THE COURT:  All right.  Ms. Khachatourian, I'm going

17   to deny the motion as to interrogatory number two, but I'd ask

18   you to respond as to interrogatory number one.

19           MS. KHACHATOURIAN:  Your Honor, we have responded to

20   interrogatory number one already, but what I'll say here is I

21   have two boxes of new infringement contentions.  Okay?  So I

22   need to review those infringement contentions and then see how

23   to supplement these rogs if necessary.

24           THE COURT:  All right.  I -- I don't think that's

25   unreasonable since this deals with infringement and you have

 1    new contentions.

 2            What is a reasonable period for you to review those

 3    contentions and supplement your answer?

 4            MS. KHACHATOURIAN:  Honestly 30 days.  That's a lot

 5    to go through, and we asked for them way earlier than they gave

 6    it to us.  Your Honor issued an order in July, and we didn't

 7    get these until September 12th.

 8            THE COURT:  And what --

 9            MS. KHACHATOURIAN:  I have to speak to experts.  I

10    have to speak to multiple engineers over different departments.

11    I mean, there's a lot that goes into this.

12            And with two boxes of contentions that were delayed

13    because they knew they were going to have to do substantive

14    revisions to them that was tying up their experts.  As they

15    have said, these aren't allegedly -- I haven't read them yet,

16    but I'll take their word for it -- perfunctory amendments.  I

17    hope those two boxes are substantive.

18            And I would also add that they propounded -- they

19    being Alacritech -- additional RFAs and rogs on us yesterday

20    that, again, all involve non-infringement, the same type of

21    issues we've already been talking about.  I can read some to

22    Your Honor, but I would say it should all be due at the same

23    time --

24            THE COURT:  All right.

25            MS. KHACHATOURIAN:  -- because they're all related.

 1   And I would also note to the Court that they've changed their

 2   definitions.

 3          THE COURT:  I will grant that request, that your

 4   supplemental response to this interrogatory will be due at the

 5   same time as your responses to the recently served

 6   interrogatories.

 7          MS. KHACHATOURIAN:  Thank you, Your Honor.

 8          I would just like to point out -- and I know I'm

 9   probably wearing out my welcome, but with respect to

10   Alacritech's responses to all our discovery when we're dealing

11   with what I call the alphabet soup, objection 15, Alacritech

12   objects to the term TCP segmentation offload functionality.

13          THE COURT:  I will --

14          MS. KHACHATOURIAN:  It goes through --

15          THE COURT:  I'll give you a chance to get back to

16   that, but I want to finish this motion.

17          MS. KHACHATOURIAN:  Okay.  Thank you, Your Honor.

18          THE COURT:  All right.  What else, Mr. Paunovich, is

19   there on this -- on your motion to compel?

20          MR. PAUNOVICH:  Common interrogatory number three,

21   Your Honor.  This is directed broadly to financials that Cavium

22   derives from the products that implement the identified

23   functionalities that we've been talking about.

24          The primary dispute here, I think this is just a

25   natural extension of Your Honor's order with respect to party

1    interrogatory number four; that is, once they identify the

2    additional products that have those functionalities as

3    understood by engineers, we also want the financials associated

4    with any new products.

5            So that's issue one that's under interrogatory number

6    three.  Just give us financials for any new products, for

7    example, like the 41000 series, the 5708, and others that we've

8    been talking about.

9            Issue two is that interrogatory number three asks for

10   any revenues that they derive as a result of the sale of the

11   accused products in this case, so, for example, let me -- I

12   seem to be very bad with this Elmo.

13           But subsection D says revenue -- I'm sorry.

14   Subsection C and D, revenues from subscriptions, maintenance,

15   upgrades, support, et cetera, for the accused instrument --

16   each instrumentalities, the revenues from any service, et

17   cetera, provided with those products.

18           The spreadsheet that Ms. Khachatourian put on the

19   Elmo earlier doesn't have any of this other revenue that would

20   be convoyed sales or revenue derived from the sale of these

21   products.

22           We don't know if any such revenue exists, so we would

23   ask that the Court order that to the extent that it does exist,

24   that they identify it and produce it, along with the

25   supplemental financials.  So that's issue two of this.

1          Lastly, there is -- there are certain pieces of

2     information that -- in the spreadsheet that they produced,

3     which they produced to us first in a PDF.  We asked for it to

4     be produced in native so we could manipulate it, add the

5     numbers, et cetera.  They refused to do that until we filed

6     this motion, and we just got that production in the last two

7     days.

8          Putting that aside, there's certain information that

9     appears to be missing from that, for example, the dates.  They

10    provided first shipment date, but they don't break down the

11    individual each unit sale date, so that if we run into issues,

12    for example, on induced infringement and when they had notice

13    and things of that nature for non-apparatus claims, what's the

14    relevant point?  Where do we draw the line in the sand?

15         We can't tell right now because for any given

16    product, they just said here's the product, I've sold X number

17    of units, and here's my total aggregate revenue, and here's the

18    first day that I sold it.  We'll certainly explore that in

19    deposition.

20         We also want to avoid burdening the Court to come

21    back on issues like that, minor issues.  We would expect and

22    want to work cooperatively with Cavium to make sure to the

23    extent they have that information that they produce it to us.

24         THE COURT:  How is that different from what they laid

25    out in those spreadsheets?

1            MR. PAUNOVICH:  In the spreadsheet -- so what -- I

2    guess what I'm getting at, so let's say if we take a

3    hypothetical product A and you've sold it over the course of

4    the last six years.

5            From what we understand, the Defendants are going to

6    argue, Cavium is going to argue, you know, that they didn't

7    have notice before this suit was filed -- or it was filed

8    against their intervenee party.

9            And so they're going to say for all the method

10   claims, you're not entitled to any damages for any period prior

11   to filing suit because we didn't have knowledge of the patents

12   and intent to infringe.

13           THE COURT:  I know, but I'm just saying the

14   spreadsheets appear to indicate the date of each sale.

15           MR. PAUNOVICH:  Oh, no.  I'm sorry, Your Honor.  I

16   wasn't clear.

17           It indicates the date of first sale, so if you have

18   product A and they say we've sold a thousand of these and our

19   total aggregate sales are a hundred thousand dollars, they --

20   what they identify as the first sale date, like i.e. the very

21   first unit that they sold, but I can't tell, because it's all

22   aggregated, if they made 90 percent of those sales more

23   recently since the lawsuit was filed or if they made them five

24   years ago.

25           THE COURT:  I was understanding those spreadsheets to

 1   be sale by sale.  Do you have one of those?

 2          MR. PAUNOVICH:  I apologize.  Ms. Khachatourian, do

 3   you have that?  You had that exhibit handy.  I don't know that

 4   I have that handy.  If I have a misunderstanding of it -- thank

 5   you.  Sorry.

 6          MS. KHACHATOURIAN:  Your Honor, would you like a

 7   copy?

 8          THE COURT:  Not at this point.  Thank you.

 9          MS. KHACHATOURIAN:  Okay.

10          MR. PAUNOVICH:  So I'll just start it here on the

11   left.  So they say for this product model number BCM 9578, it

12   goes on, sold to customer Dell in a certain group, they sold a

13   certain quantity, revenue, margins, et cetera, ship date.

14          I apologize if I'm misunderstanding.  I -- okay.

15   Then I take that back.  If this is -- if this is individual

16   sales and the time of those sales, then we're happy with that

17   as is this would not be an issue, so --

18          MS. KHACHATOURIAN:  Your Honor, --

19          MR. PAUNOVICH:  -- it would just be the first two

20   issues that I mentioned.

21          MS. KHACHATOURIAN:  I will say the rog doesn't

22   actually ask for the information he's requesting, but we gave

23   it anyway, so --

24          THE COURT:  All right.

25          MR. PAUNOVICH:  So, Your Honor, then just to

 1   summarize -- and I apologize for that -- that rabbit hole --

 2   the issue is updating the financials with any new products that

 3   they end up identifying response to common -- excuse me --

 4   party interrogatory number four and any related revenue from

 5   services, warranties, et cetera, as called for in subsection C

 6   and D.

 7           THE COURT:  All right.  And is there any other issue

 8   on your motion?

 9           MR. PAUNOVICH:  There are a couple other.  I think

10   that the rest will be quick.  This is probably the largest of

11   the bunch, and I'll try to be very brief on the others.

12           THE COURT:  Well, I'll let Ms. Khachatourian respond

13   then on this financial issue.

14           MS. KHACHATOURIAN:  Your Honor, --

15           THE COURT:  As far as updating it goes, if you

16   identify new products in response to their interrogatory number

17   four, then I -- you should understand that you would be

18   required to provide the other requested discovery regarding

19   those products.

20           MS. KHACHATOURIAN:  Your Honor, what I was going to

21   say was they're asking you for an order for products that

22   haven't been identified yet, so --

23           THE COURT:  And --

24           MS. KHACHATOURIAN:  And I understand our obligations,

25   and obviously if we identify additional products, we're going

1   to provide additional financial information.

2          THE COURT:  And that's where I'm going to leave that

3   issue, but let's talk about the issue of revenue from services

4   and maintenance.

5          MS. KHACHATOURIAN:  Your Honor, we've already told

6   them several times that we don't have that information.  We

7   don't do the things they're asking for in their rogs, so, for

8   example, IT services, consulting.

9          I mean, every subsection here I've told them during

10  meet and confer and my colleague Megan Olesek has told them we

11  have provided what we have, and -- and we don't -- we don't

12  have -- we don't provide the services they're asking about.  So

13  there's -- we don't have anything else to provide.

14         And they're having the deposition of the financial

15  person on September 29th.  You know, if for some reason there's

16  some kind of miscommunication, misunderstanding, mis whatever,

17  something comes out of it, we'll promptly respond, but as far

18  as we know, we've gone into our databases and provided the

19  relevant information that's called for by the interrogatory

20  that we have.

21         THE COURT:  All right.  So you -- you have inquired

22  of your client about the other categories of revenue beyond

23  just sales, and your client has indicated to you that they

24  don't have revenue of that sort.

25         MS. KHACHATOURIAN:  Correct.

 1           THE COURT:  All right.  I'll accept that

 2    representation.

 3           Go ahead, Mr. Paunovich, then to the other matters.

 4           MR. PAUNOVICH:  Thank you, Your Honor.

 5           I'll try to cover these quickly, and some of them we

 6    can probably lump together as opposed to going back and forth

 7    because I do think they're easy.

 8           Common interrogatory number four and relatedly we'd

 9    also ask for documents relating to this.  Ask them to identify

10    comparable licenses.  It may be that counsel -- both sides have

11    just said -- have talked past each other on this one, but we --

12    we're not asking them to disclose expert opinions early.

13           What we're simply asking them is if they have patent

14    licenses in their possession, custody, or control right now,

15    regardless of whether or not they have as the -- the -- one of

16    the executing parties Cavium that they identify -- and they

17    believe those are comparable, but they identify and produce

18    them.

19           During meet and confers, their position, as we

20    understood it, was that to the extent that a license does not

21    have Cavium as a party to it, then it is, per se, not in their

22    possession, custody, control.  If the answer is simply we don't

23    have any other licenses, then -- and they're willing to make

24    that representation, then we're -- we're fine with that.

25           Relatedly -- and I'll just lump this one in -- part

 1   of our motion was to compel certain production of technical

 2   documents.  Ms. Khachatourian referred to some of these

 3   earlier.  We weren't -- none of what she put up we're trying to

 4   compel, so that's sort of beside the point.

 5          There are 61 products, though, that we did identify

 6   that we said, you know, you've told us that important

 7   differences between all of your products are the hardware

 8   circuitry, and we've looked through your production, and for a

 9   bunch of your products, that information about hardware

10   circuitry appears to be in these design guides.

11          And for 61 products we don't have that document, in

12   whatever name that it takes.  Whether it's design guide in one

13   instance and something else in another instance, that's what

14   we're looking for.

15          It -- Ms. Khachatourian identified, I guess, in her

16   response that we had overlooked three of the six -- three

17   examples out of the 61 where they had produced it, and we're

18   appreciative, and that's --we've worked with Defendants, and we

19   would hope they would work with us to help identify things

20   that, you know, we missed in the productions, but we have

21   looked thoroughly.  We don't see these documents.

22          If the answer is simply we literally don't have that

23   information and so you're not going to see it later either,

24   then that's fine, too.  But to the extent that there are such

25   technical documents that disclose this information which we

1    have not received yet, whether they're named design guide or

2    something else, we would simply ask that they be produced.

3             I'll stop there for a moment, and I promise I can

4    wrap up the final issues in a very short statement, but I want

5    to give Ms. Khachatourian a chance to respond to those two

6    issues.

7             THE COURT:  All right.

8             MS. KHACHATOURIAN:  Your Honor, comparable licenses,

9    I've already told Alacritech on multiple occasions that Cavium

10   does not have a patent licensing program.  And, once again,

11   what's comparable, we've done our best, but we have identified

12   licenses that we think are relevant here that have been

13   produced.

14            We don't have access to what the other Defendants

15   have produced in terms of those licenses, and we haven't seen

16   them, and my client can't see -- you know, other than what's

17   with Cavium, Alacritech licenses or Broadcom's license or

18   Microsoft's licenses.

19            So we have identified certain licenses.  We've

20   already told them that with respect to Cavium, you know,

21   there's -- they don't -- they don't license their -- their

22   patents, and so we don't have anything to add in that regard.

23            But there may be other licenses out there that we

24   just haven't seen yet because the other Defendants have

25   produced them and we don't have access to them or things like

 1   that.

 2          THE COURT:  Well, obviously the only question is are

 3   you representing that whatever Cavium has, whether or not

 4   Cavium was a party to the license, if whatever the licenses

 5   they have on this technology, you have produced?

 6          MS. KHACHATOURIAN:  Yes, Your Honor.

 7          THE COURT:  Okay.

 8          MS. KHACHATOURIAN:  And, in fact, what I would say

 9   is, you know, how we got here was initially before Alacritech

10   filed its motion, they said this interrogatory number four was

11   they wanted us to identify all licenses our expert was going to

12   rely on.

13          And we, of course, resisted that because that's

14   premature expert discovery, and then when we saw the motion,

15   they asked for something else and they're asking for something

16   else here.

17          But what I can tell you is we have identified

18   licenses that have been produced in the litigation that we

19   believe are relevant, but Cavium doesn't have access to every

20   license that's been produced in the litigation nor do I, just

21   so the Court knows.  I don't either.

22          THE COURT:  And that's fine.

23          With respect to the technical documents, can you make

24   the same representation, that you have provided --

25          MS. KHACHATOURIAN:  Your Honor, we haven't withheld

 1    any technical documents.

