1                  IN THE UNITED STATES DISTRICT COURT

2                  FOR THE EASTERN DISTRICT OF TEXAS

3                          MARSHALL DIVISION

4    ALACRITECH, INC.              )(    CIVIL ACTION NO.

5                                  )(    2:16-693-RWS-RSP

6    VS.                           )(    MARSHALL, TEXAS

7                                  )(

8                                  )(    SEPTEMBER 4, 2019

9    CENTURYLINK, ET AL.           )(    3:30 P.M.

10                          MOTION HEARING

11          BEFORE THE HONORABLE JUDGE ROY S. PAYNE

12             UNITED STATES MAGISTRATE JUDGE

13

14   FOR THE PLAINTIFF:     Mr. Joseph M. Paunovich
                            Quinn Emanuel Urquhart &
15                          Sullivan, LLP
                            865 S. Figueroa Street
16                          10th Floor
                            Los Angeles, CA 90017
17
                            Ms. Michelle A. Clark
18                          Littler Mendelson, PC
                            5200 N. Palm Avenue
19                          Suite 302
                            Fresno, CA 93704
20
     COURT REPORTER:        Ms. Shelly Holmes, CSR, TCRR
21                          Official Reporter
                            United States District Court
22                          Eastern District of Texas
                            Texarkana Division
23                          500 N. State Line Avenue
                            Texarkana, TX 75501
24                          shelly_holmes@txed.uscourts.gov

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)

```
 1   FOR THE PLAINTIFF:        Ms. Claire Henry
                               Ward, Smith & Hill, PLLC
 2                             1507 Bill Owens Parkway
                               Longview, TX 75604
 3

 4   FOR INTEL:                Mr. Garland T. Stephens
                               Weil Gotshal & Manges, LLP
 5                             700 Louisiana Street
                               Suite 1700
 6                             Houston, TX 77002

 7                             Mr. David Folsom
                               Jackson Walker, LLP
 8                             6002-B Summerfield Drive
                               Texarkana, TX 75503
 9
                               Mr. Gil Gillam
10                             Gillam & Smith, LLP
                               303 South Washington Avenue
11                             Marshall, TX 75670

12   FOR DELL:                 Mr. Brady R. Cox
                               Alston & Bird LLP
13                             2828 N. Harwood Street
                               Suite 1800
14                             Dallas, TX 75201

15                             Mr. Deron Dacus
                               The Dacus Firm, PC
16                             821 ESE Loop 323
                               Suite 430
17                             Tyler, TX 75701

18   FOR CENTURYLINK:          Mr. Frank V. Pietrantonio
                               Cooley, LLP
19                             One Freedom Square
                               Reston Town Center
20                             11951 Freedom Drive
                               Reston, VA 20190-5640
21
                               Mr. Deron Dacus
22                             The Dacus Firm, PC
                               821 ESE Loop 323
23                             Suite 430
                               Tyler, TX 75701
24

25
```

```
 1   FOR CAVIUM:              Ms. Karineh Khachatourian
                              KXT Law, LLP
 2                            1775 Woodside Road
                              Suite 204
 3                            Redwood City, CA 94061

 4                            Ms. Melissa R. Smith
                              Gillam & Smith, LLP
 5                            303 South Washington Avenue
                              Marshall, TX 75670
 6
     FOR WISTRON, WIWYNN
 7   AND SMS:                 Mr. Nelson Moon Hua
                              K&L Gates, LLP
 8                            1717 Main Street
                              Suite 2800
 9                            Dallas, TX 75201

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              COURT SECURITY OFFICER:  All rise.

 2              THE COURT:  Good afternoon.  Please be seated.

 3              For the record, we're here for the motion hearing

 4    in Alacritech versus CenturyLink, et al., Consolidated Case

 5    No. 2:16-693 on our docket.

 6              Would counsel state their appearances for the

 7    record?

 8              MS. HENRY:  Good afternoon, Your Honor.  Claire

 9    Henry for Plaintiff, Alacritech.  I'm joined by Joe

10    Paunovich and Michelle Clark.

11              MR. PAUNOVICH:  Good afternoon, Your Honor.

12              THE COURT:  Good afternoon.

13              Thank you, Ms. Henry.

14              MR. STEPHENS:  Good afternoon, Your Honor.

15    Gil Gillam, Garland Stephens, David Folsom for Intel, also

16    our in-house counsel, John Edwards, is here, as well.

17    Ready to proceed, Your Honor.

18              THE COURT:  All right.  Thank you, Mr. Gillam.

19              MR. DACUS:  Afternoon, Your Honor.  Deron Dacus

20    here on behalf of Dell and CenturyLink.  And here with me

21    is Brady Cox on behalf of Dell and Frank Pietrantonio on

22    behalf of CenturyLink.  We're ready to proceed, Your Honor.

23              THE COURT:  All right.

24              MS. SMITH:  Good afternoon, Your Honor.  Melissa

25    Smith on behalf of Cavium, and I'm joined by Karineh
```

1    Khachatourian, and we are ready to proceed, Your Honor.

2            THE COURT:  All right.

3            MS. KHACHATOURIAN:  Good afternoon, Your Honor.

4            THE COURT:  Thank you, Ms. Smith.

5            MR. HUA:  Good afternoon, Your Honor.  Nelson Hua

6    for Wistron, Wiwynn, and SMS.  We're ready to proceed, Your

7    Honor.

8            THE COURT:  All right.  Thank you.  Good enough.

9            Let me see, we are here on the Plaintiff's motion.

10   So let me turn it over first to counsel for Plaintiff.

11           MR. PAUNOVICH:  Thank you, Your Honor.  Joe

12   Paunovich on behalf of Alacritech.

13           We're here today on a motion to set a case

14   schedule in this matter after the conclusion of PTAB

15   proceedings before the Patent Trial and Appeals Board.

16           As Your Honor may recall, this is a case that

17   dates back to 2016, and in December of 2017, the parties

18   had reached a stipulated agreement to stay the case through

19   the final determinations of -- by the PTAB with respect to

20   the IPRs filed by the Defendant group.