 2           What they've asked us to do and we've demonstrated we

 3    did a little bit of it.  They essentially want me to go through

 4    every document we produced and go, here it is, here it is, here

 5    it is.  I am not going to create an index for them.  We did a

 6    search.  We produced documents.

 7           If they have any questions about categories, they can

 8    ask our witnesses.  But, I mean, I suppose we -- we could try

 9    to find and do other searches and maybe something would come up

10    or not, but all I can tell you is that we did a reasonable and

11    diligent search and we've produced every technical document

12    that was responsive and relevant.

13           So they're asking me to disprove what they're saying,

14    and I did with respect to three, but to actually have me go

15    through 61 products and essentially provide testimony I think

16    is out of bounds.

17           THE COURT:  All right.  Thank you.

18           MR. PAUNOVICH:  The last two issues, Your Honor,

19    really relate to some housekeeping items so that we're not

20    having to come back and ask for second depositions of Cavium's

21    witnesses.  They're scheduled for deposition in a couple of

22    weeks.  I think actually the first one is maybe in less than

23    two weeks, if I have my dates correctly.

24           And, number one, we don't have email, the email

25    production that's required from Cavium.  The Defendants -- all

1    Defendants and Alacritech produced the overwhelming bulk of all

2    email in this case.  We've produced hundreds of thousands of

3    emails on August 1.

4            We negotiated and worked with all the Defendants.  We

5    couldn't negotiate or didn't get meaningful participation from

6    Cavium on search terms and getting emails in queue to produce

7    with Cavium.  We are now in the second week of September, and

8    we don't have any of their emails to get ready for these

9    depositions that will be coming up.

10           There's assorted theory or -- or story that's laid

11   out in the papers about who said what when and which terms.  We

12   think the record does speak for itself, but bottom line we just

13   simply want to get the emails that will be relevant to the

14   depositions that are coming up.

15           So that the record is clear, there was one mistake in

16   our papers that I'd like to correct.  It says that we provided

17   them with search terms on August 10th.  That was meant to say

18   July 10th.  This was after very long refusal to participate

19   meaningfully in email -- discussion of email discovery.

20           We provided that, and, by the way, we have provided

21   it that late only because we didn't get Cavium's email

22   custodians until approximately two weeks before that, so once

23   we had them, we gave them terms, we provided it.

24           They sat on those email terms for an extended period

25   of time -- I think it was almost a month -- and then objected

```
 1    to the hit counts associated with them.  We know our

 2    obligations under the discovery order.  We've promptly

 3    negotiated with them, and we've tried to reduce that down, but

 4    it's just been slow going.

 5            We can sit up here and fight about it.  Ultimately we

 6    just want to get the email so we're in a position to go take

 7    the depositions and not have to come back on second motion

 8    practice and say that we didn't have the material.

 9            Relatedly is the topic of their 30B6 -- our 30B6

10    deposition notice and our identification of witnesses and which

11    topics they'll be testifying on.  There has been some

12    development in the last few days.  They have agreed on most of

13    the topics to provide witness, but we don't know for those

14    witnesses which topics they're going to be testifying on.

15            And their communications regarding it seem to make

16    clear that they're only going to allow their witnesses to

17    testify as 30B6 witnesses on the products in the contentions

18    and how we have alleged our contentions.  So it's unclear to us

19    whether we're going to get sort of unfettered company testimony

20    on subjects that relate to some of these issues that we're

21    talking about today.

22            So can I explore with a company witness who can bind

23    the company and testify on behalf of them their understanding

24    of LSO functionality and that sort of thing or will there be a

25    false barrier that's put up that they're only going to respond
```

 1   with -- through the lens of what we've specifically put in our

 2   contentions.

 3          I think it's a minor point of clarification.  If they

 4   need to take a little bit more time to give us -- to identify

 5   the specific topics for their witnesses, that's fine.  We would

 6   ask that they're at least a week before the depositions and

 7   that they don't restrict the scope of their testimony on those

 8   topics to our infringement contentions, but, rather, it should

 9   be the company's knowledge on the topics.

10          THE COURT:  All right.

11          MS. KHACHATOURIAN:  Your Honor, let me start with the

12   depositions first.

13          We told Alacritech on July 20th exactly what topics

14   we were going to produce witnesses for and the scope of it.

15   For whatever reason, despite the fact we have told them this

16   several times, they seem to think it was a couple of days ago.

17   It was July 20th.

18          And we did exactly what every other Defendant did and

19   Alacritech themselves have done, which is I believe they

20   propounded 86 plus topics, maybe more, and we provided the

21   scope of what we would provide, and they are on full notice of

22   that.  Regardless --

23          THE COURT:  And they're objecting, I believe, to some

24   of the positions you've taken on those.

25          MS. KHACHATOURIAN:  I don't know that that's true.

1    Honestly, we were surprised that it was in the motion to

2    compel.  We had given them deposition dates.  They had had our

3    response since July 20th.

4            In terms of what I understood is the issue was --

5    after reading their motion was they -- they just wanted us to

6    identify the topics that each witness was going to be put up

7    for, --

8            THE COURT:  Okay.  You may be right.

9            MS. KHACHATOURIAN:  -- and we don't have --

10           THE COURT:  Just a moment.

11           MS. KHACHATOURIAN:  Sorry.

12           THE COURT:  You may be right about that, and if so,

13   when are you going to do that?

14           MS. KHACHATOURIAN:  So the practice in the -- in the

15   case has been -- and I can show you this email -- folks have

16   been identifying it about a couple of days before the

17   deposition.

18           Here is an email from Tina Lo from Quinn to the Chris

19   Harrer deposition.  You can see it's Monday, September 11th, it

20   was sent, and his deposition I believe is on Friday.

21           THE COURT:  Well, let's get an understanding.  What

22   number of days before the deposition are you agreeing to

23   provide that designation of the witness who will be testifying

24   as to each of the topics?

25           MS. KHACHATOURIAN:  Your Honor, we can provide that

 1   five days before the deposition, --

 2            THE COURT:  All right.

 3            MS. KHACHATOURIAN:  -- which seems to be customary in

 4   the case.

 5            And the only other issue we were aware of was this

 6   idea that some of the deponents we offered for half a day.

 7   They asked us for a full day.  We said yes.  So I'm not really

 8   sure why it was raised in the motion.

 9            THE COURT:  I'll give them a chance to explain if

10   there is more.

11            Tell me about the email.

12            MS. KHACHATOURIAN:  Okay.  So on the emails, this is

13   how it's happened:  The other Defendants and Alacritech didn't

14   start discussing email searches until after the substantial

15   completion date that they had, which was April.  Cavium's

16   substantial completion date was June.

17            We have already exchanged search terms, and we have

18   collected all the emails for our custodians, and we ran the

19   searches.  We sent them email and called and said, some of

20   these search terms are coming up with too many hits.

21            And what the agreement was that was made was run the

22   searches, we know you're not agreeing to all these search

23   terms -- and it's on both parties.  Run the searches, and if

24   there are too many hits, we'll talk about it.

25            So we reached out to them several times.  They

1   wouldn't get back to us, so then we sent them an email on

2   August 28th which basically outlined all of the terms we were

3   going to produce email for because it was a manageable amount

4   of hits per custodian, and we took a lot of time to do this.

5   So we're having to do this piecemeal because they wouldn't get

6   back to us.

7           Here are some of the hit counts, 100,000, 170,000,

8   123,000, 182,000.  Here are some more by custodian where we're

9   providing the number of hits, and so we -- we actually ended up

10  running additional searches on the hits that were a little

11  bit --

12          THE COURT:  So when are you going to provide the

13  emails?

14          MS. KHACHATOURIAN:  So we're going to start our

15  production on Monday, but we still are negotiating some of the

16  unmanageable hits because when they did get back to us, we had

17  run searches.

18          I'll try not to get too in the weeds on this, but our

19  email indicated that we ran searches within 15 and within ten

20  to see if we could narrow it, and we got a response on

21  September 1 that provided -- well, not so clear.  Sorry -- that

22  provided other searches they wanted us to run to try to narrow

23  it.

24          So we ran those searches.  We're about to tell them

25  what the responses are, but for the ones that were manageable,

1    we're beginning our production on Monday.

2            THE COURT:  And --

3            MS. KHACHATOURIAN:  And -- and just so the Court

4    knows --

5            THE COURT:  -- when are you going to complete the

6    production?

7            MS. KHACHATOURIAN:  Well, with respect to the

8    manageable ones, I -- I think we -- we will certainly complete

9    it before the custodians' depositions are taken.  They're

10   staged currently.  The depositions of these custodians are in

11   October.

12           The -- the deposition on September 29th is the

13   financial individual, and his email is not searched, and

14   they're going to ask him financial questions obviously, not --

15   he is not an email custodian.

16           So they will get the emails of the manageable hits

17   before the depositions, and we hope we can continue to work the

18   search counts out and then get it to them fairly quickly, but

19   our goal is to get it to them before the depositions.

20           And I would just let the Court know that with regard

21   to the parties and the custom in the case, right -- you know,

22   right before Alacritech's depositions were supposed to take

23   place, we found out that even though our opinion is they agreed

24   to search archives, they didn't, and so we got a whole bunch of

25   emails dumped on us right before these depositions.

1          So this is what happens in discovery, you know,

2    particularly towards the end.  People are rushing to get it all

3    done.

4          THE COURT:  I understand that.  Let me hear from

5    Mr. Paunovich about what he is seeking on email.

6          MR. PAUNOVICH:  On the email, respectfully, Your

7    Honor, we would ask that email be produced at least ten days

8    before the custodial depositions.

9          It's not reasonable to expect that we would get email

10   dumped on us -- some -- the -- the manageable email by the

11   deposition, that puts us in no position to take the deposition

12   if we're getting the email the day before or the day of the

13   deposition, and it sounds like from counsel's representations

14   that we would, in fact, be getting email after the depositions

15   for some unmanageable point.

16         Frankly, we got ourselves in this mess because we

17   didn't get many full participation sometime ago.  All parties

18   in the amended DCO had a substantial completion date in June,

19   and we worked with everybody and tried to work with Cavium, but

20   we just couldn't get cooperation, so we're functioning as fast

21   as we can.

22         We've been very responsive, and we -- if they're

23   going to start on Monday, we've got our first deposition coming

24   up on the 29th.  I think that they need to -- at least for that

25   one, we would like email that's relevant to the topics that we

1   don't know yet that that person's designated on to be produced

2   at least ten days before that.  And in the subsequent

3   depositions of Cavium witnesses, which are occurring a couple

4   of days after that and so on and so forth, be produced ten days

5   before.

6            The notion that we have not done our job on email

7   both being irrelevant, but is also not true, and counsel,

8   including local, has participated in the --

9            THE COURT:  And do you object to five days before for

10  the 30B6 designation of witnesses?

11           MR. PAUNOVICH:  I'm glad you brought that up, Your

12  Honor.

13           The practice -- and there is email exchange amongst

14  Defendants -- that we exchange the week before.  There has been

15  certain instances where all parties have, you know, revised a

16  few topics last minute, I'm sure as part of the preparation of

17  witnesses and maybe adding or subtracting a topic.  This has

18  been on other Defendants as well as the one example that Ms.

19  Khachatourian brought up about --

20           THE COURT:  Well, five business days is effectively a

21  week.

22           MR. PAUNOVICH:  That would be fine with us.  Five

23  business days.

24           THE COURT:  All right.  Then, Ms. Khachatourian, is

25  there any reason that you can articulate why the email from the

1    manageable hits should not be provided at least ten days before

2    the deposition of the custodian?

3              MS. KHACHATOURIAN:  Your Honor, it just takes a lot

4    of time, so we're starting the production on Monday.

5              Dell, for example, produced their emails a week

6    before, not ten days before.  Alacritech actually produced

7    subsequent emails right before deposition and produced

8    financials on the eve of deposition, so --

9              THE COURT:  All right.  I'm going to say --

10             MS. KHACHATOURIAN:  -- ten is long.

11             THE COURT:  I'm going to say seven days or one week

12   before, and --

13             MS. KHACHATOURIAN:  Your Honor, but --

14             THE COURT:  -- with respect to the designation of the

15   witnesses, it will be the same thing, five business days or one

16   week.

17             MS. KHACHATOURIAN:  Your Honor, what I would say

18   about these deadlines is there are two custodians that we're

19   going to be producing that the hits were manageable, and that's

20   starting our production.

21             For the remainder of them, there are search terms

22   that are unmanageable, so until they engage with us to get it

23   down to a manageable amount, I can't complete those

24   productions.

25             THE COURT:  Well, you can give them whatever is not

1    in dispute, and I'm hearing that they're willing to engage.

2    Why hasn't that occurred?

3              MS. KHACHATOURIAN:  I don't know, Your Honor.  We

4    were frankly surprised that they filed a motion to compel on

5    us.  We have been trying to engage them for weeks.

6              THE COURT:  Well, I can arrange for y'all to spend as

7    much time in this room engaging as you need to.  Is that what

8    is lacking?

9              MS. KHACHATOURIAN:  Your Honor, what I would say is I

10   think we should set a date next -- what's today?  Today is

11   Thursday.  By early next week where Megan Olesek of my office

12   has been handling most of the search term negotiations and

13   Michelle Clark of their office are ordered to complete a meet

14   and confer by -- on the remaining unmanageable terms.  I think

15   that would be helpful.

16             THE COURT:  All right.  Any objection to that?

17             MR. PAUNOVICH:  No, Your Honor.  The only comment I

18   would make is we're in this sort of mushy world of what is

19   manageable, and what we found is that what everybody else in

20   the case, all Defendants and Alacritech, find to be manageable

21   is not viewed as manageable.

22             THE COURT:  As long as this meet and confer on

23   manageability occurs by what date?

24             MR. PAUNOVICH:  So I don't have Ms. Clark here

25   unfortunately, but I would say Monday or Tuesday next week will

1    be fine, or we'll meet and confer over the weekend.  It doesn't

2    bother us.  We want to get the email.

3              THE COURT:  All right.  Then --

4              MR. PAUNOVICH:  In fact, why don't we make it

5    Saturday?

6              MS. KHACHATOURIAN:  Your Honor, we're not going to --

7    come on.  I mean --

8              THE COURT:  What are you asking for, Ms.

9    Khachatourian?

10             MS. KHACHATOURIAN:  Tuesday is fine.  But to compel

11   someone to work a weekend when they have children and they have

12   all kinds of things going on --

13             THE COURT:  That's all right.  I'm --

14             MS. KHACHATOURIAN:  -- is uncalled for.

15             THE COURT:  By next Tuesday then.

16             MR. PAUNOVICH:  And just to be clear, Your Honor, so

17   if it's Ms. Clark who is being compelled to do this, she's

18   defending, and all Alacritech's key witnesses are being deposed

19   next week.