21           We did reach that stage, and then had a

22   conversation with Defendants about setting an agreed-upon

23   schedule for the case, at which point we learned that

24   Defendants were unwilling to set a schedule and were

25   seeking to continue the stay in this matter subject to the

1  appeals that are pending from some of those PTAB

2  proceedings.

3       From our perspective, we believe that under the

4  parties' stipulated agreement, the case should proceed to

5  trial at this time.  At the time of the stay, we were

6  approximately four months from trial.  As I read the

7  briefing, as I understand Defendants' argument, one of the

8  primary criticisms of our request here today is that they

9  are contending that we are seeking to re-open and basically

10 re-conduct the case.

11      I want to be very clear with the Court that that

12 is not at all what we are seeking.  The schedule that we

13 had proposed and did not get a response from Defendants on

14 was frankly in an interest to try to reach an agreed-upon

15 schedule that would get us to trial.

16      We would be perfectly comfortable bringing us

17 right back to essentially the four-month schedule that we

18 had to proceed to trial.  Most of the discovery that was

19 subject to certain limited disputes that were pending

20 before the Court at the time of the stay has actually been

21 agreed upon in the stipulation, that it would just -- it

22 would be provided on a more speedy track by the Defendants.

23      The proposal that we made was in the hope of

24 reaching an agreed-upon schedule.  If Defendants are

25 comfortable with the schedule that they already agreed to

1   in that stipulated stay, we can certainly have this case on

2   track to move very quickly to trial.

3          In terms --

4          THE COURT:  Mr. Paunovich, what is your thinking

5   on proposing that we go forward to a trial, even on the

6   cases as to which the PTAB invalidated -- or even on the

7   claims as to which the PTAB found them invalid?

8          MR. PAUNOVICH:  Sure.  So as it currently stands

9   in the PTAB rulings, there's no universe where we will not

10  go to trial in this matter.  There are a number of the IPRs

11  in which claims -- the claims of validity was sustained.

12  Whatever criticisms Intel and the other Defendants have of

13  that, the reality is those petitions have now been vacated.

14  There is no right to appeal on them, and we will go to

15  trial on those claims.

16         And it's not much different than as we understand

17  this Court's typical precedent, assuming prior to stay, if

18  you have a set of asserted claims and some but not all of

19  those claims are preliminarily found to be invalid by a

20  PTAB board, the normal procedure would be to proceed in the

21  absence --

22         THE COURT:  By "preliminarily found," you mean

23  just that the IPR was instituted?

24         MR. PAUNOVICH:  No, I do not, Your Honor.

25         For example, in the Personal Audio case, this --

```
 1   Judge Gilstrap had actually allowed both claims that had
 2   their validity sustained, as well as some claims that had
 3   been invalidated at a final written decision before the
 4   PTAB to proceed to trial.
 5        THE COURT:  Are you talking about Judge Clark's
 6   opinion?
 7        MR. PAUNOVICH:  I apologize if I misspoke on -- on
 8   the judge that handled that case.  But I believe it's the
 9   Personal Audio v. Google case here in this district.  I
10   thought it was Judge Gilstrap, but I may be mistaken on
11   that.
12        THE COURT:  There are a variety of Personal Audio
13   cases, so it's kind of hard to keep up with.  But the one
14   that I saw mentioned in the brief was out of Beaumont, but
15   if --
16        MR. PAUNOVICH:  You know, I can -- I've got the
17   citation here in my table of authorities.  I can give you
18   the --
19        THE COURT:  Well, frankly, it doesn't matter.  I'm
20   still just trying to figure out what would be the point in
21   staying the case for the PTAB to address these claims if
22   we're just going to go forward the same way regardless of
23   what the PTAB says?
24        MR. PAUNOVICH:  Well, part of the reason, we had
25   narrowed at the time of the stay to 16 claims in the case,
```

1   as Your Honor I'm sure can appreciate.  Although the Court

2   required that amount of narrowing, typically parties would

3   narrow further before or at the time of trial.

4         I do expect that in a case like this, it simply

5   would be infeasible in a matter of a week to try a case on

6   the full complement of 16 claims.  From our perspective,

7   given the way that some of the decisions had come down,

8   institution decisions at that time, there was some benefit

9   to seeing and understanding what -- how is the PTAB going

10   to weigh in on the remaining asserted claims in this case?

11   And can we -- will we be able to make an informed decision

12   about what claims would be appropriate to ultimately take

13   to trial?

14         It's certainly our perspective on those, many of

15   the claims that were preliminarily found invalid by the

16   PTAB, which remain on appeal, number one, they do still --

17   are still entitled to presumption of validity, but even

18   beyond that, there are some that are very clear as day, in

19   our opinion, will ultimately be reserved and will end up as

20   part of this trial.

21         And we'll --

22         THE COURT:  I'm trying to understand the language

23   you're using.  When you say preliminarily found by the

24   PTAB, you're referring to the final decisions of the PTAB,

25   but you're calling them preliminary because they're subject

1    to appeal to the Circuit?

2          MR. PAUNOVICH:  That's right.  That's right.  Your

3    Honor, the claims that have been invalidated by the PTAB,

4    by the administrative board, are not canceled immediately,

5    and, in fact, they are -- are still entitled to their

6    presumption of validity pending appeal.

7          That's been held that -- that's been held by a

8    number of Courts.  It's -- I think -- we think it's plain

9    as day in the statute.  And that to assume that they are

10   invalid at that stage is just not appropriate on this

11   posture.

12         THE COURT:  I'm having trouble understanding why

13   we would go to trial on claims that the PTAB has found

14   invalid.

15         You're -- I have never thought that I should

16   assume that the PTAB's findings either way would be

17   reversed.  Similarly, we typically do go to trial on claims

18   that the PTAB has allowed to survive, even though they're

19   subject to appeal by the Defendant.

20         MR. PAUNOVICH:  Absolutely.  And I think part of

21   that relates to the fact that we do have three claims that

22   have been sustained as valid, and that, again, under no

23   universe will those claims not go to trial.  And I think

24   what's unique about this case is although some of the

25   claims relate to two different technologies, there is a

1   substantial overlap in the documents and witnesses and

2   claims, frankly, including the invalidity claims that will

3   be raised in this case.