20             THE COURT:  I'm not ordering her to do it.  I'm just

21   ordering the parties to do it.

22             MR. PAUNOVICH:  Okay.  Fair enough.

23             So it will likely be somebody else.  I don't want

24   that to be a hold up.  We will make somebody available to go

25   over this and work towards a manageable and agreeable set.

1              And if not, how would Your Honor recommend if there's

2   a -- remains to be a dispute, how would we present that to the

3   Court?  We certainly doesn't want to trouble you, but I do

4   worry given the history.

5              THE COURT:  Then I think you should email Mr. Paul.

6   Let him know.  We'll set a hearing.

7              MR. PAUNOVICH:  All right.  Thank you, Your Honor.

8              MS. KHACHATOURIAN:  Your Honor?

9              THE COURT:  Yes.

10             MS. KHACHATOURIAN:  I'd like to express some concern

11  about Michelle Clark's unavailability to engage in these

12  discussions because she's the person who has all the knowledge,

13  she's the person on the Alacritech side who has negotiated

14  everything with us, and to have someone else come in who

15  doesn't have that knowledge is going to slow the process down,

16  not accelerate it.  It's going be like starting at square one.

17             THE COURT:  Well, I -- I understand your request, and

18  if she's available, I expect she'll participate, but the

19  important thing to me is that the process moves forward.

20             MR. PAUNOVICH:  And we're -- so the record is clear,

21  I know for a fact she could be available tomorrow, Saturday,

22  Sunday, so we're available.  We're not unavailable.

23             MS. KHACHATOURIAN:  All right.  So then we can set it

24  for tomorrow, Your Honor.  Michelle Clark and Megan Olesek will

25  meet and confer tomorrow.

1          THE COURT:  All right.

2          MS. KHACHATOURIAN:  Also, Your Honor, I'd like to ask

3    that the disclosure of topics for witnesses be reciprocal

4    because we have not gotten Alacritech's disclosures of topics

5    within five business days.  They have -- they have fluctuated.

6          And, in addition, we've also received limitations on

7    the depositions in that, for example, one of the inventors who

8    was put up as a 30B6 witness was -- was only testifying to his

9    personal knowledge and not (inaudible.)

10         So I would just like to ask that we also get

11   identified within five business days of topics for the

12   remaining Alacritech witnesses.

13         THE COURT:  I think that we're talking about

14   designated witnesses for the topics.

15         MS. KHACHATOURIAN:  Uh-huh.

16         THE COURT:  And I've directed that that be done at

17   least five days before the depositions are to occur, and that

18   would apply to both sides.

19         MS. KHACHATOURIAN:  Thank you very much, Your Honor.

20         THE COURT:  All right.  Thank you.  We are adjourned.

21         COURT SECURITY OFFICER:  All rise.

22

23         (Hearing concluded.)