4        And so the -- the notion that we would go to trial

5   on those claims that have been sustained as valid and then

6   possibly after an appeal that may not conclude for as much

7   as 12 to 15 months, then come -- turn around, come back,

8   re-conduct discovery, and hold a second trial on those

9   claims that come out of those appeals would be a

10  significant duplication of Court and party resources.

11       We -- the very same witnesses that we deposed in

12  this case and the witnesses from our end that were deposed

13  speak to and testify about both of these technologies and

14  the same patents and claims.  Although the technologies

15  have some -- do have differences, ultimately, we're going

16  to be presenting what is largely the same body of evidence

17  at trial.  And so under that circumstance where we do have

18  surviving claims and other claims that should be tried

19  along with those claims, we do think it's appropriate to

20  try them at the same time.

21       THE COURT:  Which can also be done if the case

22  remains stayed until the Federal Circuit acts on the

23  appeals from the PTAB.

24       MR. PAUNOVICH:  That's certainly true, Your Honor,

25  and part of the reason that although the parties'

1    stipulated agreement was not that it -- the stay would

2    continue through the time of appeals but rather a

3    negotiated and stipulated stay was that it would end at the

4    conclusion of the -- where we received final written

5    decisions on the last of their final IPRs.

6           The -- we never agreed to stay the case through

7    the conclusion of appeals to the Federal Circuit, and part

8    of the reason is some of the factors that we addressed

9    anticipating what the Defendant group would address in its

10   brief.  Number one, that there would be no simplification

11   of issues here.  We are still going to present what amounts

12   to essentially the same body of evidence, documents,

13   witnesses, et cetera, at trial, whether it's on the

14   sustained claims or a combination of the sustained claims

15   and those that remain on appeal.

16          There is no claim construction or invalidity

17   defense that will ultimately be resolved on this appeal

18   that would not also be subject or represented in this

19   trial.  In fact, I'm not aware of any claim construction

20   position that remains in dispute.

21          This Court, as you know, as Your Honor has

22   previously ruled, claim construction is complete in this

23   case.  We've substantially completed discovery in this

24   case.  We completed expert reports.  We were in the midst

25   of taking expert depositions, and just four months out from

1  trial at the time when we agreed to a limited stay through

2  the time of final written decisions.

3       This is consistent with how other -- other Courts

4  have handled this before.  For example, the Olaplex/L'Oreal

5  trial, that happened just a few weeks ago in the District

6  of Delaware in which one of the two patents had every

7  single claim invalidated.  It nevertheless proceeded to

8  trial for the very same reasons that we're stating here,

9  that the claims are still entitled to a presumption of

10  validity.  There were other claims, part of a second

11  patent, that remained valid, had not been invalidated by

12  the PTAB, and the Court found it appropriate under that

13  circumstance, given all the other factors that the Court

14  obviously considers in kind of weighing whether or not

15  there should be a stay, to proceed to trial.

16       And there's a bit more here, Your Honor.  Part of

17  our negotiated stay was that it would go through the final

18  written decision, and the only way a stay would continue is

19  if the party seeking that stay demonstrated good cause.  We

20  don't believe that Defendants can demonstrate that on any

21  of the factors that would -- the Court would typically

22  consider in issuing a stay.  There's no hardship to

23  Defendants.  They're going to have to go to trial anyway.

24  They're going to have to contend with and deal with this

25  evidence, documents, witnesses, et cetera.

1            There's simply no reason to put off under this

2    circumstance where the prejudice to Alacritech is

3    significant.  We've waited 19 months longer than what we

4    expected.  We think the statistics that were presented by

5    the Defendants are incorrect, that at the earliest, we're

6    looking at 12 to 15 months from now.  And if we stay

7    everything until that time, we're in essence agreeing or

8    implementing a stay that by the time we would get to trial

9    in this matter, it's going to be in excess of three years.

10           THE COURT:  You know, your argument only makes

11   sense to me if I conclude that going to trial on all the

12   claims, those that the PTAB found invalid and those that it

13   didn't, involves pretty much the same evidence and the same

14   investment of time.  And is that what you're contending?

15           MR. PAUNOVICH:  I do think that there is a

16   substantial overlap -- we believe and have stated there is

17   a substantial overlap in the documents and witnesses that

18   we would present regardless of whether the sustained claims

19   go to trial now by themselves or with a broader set of

20   claims that remain subject to the appeal.

21           THE COURT:  So you have the same experts on all of

22   the 16 claims that you had narrowed your case to?

23           MR. PAUNOVICH:  That's right, Your Honor.  We have

24   two experts that will be testifying at trial, Dr. Kevin

25   Almeroth and Mr. Lance Gunderson, our technical and damages

1   experts respectively.  They did provide opinions on each of

2   the claims.  They would be presenting substantially the

3   same opinions at trial, independent of which of these

4   claims ultimately go.

5           Part of the reason, though, we do believe it's

6   important that these be tried together is ultimately it

7   does come down in -- on some level to a damages base.

8           There is -- although we believe that it's not

9   nearly as sort of black and white in terms of the split

10  between the two technologies that are at issue, it's -- you

11  know, frankly, there's been more of the products that have

12  been sold that include one of the technologies than the

13  other.  And so ultimately, presenting on one technology at

14  trial which relates to certain of the claims and leaving

15  the other out really could lead to all sorts of problems in

16  a second trial.

17          THE COURT:  Well, I was following you right until

18  the end.

19          You're -- obviously, that was going to be the next

20  question is how are you going to handle the damages to

21  separate out the damages relating to the claims that have

22  been invalidated and those that haven't in the event that

23  you lose the appeal?