24

25

```
1                      CERTIFICATION

2            I HEREBY CERTIFY that the foregoing is a true and

3    correct transcript from the stenographic notes of the

4    proceedings in the above-entitled matter to the best of my

5    ability.

6

7    _____      Date: 9/19/17
     Tammy L. Goolsby, CSR
8    Deputy Official Court Reporter
     State of Texas No.:  3101
9    Expiration Date:  12/31/18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

**$**

**$500**  79:22,24

**-**

**--we've**  99:18

**1**

**1**  21:21 37:14 103:3 108:21
**1/24/2012**  70:20
**100,000**  108:7
**10k's**  79:17,23
**10th**  103:17,18
**1153**  42:13
**1156**  42:13
**11th**  59:9 106:19
**123,000**  108:8
**12th**  4:7 12:15 90:7
**131**  54:12,19
**133**  54:12
**135**  35:23 58:4
**13th**  69:22 70:2,10,21
**14**  54:20
**14th**  7:17
**15**  91:11 108:19
**15th**  34:21 35:10,18,24 36:5,
8,12 37:12 38:4,5 40:25
42:20,21 44:13 49:8,21 52:12
54:12 58:22 62:13 75:19
**16th**  41:1
**170,000**  108:7
**17th**  68:4
**18**  67:24
**182,000**  108:8
**1st**  33:23 36:10

**2**

**2**  70:7
**2.0**  70:12
**2010**  36:23
**2012**  69:7
**2014**  61:20
**2017**  4:23 51:18 68:4
**20th**  105:13,17 106:3
**24**  4:3
**241**  22:23
**25th**  11:22 63:23
**26160**  70:9
**264**  49:20
**27749**  70:20
**27th**  51:18 78:20
**28**  75:14
**28th**  108:2
**29th**  97:15 109:12 110:24
**2:16-393**  3:6
**2nd**  42:13

**3**

**3**  3:5
**30**  90:4
**30B6**  104:9,17
**30th**  63:10
**33D**  81:16
**354**  68:16

**4**

**40**  14:6
**4100**  50:17 51:9,19 53:3 57:6
65:11 77:19
**41000**  46:14 48:4 51:14,24
65:8 78:19 79:2 92:7
**43**  81:10

**44**  81:11
**47**  5:17
**48253**  70:12

**5**

**50**  14:6
**50910**  70:23
**5706**  53:4 79:2
**5708**  46:24 48:2 50:14 53:4
79:2 92:7
**5709**  44:15,16,17,20 46:22
48:1 50:9 51:7 53:4 59:14
63:20 79:2
**5716**  46:24 48:3 50:15 53:4
79:3
**57800S**  72:11,17
**57810S**  72:12,17
**57840S**  72:12,18
**5th**  12:12

**6**

**60**  71:4
**61**  8:8 99:5,11,17 102:15
**699**  22:24

**7**

**7th**  40:3,7

**8**

**86**  105:20
**864**  42:13
**8th**  12:13 73:11

**9**

**90**  94:22
**9578**  95:11
**9th**  73:20

## A

**A-TECH** 25:4,10,11,15,18 26:5 29:2,3,5,11,15

**absent** 10:20

**absolutely** 9:8 18:17

**abundantly** 43:13

**acceleration** 14:2,14

**accept** 26:7,25 98:1

**accepted** 21:4 74:18

**access** 15:23 26:14,15,16,19 64:25 68:4 100:14,25 101:19

**accommodated** 67:25

**accomplish** 9:17

**accounting** 30:2

**accurate** 17:7 77:9

**accuse** 15:1 27:18 28:12

**accused** 5:3,7,18,20 6:4 8:8 14:20 35:1 38:13,15,17 39:20 42:5,6,18 43:2 44:15,16,20 45:3 50:12 51:24 53:11,25 59:3,4,6 62:10 63:22 67:11 79:19 81:21 82:10,20 83:2 85:24 88:25 92:11,15

**accusing** 59:14

**acknowledged** 4:12

**acknowledges** 50:8

**acquainted** 45:13

**acquisitions** 53:6

**acronym** 61:19

**acronyms** 14:21 46:18 61:21,24

**act** 78:18

**action** 77:6

**actual** 10:25 13:12 17:2 67:7 72:14

**add** 11:16 27:6 30:20 46:5 87:3 90:18 93:4 100:22

**added** 11:14,25 83:8

**adding** 12:4

**addition** 8:6 50:14 53:4 68:10 71:4 73:4

**additional** 5:20 16:1,9 20:2 21:3 22:13 34:13 45:3 49:5 71:23 86:25 88:8 90:19 92:2 96:25 97:1 108:10

**address** 8:3 21:13 24:24 46:2 47:5 63:18 88:25

**addressing** 32:15

**adequate** 30:2 32:1,4

**adequately** 29:20

**admission** 35:13

**admit** 37:4 41:13

**admitting** 55:9,13 83:4

**adopt** 10:7

**adoption** 10:8

**advance** 6:25 19:23

**advanced** 79:18

**affect** 5:8

**affecting** 75:1

**agent** 26:24 28:25 29:3 31:11

**aggregate** 93:17 94:19

**aggregated** 94:22

**agree** 7:18 11:3 27:15 42:14 45:2

**agreed** 5:13 8:11 11:21 104:12 109:23

**agreeing** 106:22 107:22

**agreement** 8:19 10:14,21 25:24 29:4 31:12 84:4 107:21

**ahead** 7:12 8:16,23 58:5 98:3

**Alacritech** 3:5,9 11:13,20 12:11,25 13:6,20,21 14:23 15:8,13,19 16:7,25 18:20 21:6 22:7,21 25:4,6,9,15,18 26:1,2, 4,19,21,22,23,24 27:22 28:18, 25 29:15 44:14,15 48:20 56:23 57:16 61:9 63:24 73:16 74:15 82:16 84:16 85:6 90:19 91:11 100:9,17 101:9 103:1 105:13,19 107:13

**Alacritech's** 4:5 13:9,12 14:1,3,4,7,19 17:25 20:1

21:25 22:6 29:7 31:11 32:7 43:22 61:23 91:10 109:22

**Albert** 18:6

**allegations** 13:13

**allege** 24:14

**alleged** 5:25 13:7 22:5 24:7 37:16,24 69:13 86:13 88:25 89:5 104:18

**allegedly** 90:15

**alleging** 15:19

**alphabet** 14:21 20:15 23:1 58:25 59:7 60:24 65:3 83:22 91:11

**ambiguous** 38:20

**amenable** 44:18

**amend** 10:7 11:13 12:5 44:18 59:16,19 64:6

**amended** 9:16,22 10:16 11:5 12:18 27:5 63:24 110:18

**amendments** 90:16

**amount** 28:14 30:5 46:5 68:5, 18 80:1 108:3

**analysis** 5:24 14:24 15:2

**analyzed** 6:24

**analyzing** 5:24

**and/or** 35:1,3 36:23 55:6 59:23

**Andrew** 18:5 21:2 26:13,14, 15 27:4,6 30:13,19 31:10,13, 14,16

**answering** 35:12

**answers** 15:22 26:8 29:13 42:22 44:22 62:9 64:9 78:22

**apologize** 75:11 81:6 95:2,14 96:1

**apparently** 12:16 19:5 26:23 52:25 59:15 65:9 73:16 74:13

**appearances** 3:7

**appeared** 46:12

**appears** 15:8 31:14 78:20 93:9 99:10

**appendix** 13:19 16:24 17:4,6

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017                                      120Index: applicable..called

applicable 89:4

appreciative 99:18

approach 33:3 57:3 73:8

approximately 103:22

April 57:7 107:15

archives 109:24

areas 21:19

argue 94:6

argued 54:13

argument 35:11 42:7 45:9,11 49:21 51:2 55:15 63:20 73:5 74:25 76:7

arguments 17:16 87:6,8

arrangement 29:4

articulated 66:17

asks 31:22 80:17 92:9

assert 42:11

asserted 16:10 24:5 42:10

assertion 43:22

assertions 5:6

assigned 25:9,14

assignment 25:23,24

assorted 103:10

assumed 66:22

assumes 37:23

assuming 38:24 78:10

assure 57:11

attach 15:14

attached 13:4 15:11,15 16:20 32:22 43:21

attachment 17:3 20:5

attachments 49:22

attack 28:23

attempt 43:13

attempting 15:8

attention 44:6 69:20

attorneys 26:14

August 11:22 63:23 68:3,4

70:14 103:3,17 108:2

author 70:22

avoid 7:13 15:8 39:7 93:20

await 58:6

aware 13:14 18:17 24:20 46:9 107:5

awkward 8:9

---

**B**

back 6:17 22:1 24:8 25:14 26:1 43:16,18 47:11 48:18 56:4 61:22 69:23 76:1 78:8 80:14,23 83:21 85:12 91:15 93:21 95:15 98:6 102:20 104:7 108:1,6,16

background 26:12 33:15,25

backwards 73:24

bad 92:12

ball 46:20

bar 54:4 68:12

barrier 104:25

based 5:14 8:23 9:5 16:17 18:22 19:16 21:11 29:20 30:1 34:10 55:9 56:14,19 57:13,17 58:14,17 59:17 62:12 63:4,14, 16 64:11,18 65:18 69:24 76:25 77:15 82:13 88:3 89:9

basic 8:7 29:8

basically 30:17 47:10 79:19 86:6 108:2

basis 43:15 49:4 52:10,14 53:17,18 78:17

Bates 15:15 19:2 23:18 70:9, 12,20,23 71:12 81:17,18

battle 33:16

BCM 95:11

bear 21:14 29:22

beginning 69:2 109:1

behalf 3:9,15 29:7 104:23

believes 34:7 82:10 85:23

bent 73:23

biggest 64:19

bind 104:22

bit 26:11 67:22 102:3 105:4 108:11

black 20:17 22:25

blank 79:22

boiler 87:12

bold 68:12

bottom 39:15 44:7 103:12

bounds 102:16

boxes 4:6 59:18 65:13 83:14 89:21 90:12,17

break 56:8 93:10

Brian 40:14 57:10

briefed 6:16 49:19

briefing 85:17

briefs 9:12

bring 72:20

brings 32:17

broad 38:20

Broadcom 53:5 64:3

Broadcom's 100:17

broader 79:9

broadly 20:10 91:21

brought 69:20 70:17

bulk 32:10 103:1

bunch 38:16 86:16 96:11 99:9 109:24

burden 66:19

burdening 7:13 93:20

burdensome 34:3 83:10

business 53:6 79:19,24 80:1

busy 12:16

---

**C**

call 14:20 21:21 22:9 52:4 67:6 72:4 79:17 91:11

called 13:23 15:7 78:7 96:5 97:19 107:19

Case 2:16-cv-00693-RWS-RSP   Document 453   Filed 03/27/18   Page 121 of 138 PageID #: 31684
ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017                          121Index: calling..completion

calling 74:7

calls 20:15 57:1,8

care 25:1

carried 10:9 31:24

carries 35:19

carry 4:16,22 9:14 12:17

case 3:6 5:18 6:11 7:23 11:16 16:17,18 22:16 33:19,20 34:15 35:7 46:13 53:25 57:4 61:9,10 64:2 73:2 84:19 85:25 87:4 88:9,18 92:11 103:2 106:15 107:4 109:21

catch 86:7

categorical 48:11

categorically 44:10

categories 71:8 97:22 102:7

Cavium 3:16 4:22 5:19,25 6:3 7:3,15,22 9:7,14,20 10:13 11:23,24 12:1 13:6 14:10,23, 25 15:1,4 18:6,20 21:9,24 22:6 23:19 24:5 25:12 27:18 28:12 33:18 34:23 36:11,13, 22 37:20,21,22 38:16,18,25 39:6 41:5,12,17 44:1,16 45:15,24 46:11 51:18 64:2 65:1,9 72:2,5 73:21 75:12,25 76:19 78:3,4,12 80:19 81:17, 18 82:25 84:5 85:20,23 86:5 88:12,13 89:3,10 91:21 93:22 94:6 98:16,21 100:9,17,20 101:3,4,19 102:25 103:6,7 110:19

Cavium's 3:25 8:14 9:7 12:24 16:4,13 19:10 21:1,22 24:13,21 33:7 35:11,21 38:6, 22 43:19,21 44:1 73:8 78:5, 10,13 79:13 80:15 81:9 102:20 103:21 107:15

centered 74:25

Centurylink 3:5 12:7

cetera 35:4 41:9,10 55:6 81:1 88:23 92:15,17 93:5 95:13 96:5

chain 43:10,11,17

chance 4:17 11:9 24:25 56:1 65:15 74:2,10 85:2 91:15 100:5 107:9

change 29:14 75:24

changed 87:7 91:1

charge 15:3,16 16:12 21:8 23:5,10 24:5 27:12 29:6 30:5

charged 31:7

chart 5:2,23 60:9

charted 5:9,22 6:7

charts 5:17

check 7:9 17:12,13 25:22

chicken 49:14

Chris 106:18

Circuit 42:12

circuitry 99:8,10

citation 42:12

cite 66:4

cited 19:1,12

citing 62:1

claim 18:18 31:14 48:11 52:23 72:12

claimed 18:12 73:4

claims 15:5 16:10 60:12 65:5 67:6,7 93:13 94:10

Claire 3:8

clarification 9:24 10:6 85:22 105:3

clarified 41:4

clarify 56:15

clarifying 83:11

clarity 65:25

Clark 71:11

Claude 3:9

cleaned 38:4

clear 22:8,11,16 37:9 43:14 46:16 52:14 80:9 81:21 83:5 84:14 94:16 103:15 104:16 108:21

clerk 77:11 80:14

client 16:11 34:6 82:10 97:22, 23 100:16

co-counsel 3:9

coalescing 41:8,9 60:25 66:4 78:2

code 6:11 7:25 8:4,11,23 67:24,25 68:2,5,6,7,8 69:14, 15,16,18 72:25 73:5,12,13,21 88:23

coincidence 31:16 70:17

colleague 40:14 46:2 97:10

collected 107:18

combination 34:23 55:4

comment 7:10 35:21

common 19:11 24:13 25:17 28:22 32:19 33:6,10,22 34:16 37:11 39:19 45:6,17 75:13 80:16 82:2 85:16,22 88:16 89:1 91:20 96:3 98:8

communication 18:14,19 50:6

communications 13:5,10 20:11,25 21:8,11 24:4 30:4 104:15

company 27:2 61:8,15 83:5 104:19,22,23

company's 61:4 83:6 105:9

comparable 98:10,17 100:8, 11

compel 12:25 17:3 30:12 32:8,18 48:8 55:16 74:5,12, 19,23 85:7 86:22 91:19 99:1,4 106:2

compelled 71:1

compelling 74:13

complain 70:25 71:4

complaining 4:11 68:11 69:13

complaint 6:14 84:23

complete 14:24 17:23 39:22 48:12 76:23 77:4 78:24 87:23 109:5,8

completely 27:16

completion 107:15,16 110:18

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

compliant 35:3

complied 47:10

comprised 4:6

compromise 59:13

comptroller 69:6

computer 50:23 69:14 77:12

conceded 73:14

concern 6:19

conclusion 19:20

concoction 42:18

conducting 18:6

confer 47:24 57:3 97:10

conference 18:7

conferred 8:14

confers 48:17 49:19 52:2 98:19

confident 79:4

confirm 11:17

confirming 40:15

confused 78:8

connection 34:24 63:22

connectivity 35:3 79:18

consciously 33:19

consistent 78:13 84:2 87:17

constitute 21:8

consulting 97:8

contained 82:8

contend 21:7

contending 59:17 75:3

content 12:3 40:15

contention 51:24 52:3 73:3

contentions 3:25 4:6,14,16, 17,23 5:1,4,11,14 6:2,20,23 7:6,8,18,24 8:3,13 9:14,16,22 10:4,7,8,11,16 11:5,12,18,21, 23 12:1,3,7,9,15,18 13:15,16 31:23 32:1,2,3,4 46:20 47:11, 14,16 48:6,21 49:10,13,17 50:12 51:25 52:24 53:1,9 54:2,5 56:20 58:18 59:16,18

60:4,8 61:23 62:10,15,22 63:24 64:12,23 65:1,13 66:1, 3,6,9 67:3 81:20 83:15,16 87:6,7,22 88:20 89:3,21,22 90:1,3,12 104:17,18 105:2,8

context 23:7 32:3 81:7

continue 9:15 42:23 61:2 109:17

continued 22:12 26:2 53:8

continues 41:13 82:21

continuing 46:8

contractual 31:11

contrary 75:17

contrast 19:10

contributory 13:7,22 15:5 28:5

control 18:1,10 19:8 30:22 31:15 38:22 98:14,22

convention 72:6

conventional 34:11

conversation 18:22 19:7,23 21:22 53:21 58:3 68:13