24          MR. PAUNOVICH:  Absolutely, Your Honor.

25          The Federal Circuit's recently spoken to this in

1  the WesternGeco decision in which the Federal Circuit said

2  you need to look at and assign -- you need to ask the jury

3  to assign damages on a patent-by-patent, claim-by-claim

4  basis so that ultimately they're able to determine if in

5  these sorts of concurrent PTAB proceedings, if something

6  gets invalidated down the way on appeal or what have you,

7  you can go back and say, all right, what is the ultimate

8  damages that are appropriate here?

9         THE COURT:  And is that the way your damages

10  expert reports have been written so far?

11         MR. PAUNOVICH:  Well, actually, how it's addressed

12  and just to use as an example, since I tried the

13  Olaplex/L'Oreal case here just recently, what we did in the

14  verdict form, and I think this is becoming more -- the

15  practice and norm subject to the WesternGeco precedent, is

16  that on your verdict form, you would ask the jury to assign

17  a damages award with respect to each patent that's in suit,

18  and then commit to the Court -- and we -- there's fairly

19  common jury instructions for this to allow the Court to

20  remit if appropriate down to a lower amount.

21         If -- if, for example, there was one of the

22  patents because of its issue date or an expiration date

23  might be subject to a lower damages amount but that patent

24  ultimately gets invalidated, you can go back to the verdict

25  form and say, well, for this particular patent, it was this

1  amount of damages, and it -- it applies to this particular

2  period.  I can pull that out.  And I understand and know,

3  you know, what my remaining damages are.

4          THE COURT:  My question is, have your experts

5  written their opinions in that manner?

6          MR. PAUNOVICH:  Yes, Your Honor, they have.

7          THE COURT:  Okay.

8          MR. PAUNOVICH:  There are -- there are schedules

9  for each of the patents that apply to the relevant periods,

10  and I would be able to provide opinions directly from the

11  reports based on that.

12          THE COURT:  All right.  If you are given a choice

13  of proceeding to trial on the claims that have survived the

14  PTAB or having the case stayed pending the Federal

15  Circuit's review of the PTAB's rulings, which would you

16  elect?

17          MR. PAUNOVICH:  I hope that's not a question I'm

18  asked to answer, but you're asking me it.

19          We don't think it would be -- ultimately, we think

20  this is an up or down decision, that we should be going to

21  trial on the complete complement of claims or that it

22  should be stayed through the time of the Federal Circuit

23  deciding the appeals.  We think that there's lots of

24  reasons why it's appropriate to proceed now, not the least

25  of which is the significant prejudice to Alacritech, the

1  fact that we could legitimately end up in a situation where

2  I fully respect the positions the Defendants have advanced,

3  but going to trial potentially on just video deposition

4  testimony is not a way to try a case.

5       We have -- we filed our case back in 2016.  We

6  agreed to an abbreviated and short stay through the final

7  written decisions.  Our client, who's approaching 80 years

8  old, as well as his co-inventors, would like to have their

9  day in court.

10       They were able to succeed in maintaining the

11  validity of at least some of the claims, and because of the

12  duplication in documents and witnesses and the fact that

13  it's not going to require new expert reports or things of

14  that nature to address that disparity or -- or frankly to

15  address any outcome that might happen in the Federal

16  Circuit, that can all be dealt under WesternGeco in the

17  verdict form, we would respectfully request that the Court

18  set a schedule and allow us to go to trial now.

19       THE COURT:  Okay.  I have not -- I have not

20  forgotten my question.  Have you?

21       MR. PAUNOVICH:  No, Your Honor.  We would -- if

22  that is the only option, we would prefer to stay the case

23  through the Federal Circuit appeal.

24       THE COURT:  Okay.  Tell me, the last thing I

25  wanted to get from you before we hear from the Defendants,

1    after which I'll give you a chance to respond, is if we

2    proceed in the fashion that you're proposing, how would we

3    ever get the efficiency that the PTAB is supposed to

4    provide to us unless they end up invalidating all of the

5    claims?  What -- what efficiency have we gained from these

6    IPR proceedings if we just go forward with everything,

7    notwithstanding the PTAB's ruling?

8             MR. PAUNOVICH:  Well, the point that I raised

9    first off, Your Honor, that I do think that Alacritech --

10   although we're not here to acknowledge strengths or

11   weaknesses in any particular claims, I think we do have an

12   understanding of where at least on those claims that have

13   been preliminarily invalidated by the PTAB, that -- you

14   know, which we think stands a very high likelihood of being

15   reversed on appeal.

16            And I would expect that we will be prepared to

17   narrow the asserted claims in this case further so that

18   we're not just sort of spinning our wheels on claims that

19   maybe are less likely to be reversed on appeal.

20            THE COURT:  Okay.  And give me a short version of

21   the error that you're asserting to the Circuit to get the

22   PTAB reversed.

23            MR. PAUNOVICH:  For example, there are three

24   claims in which the Defendant groups in their IPRs

25   acknowledged that there were particular claim limitations

1  which were simply absent from the prior art, full end stop,

2  admitted by their expert in the IPR proceedings.

3         And instead, what they did was attempt to fill the

4  gap, the absence of those limitations in the prior art by

5  saying, well, I'm a person of ordinary skill in the art,

6  and I would have simply invented not one, not two, but

7  three complex scripts that would address and ultimately

8  disclose -- they would be these elements that are

9  acknowledged as missing from the prior art.

10        This was all under testimony of their expert.

11  Ultimately, the Defendants' group -- the groups that were

12  filing the IPRs were able to urge the PTAB board to adopt

13  this line of reasoning, which was fundamentally

14  inconsistent, has been repeatedly overturned, outright

15  reversals, not remands, but overturned by the Federal

16  Circuit where they say, look, you have not met your burden

17  when you've acknowledged a missing limitation and you

18  simply backfill it through expert testimony purporting to

19  be a person of ordinary skill in the art.  Rather in that

20  instance, you've had a fundamental dispositive failure of

21  proof.  And the appropriate remedy in that circumstance is

22  an outright reversal.

23        We -- we believe very strongly in the case law

24  that we've cited and now briefed to the Federal Circuit

25  that this will be a valid basis for an appeal, at least on

1    those three claims, among others.