conversations 18:8,9 23:7, 16 25:13

convoyed 92:20

cooperating 73:21

cooperation 44:14 110:20

cooperative 67:20

cooperatively 93:22

copies 32:23,25 33:5 60:19

copy 17:13 60:21 75:12 76:12 95:7

cord 51:12

core 7:20

correct 10:12 17:10 20:23 23:12,21 24:6 51:15 56:16 64:18 97:25 103:16

correction 39:17

correctly 7:17 102:23

correspondence 43:21 46:23 59:8

corroborated 24:16

corroborating 23:24

cost 68:19

counsel 3:7,23 6:24 8:15 18:2 20:15 21:1 24:24 35:11, 21 43:19 44:1 76:6,25 79:13 98:10

counsel's 4:21 110:13

counsels 10:9

counts 104:1 108:7 109:18

couple 3:21 42:8 45:6 96:9 102:21 105:16 106:16

court 3:2,3,13,18,20 4:12,18 6:19 7:2,12,14 8:4 9:11,21 10:1,10,13,19,23,25 11:4,24 12:17,22,24 13:1,13 15:9,24 16:20 17:4,8,11,15,19 19:25 20:19 21:7,13,16 23:9,17 24:2,9,22 25:1,17 26:7,18 27:8,15,19 29:16 31:1,18,25 32:6,13,25 33:12,14 34:19 40:2,6,21 42:14 44:8 46:4 47:5,18,25 48:10,24 49:6,12, 15,20,24 50:20 51:1,14,23 52:5,7,15,21 53:14,20 54:4, 10,22 55:5,15,25 56:4,6,7,9, 10,21 57:11 58:3 59:21 60:6, 15,18 61:3 62:8,12,23 63:6,18 64:8,14 65:7,17 66:13 67:9,15 70:16 72:20 73:25 74:6,20,22, 24 75:16,18 76:21 77:6,14,15, 22 78:10 80:3,10 81:4,25 82:4,7,24 83:17,19 84:1,20 85:8,12 87:21 89:16,24 90:8, 24 91:1,3,13,15,18 92:23 93:20,24 94:13,25 95:8,24 96:7,12,15,23 97:2,21 98:1 100:7 101:2,7,21,22 102:17 105:10,23 106:8,10,12,21 107:2,9 108:12 109:2,3,5,20 110:4

Court's 5:13 7:17 11:2,15 56:15 69:20 86:7 87:18

cover 70:8 78:16 98:5

covering 22:22

create 72:4 102:5

created 72:3

creation 6:5

cross-examine 88:14

cured 4:14

curious 16:4

current 53:1,18

custodial 110:8

custodian 108:4,8 109:15

custodians 103:22 107:18 109:10

custodians' 109:9

custody 17:25 18:10 19:8 30:22 31:15 38:22 98:14,22

custom 109:21

customary 107:3

customer 68:16 95:12

cut 56:13

**D**

damages 14:9 94:10

data 48:15 50:18,24 78:8

databases 97:18

date 12:4,18 21:4 36:8 68:4, 20 70:22 93:10,11 94:14,17, 20 95:13 107:15,16 110:18

dates 21:2,3 74:17 93:9 102:23 106:2

day 4:9 7:16 12:14 33:22 61:14 65:2 93:18 107:6,7 110:12

days 43:12 68:21 69:6,25 90:4 93:7 104:12 105:16 106:16,22 107:1 110:7

DCO 110:18

deadline 9:20

deal 45:1 67:2 84:20

dealing 55:16 84:21 91:10

deals 89:25

dealt 86:5

debating 61:21

decided 33:19

deciding 62:9

declaration 5:23 78:3

declaratory 5:5,6

defect 84:13

defects 39:17 66:25

defend 84:6

Defendant 5:12 51:4,23 75:3 105:18

Defendant's 75:12

Defendants 5:13 6:13,15 7:15,21 8:10 10:4,5,15,20 45:23 56:22 64:22,24 86:6 88:20 89:1,10 94:5 99:18 100:14,24 102:25 103:1,4 107:13

deferred 49:3

deficiencies 68:6

deficient 56:22 58:18

define 14:3 60:22 76:14

defined 20:16 37:4,8 58:24 65:22 77:16 83:19

definition 37:5 59:4,6 60:23 62:3,4,15,20 66:3,5,18,23 67:8 77:24 82:22

definitions 17:2 58:23 60:24 61:24 66:2,7 76:9,13 78:2,6 80:24 91:2

definitive 83:10 84:9

delayed 90:12

deliberately 33:18

Dell 11:18,19,20,25 12:6,11 44:15,17 50:12 63:22,24 64:3, 6,25 95:12

Dell's 12:1 59:16

demand 24:18

demanding 19:19

demonstrate 47:25 79:5

demonstrated 102:2

demonstratively 48:13

denied 68:4

denies 75:25

deny 89:17

departments 90:10

depending 61:14

deponents 107:6

depose 23:5,6 29:11

deposed 19:22 30:20

deposing 88:15

deposition 16:2,3,6,19 18:11,21 20:24,25 21:4 28:9 30:13,17 31:3,4,5 69:9 79:5, 11 93:19 97:14 102:21 104:10 106:2,17,19,20,22 107:1 109:12 110:11,13,23

depositions 9:6,8 18:11 19:24 74:13 77:3 78:15 80:4 102:20 103:9,14 104:7 105:6, 12 109:9,10,17,19,22,25 110:8,14

derive 92:10

derived 92:20

derives 91:22

describe 81:13

describes 19:1

describing 15:10 19:13

description 19:15,16

design 8:8 71:12 72:4,5,7,12, 14 99:10,12 100:1

designation 106:23

designer 71:5 72:22,23

designers 72:16,17,18

detail 19:12 46:6

detailed 5:24 6:9 17:24 18:25 50:5

determine 29:23 31:5 77:3 78:15 79:11

developer 72:22,23

development 104:12

developments 4:3

devices 5:8

difference 5:25 41:16,17

differences 5:7,24 8:1 85:23 86:14 87:1 88:25 89:6,9 99:7

Case 2:16-cv-00693-RWS-RSP   Document 453   Filed 03/27/18   Page 124 of 138 PageID #: 31687
ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017                                      124Index: differing..entered

**differing** 66:2,7

**difficult** 31:14

**difficulties** 77:20

**difficulty** 32:17 34:3

**diligence** 34:6 46:10

**diligent** 102:11

**direct** 82:25

**directed** 4:23 5:1 7:6 8:3 10:4 26:21 58:2 85:22,25 86:22 91:21

**directing** 26:22 36:17 44:6

**disagree** 4:21 65:21 77:7

**disavow** 26:25

**disclose** 98:12 99:25

**disclosed** 29:17 57:17 73:6 88:13

**discloses** 29:20

**disclosure** 27:6

**disclosures** 21:5 27:3,7

**discover** 5:22 50:13

**discovered** 34:6

**discovery** 27:16 29:17,19 30:8 39:4 42:16 45:22 46:10 52:9 57:17 66:25 67:19 71:17 73:22,24 77:4 78:13 84:8 85:14 91:10 96:18 101:14 103:19 104:2 110:1

**discuss** 16:13 22:7,9,21 67:17

**discussed** 49:19 52:1 57:6 82:16

**discussing** 107:14

**discussion** 28:17 60:11,12 67:18 103:19

**discussions** 18:15 20:22

**dispelled** 52:5

**display** 51:12

**disprove** 102:13

**dispute** 74:14 87:20 91:24

**dissolved** 25:16

**distinctions** 6:18 85:23 86:25

**district** 42:14 87:21

**docket** 3:21

**document** 19:17 40:2 44:6 51:21 62:1 66:4,8 70:10,19,22 72:1 99:11 102:4,11

**documentary** 5:5

**documents** 8:11,12,16,22,24 15:10,12,14,19,22 19:12 20:20 24:11 25:6,8,20 28:22 29:17,21 33:4 45:16 46:12,16 69:13,15,16 70:6,8 71:8,21,23 72:3,20,25 79:6,10 88:23 98:9 99:2,21,25 101:23 102:1,6

**dollars** 79:16 94:19

**double** 14:18

**doubting** 74:6

**drafted** 55:9

**dramatic** 5:17

**draw** 31:18 47:24 93:14

**driver** 72:23

**Duane** 78:4

**due** 55:25 73:17 90:22 91:4

**dump** 38:15

**dumped** 109:25 110:10

**Dunn** 40:14 43:20 57:10 59:8

**dupe** 70:14

**dupes** 70:4,18

**duplicative** 70:1

---

**E**

**earlier** 52:24 79:1 88:14 90:5 92:19 99:3

**earliest** 3:24

**early** 9:1 20:24 36:13 98:12

**easy** 68:25 98:7

**effect** 5:17 11:7

**efficiency** 11:2

**effort** 35:25

**efforts** 42:17

**egg** 49:14

**electronic** 4:7

**Elmo** 59:12 75:11 80:14 92:12,19

**else's** 64:21

**elucidate** 52:13

**email** 20:18 22:1,22,23,25 41:3 43:10,11,17,18,20 46:23 50:6 59:11 61:16 71:10,11 74:13 102:24 103:2,19,21,24 104:6 106:15,18 107:11,14,19 108:1,3,19 109:13,15 110:5,6, 7,9,10,12,14,25

**emailed** 73:11

**emails** 20:6,11 22:8,11,17,19, 21 23:4,8,13,15,16,17,25 24:15,16 25:13 27:11,18 57:10 103:3,6,8,13 107:12,18 108:13 109:16,25

**Emanuel** 26:13,19 31:13,16 71:11

**embedded** 69:16

**embodying** 25:24

**emphasized** 40:22

**employed** 26:23

**employee** 18:6 21:6,22

**employee's** 18:9

**employees** 29:24 61:4

**enable** 36:24 80:21

**end** 8:20 9:19 12:5 45:21 65:2 96:3 110:2

**ended** 58:9 108:9

**ends** 39:4

**engage** 58:12

**engineer** 61:7,14 72:3

**engineering** 71:19,23

**engineers** 61:17,21 62:17,18 66:10 78:5,10,16 84:1,6 90:10 92:3

**engineers'** 62:25 78:14

**entered** 4:25

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

entire 45:4 53:24 79:21 81:9

entitled 84:10 94:10

entity 25:4

essence 10:8 19:19

essentially 13:4 31:22 44:24 61:18,19 65:24 67:23 102:3, 15

et al 3:5

ethernet 72:23 79:15,18,24

eve 69:9

event 9:20

events 10:25 19:14

eventually 8:5

evidence 5:6 6:10 14:17 23:9,13 24:19 25:7 30:3 37:23 49:25 50:20 51:8 78:4

evidenced 15:12 23:8,16 25:13 49:22

evidentiary 5:24

exact 77:24 78:2

examples 36:18 62:7 68:15 70:4,23 81:24 86:8,10,16,19, 23 87:9 99:17

excerpt 16:25 17:1

excerpts 60:7

exchanged 23:25 107:17

exchanges 20:6

excludes 81:23

excuse 38:11 42:2,3 96:3

executing 98:16

exhibit 95:3

exist 26:2 48:9 85:23 92:23

exists 92:22

expand 11:16

expect 6:15 93:21 110:9

expert 5:23 12:16 68:2 88:4, 19 98:12 101:11,14

expert's 88:11

experts 62:17,19 68:1 87:24 88:7 89:11 90:9,14

explain 5:4 60:4 67:22 107:9

explained 71:14 72:1

explore 20:25 93:18 104:22

express 22:13

extended 103:24

extension 91:25

extensive 49:21

extensively 8:14 49:20

extent 6:17 16:9 37:23 38:21 63:5 89:4 92:23 93:23 98:20 99:24

extorted 44:25

extremely 17:24

eyes 20:8

**F**

face 22:11,23 31:14 76:22

facilities 34:25

facing 43:5

fact 7:5 27:15 28:18 31:19 39:22 57:16 61:16 65:22 69:4 72:7,9 77:1 83:11 88:21 101:8 105:15 110:14

facts 11:1 13:21 15:6 16:9 27:23 29:10 37:23

factually 49:1

fail 15:5

fails 42:15

failure 5:19

fair 23:9 24:2 30:21 57:19 74:3

fairly 85:15 109:18

fall 6:4

false 18:13 43:21 44:11 104:25

families 6:5

family 6:9

farther 19:10

fashion 47:19

fast 51:18 110:20

features 39:2 77:25

February 4:23 33:21 60:8

Fed 42:13

feel 17:21 72:20

felt 64:15

field 62:20

fight 104:5

fighting 7:22

figure 62:6

file 8:25 9:2,10 10:16,21 57:2, 9

filed 11:13 16:25 41:14 61:12 73:17 74:17 82:16 93:5 94:7, 23 101:10

filing 25:15 50:16 94:11

fill 29:11

final 100:4

financial 29:4 69:3 96:13 97:1,14 109:13,14

financials 53:22 68:11,13,15, 22 69:5,10,11 79:14 81:19 91:21 92:3,6,25 96:2

find 16:3 19:13 28:9 34:9,12 38:8 47:19 48:1,2,3,4 59:22 102:9

fine 30:18 74:24 98:24 99:24 101:22 105:5

fingertips 75:10

finish 91:16

firm 78:5

Firmware 70:7,11

fiscal 68:20 69:7

fix 60:16 66:25

flip 52:11

floor 4:6

focus 27:8 36:19 37:2 74:1,9 80:14

fodder 80:4

folders 69:17

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017
126Index: folks..historical

**folks** 61:18 106:15

**footnote** 60:22

**forget** 76:12

**formal** 10:6 12:5 72:2,5

**formally** 41:22

**forward** 88:7

**fought** 33:16

**found** 47:13 56:21 81:17 109:23

**framework** 89:15

**frankly** 4:10 6:11 8:10 13:11 24:16 31:25 56:16 57:1 60:21 65:15 66:17 68:14 82:22 110:16

**Friday** 12:14 106:20

**fringe** 60:13

**front** 16:23 17:16 25:20 29:13 32:21 34:17 36:20 38:14 40:19 47:20 75:16

**full** 17:1,13 56:23 105:21 107:7 110:17

**fully** 15:25 29:2 66:17

**fulsome** 8:17 16:7 17:24 18:25 21:18

**function** 70:11 88:21

**functionalities** 20:16 35:9 36:25 37:3,5,6,13 38:18 39:3 41:8,10 42:5 43:3,4,8 48:16 50:11 52:23 53:25 59:3 63:5 64:12 65:19 67:5,8 71:7 77:20 79:8 80:7,22,23 81:3,15 82:11,13 83:2,7,19 88:21 91:23 92:2

**functionality** 35:2,3 50:19 55:7 58:24 59:5,24 60:10,14, 23 61:25 63:1 64:16,17 76:10, 15,16 77:16 80:25 81:1 88:19 91:12 104:24

**functioning** 20:15 110:20

**functions** 34:14 37:17

---

**G**

**gate** 35:6

**gather** 6:10 55:24 56:1

**gathered** 88:13

**gathering** 71:24

**gave** 5:1 8:12 19:5 70:15 74:2,17 90:5 95:22 103:23

**general** 42:15

**generated** 69:7

**generic** 59:1 78:1

**give** 8:4,11,15 11:9 24:24 33:25 36:18 55:23 56:1 66:7 73:7,22 74:10 77:12 85:2 91:15 92:6 100:5 105:4 107:9

**giving** 69:1 84:7 86:8 87:13

**goal** 109:19

**good** 3:3,8,11,12,13,15,19,20 4:19 28:9 32:9 87:3

**grant** 91:3

**great** 47:13 74:15 80:3

**grounds** 38:17 71:20

**group** 95:12

**GSC** 41:9

**guess** 3:25 6:19,22 11:6,7 15:17 27:8 29:5 51:14 76:21 78:21 84:20 94:2 99:15

**guidance** 5:13

**guide** 51:22 72:4,16,17,18,23 99:12 100:1

**guides** 8:8 71:5,12 72:7,13, 15,21,22,23 99:10

**guilty** 87:13

**guy** 61:19

**gymnastics** 62:5 66:11

---

**H**

**half** 33:23 34:1 39:3 107:6

**hand** 87:11

**handed** 76:12 80:15

**handful** 76:17

**handle** 32:10

**hands** 40:1

**handy** 95:3,4

**hang** 41:20

**happen** 12:13,14

**happened** 28:25 40:18 44:12 73:14,19 107:13

**happy** 13:1 33:1 59:19 60:19 95:16

**hardware** 99:7,9

**Harnois** 18:6,9 19:5 20:6 22:1,20,21 23:1,6,11 25:12

**Harnois'** 20:24

**Harrer** 106:19

**hat** 41:20

**havoc** 41:20

**head** 18:25

**heads** 71:19,22

**hear** 7:5,20 31:19 55:19 56:4 74:15 82:1 84:23 85:1 110:4

**heard** 11:9 28:8 29:21 30:2 34:21 65:11,16 75:2

**hearing** 3:4 6:22,25 7:2,20 9:19 35:18,24 40:1 48:10 49:9,21 52:11 53:17 54:12 55:11 57:25 58:22 67:25 69:21 74:7 75:19 76:3

**heart** 5:10 34:14

**Hein** 14:22 16:15 18:5 19:4 20:1 21:2,23 22:2,5,19 23:6, 11 25:4,10 26:13,15 27:4,6,24 28:24 29:12 30:19 31:6,10,13, 14,17

**Hein's** 16:2 18:8 23:25 26:14 30:13

**held** 44:24

**helpful** 17:16 26:12 27:13 32:24 60:20

**Henry** 3:8,14

**hiding** 46:19

**high** 22:16 79:7

**highlighted** 21:20 72:11

**Hilda** 70:19

**historical** 53:1

Case 2:16-cv-00693-RWS-RSP   Document 453   Filed 03/27/18   Page 127 of 138 PageID #: 31690
ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017
127Index: historically..infringement

**historically** 45:13

**hit** 18:24 104:1 108:7

**hits** 107:20,24 108:4,9,10,16 109:16

**hold** 50:14 86:8 87:18

**hole** 96:1

**homework** 72:10

**Honestly** 90:4 106:1

**Honor** 3:8,15,17 4:2,12,19,25 7:11,24 9:23 10:22,24 11:10, 19 12:20 13:2 15:13,20 16:24 17:6,18,20,22 18:24 19:9 21:15,18 23:22 24:23 26:10, 11 27:10 28:16 30:10 31:9 32:5,9,12,15,21 33:2,4,13,25 34:9,17 35:10,16,19,25 36:12, 16,17,21 37:4,10,18,22 38:6, 8,11,14 39:4,8,9,10,14,22,25 40:1,2,8,23,24 41:2,16,18 42:1,9,13,24 43:3 44:4,21,22 45:14,15,19,20 46:1,8 47:22 50:4 51:10,17 53:20 54:9,11, 13,14,16 54:12,22 56:5,12 57:20,24 58:5,21 60:2 61:6, 13,16,22 62:11 63:3,9,23 64:10,18 65:5,10,22,23 66:16, 18,24 67:16 70:21 71:16 72:14 74:4,11,21 75:8 76:12 77:10 79:2,4 80:5 81:6 82:1,6, 12,15 83:13,21 84:11 85:4,14 88:6 89:19 90:6,22 91:7,17,21 94:15 95:6,18,25 96:14,20 97:5 98:4 100:8 101:6,25 102:18 105:11 106:25 110:7

**Honor's** 5:10 8:2 11:20 12:10 91:25

**hook** 50:23

**hope** 35:19 52:5 90:17 99:19 109:17

**hoping** 29:11

**hostage** 44:24

**hours** 4:4,8 12:10

**housekeeping** 102:19

**HP** 61:17

**hundred** 79:15 94:19

**hundreds** 103:2

**hypothetical** 94:3

---

**I**

---

**i.e.** 52:23 81:14 94:20

**idea** 3:23 61:7 69:3 71:6 72:24 73:7,21 107:6

**identification** 19:5 27:13 41:5 49:5 54:17 75:24 81:14 83:6 86:9 104:10

**identified** 5:3,18,25 8:1 18:13 19:2 20:8,12 21:5 22:12,22 23:18 24:11 29:2 36:24 37:3,5,6 38:18 39:2 43:3,4,8 46:14,21 48:4,19,20 49:13 50:1,11 52:24 53:10 54:1,24 62:14 63:19 64:1,2,3 65:8 80:7,22,23 81:22 83:1,2, 7,25 87:15 89:1,5,10 91:22 96:22 99:15 100:11,19 101:17

**identifiers** 36:22 38:19 80:19

**identifies** 23:1 49:25

**identify** 5:20 6:18 20:5,13 27:20 34:23 36:21 37:16 39:1 43:7 45:2,15 48:18 49:9,12 52:22,25 54:6,25 55:3 67:7 71:12 78:6 80:6,18 81:16,23 87:2 88:9 92:1,24 94:20 96:16,25 98:9,16,17 99:5,19 101:11 105:4 106:6

**identifying** 41:12 49:16 79:25 86:13 96:3 106:16

**identity** 17:13 29:22 54:23

**ignores** 39:22 44:12

**ignoring** 36:9,10

**Iman** 73:11

**implement** 41:7 91:22

**implicit** 35:13

**important** 40:12 68:9 99:6

**imported** 36:23 41:6 80:20

**impose** 77:11 80:13

**improper** 48:24

**inclined** 82:24

**include** 37:5 44:19 59:16,19 64:7 75:22 76:13 83:2,7

**included** 5:22 11:23 46:19 52:6 63:21 64:8,16

**includes** 19:4,5,6 49:11

**including** 7:15 12:4 19:6 37:24 61:4 67:24

**incomplete** 48:14 51:3

**inconsistent** 31:4

**incorrect** 49:1

**index** 102:5

**indication** 52:9 78:23

**individual** 93:11 95:15 109:13

**individuals** 18:10,14,15

**induced** 24:7 93:12

**inducement** 13:7,22 15:4 28:4

**indulge** 57:20

**indulgence** 56:15

**industry** 67:13

**industry-wide** 84:4

**infected** 80:8

**infects** 39:18 52:19

**inferences** 31:19

**Infiniband** 20:17 22:18 35:2 37:7 41:10 46:19 50:19

**informally** 73:10

**information** 7:23 8:8 13:8 16:1,5,19 17:25 24:10 28:6,18 29:18,25 30:7,15,18,24 31:2, 3,7,22 33:16 34:10,13 38:21 41:19 45:16,23,25 47:10,24 48:7 55:21 57:12 63:7,13,16 64:4,25 67:21 68:24 69:4,8, 19,22 71:1,14 73:18,24 84:18 88:12 93:2,8,23 95:22 97:1,6, 19 99:9,23,25

**informed** 12:15

**infringe** 39:18 55:1 58:11,12 59:6 61:11 62:13 66:23 94:12

**infringed** 64:15

**infringement** 3:25 4:5,13 5:8 13:7,8,13,16,22 14:17,24 15:1,2,3,5,16 16:12 21:8 23:5,

Case 2:16-cv-00693-RWS-RSP   Document 453   Filed 03/27/18   Page 128 of 138 PageID #: 31691
ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017                                    128Index: infringes..kind

10,14 24:5,8 27:12,18 28:4,5, 13,15,19 29:6 30:5 31:22 35:13 37:25 38:3,24 46:20 48:20 55:10,14 56:20 57:14, 18 58:18,19 59:16,25 60:4,8 61:23 62:21 64:11 66:1,2,6,9, 20 79:21 80:21 81:19 83:4,15 85:24 88:22 89:21,22,25 93:12 105:8

**infringes**  59:17 63:2 75:25

**infringing**  14:20 34:7 35:2,16 36:1,7 37:6,12,15,21 39:23 40:9,11,17,19 41:13,21 42:1, 3,5,19 43:4,14,23 44:2,9 49:11 50:10,12 52:4,19,23 53:12,15 55:6 56:14 57:12,21, 24 59:5,10 60:9,14 61:25 63:8,14 67:1,4 75:1,20,22 76:4 80:8 81:2 82:21 84:14

**initial**  21:5 27:3,5,6

**initially**  101:9

**inquired**  97:21

**inspection**  73:13

**inspections**  69:24

**instance**  19:19 59:24 99:13

**instant**  49:23

**instruct**  16:16 18:21

**instructions**  5:2

**instrument**  92:15

**instrumentalities**  5:3 35:1 38:14,15 39:20 42:6,18 43:2 59:4,6 82:20 92:16

**instruments**  38:18

**Intel**  4:13 5:1,3,11 8:2 11:13, 14 12:5 47:3 56:22 62:1,2

**Intel's**  4:25 11:19 62:3

**Intel.ark**  47:4

**intend**  20:24

**intending**  21:4

**intent**  94:12

**interceded**  33:19

**interchangeably**  65:4

**interest**  22:13 28:22

**interface**  70:7,11,19

**interlineated**  40:20

**internal**  81:14

**internet**  34:11 46:13,17 50:24

**interrogatories**  8:7 13:3 16:5 17:2 33:6,8,22,24 34:12, 16 36:11,14,15,17 37:10,11 38:7 39:1 41:25 42:10,16,22 44:11,23 45:5,6,17 48:8 52:4 56:19,24 58:20,21 59:10 62:24 66:22 67:1,2 75:14 82:9 84:12,24 85:2,21 87:19 91:6

**interrogatories'**  39:17

**interrogatory**  6:3 8:2 12:25 13:16,18 15:7,10 16:21 17:8, 21,22 18:16 19:3,11 24:12,14, 21,24 26:17,21 27:9 30:7,16 31:20,21 32:4,19,20 34:16,22 35:12,15 36:6,9,10,19,20 37:19,23 38:2,10,17 39:18 40:16 41:21 42:4,25 43:1,22 44:3,10,19,23 45:4,5,17 47:6, 8,15,23 48:1 49:11 50:2,9 52:16 53:10 54:21 55:2,8 57:24 58:1,10 59:22 73:15 75:15,21 76:2,24 80:7,16,17 81:8,9,13 82:2,8,20,25 83:20 84:22 85:16,17,22,25 86:13, 15,24 87:1 88:6,16 89:2,17, 18,20 91:4,20 92:1,5,9 96:4, 16 97:19 98:8 101:10

**intervene**  33:20

**intervened**  11:24

**intervenee**  94:8

**interview**  88:11

**investigate**  22:2

**investigating**  50:15

**investigation**  21:25

**invoke**  81:16

**involve**  90:20

**involves**  13:17

**issue**  7:14,19 13:3 18:2,3 22:16 23:2 31:8 39:18 40:4 46:6 49:23 52:3 57:22 74:1,3, 4 75:1,7 76:3 77:4 83:22 84:24 85:2,10,18 86:2,3,5,20 88:17 92:5,9,25 95:17 96:2,7,

13 97:3 106:4 107:5

**issued**  78:20 90:6

**issues**  4:11 8:15 9:15,21 10:9 15:16 46:6 50:5 53:23 56:23 86:21 90:21 93:11,21 95:20 100:4,6 102:18 104:20

**items**  102:19

---

## J

**Joe**  3:10 4:19

**join**  4:8

**joined**  3:9 11:19

**Judge**  39:21

**judgment**  30:5

**July**  7:17 41:1 68:3 90:6 103:18 105:13,17 106:3

**June**  33:23 34:21 35:10,18,24 36:5,8,10,12,23 37:12,14 38:4,5 40:25 42:20,21 44:13 46:11 49:8,21 51:18 52:12 54:12 58:22 62:13 63:10 65:9 68:3 69:2,19,22 70:2,10,21 73:11,20 75:19 78:20 107:16 110:18

---

## K

**Karineh**  3:16

**key**  13:20 29:10,16

**Khachatourian**  3:16,19 4:2, 18 10:24 11:10 12:20,23 13:2 15:9,13,25 16:24 17:6,10,12, 18 26:11,20 27:10,17,20 30:10 31:9,21 32:5 50:8 53:13,21 54:14,19,23 55:19, 22 56:3,5,11,12 58:6 60:2,7, 16,19 61:6 62:11 63:3,7,23 64:10,18 65:10,18 66:15 67:10,16 74:4,11 77:9,13 82:5,12 83:13,18,21 84:11 85:4,9 89:16,19 90:4,9,25 91:7,14,17 92:18 95:2,6,9,18, 21 96:12,14,20,24 97:5,25 99:2,15 100:5,8 101:6,8,25 105:11,25 106:9,11,14,25 107:3,12 108:14 109:3,7

**kind**  83:15 97:16

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

kinds 71:5

knew 6:23 7:16 74:14 90:13

knowledge 6:14 31:7 88:1
94:11 105:9

---

**L**

---

Labor 12:14

lacking 13:23 47:7

laid 93:24 103:10

language 38:16 55:3 76:4,23
78:9 83:3

large 58:25 59:1 60:25 77:25
78:1,7

largest 96:10

Lastly 93:1

late 12:4 65:9 103:21

latest 33:11 42:2,3,18

law 42:12

lawsuit 11:25 94:23

lawyers 87:12

lead 3:6 57:1,8

learn 53:6

learned 50:16 54:7

leave 10:11,17,21 11:8 12:18
97:2

left 71:3 95:11

legal 19:20

lens 105:1

letter 40:3,13

letting 56:15

level 22:17 26:1 79:7

license 14:10 22:6,20 23:2,15
24:18 28:13 54:4 68:12 98:20
100:17,21 101:4,20

licenses 98:10,14,23 100:8,
12,15,17,18,19,23 101:4,11,
18

licensing 13:5 14:24 15:17
26:24 28:24 29:3 31:11
100:10

light 5:13

likes 45:20

limit 47:18 72:21 75:3 80:10
87:14 88:3

limitation 37:24 48:25 51:5

limited 34:10

limits 16:22

lines 67:24 71:20

Link 51:19

list 47:15 71:13

listening 17:16

lists 82:9

literally 7:16,22 76:2 81:20
99:22

litigate 9:16

litigation 14:12 51:21 67:13
101:18,20

live 30:16

Lo 106:18

local 53:21 57:1,8

locate 66:16

log 15:18 18:18,19 28:21

long 33:16 55:23 57:8 68:16
71:13 72:16 84:6 103:18

looked 11:11 55:2 57:24
99:8,21

lost 57:16

lot 14:21 55:24 56:14,16
66:10 67:16,18 71:24 72:11
90:4,11 108:4

LRO 61:11 67:6

LSO 14:20 20:17 22:17 35:2
37:7 41:8,10 45:12 46:18
50:18 55:6 58:24 59:5,24 61:5
64:16 76:10,15,18 77:16
80:25 104:24

lump 98:6,25

lying 54:5

---

**M**

---

made 34:24 35:11,18,20,21

36:22 37:20,21 38:9 41:1,6,14
42:9,22 43:13 53:17 55:4
68:12,25 76:1,2,6 80:19
94:22,23 107:21

mail 4:7

maintenance 92:14 97:4

make 8:16 15:3 16:12 29:9
32:22 34:24 37:9 41:16,17
42:1 45:10 67:1 70:18 74:1
75:25 79:23 81:7 84:14 85:10
93:22 98:23 101:23 104:15

makes 83:5

making 39:11

manageable 108:3,25 109:8,
16 110:10

manipulate 93:4

manner 20:2 69:12

March 13:14

margin 68:19

margins 95:13

marked 75:12

marketing 79:7

material 5:7 18:13 85:24
104:8

materially 88:21

matter 30:6 59:13

matters 74:1 98:3

meaning 61:5

meaningful 103:5

meaningfully 103:19

means 14:15 45:6 61:7 72:21
88:7

meant 25:25 103:17

meet 47:23 48:17 49:19 52:1
57:3 97:10 98:19

meeting 66:11 67:12

Megan 97:10

Melissa 3:16

member 25:10

members 26:5

Case 2:16-cv-00693-RWS-RSP  Document 453  Filed 03/27/18  Page 130 of 138 PageID #: 31693
ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017                    130Index: mental..object

**mental** 62:5 66:10

**mention** 46:23 65:11 81:2

**mentioned** 51:7 53:4 95:20

**mess** 110:16

**met** 8:14

**method** 94:9

**Michelle** 71:11

**Microsoft** 61:17,18,20 66:4,8

**Microsoft's** 100:18

**midnight** 4:7 65:14

**million** 67:24 79:16,22,24

**minds** 66:12 67:12

**minor** 93:21 105:3

**mis** 97:16

**mischaracterize** 25:7

**miscommunication** 97:16

**misquote** 52:14

**missed** 99:20

**missing** 93:9

**misspeak** 25:20

**misstated** 11:1

**mistake** 103:15

**misunderstanding** 95:4,14 97:16

**model** 5:3 36:21 51:20 68:17 78:25 80:18 95:11

**models** 46:15 48:5,15 49:4,5

**modern** 61:14

**moment** 21:14 35:7 55:23 87:20 100:3 106:10

**Monday** 12:8 106:19 108:15 109:1 110:23

**monetary** 24:9,10,15,17,19 28:14 29:9

**monetize** 29:6

**month** 27:5 39:4,5 41:1,2 103:25

**months** 7:23 22:14 33:17,21, 22,23 34:1 39:3 40:8 41:2 43:7 45:23 46:12 47:23 48:7

**moot** 9:3,13

**morning** 3:3,8,11,12,13,15, 19,20 4:19 32:9 56:1

**Morris** 78:4

**motion** 3:4,24 4:13,22 5:1,19 6:16,17 7:6 8:21 9:1,2,3,10, 13,14 10:2,6,9,11,16,21 11:6, 8,13,19 12:5,18,25 16:21,25 17:3,9 30:12 32:7,10,16,18,22 34:20 39:12,13 41:14 45:10, 11 46:3,7 48:8 49:20,23,25 50:4,5,16 52:17,18 53:23 55:16 57:2,3,9 68:11 70:25 73:4,16 74:2,5,7,12,16,17 82:17,18 84:22,25 85:7 86:22 89:17 91:16,19 93:6 96:8 99:1 101:10,14 104:7 106:1,5 107:8

**motions** 3:21,22 5:11

**mountain** 70:17

**mountains** 73:23

**move** 11:2 25:2 74:3,18 75:6 82:3 87:3

**moved** 36:18 60:8

**Multi** 70:7,11

**multiple** 41:11 46:25 51:20 63:10 90:10 100:9

---