2              I wasn't prepared to fully address all of the

3    merits of those IPR appeals here, but that one stands out

4    as particularly salient to the discussion we're having here

5    right now, because I think there's a very real world under

6    the precedent of our Federal Circuit that those claims are

7    coming back fully alive and will be part of the trial in

8    this matter.

9              THE COURT:  All right.  Thank you, Mr. Paunovich.

10             MR. PAUNOVICH:  Thank you, Your Honor.

11             MR. GILLAM:  Your Honor, Gil Gillam.  I'm here

12   speaking on behalf of Intel but also on behalf of the rest

13   of the Defendants, as well.

14             Although if there are certain questions directed

15   to each one of the Defendants, they would be happy to

16   answer those if there are individual questions.

17             Whatever the stipulation was and whatever it

18   meant, Your Honor, we surely did not stipulate to go to

19   trial on claims that were held to be invalid by the PTAB.

20             And I think what the Court asked Mr. Paunovich a

21   moment ago is -- is certainly instructive of the problem

22   that we face here as we sit here right now.

23             What was the purpose of the stay if what the PTAB

24   did doesn't mean anything?  And that's what they're asking

25   us to do here.  Of the 13 -- of the 16 claims that they

1    asserted in this case, 13 were held -- it's not a

2    preliminary determination, it's a final written decision of

3    the PTAB -- they were held to be invalid.

4           Now, the only appeals that have been -- that we're

5    concerned with here today, because timing seems to be of

6    some import to the Plaintiffs in this case, the appeals

7    that we're concerned about here today are the appeals of

8    the Plaintiffs of those decisions.  Now, there's some other

9    appeals that we've talked about in the briefs of being

10   things we may appeal or things like that, we're not

11   concerned about those.

12          The only appeals we're concerned about today and

13   that we're asking that the Court continue the stay on are

14   the appeals raised by the Plaintiffs as a part of their

15   appellate process and what was done with the PTAB.

16          THE COURT:  And are you suggesting that those

17   appeals are on a shorter track than the Defendants'

18   appeals?

19          MR. GILLAM:  We do believe, Your Honor, that --

20   that when you -- I think the briefing is somewhat unclear

21   on that.  We believe that when you look at the time table

22   for the appeals, that the time -- the time table for the

23   appeals, they should be resolved probably within 9 months.

24   They seem to think it's 12 to 15 months.

25          But whether it's 9 months or it's 12 months, we

1   don't believe that's a significant difference insofar as

2   these particular appeals are concerned.

3         THE COURT:  Can you address the argument that

4   going to trial on the claims that survive would not be

5   materially different in terms of the expense and effort as

6   going to trial on all of the 16 elected claims?

7         MR. GILLAM:  Well, first of all, Your Honor, I

8   think it -- it's of some importance that both the Plaintiff

9   and the Defendant seem to believe that it's not reasonable

10  to go to trial on those three as opposed to all 16.

11        But taking that and putting it aside for a moment,

12  there is some overlap in the patents, and it's similar

13  enough that we believe what the Fed Circuit will have to

14  say with respect to these appeals -- and I'm not well

15  versed in what the appellate issues are -- but what the

16  Fed Circuit does have to say with respect to these

17  particular appeals are going to be important with respect

18  to what this Court does with these particular patents.

19        I think all these claims have a priority date that

20  go back to the same provisional patent.  I think that's

21  true.  And so we think it will be important to hear what

22  the Fed Circuit has to say.  We think it doesn't make any

23  sense to -- particularly in the short time table that we're

24  dealing with here -- to go and have a -- what appears to be

25  nothing more than a mishmash of potential claims that may

1   be -- we believe, by the way, Your Honor, that there's a

2   very small chance that these -- that these claims will be

3   reversed on appeal or that the decision of the PTAB will be

4   reversed.  We think they'll be -- they'll all be withheld

5   obviously.

6          That being said, what we're talking about here

7   today, at least what I've heard is, is that let's -- let's

8   let them choose and decide amongst these other -- let's

9   first go with all 16 claims, and then let us decide what

10  some other claims -- or what might be held within the

11  middle of these claims, which ones we'll choose and things

12  like that.

13         None of that makes any sense with respect to

14  what's already been done, and that's with respect to claims

15  that have been held invalid by the PTAB.  None of it makes

16  sense at all.

17         THE COURT:  Well, do you dispute the argument that

18  Mr. Paunovich made that the Court in Delaware recently

19  decided that it was appropriate to go to trial on both

20  claims that survived and claims that didn't while the

21  appeals from the PTAB were pending?

22         MR. GILLAM:  I read that case.  Your Honor, I

23  thought it was called Liqwid versus L'Oreal, and that was

24  the one that was in the brief.  The fact situation in that

25  particular case seemed to be different than what we're

 1 | talking about here.  It seems that that was a two-patent

 2 | case but also a case dealing with misappropriation of trade

 3 | secrets as well as breach of contract.  The time table was

 4 | completely different than what we're talking about here.  I

 5 | think only one of the claims -- or one of the patents that

 6 | were asserted had been held invalid.  The other one I

 7 | believe was held to be valid.

 8 |        The parties were direct competitors in that case,

 9 | whereas they're not in this particular case.  And so why

10 | the Court made the determination to go forward in that

11 | case, I don't know.  It seems like the magistrate's opinion

12 | with respect to his decision was that he simply disagreed

13 | with what the determination of the PTAB was.  The District

14 | Court seemed to agree with that, and they decided to go

15 | forward.

16 |        I have never seen something like that in this

17 | district at all, and that is going forward on a case which

18 | has been determined to be -- or with a patent that's been

19 | determined to be invalid by the PTAB.

20 |        THE COURT:  What do you say about the Personal

21 | Audio decision?

22 |        MR. GILLAM:  The Personal Audio decision, Your

23 | Honor, was a decision -- I think it was a Judge Clark

24 | decision, and from my reading of Personal Audio, the facts

25 | in that particular case, again, were somewhat different

1  than what we're talking about here.

2          In that particular case, unlike this one, there

3  were two-thirds, I believe, of the patents that were

4  challenged in that case were held to be valid, or not

5  unpatentable or not invalid by the PTAB as opposed to what

6  we have here.