## N

**nail** 7:22 18:24

**named** 100:1

**names** 49:3 73:5,12,21 81:14

**naming** 72:2,6

**narrow** 108:20,22

**native** 93:4

**natural** 91:25

**nature** 6:6 93:13

**NDA** 14:23 28:19

**needed** 73:12

**negotiate** 103:5

**negotiated** 103:4 104:3

**negotiating** 108:15

**network** 14:2,14

**newest** 69:24

**NIC** 70:7,11

**night** 74:16

**nomenclature** 47:1

**non-apparatus** 93:13

**non-infringement** 67:3,4 86:1,17 87:5,8,22 90:20

**non-limiting** 86:4,15,17,18, 23 89:12

**non-public** 48:23

**non-source** 69:16

**nonetheless** 44:7,13 59:19 68:15 72:9

**note** 3:7 11:23 91:1

**notes** 26:15

**notice** 13:12,15 23:14 36:6 51:23 57:19 58:14 93:12 94:7 104:10 105:21

**noticed** 18:11 20:23

**notified** 7:1

**notify** 9:21

**notion** 52:5 53:11 76:19

**notwithstanding** 76:3

**number** 8:6 13:17,18 14:11 15:15,17 19:11 23:18 24:14 32:19 36:6,9,21 37:19 38:2,10 40:16 41:23,24 42:25 43:1 44:19 45:17,18 47:6,8 52:16 54:21 55:2 57:24 58:6 68:17 70:9,12,20,23 71:12 75:15,21 80:8,17,18 81:9 82:4,8,21 83:1 84:22,25 85:16,17,22,25 86:13,16 87:1 88:6,16 89:2, 17,18,20 91:20 92:1,5,9 93:16 95:11 96:4,16 98:8 101:10 102:24 106:22 108:9

**numbers** 19:2 39:18,19 49:4 51:20 78:25 93:5

**numerous** 46:25

---

## O

**object** 11:5 12:2 16:16 42:15

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

76:23

**objected** 65:23,24 103:25

**objecting** 105:23

**objection** 10:15 37:21 38:1,9
42:11 48:24 55:20 58:16
91:11

**objectionable** 47:20 80:11

**objections** 12:3 37:20 42:9,
17,22 44:18 63:13 65:23
76:25 81:9,11

**objects** 37:22 38:16 91:12

**obligation** 30:9 71:18 84:2,8

**obligations** 96:24 104:2

**obstacles** 73:7

**occasions** 41:4 100:9

**occur** 19:24 24:17

**occurred** 4:3 11:1 58:3

**October** 20:24 109:11

**offer** 24:10,15,17,18,19 28:13
29:9 38:19 59:13 64:7 75:7
81:15

**offered** 14:10,22 21:2 24:20
36:23 64:6 77:19 80:20 107:6

**offering** 51:3

**offerings** 53:2

**offers** 13:5

**office** 68:2

**officer** 3:2 53:20 54:4 56:7,9

**offload** 58:25 59:1,2 61:1
77:25 78:1,7 91:12

**Olesek** 97:10

**omnibus** 22:3

**onslaught** 42:23

**opaque** 47:3

**open** 40:25

**opening** 74:25

**operations** 34:25

**opinion** 109:23

**opinions** 88:8 98:12

**opportunity** 11:15 13:11
53:14 75:9

**oppose** 86:21

**opposed** 98:6

**opposite** 72:9

**opposition** 10:2 16:25 30:11
39:12,13 45:10,11 52:18
53:16

**oral** 11:7 23:19

**order** 4:12,25 5:10,15 7:17
8:2,4 10:4 11:15,21 12:10
45:14 55:8 73:13 80:6 83:15
84:25 90:6 91:25 92:23 96:21
104:2

**ordinary** 61:4

**original** 7:6 9:13 22:3 62:21
64:9 76:13

**outlined** 108:2

**overlooked** 99:16

**overly** 38:20

**overwhelming** 103:1

**owned** 25:11

**owners** 26:4

**ownership** 25:17

---

## P

**pages** 19:12 43:25 68:16 70:8

**painted** 67:19

**painting** 71:17

**paper** 32:25 60:21

**papers** 52:17 103:11,16

**paragraph** 13:25 14:16 18:4
19:13 44:7 81:10,11

**paragraphs** 18:3

**parrot** 47:11

**part** 5:4,22 7:19 16:11 21:20
49:23,24 51:25 53:5,9 74:25
82:17 87:9 88:24 98:25

**participate** 103:18

**participated** 21:23

**participation** 103:5 110:17

**parties** 5:2 18:4,5,22 19:22
45:20 88:8 98:16 107:23
109:21 110:17

**parties'** 34:10

**partner** 40:13 71:11

**party** 18:5,19 21:1,23 26:22
28:6,10,11 32:20 33:8,10,24
36:11,17 37:10,14 38:7 41:25
42:15,25 43:1 44:11 45:5,17,
24 58:16 75:21 80:7,16 81:9
82:2,9 84:16 85:6 87:25 91:25
94:8 96:4 98:21 101:4

**party's** 89:5

**passed** 22:14

**past** 98:11

**patent** 14:1,3,4,8,10 20:1
22:24 27:20 60:11,12 65:5
98:13 100:10

**patented** 21:25

**patents** 14:1,5,6,12,19 15:18
16:11,12 19:6 20:3,8,21 22:2,
7,8,9,21 24:5 25:6,9,11,14,23
27:13 28:14 29:1,6,8 61:12
65:4 94:11 100:22

**Patents-in-suit** 14:5 20:13,
18 22:23 28:13,17

**Patil** 70:20

**Paunovich** 3:10,12 4:19,20
6:19 7:10,13 9:23 10:2,12,18,
22 11:1 17:20 20:4,23 21:10,
14,17 23:12,21 24:6,13,23
25:5,19 26:10 28:8 32:10 33:3
46:2,5 47:5,8,22 48:13 49:2,8,
18 50:3,22 51:1,10,15,25
52:11,22 57:7 68:12 74:21,25
75:8,17 76:21 77:10,23 78:25
80:5,13 81:5 82:1,6,19 85:14
87:21 88:5 91:18,20 94:1,15
95:2,10,19,25 96:9 98:3,4
102:18 110:5,6

**pause** 15:3

**PDF** 93:3

**pending** 4:22 5:12 8:7

**people** 29:6,13 34:1 62:20
110:2

**people's** 83:23

**percent** 94:22

**Perfect** 51:13

**perform** 37:17

**performance** 77:25

**perfunctory** 90:16

**period** 25:10 41:7 79:16,20, 21 80:21 90:2 94:10 103:24

**permission** 33:3

**permitted** 30:14

**persevere** 73:7

**persistently** 40:10

**persists** 39:11

**person** 28:24 34:9 63:15 97:15

**personal** 18:8,9

**personally** 53:22 70:5

**persons** 61:3

**pertinent** 15:7 57:23

**phrase** 35:15 37:3,4 42:5 43:3

**picked** 70:18

**picture** 67:19 71:17

**piecemeal** 108:5

**pieces** 93:1

**place** 55:11 109:23

**Plaintiff** 24:4 30:6 51:4 74:10 85:1

**Plaintiff's** 33:6,7 49:16

**plan** 31:10

**plane** 4:8

**plate** 87:12

**platform** 79:18

**plug** 51:12

**pocus** 32:18

**point** 6:14 9:12,24 23:21 24:3,24 25:5 26:20 29:16 40:23 41:23,24 49:24 51:5 65:11 66:19 70:18,24 71:22 73:25 77:5 79:22 82:15,22

85:18 88:6 91:8 93:14 95:8 99:4 105:3 110:15

**pointed** 18:2 42:9

**pointing** 27:11 28:10

**points** 42:8

**popped** 46:17

**port** 89:6

**portfolio** 14:1,2,3,4,8,10,20 15:18 16:12 20:1,10 21:25 22:4,6,10 27:21

**portion** 42:25 43:2 44:5 58:4 76:1 79:25 81:12

**position** 4:1,10 8:9 19:21 23:13 24:3,7 35:14 41:18 44:2 61:3,6 67:3 78:12 83:6 84:6 88:3 89:9,11 98:19 104:6 110:11

**positions** 39:8 86:1,17 87:23 105:24

**possession** 13:9,24 17:25 18:10 19:8 20:12 28:1,2 30:22 31:15 38:22 72:15 98:14,22

**possibly** 19:18 71:25

**post-haste** 45:15

**posture** 10:3

**Powerpoint** 28:14

**practice** 8:21 34:13 35:8 36:24 37:13 39:2 80:21 104:8 106:14

**practices** 43:8

**practicing** 35:1

**pre-lawsuit** 13:5

**pre-suit** 23:10

**predictable** 27:16

**prejudice** 9:8

**premature** 101:14

**preparing** 69:10

**present** 36:24

**presentation** 19:4 20:5,7,9 22:4 55:23

**preserve** 86:9 87:15

**preserved** 38:1

**preserving** 63:13

**presumes** 28:20

**pretty** 71:13

**preview** 16:16

**previously** 53:11 76:8

**primarily** 6:20

**primary** 91:24

**print** 4:9 61:18

**prior** 25:15 54:12 58:22 69:21 86:7 87:18 94:10

**priv** 15:18

**privilege** 16:17 18:12,18,19, 23 28:21

**privileged** 15:19 18:20

**privy** 64:24

**problem** 32:2 37:15,16 38:2, 13,23 39:10 40:11 42:19 43:5 62:8 64:19 69:25 76:21

**problems** 38:12

**proceed** 3:17 4:15 74:22

**process** 58:12 72:2,5

**produce** 8:22 9:1 38:25 41:19 70:2,13,16 71:5 92:24 93:23 98:17 103:6 105:14 108:3

**produced** 18:16 19:2 25:6 27:18 45:23 46:13 51:21 53:22 67:24 68:16 69:8,14,21 70:2 72:1,19 78:17 93:2,3,4 99:17 100:2,13,15,25 101:5, 18,20 102:4,6,11 103:1,2 110:7

**product** 5:18 6:4,5 34:23 44:15,16,20 45:2,3 47:4 48:1, 2,4,14 49:3 50:10 51:20 52:4 53:2 55:4 59:15 62:2 71:20 78:6 80:6 89:15 93:16 94:3,18 95:11

**production** 9:5 42:16 70:10, 21 74:13 76:25 93:6 99:1,8 102:25 108:15 109:1,6

**productions** 6:10 99:20

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

**products** 5:7,9,20 6:1,6 8:9 11:14,16,24,25 12:1,4 16:13 34:7,8,10,13,24 35:6,8 36:22 37:12,16 38:18 39:1 41:5,12 43:7 46:10,14,17,21,22 47:1, 13 48:20 49:10,12 50:1,17 51:6,16,19,24 53:5,24 54:1,7, 17,18,20,24 55:1 58:11 62:9, 13,14 63:2,19,25 64:1,5 67:11 68:10 71:4,12 72:8,11,15 75:24 76:16 79:6,15,19,24 80:1,19 81:15,17,18,19 82:10 83:1,7 85:24 86:14 88:25 89:13 91:22 92:2,4,6,11,17,21 96:2,16,19,21,25 99:5,7,9,11 102:15 104:17

**program** 100:10

**promise** 74:10 100:3

**promptly** 5:10 69:12 97:17 104:2

**proof** 43:9,10

**properly** 80:12

**propounded** 66:24 90:18 105:20

**prove** 13:21

**provide** 14:23 15:2 20:20 23:7 27:25 30:15,24,25 33:4 34:25 41:7 45:16,25 49:5 50:18 60:19,21,24 67:8 70:24 73:24 83:15 84:15 86:2,23 88:2 96:18 97:1,12,13 102:15 104:13 105:21 106:23,25 108:12

**provided** 15:23 17:1,24 19:12,16 21:3 22:5 23:19 30:18 34:2 47:6 63:10,11,17 65:14,19 67:20 68:7,23 69:2, 5,11 71:2 73:20 75:19 77:3 84:18 85:21 87:6,9,10 92:17 93:10 97:11,18 101:24 103:16,20,23 105:20 108:21, 22

**providing** 47:15 58:14 108:9

**PTAB** 14:6

**public** 48:19

**publication** 51:18

**publicized** 65:9

**publicly** 81:23

**pull** 50:22,24 65:23

**purchased** 53:5

**purpose** 7:7 25:25

**purposes** 88:18,22

**pursuing** 61:9

**pushing** 38:25

**put** 8:9 13:21 23:14 37:22 42:21 51:23 52:17 54:14 57:5 59:12 75:11 77:23 78:22 82:25 83:3 84:17,21 92:18 99:3 104:25 105:1 106:6

**puts** 110:11

**putting** 5:17 13:9 79:11 93:8

---

## Q

**QLOGIC** 13:6 44:17 61:17,19 72:6

**qualification** 36:4

**quantity** 68:18 95:13

**quarter** 19:15 68:23

**question** 15:21 26:8,18 34:3 55:17 64:14 73:9 79:22 81:6 82:5 101:2

**questions** 15:22 16:15 26:16 27:24 29:8 34:2,5 63:4 74:9 84:12 102:7 109:14

**queue** 103:6

**quick** 21:17 85:16 96:10

**quickly** 98:5 109:18

**Quinn** 26:13,19 31:13,16 65:11 71:10 73:11 106:18

**quote** 42:14 52:4 76:1

---

## R

**rabbit** 96:1

**race** 45:22

**raise** 32:2

**raised** 76:7,8 79:13 86:22 89:7 107:8

**raising** 10:9

**ran** 107:18 108:19,24

**range** 81:17,18

**reach** 8:18

**reached** 5:12 6:24 25:12 107:25

**reaching** 7:14

**read** 21:11 39:14 41:3 42:25 43:2 57:22 58:4 66:8,9 69:1 79:1 90:15,21

**readily** 42:14

**reading** 54:24 106:5

**reads** 77:24

**ready** 3:17 103:8

**real** 52:8

**reason** 18:18 35:11,14 52:18 55:12 67:10 88:1 97:15 105:15

**reasonable** 73:24 90:2 102:10 110:9

**reasons** 87:13

**rebranded** 53:7

**rebut** 82:19 86:21

**recall** 7:25 11:19

**recalling** 7:16

**receive** 13:19 41:9 60:25 61:1 66:3 71:1 78:1,2

**received** 4:5 22:3 58:7 68:10 100:1

**recent** 33:5 46:16 51:17 68:23

**recently** 50:17 91:5 94:23

**recess** 56:1,6

**recommendation** 4:21

**record** 3:4,7 35:19 36:2 39:23,24 40:9,25 41:2,22 51:14 56:16 77:5 79:1 84:13 103:12,15

**recounted** 9:12

**recounts** 40:4

**reduce** 104:3

**refer** 76:10 81:13,16

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

**reference** 14:14,17,22 28:15 72:21

**referenced** 82:20

**references** 14:19 74:7

**referred** 20:1,5 63:20 99:2

**referring** 18:5 20:2,9 66:14

**refers** 13:25 51:16,19

**reflected** 43:11

**refresher** 80:17

**refusal** 49:4,6 103:18

**refuse** 8:4

**refused** 12:11 47:2 93:5

**refusing** 45:24

**regard** 37:24 100:22 109:20

**reiterated** 22:5

**rejected** 64:7

**relate** 102:19 104:20

**related** 3:22 90:25 96:4

**relatedly** 98:8,25 104:9

**relating** 79:10 98:9

**relationship** 25:3 31:6

**relative** 5:9

**released** 46:11 50:17 51:18, 22

**relevant** 14:9,11,13 16:10 19:21 20:14 38:19 41:6,7 69:18 93:14 97:19 100:12 101:19 102:12 103:13 110:25

**reliance** 52:8,13 53:18

**relies** 30:6

**rely** 20:19 51:2 101:12

**relying** 27:23 48:25 51:5 53:15 55:20 62:24 63:1 76:4 88:11

**remarkable** 39:7,21 42:24

**remember** 11:24

**repeated** 86:16

**reporter** 55:5

**repository** 71:21

**represent** 35:22 53:19 77:13, 15 79:23

**representation** 17:7 26:8 31:19 41:15 51:6 76:7 98:2,24 101:24

**representations** 29:21 53:16 110:13

**representative** 6:6 14:1 18:20 89:15

**represented** 30:11 49:12 52:15 75:18

**representing** 31:16 54:3 82:7 101:3

**represents** 26:13 31:13 79:15,18

**request** 42:16 76:13 91:3

**requested** 45:16 69:22 96:18

**requesting** 95:22

**require** 87:22

**required** 8:22 96:18 102:25

**requires** 8:3

**researched** 64:5

**resisted** 101:13

**resisting** 45:24

**resolve** 36:1 43:13 58:3,6 59:9 62:8 73:9 85:9

**resolved** 45:6

**respect** 4:16 11:14 13:18 31:20 32:19,20 37:15 41:24 44:11 54:16,20 57:10,14 59:23,25 60:3 63:25 64:25 85:5 88:6,16 91:9,25 100:20 101:23 102:14 109:7

**respectfully** 53:15 80:5 110:6

**respond** 24:25 26:17 34:2,4 47:15 52:15,19 55:8 73:9 74:2,10 75:21 81:12 85:3 89:18 96:12 97:17 100:5 104:25

**responded** 52:21,22 55:17 56:18,19 57:13 58:17 60:3 63:17 73:20 78:13 89:19

**responding** 58:10

**response** 12:19 13:19,20,23 14:13 15:10,14 16:1,14,21 17:1,5,7,9,22,23,24 18:16 19:1,3,11 20:4 21:18 22:12 24:12,13,21 27:14,16,25 29:19 30:8,12,15 33:6,7,10 36:13,14 37:19 38:9 42:8 44:1,19 47:6,8,18,20 48:8,11 49:1,7,15 50:9 51:8 53:10,18 55:17,18 56:25 57:9 61:15 63:11,12 64:6 65:20 73:17 75:15 80:16 81:8 82:4,7 84:15 85:11 86:3,4,12 87:1 89:1 91:4 96:3,16 99:16 106:3 108:20

**responses** 6:3 12:25 16:4,8 38:6 51:3 56:13 58:8,14 63:9, 10 66:15 75:2,3,5,13 76:22 82:9 85:20 86:24 91:5,10 108:25

**responsive** 50:1 51:6 55:21 64:13 102:12 110:22

**rest** 46:2 57:11,22 87:19 96:10

**restrict** 62:9 105:7

**result** 92:10

**revenue** 68:18,19 92:13,19, 20,22 93:17 95:13 96:4 97:3, 22,24

**revenues** 79:21 92:10,14,16

**review** 4:10,17 6:11 7:3 63:25 68:2 89:22 90:2

**reviewing** 14:19

**reviews** 17:23

**revisions** 90:14

**RFAS** 90:19

**rise** 3:2 56:7,9

**Roce** 35:3 37:7 41:10 46:19 50:19

**Roce2** 35:3 37:7

**rog** 28:10 58:16 95:21

**rogs** 41:24 61:1 82:16 84:16 85:6 89:23 90:19 97:7

**Rohan** 70:19

**round** 50:13

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