7          Here we have 13 of the 16 which were held to be

8  invalid.  The stage of the litigation was different than

9  what we're talking about here.  At the time of that

10  decision, the -- I don't think any fact discovery had

11  occurred.  The Plaintiff waited less than two years to file

12  their lawsuit, as opposed to 14 years that we have here.

13  And so the decision was -- or rather the fact situation was

14  completely different than what we have in this particular

15  case.

16          So we believe that Personal Audio is

17  distinguishable from what we have here.

18          THE COURT:  But is it your understanding that

19  Judge Clark's decision in Personal Audio was to go to trial

20  on patents that had been invalidated by the PTAB?

21          MR. GILLAM:  I don't think that's what the

22  decision was.  I think he said we're going -- we're not

23  going to continue to stay the case.  Now, where it went

24  from there, I'm not sure, but I don't believe they went to

25  trial on that.  I believe that case was resolved.

```
1            THE COURT:  Okay.  Well, take to me if you would

2  about the argument that the -- one way or the other these

3  three claims that have not been invalidated are going to

4  end up being appropriate for trial and that a trial on the

5  whole claim set would be no more effort than a trial on the

6  three.

7            MR. GILLAM:  Well, it certainly would be, Your

8  Honor.  We're talking about -- and I'll point out this, for

9  example.

10           You asked Mr. Paunovich whether or not the expert

11 report distinguished between the -- between the patents.

12 We did a quick review over here, and I don't believe the

13 expert report does distinguish between the patents.

14           THE COURT:  You're talking about the damages --

15           MR. GILLAM:  Yes, sir.

16           THE COURT:  -- expert's?

17           MR. GILLAM:  The damages report.

18           And so we don't have a damages report that -- that

19 does distinguish on a patent-by-patent basis.  I believe it

20 is as it exists in its current form.  It's simply -- pardon

21 me -- it's simply a damages number is what they have and an

22 analysis of how they got there.

23           And so the other issue that I would point out

24 in -- with respect to that is that we're talking about two

25 patents versus six patents.  They asserted six patents in
```

1   this case.  We're only talking about the two patents, and

2   most of the products are out by way of the invalidity

3   finding of the -- of the PTAB.

4           And so -- well, I think we're talking apples and

5   oranges here with respect to trying to try those cases

6   together, the ones that were held to be invalid and the

7   ones that we -- that they contend exist or continue to be

8   valid or available to be tried today.

9           THE COURT:  All right.

10          MR. GILLAM:  And I'm happy to address the other

11  factors for the Court if you want me to.  Insofar as the --

12  the prejudice, there was a discussion of Mr. -- of their

13  Plaintiff or their lead inventor who's nearing 80 years

14  old.  I mean, at the time that they filed this particular

15  lawsuit, they waited some 14 or 16 years before they filed

16  it -- before they asserted these patents.  It hasn't been a

17  long -- it has not been a lengthy stay from the time of

18  the -- of the stay and --

19          THE COURT:  When you talk about the 14 years,

20  you're just saying from issuance of the patent?

21          MR. GILLAM:  From the time of the -- from the time

22  they had the ability to assert these patents because they

23  felt that they were infringed.

24           In fact, the Court -- this Court did an analysis

25  of the -- of the prejudicial factors when it denied a

1  motion to stay that was urged early on in this case.  And

2  that was in -- it was in this very case.  And this Court

3  found that there was not substantial prejudice as it

4  existed at the time.  And the situation hasn't changed now

5  from what it was back then, other than the man is a couple

6  of years older.

7          Now, he sat for a three-day deposition and did

8  fine there.  You know, at what point in time do you get

9  old?  Certainly he's a couple years older than what we

10  were at a couple of years ago.  But we have no evidence

11  really that's been presented as to any ailment that he's

12  got, any -- any issue that he has which is going to make

13  him incapable of being there for trial.  And we certainly

14  have offered or will offer the -- the right of these folks

15  to do a preservation deposition if they want to do it.

16          But we don't see that there's any prejudice to

17  them based upon where we sit today.

18          THE COURT:  All right.  We'll deal with that

19  afterwards.  Don't worry about it.  It works just as

20  well --

21          MR. GILLAM:  You're going to need a new one, Your

22  Honor.  This one looks a little bit chewed up.

23          THE COURT:  There will be a small fine.

24          MR. GILLAM:  It won't be the first time, Your

25  Honor.

1           THE COURT:  That's fine.  I don't know if any of

2      the other Defendants want to be heard.  If not, I'll give

3      Mr. Paunovich a chance to answer that.

4           Mr. Stephens?

5           MR. STEPHENS:  Your Honor, thank you.

6           Just briefly, I want to mention the issue about

7      whether or not there's any increased burden by trying these

8      separately as opposed to together.  In other words, are all

9      the issues the same?  Is all the evidence the same?

10          And Mr. Gillam, of course, already addressed that.

11     I just want to speak briefly to the issue for Intel in

12     particular.

13          The very large majority of products that are

14     accused against -- Intel products that are accused of

15     infringing include a feature that is only accused on

16     patents that have been held invalid.  So there's a very

17     small number of products that are at issue in the three

18     claims that were not considered by the PTAB and a much,

19     much larger number of individual products that are accused

20     under the patents that were held invalid.

21          And so that would require considerably more

22     witnesses, a bunch of additional documentary evidence,

23     additional expert testimony because these features are

24     completely different and independent and deployed in

25     different products, even though they work, you know,

related to the same underlying protocol.  So they're not

unrelated, but they're deployed completely separate in the

products.  So there is a pretty substantial mismatch in

terms of the evidence that will be presented at trial.

      That's all I wanted to say, Your Honor.

      THE COURT:  Mr. Stephens, can you address your

understanding of the expected timeline for the appeal that

the Plaintiffs have pending in the Circuit now?