135Index: RSC..sold

**RSC** 14:20 20:17 22:17 35:2, 16 37:7 41:9 45:12 46:18 55:6 59:5,23 60:9,14,22 61:5,10, 20,25 64:16 67:6 80:25

**RTL** 7:25 8:4 67:25 68:8

**rule** 11:8 42:15 81:16

**rules** 86:7

**rulings** 87:18

**run** 93:11 107:21,23 108:17, 22

**running** 108:10

**rushed** 73:16

**rushing** 110:2

---

**S**

**sale** 36:23 38:19 80:20 92:10, 20 93:11 94:14,17,20 95:1

**sales** 92:20 94:19,22 95:16 97:23

**sand** 93:14

**sat** 103:24

**satisfied** 30:1

**schedule** 9:20

**scheduled** 7:3 9:6 22:8 102:21

**scheduling** 12:16

**scope** 57:17 105:7,14,21

**screen** 77:12

**search** 14:6 71:15 102:6,11 103:6,17 107:17,20,22 109:18,24

**searched** 71:20,21,22 109:13

**searches** 102:9 107:14,19, 22,23 108:10,17,19,22,24

**seated** 3:3 56:10

**section** 22:13

**SECURITY** 3:2 56:7,9

**seek** 34:12 38:21

**seeking** 12:4 41:5 48:22 110:5

**sees** 35:16,17 40:24

**segment** 58:25 60:25 66:3 77:25 78:1,2,7

**segmentation** 58:25 59:1,2 77:25 91:12

**sell** 64:5

**send** 41:8 59:1

**sense** 79:23

**separate** 5:23 10:6 69:1

**September** 9:2 12:12,13 40:3,7 59:9 90:7 97:15 103:7 106:19 108:21 109:12

**serially** 8:18,21

**series** 46:14,24 48:2,3,4,5,14 50:17,25 51:9,16,19,20,24 65:8 68:17 77:19 78:20 79:1,2 81:13 92:7

**serve** 10:8 11:8,21 12:12,13, 18

**served** 4:7,23 5:16 10:5 11:18 12:7,11 33:21,23 36:10 46:20 58:22 63:24 68:21 83:14 91:5

**service** 10:15 11:5 12:2 92:16

**services** 34:25 36:22 80:19 96:5 97:3,8,12

**set** 6:22 9:20 12:19 30:7 33:6, 7 49:16 53:6 66:13 75:13 79:10 82:9 83:20

**shakes** 89:14

**share** 14:23 28:19 71:22

**shared** 15:2

**sheet** 68:1

**sheets** 48:15 50:18,24 78:8

**ship** 68:20 95:13

**shipment** 93:10

**short** 19:15 57:1 79:16 100:4

**shortly** 7:21 58:22

**shoulders** 57:25

**show** 21:13 36:16 48:14 62:6 65:4 72:14 80:11 86:10 106:15

**showing** 70:8

**shown** 49:7 62:21 75:4

**shows** 68:16,17,18,19

**shrugged** 57:25

**side** 5:17 14:3 41:8,9 60:25

**sided** 14:18

**sides** 98:10

**sight** 57:16

**sign-in** 68:1

**significant** 68:5

**similar** 54:25 59:2 69:4 84:23 85:10

**similarly** 37:16

**simple** 25:23

**simply** 6:20 8:10,12 39:7 41:18 43:6 45:24 67:21 71:9 73:23 76:19 98:13,22 99:22 100:2 103:13

**single** 5:17 18:14

**sit** 40:1 104:5

**sitting** 87:8

**situation** 23:23 29:25 88:10

**situations** 45:21

**size** 19:15

**skill** 61:4

**skis** 26:3

**slide** 77:23

**slides** 50:22 51:11 57:5

**slightly** 88:17

**slipped** 59:15 73:16

**slow** 104:4

**slower** 55:5

**small** 46:5 61:18 85:18

**smaller** 79:25

**Smith** 3:15,16,18

**so-called** 23:1

**sold** 11:25 36:23 41:6 44:17 53:9 68:18 80:20 93:16,18 94:3,18,21 95:12

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,  on 09/14/2017

136Index: sole..T10

sole 53:17

sooner 7:1

sort 19:20 22:3 36:4 45:25
49:13 86:7 87:11 97:24 99:4
104:19,24

sorts 37:1 38:12 45:20 87:18

sounds 110:13

soup 14:21 20:15 23:1 58:25
59:7 60:24 65:3 83:22 91:11

source 6:11 69:14 72:25
73:13

speak 26:16,22 27:2 55:5
58:2 62:17 90:9,10 103:12

spec 72:5

specific 5:2 14:12 18:3
20:13,14 22:15 59:21 63:19
74:23 105:5

specifically 7:24 75:14 105:1

specifications 8:8

specificity 5:5 20:3,21

spelled 20:17 21:10

spent 68:5 69:9 71:24

spirit 26:8 44:13

spoke 58:9

spoken 57:7 62:18,19

spreadsheet 69:3 92:18 93:2
94:1

spreadsheets 69:1,7,10
93:25 94:14,25

staged 109:10

staggered 9:5

standard 62:20 87:11

standards 61:9,10

stands 61:24

start 3:23 8:12 13:1 32:11
40:15 56:18 95:10 105:11
107:14 108:14 110:23

starts 43:17,18,19 57:15

state 19:20 53:14

stated 58:4

statement 35:18,20,22 40:8,
25 41:1 68:12 83:16 84:17
85:5,10 87:23 100:4

statements 87:18

States 42:13

status 21:24

step 9:24 77:2

Stern 3:9,11 7:21 12:14 32:8,
9,14 33:2,13,15 34:20 40:7,22
44:9 46:9 49:2 50:7 52:5,17
54:9,11 57:1,7,22 58:2,4,9

stipulation 11:20

stop 36:25 100:3

stories 29:14

story 23:24,25 25:8 103:10

streamline 88:18

stricken 36:2,5,7 37:12 39:24
40:9 41:22 75:20 84:14

strike 4:13 5:1,12 36:1 57:23
60:8

striking 59:10

string 50:7

stuff 45:22

subject 10:8 20:21 24:9
34:20 39:16 42:19 44:18
49:21 52:2 74:16 82:3 85:6

subjects 104:20

submit 28:15 53:16 61:22

submitted 13:20

subpoenaed 21:1 27:4

subscriptions 92:14

subsection 92:13,14 96:5
97:9

subsequent 20:11 50:16

subsequently 75:20

substantial 107:14,16
110:18

substantially 54:25

substantive 86:3 90:13,17

substantively 38:20

sudden 74:18

sue 28:3,4,5

sufficiency 27:9 55:18

sufficient 6:12 86:9 87:14

suggest 84:15

suggested 5:14

suggesting 38:23

suggestion 18:12

suit 19:6 25:15 94:7,11

sum 75:18

summarize 96:1

summary 30:5

supplanted 7:8

supplement 7:18,24 9:4,15
10:11 16:3 30:12,16,20 33:9
39:16 63:9 68:21,22 75:23
76:2 89:23 90:3

supplemental 4:5 7:8 11:18,
21 12:7,9 13:14 31:23 33:5
58:7,8 63:12 64:23 65:1,13
73:2 75:13,15 83:14 85:20
86:12 87:7 88:20 91:4 92:25

supplementation 7:15

supplementations 88:24

supplemented 19:14 23:16
68:24

supplied 41:6

support 5:4 27:11 34:25
36:24 41:7 80:21 92:15

supported 5:23 6:8 88:19,22

supporting 5:5 35:2 55:6

supports 77:5

suppose 102:8

supposed 29:5 80:4 109:22

surprised 82:17 89:8,11
106:1

suspect 11:16

---

**T**

---

T10 70:19

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

**takes** 18:2 99:12

**taking** 16:2 24:3 35:14 50:5
71:17 76:14 78:12 83:5

**talk** 16:13 36:3 53:23 58:5
59:21 62:16 66:9 71:18 97:3
107:24

**talked** 20:3 74:12 82:22 98:11

**talking** 10:10 15:11 17:21
22:17,19 28:10 61:19 90:21
91:23 92:8 104:21

**talks** 18:4 21:21

**TC** 70:7,11

**TCP** 59:1 77:25 91:12

**technical** 8:7,16 71:14 72:1,
19,24 77:20 79:10 99:1,25
101:23 102:1,11

**technique** 59:2

**technologies** 14:2,15 20:14
22:1,15,22 23:2

**technology** 101:5

**teed** 49:22

**telephone** 18:7

**telling** 37:18 44:9 45:15

**tells** 55:12

**temporally** 38:21

**ten** 108:19 110:7

**term** 56:14 57:12 59:5 63:8,14
83:19 91:12

**terminology** 77:24

**terms** 14:24 15:17 16:11
25:24 27:3,4,12 38:18 45:12
61:5,13,14 62:21,25 65:22,25
66:12 67:14 68:6 72:2,6 76:14
77:16 78:11,14,16 81:22
83:23 84:3,4 85:10 100:15
103:6,11,17,23,24 106:4
107:17,20,23 108:2

**testified** 69:6

**testify** 104:17,23

**testifying** 23:24 104:11,14
106:23

**testimony** 23:19 26:25 27:1
102:15 104:19 105:7

**theories** 5:8 57:14,18 58:19
59:18 66:20 87:6

**theory** 60:1 103:10

**thereabouts** 78:21

**thing** 6:13 12:6,24 68:9 86:15
87:5 104:24

**things** 15:11 37:1,6 38:23
45:7 48:18 55:24 56:2 67:17
71:5 73:9 74:23 76:18 78:17
88:1 93:13 97:7 99:19 100:25

**thought** 12:24

**thousand** 94:18,19

**thousands** 103:2

**three-year** 79:20

**tie** 67:5

**Tier** 3:5

**time** 6:24 7:3 9:18 12:11 24:8
25:5,10,12 26:2,5,24 34:3
41:7 56:21,25 57:21 58:1
61:12 67:22 68:5 69:9 71:24
72:16 78:21 79:16 90:23 91:5
95:16 103:25 105:4 108:4

**timely** 42:15

**times** 41:11 68:2 97:6 105:16
107:25

**timing** 6:20 7:10 9:4,18 27:4

**Tina** 106:18

**title** 70:11

**today** 41:3 56:14,16 73:5 76:7
104:21

**told** 8:25 9:9 39:9,10,22,23,24
41:11 42:20 45:1 47:9 48:17
53:19 54:3 59:20 62:12 63:9
69:20,25 70:4 71:13 77:1,9
97:5,9,10 99:6 100:9,20
105:13,15

**tonality** 32:16

**tools** 34:11

**tooth** 7:22

**top** 40:24 80:24

**topic** 104:9

**topics** 19:7 85:14 104:11,13,
14 105:5,8,9,13,20 106:6,24

110:25

**total** 75:18 79:14 93:17 94:19

**totality** 38:13

**transcript** 35:23 52:12 57:22

**transferred** 28:25

**translation** 73:12,20

**tree** 89:14

**tricky** 28:3

**trouble** 79:4,9

**true** 16:25 17:1 27:17 50:14
56:17 67:21 69:4 71:6,9 72:25
73:23 76:20,23 86:15 87:5
105:25

**turn** 14:18 43:25 46:1 80:14
85:15

**turned** 20:20 69:25 70:14

**turns** 16:7 40:24

**two-thirds** 67:2

**tying** 60:12 90:14

**type** 69:5 90:20

**types** 72:3

**typically** 87:22,23

**U**

**ultimate** 88:3

**ultimately** 15:16 25:8 26:1
34:14 104:5

**unable** 8:18

**unaware** 43:8

**uncharted** 5:8

**unclear** 10:3 12:6 104:18

**uncorroborated** 24:21

**understand** 11:3,4 24:19
30:4 41:12 45:12 46:18,25
51:19 52:7,13 55:15 59:14
61:5 62:23 64:21 65:7 68:9
76:6,9,19 77:17 78:5,16,19
80:3 84:3 87:17,25 94:5
96:17,24 110:4

**understanding** 11:11,12
19:25 44:14,17 57:18 59:23,

ALACRITECH, INC. vs CENTURYLINK, INC., ET AL
MOTIONS HEARING,   on 09/14/2017

25 60:3 62:12 63:4,16 64:19,
20 65:19 66:13 77:16 78:11,
12,14 82:13 83:23,24 84:2
94:25 104:23 106:21

**understandings** 62:25

**understood** 56:20 57:13
58:18 64:11 74:19 76:17
77:13,14,19 80:25 86:6 92:3
98:20 106:4

**unequivocal** 35:23

**unfettered** 104:19

**unholy** 45:10

**unique** 36:11,21 38:19 80:18

**unit** 93:11 94:21

**United** 42:13

**units** 93:17

**universe** 53:24

**unlike** 7:21 8:10

**unmanageable** 108:16
110:15

**unqualified** 44:11

**unreasonable** 89:25

**update** 4:2 5:14 8:17,23

**updated** 5:11

**updating** 96:2,15

**upgrades** 92:15

**users** 51:22

―――――――――――

**V**

**vague** 14:14 38:20

**variety** 34:8

**verbal** 21:21 23:7 27:23

**Version** 70:7,12

**versions** 33:11 47:1

**versus** 3:5

**view** 49:10

**vilified** 58:13

**violated** 30:8 84:8

**vis-a-vis** 23:15 65:1

**voiding** 29:10

**voluminous** 70:9 88:20

**voluntarily** 33:18

**VP's** 71:19

―――――――――――

**W**

**waiting** 45:22

**waived** 42:17

**walk** 61:13

**wanted** 101:11 106:5 108:22

**warranties** 96:5

**waste** 57:21

**wearing** 91:9

**weeds** 108:18

**week** 9:2 103:7 105:6

**weeks** 6:23 9:7 19:24 22:14
27:5 45:21 58:8 88:15 102:22,
23 103:22

**weight** 35:20

**whatsoever** 75:24 76:3

**white** 20:18 22:25

**wide** 14:7

**Wiki** 71:22

**willful** 13:7,21 28:4

**willfulness** 15:4 24:7 84:17

**wishes** 54:14

**withheld** 28:22 52:9 72:8
101:25

**withhold** 55:20 56:13 57:12
63:7,13 71:14,25

**withholding** 76:25 79:9

**witnesses** 23:20,24 29:22,23
74:17 102:8,21 104:10,14,16,
17 105:5,14

**word** 6:9 7:9 35:15 36:1,7
37:6,15,20 38:3 39:23 40:9,
11,16,17,19 41:21,22,25 42:4,
19 43:2,4,14,22 44:2,9 49:11
52:19 53:15 66:17 67:1,4
75:20,22 80:8 81:2 90:16

**words** 23:4 27:22 38:1 65:5
66:12,21 80:11

**work** 17:15 45:20 68:10 73:6
93:22 99:19 109:17 110:19

**worked** 25:4 99:18 103:4
110:19

**working** 8:12 13:19

**works** 62:3

**world** 36:5

**worth** 70:3

**wrap** 100:4

**wreak** 41:20

**write** 40:12

**writing** 40:15 41:17 75:11

**written** 16:7 40:7,13 75:4

**wrong** 58:1 67:23

**wrote** 41:3

―――――――――――

**Y**

**year** 20:16 46:11 68:20 69:7

**years** 94:4,24

**yesterday** 4:8 66:25 90:19

**yield** 74:12 85:4