      MR. STEPHENS:  Yes.  What Mr. Gillam said is

completely consistent with my understanding.  We filed

those briefs.  Our opposition briefs were filed about two

weeks ago, I believe.  So I think that Alacritech's reply

briefs are due at the end of October, and the last one will

be filed the first week -- I'm sorry, maybe the first week

of October, and the last one will be filed the first week

of December.

      So we believe that roughly nine months is the

right number.  It is possible it could take a bit longer,

but we don't think it's going to take 15 months.  I think

12 months would be at the outside.  It's also possible that

these decisions will come down quickly because the PTAB

appeals are often decided via Rule 36 where there's no

written decision.  So we think there's a very high

likelihood that that could happen here too.  So it actually

could happen substantially quicker than nine months.

1          They will all be argued together, by the way.  So
2     we think that the timeline is relatively abbreviated.
3          THE COURT:  All right.
4          MR. STEPHENS:  Thank you, Your Honor.
5          THE COURT:  Thank you, Mr. Stephens.
6          MR. COX:  Your Honor, Brady Cox for Dell.  I just
7     want to address real briefly a question you asked about
8     overlap of evidence as it applies to Dell specifically.
9          We have products from different suppliers that are
10    accused of infringement in this case that have different
11    features that are accused of infringement.  The Broadcom
12    products that Dell uses and that are accused of
13    infringement are only accused based on the features that
14    are at issue with the patents that currently stand
15    invalidated.
16         And so whether those products come in or not will
17    vary depending on if we're trying the, you know, surviving
18    claims versus all the claims.  And Dell also has
19    counterclaims for breach of contract alleging that these
20    Broadcom products are licensed, and I think how those
21    counterclaim are presented may vary depending on if the
22    Broadcom products are in or out.
23         THE COURT:  All right.  Thank you, Mr. Cox.
24         MR. COX:  Thank you, Your Honor.
25         THE COURT:  Mr. Paunovich?

 1          Oh.

 2          MR. GILLAM:  One other thing, Your Honor.  I did

 3    not address the question of the reopening of evidence or

 4    what has been proposed, and I don't want to take the

 5    Court's time on that unless the Court is in the process

 6    of not continuing the stay in this case.  We would have --

 7    would have something to say about that in the event that

 8    the Court makes that determination.

 9          THE COURT:  Well, this would be the time to

10    address that.

11          MR. GILLAM:  Well, the problem is, Your Honor,

12    I've heard what Mr. Paunovich said a few moments ago, but

13    the -- the proposed schedule that they have issued in this

14    case or rather that they have proposed in this case is

15    really about two months of unfettered discovery is what

16    they've got.  They've got two months of fact discovery

17    built into their schedule.

18          Now, at the time that this case was stayed, fact

19    discovery was closed, completely closed.  A lifting of the

20    stay takes us -- or should take us back to the status quo.

21          THE COURT:  And I think Mr. Paunovich said that

22    he'd be willing to accept that.

23          MR. GILLAM:  Well, and that's -- that's fine, Your

24    Honor, because the only thing that the stipulation agreed

25    was that within 45 days of the stay ending, that the

1   Defendants would provide updated financial information to

2   reflect sales and revenues relating to the accused products

3   received during that time period.  And that's all we agreed

4   to.  And so that's the deal.

5       So we would not agree to anything beyond that, and

6   if the Court is of a different opinion as to where we're

7   going today, then we certainly would have the

8   opportunity -- or want the opportunity to talk that

9   through.

10      THE COURT:  All right.

11      MR. GILLAM:  Thank you.

12      THE COURT:  Thank you, Mr. Gillam.

13      MR. PAUNOVICH:  Your Honor, I have a few points

14  I'd like to address, but I'll start with the last one

15  raised by Mr. Gillam.

16      The stipulation, Docket Entry 449, included not

17  just a supplement of financials, but also in Paragraph 8 at

18  Page 2, Intel had agreed to provide supplemental evidence

19  relating to certain additional products including one or

20  more accused ethernet controllers sold from 2010 once the

21  stay was lifted.  This was part of the negotiated

22  stipulation.

23      There were a handful of limited -- discovery was

24  not fully closed, as Mr. Gillam had said.  There were a

25  handful of limited discovery motions that were pending and

1   set for hearing.  Not all of the briefing was fully

2   complete since some were filed at different times, not by

3   significant times, but some that were pending ultimately

4   dismissed as moot in light of the stay subject to being

5   re-raised with the Court.

6         We have undertaken a review of those motions, and

7   part of the reason -- many of them are moot and would have

8   no need to be presented to the Court, but part of the

9   reason we had proposed the schedule that we did was the

10  fact that there were some motions for both sides,

11  Defendants as well as Plaintiffs, that were pending.

12        We are certainly happy to discuss those.  As I

13  understand the sur-reply filed by Defendants, they offered

14  to do so.  If a schedule is set in this case at the same

15  time as the negotiated stipulation sets forth, there is

16  certain informations, financials and other product

17  information, that was agreed to be provided.

18        So it wasn't that we were proposing some wide,

19  unfetterred set of discovery.  There was a cabined universe

20  that I think the parties fully knew and understood at the

21  time that the stay was lifted.

22        Circling back to the beginning of Defendants'

23  presentation, I do want to just bring the Court back to

24  Personal Audio and the Liqwid/Olaplex, so they were both

25  Plaintiffs in Delaware that I represented.  Those cases

1    really -- this case is on all four -- all fours with each

2    of those cases.

3         In Personal Audio, there were eight claims out of

4    a total of about 21 claims that were held invalid by the

5    PTAB, and ultimately the Court, given the stage of the

6    case, which was actually earlier than this case, although

7    substantially along, which is a factor compelling -- or

8    coming out against issuing a stay, the Court ultimately

9    determined the trial should go forward on not just the

10   patentable claims but those that were held preliminarily

11   unpatentable.

12        The same thing -- exact same thing happened

13   respectfully in the District of Delaware.  I was lead

14   counsel on that case.  It had nothing to do with the fact

15   that there were additional non-patented claims.  One of our

16   patents was fully invalidated, full end stop.  It remains

17   on appeal to this day.  We went and tried that case in

18   large part because claims are entitled to their presumption

19   of validity, particularly in a case where you've got to

20   split set of decisions, some that have been invalidated,

21   some that haven't.

22        And in this instance, like that one in the

23   Liqwid/Olaplex versus L'Oreal case, where you're going to

24   be presenting ultimately substantially the same documents

25   and witnesses, it makes a lot of sense for judicial

1  efficiency and party efficiency to try them at the same

2  time.

3          I respectfully disagree with Defendants'

4  assertions about the differences in evidence that would be

5  presented here.  As Your Honor -- I know it's been quite

6  some time, but Alacritech had proposed a representative

7  product stipulation.  It was never responded to formally or

8  agreed upon by the Defendants.

9          Here -- here nor there, ultimately our experts

10  presented their opinions based on representative products.

11  It's not a universe that is unbound or materially different

12  in any way that's going to be presented at trial.

13          Similarly, Mr. Gunderson offered a damages expert

14  opinion that, yes, has an ultimate number if infringement

15  was found on all of the patents, but we have schedules that

16  are attached like they commonly are as part of a damages

17  report.  It breaks it down on a patent-by-patent basis.

18          So the opinions are there.  Our expert would not

19  have to supplement his report and would be able to present

20  at trial testimony consistent with WesternGeco that would

21  allow the jury to provide a verdict that is specific to

22  each patent, and, therefore, there's not an issue of

23  inconsistent rulings or an issue of a potential retrial.

24  It would be fully consistent with how the Federal Circuit

25  has told us we're supposed to try patent cases now.

1          THE COURT:  Can you point to any other case

2     besides the L'Oreal case from Delaware, which I will look

3     at, where the Court has gone forward with a trial on claims

4     that have been invalidated by the PTAB?

5          MR. PAUNOVICH:  Yeah, the Personal Audio is

6     another example.  That was Judge Clark in Beaumont.  I'm

7     sorry for misspeaking earlier.

8          THE COURT:  Now, that case, as I understand it,

9     didn't actually go to trial, but he did lift the stay.

10          MR. PAUNOVICH:  I believe it actually did go to

11     trial, but I may be -- I'm sorry, it ended up settling, but

12     ultimately they did agree -- the Court agreed that it was

13     going to go to trial, and then they settled on the eve of

14     trial.

15          THE COURT:  Okay.  I will look at that one, as

16     well.

17          MR. PAUNOVICH:  And just to highlight Judge --

18     Judge Clark, what I think his reasoning was, that

19     ultimately a trial was going to be necessary in that case

20     regardless, and where you had this sort of substantial

21     overlap in the documents and witnesses, et cetera, it

22     didn't justify staying the case in that circumstance.  I

23     think that's -- that's very similar and ultimately what

24     happened in Liqwid/Olaplex versus L'Oreal.

25          And in this case, given how long we've waited now

 1    and what the negotiated stipulated stay was before, again,

 2    we would respectfully request --

 3              THE COURT:  And so are there any other cases that

 4    you can point me to that speak to that?

 5              MR. PAUNOVICH:  I believe we cited in our briefing

 6    at Page -- I want to say 13, but it might have been the

 7    Bettcher case, if I'm not mistaken.

 8              THE COURT:  There is a Bettcher case.

 9              MR. PAUNOVICH:  And Hologic versus Minerva case.

10              THE COURT:  All right.  I see those.  I'm looking

11    at your table of authorities.  I see Hologic and Bettcher.

12              MR. PAUNOVICH:  I don't want to misspeak on those.

13    I have a personal knowledge of the Olaplex case, which is

14    why -- and of the Personal Audio we're obviously very

15    familiar with, so I don't want to misstate to Your Honor.

16              THE COURT:  Okay.

17              MR. PAUNOVICH:  I'm sorry, so Footnote 4 -- I

18    apologize, Your Honor, I want to correct what I've just

19    told you.

20              In Footnote 4 of our Docket No. 470, that's our

21    motion, we list a handful of other cases -- or two other

22    cases in addition to the Olaplex case, the Zoll Medical

23    Corp versus Respironics and One No. Corp versus Google,

24    which reached a similar conclusion --

25              THE COURT:  All right.

```
 1              MR. PAUNOVICH:  -- as to Personal Audio, that is.

 2              THE COURT:  Thank you, Mr. Paunovich.

 3              MR. PAUNOVICH:  Unless Your Honor has any further

 4    questions, we appreciate your time.

 5              THE COURT:  Thank you.

 6              MR. PAUNOVICH:  Thank you.

 7              THE COURT:  Anything else from the Defendants?

 8              MS. KHACHATOURIAN:  Your Honor, if I may speak

 9    from here.

10              THE COURT:  Sure.

11              MS. KHACHATOURIAN:  Just on behalf of Cavium,

12    there was no motion to compel pending against Cavium before

13    the case was stayed at the time of the close of fact

14    discovery.  Therefore, fact discovery with respect to

15    Cavium was closed.  There was no agreement by Cavium to

16    provide any additional information on products.  As far as

17    Cavium is concerned, based on the procedural history of the

18    case, fact discovery had closed, and we were moving

19    forward.

20              Also with respect to Cavium, as Dell also stated,

21    the Broadcom issue applies to Cavium, as well.  One of the

22    reasons why we are in this case is -- is to assist Dell and

23    to protect our products, but some of those products include

24    Broadcom.

25              And so in terms of moving forward, it wouldn't
```

```
 1  make sense.  It becomes more complicated.
 2          THE COURT:  All right.  Thank you.
 3          MS. KHACHATOURIAN:  Thank you, Your Honor.
 4          THE COURT:  Thank you, Ms. Khachatourian.
 5          Anyone else?  No?
 6          All right.  Well, I appreciate the arguments.
 7  They've been helpful.  We'll get something out promptly on
 8  this.
 9          MR. PAUNOVICH:  Thank you, Your Honor.
10          COURT SECURITY OFFICER:  All rise.
11          (Hearing concluded at 4:22 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                              CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    /S/ Shelly Holmes                        7/13/2022
     SHELLY HOLMES, CSR, TCRR                  Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25