# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ALACRITECH, INC., *Plaintiff*, v. | |
| CENTURYLINK, INC., *et al.*, | 2:16-cv-00693-RWS-RSP (LEAD CASE) |
| WISTRON CORPORATION, *et al.*, | 2:16-cv-00692-RWS-RSP |
| DELL INC., *Defendants*, | 2:16-cv-00695-RWS-RSP |
| and | JURY TRIAL DEMANDED |
| INTEL CORPORATION, *et al.*, *Intervenors*. | |

**PLAINTIFF ALACRITECH INC.'S MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF CHRISTOPHER A. VELLTURO, PH.D.**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD.............................................................................................1

III.  ARGUMENT ..........................................................................................................2

   A.  Dr. Vellturo's Opinions Regarding Mr. Gunderson's 2017 Report, Which Has Been Superseded And Entirely Replaced By His 2023 Report, Should Be Excluded ...................................................................................................2

   B.  Dr. Vellturo's Opinion About An Alacritech's Stock Valuation Should Be Excluded ...................................................................................................5

   C.  Dr. Vellturo's Opinion That There Was Not A Single Hypothetical Negotiation Resulting In A Single Royalty Rate Is Contrary To Federal Circuit Law ...................................................................................................8

IV.   CONCLUSION.....................................................................................................10

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Arigna v. Nissan Motor Co.*,
   No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) .........................................9

*California Institute of Technology v. Broadcom Limited*,
   25 F.4th 976 (2022)..............................................................................................1, 4, 8

*Ericsson Inc. et al v. TCL Comm. Tech. Holdings Ltd. et al.*,
   2:15-cv-00011-RSP, Dkt. No. 377 (E.D. Tex. Nov. 29, 2017)....................................................3

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   No. 2:16-CV-147-JRG, 2017 WL 11631146, at *5 (E.D. Tex. Sept. 29, 2017) ..................2, 3

*Realtime Data, LLC v. Actian Corp.*,
   No. 6:15-CV-463 .......................................................................................................................3

*Solas OLED Ltd. v. Samsung Display Co., Ltd.*,
   2:19-cv-00152-JRG, Dkt. No. 279 (E.D. Tex. Sept. 30, 2020) .................................................2

*Watkins v. Telsmith, Inc.*,
   121 F.3d 984 (5th Cir. 1997) .....................................................................................................2

### Rules

Fed. R. Evid. 26(a)(2)(B)(i) ............................................................................................................3

Fed. R. Evid. 402 .......................................................................................................................2, 8

Fed. R. Evid. 403 .......................................................................................................................2, 8

# EXHIBITS[1]

1. Supplemental Rebuttal Expert Report of Christopher A. Vellturo, Ph.D., dated May 5, 2023

2. Excerpts of Deposition of Christopher A. Vellturo, Ph.D., dated June 19, 2023

3. Excerpts of Amended Second Supplemental Expert Report of Lance E. Gunderson, dated June 6, 2023

4. Valuation Report for Alacritech, Inc., dated June 29, 2010 (ALA07643162)

5. Email chain between ▮▮▮▮▮▮▮▮▮▮▮▮ and Esther Lee (Alacritech), dated September 14, 2009 (ALA07912514)

---

[1] All exhibits herein refer to the Exhibits to the Declaration of Brian Mack.

## I.     INTRODUCTION

Cavium Inc.'s damages expert, Christopher A. Vellturo, Ph.D., renders a number of unreliable, legally unsupported, or irrelevant opinions that should be excluded from trial.

*First*, Dr. Velluro's opinions regarding Mr. Gunderson's 2017 report should be excluded. Mr. Gunderson's 2017 report has been superseded and entirely replaced by a 2023 report, following a six-year stay, narrowing of the case, and clarification of damages law by the Federal Circuit. Dr. Vellturo's opinions would improperly inject into the trial evidence regarding patents, technology, and accused products that are no longer in the case, and necessitate the jury be subjected to a comparison between the facts, claims, and law governing the case in 2017 and now. Presentations at trial should be limited to opinions relevant to the claims as they are framed in 2023.

*Second*, the Court should exclude Dr. Vellturo's opinion that a valuation of Alacritech's common stock supposedly should serve as a ceiling on Alacritech's damages. The document does not contain a valuation of Alacritech's patent portfolio and Dr. Vellturo's attempt to derive one and compare it to the damages analysis in this case is unreliable and misleading.

*Third*, Dr. Vellturo should be precluded from testifying that there was not a single hypothetical negotiation or a single royalty rate for Defendants at different levels of the supply chain. Dr. Vellturo's failure to make a compelling showing that this is the case renders his opinion inadmissible under *California Institute of Technology v. Broadcom Limited*, 25 F.4th 976 (2022).

## II.     LEGAL STANDARD

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997); *see also* Fed. R. Evid. 402 (irrelevant

1

evidence is inadmissible). The Court may also exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403.

### III. ARGUMENT

#### A. Dr. Vellturo's Opinions Regarding Mr. Gunderson's 2017 Report, Which Has Been Superseded And Entirely Replaced By His 2023 Report, Should Be Excluded

Dr. Vellturo opines that comparing the baseline royalty rate and final range of royalty rates in Mr. Gunderson's initial report—served in 2017 before the case was stayed for IPR proceedings—to those in Mr. Gunderson's 2023 report supposedly shows that Mr. Gunderson's apportionment "lacks a coherent economic framework." Ex. 1 ¶ 15. In trying to support this opinion, Dr. Vellturo compares the six previously asserted patents to the three patents that remain in the case which are properly the subject of Mr. Gunderson's 2023 report. *Id.* Dr. Vellturo's incomplete and misleading comparison will confuse the jury. In fact, Mr. Gunderson's royalty rate in his 2023 report is lower than his royalty rate in his 2017 report. Mr. Gunderson changes to his royalty rate range properly account for changes in the facts of the case. They also properly account for changes in damages law that occurred since the stay.

Dr. Vellturo's testimony regarding Mr. Gunderson's original report should be excluded because it is irrelevant. *See* Fed. R. Evid. 402. To the extent it has any probative value, it should be excluded because any such minimal probative value is outweighed by a risk it confuses the issues, misleads the jury, and wastes time. *See* Fed. R. Evid. 403. Dr. Vellturo's testimony would improperly inject into the trial evidence regarding patents, technology, and accused products that are no longer asserted in the case. The Court routinely excludes such evidence. *See, e.g., Solas OLED Ltd. v. Samsung Display Co.*, Ltd., 2:19-cv-00152-JRG, Dkt. No. 279 at 2 (E.D. Tex. Sept. 30, 2020) (excluding "[e]vidence of no-longer asserted claims, products, and/or non-asserted

infringement theories"); *Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-147-JRG, 2017 WL 11631146, at *5 (E.D. Tex. Sept. 29, 2017) (striking expert opinions that "relate to patents that are no longer part of this case" and precluding "evidence or argument relating to patents or claims [Plaintiff] has dropped"); *Ericsson Inc. et al v. TCL Comm. Tech. Holdings Ltd. et al.*, 2:15-cv-00011-RSP, Dkt. No. 377 at 3 (E.D. Tex. Nov. 29, 2017) ("[Defendant] may not present evidence or argument that a patent that was once asserted is no longer asserted."); *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 WL 11662045, at *1 (E.D. Tex. May 4, 2017) ("exclud[ing] evidence of never-asserted patents, no-longer-asserted patents, dropped patent claims, dropped or never-accused products, and/or non-asserted infringement theories"). It should do likewise here.

Mr. Gunderson issued a supplemental report in 2023 that entirely superseded and replaced his 2017 report. Ex. 3 (Gunderson Rpt.) ¶¶ 2-3. Accordingly, Dr. Vellturo has no need to refer to Mr. Gunderson's original report in providing his rebuttal testimony, as all of Mr. Gunderson's opinions are contained in his 2023 supplemental report. Any comparison of Mr. Gunderson's prior damages analysis to his current damages analysis would lead to a lengthy side-show about the state of the case as it was six years ago, but no longer is, including presenting evidence regarding the three patents that are no longer asserted in the case, the technology they claimed, and the accused products that covered them, all of which are now irrelevant.

Testimony regarding Mr. Gunderson's original 2017 report would also require a confusing and time consuming explanation to the jury about the state of the law in 2017 as compared to 2023. As Mr. Gunderson states in his 2023 supplemental report, he modified his opinions in his supplemental report not only in connection with the outcome of the IPR proceedings and additional facts provided in the case since 2017, but also due to Federal Circuit decisions over the past six

3

years. *See* Ex. 3 (Gunderson Rpt.) ¶ 3. Alacritech will be unfairly prejudiced if Defendants are permitted to present testimony criticizing Mr. Gunderson for how he modified his opinions, including his royalty rate, between 2017 and 2023, but the jury is not instructed on the change in the law between 2017 and 2023 that provides the basis for Mr. Gunderson's modifications to his analysis. Most notably, in 2022, the Federal Circuit held that "in the absence of a compelling showing otherwise, a higher royalty is not available for the same device at a different point in the supply chain." *Cal. Institute of Tech. v. Broadcom Ltd.*, 25 4th 976, 994 (Fed. Cir. 2022). It then vacated the jury's damages award and remanded for a new trial on damages after finding Caltech's damages experts did not offer a factual basis to conclude Broadcom (who manufactured chips) and Apple (who purchased those chips from Broadcom and incorporated them into its products) would have been willing to engage in separate negotiations leading to different royalty rates for the same chips. *Id.* at 994-95. Such law is undeniably relevant to this case where there are two supplier defendants (Intel and Cavium) who sell Network Interface Components in various forms (NICs) to manufacturers (Dell, Wiwynn, and Wistron) who incorporate those NICs into larger infringing products that infringe the patents-in-suit. If Dr. Vellturo is permitted to testify that Mr. Gunderson's current opinions are inconsistent relying on Mr. Gunderson's 2017 report, Alacritech will have to explain to the jury how the law has changed between 2017 and today. Even if this were an appropriate exercise (it is not), a high danger of jury confusion would exist. And of course such an exercise would be a complete waste of jury time.

Dr. Vellturo's opinions regarding Mr. Gunderson's 2017 report should be excluded because they are irrelevant. To the extent the Court finds it has any probative value, they should be excluded because any such minimal relevance is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time

### B. Dr. Vellturo's Opinion About An Alacritech's Stock Valuation Should Be Excluded

The Court should exclude Dr. Vellturo's opinion that a valuation of Alacritech's common stock shows Alacritech's entire patent portfolio was valued at no more than a net present value of Alacritech that supposedly ███████████████████████████████████████ ███████████████████████████████████████████████ *See* Ex. 1 ¶ 38. It does nothing of the sort. Notably, as Dr. Vellturo admitted, **at the time the report was prepared, two of the three patents-in-suit, the '880 and '948 patents, had not issued yet**. Ex. 2 (Vellturo Dep.) at 194:9-19. Dr. Vellturo's opinion should be excluded as irrelevant, unreliable, and misleading.

*First and foremost*, there is no valuation of Alacritech's patent portfolio contained in the valuation report. *See* Ex. 4 (Valuation Report). Dr. Vellturo admitted this at his deposition. Ex. 2 (Vellturo Dep.) at 192:15-193:5. ████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████ He also admitted that the 5-page document he relies on is instead a valuation of Alacritech's common stock. *Id.* at 191:14-23. The valuation was performed by a third-party, ███████████, whom Alacritech engaged for the purpose of providing an analysis of the fair market value of Alacritech common stock. Ex. 4 (Valuation Report) at 1.

*Second*, Dr. Vellturo's inference of a valuation of the three patents-in-suit from ████ ████████ perfunctory valuation of Alacritech's common stock is unreliable. Dr. Vellturo unreliably assumed the net present value of Alacritech included potential revenue streams from

5

the three patents-in-suit. *See* Ex. 2 (Vellturo Dep.) at 194:3-8. Dr. Vellturo has no support for this unreliable assumption. ▇▇▇ did not have access to information necessary to conduct a valuation of the three patents in suit. The information ▇▇▇ received about Alacritech's patent portfolio was limited to a list of Alacritech's issued patents, but **at the time of the report was done, two of the three patents-in-suit, the '880 and '948 patents, had not issued yet**. *See* Ex. 5 (▇▇▇ email with list of requested information to perform the valuation); Ex. 2 (Vellturo Dep.) at 194:9-19. As Dr. Vellturo admitted, there is no evidence ▇▇▇ would have even known of the existence of the inventions in two of the three patents-in-suit. Ex. 2 (Vellturo Dep.) at 194:20-195:18.

Furthermore, as Dr. Vellturo conceded, ▇▇▇ did not have any of the confidential information produced in the course of this litigation (including Defendants' and Intervenors' sales information), that forms the basis for the damages calculations presented in the expert reports in this case. Ex. 2 (Vellturo Dep.) at 198:9-22; 200:14-24. This is unsurprising given the ▇▇▇ valuation was performed six years before Alacritech even filed the patent infringement claims in this case. Dr. Vellturo further admitted that ▇▇▇ therefore did not know that Cavium was infringing the patents-in-suit. *Id.* at 199:22-200:13. Dr. Vellturo conceded ▇▇▇ did not have financial data produced in this litigation and therefore did not know the number of infringing sales made using the RSC technology claimed by the patents-in-suit. *Id.* at 198:9-22, 200:14-24. Likewise, neither Alacritech nor ▇▇▇ had access to Defendants' and Intervenors' technical documentation or other materials that bear on the strength of Alacritech's claims. ▇▇▇ could not begin to estimate the size or scale of Alacritech's damages claim against Defendants or Intervenors for the patents-in-suit and include it in its stock valuation. Even if ▇▇▇ had attempted to value Alacritech's

patents, which it never purported to do, such valuation would lack any comparability to the reasonable royalty calculation performed by Dr. Vellturo and Mr. Gunderson, Alacritech's damages expert. *See id.* 204:24-207:11.

Even if ▮▮▮▮▮ did assess monetizing the three patents-in-suit (and again, there is no evidence it did), any such assessment would have been both highly speculative and heavily discounted. As Dr. Vellturo acknowledge, litigation is both risky and expensive. Ex. 2 (Vellturo Dep.) at 202:12-15, 202:21-25. At the time of the valuation, the trial in this action was **thirteen years off**. As Dr. Vellturo conceded, from the time Alacritech filed a lawsuit to the time it gets and enforceable judgment could well be 10 years. *Id.* at 202:4-11. Simply put, ▮▮▮▮▮ could not reliably predict in 2010, six years before litigation was filed, the value of Alacritech's claim for the patents-in-suit. As Dr. Vellturo admitted, even if ▮▮▮▮▮ had evaluated the value of the three patents-in-suit in its report, monetizing them has required weathering a lot of uncertainty, outlaying a lot of cash, and waiting over 7 years for the opportunity to receive money, and therefore any valuation would be highly discounted. *Id.* at 202:21-203:10. Regardless, there is no evidence ▮▮▮▮▮ attempted to model the outcome of the current patent infringement litigation—which would not even be filed for six years—as part of its valuation for Alacritech's common stock.

While Dr. Vellturo would like to imply that ▮▮▮▮▮ concluded that Alacritech's patents have no value, there is simply no evidence ▮▮▮▮▮ engaged in any modeling monetizing the three patents-in-suit, two of which had not yet issued, as part of a common stock valuation. Mr. Vellturo's unreliable testimony would unfairly prejudice Alacritech by baselessly suggesting to the jury that ▮▮▮▮▮ concluded the value of the patents-in-suit was minimal. Additionally, if Dr. Vellturo's testimony were admitted, Alacritech would be forced to waste trial

7

time explaining to the jury the reason Alacritech conducted a common stock valuation, Alacritech's lack of relevant information at the time of the valuation, and the discount applied to risky and expensive litigation when valuing patents, all of which risks juror confusion.

Dr. Vellturo's testimony regarding the 2010 common stock valuation should be excluded.

**C.     Dr. Vellturo's Opinion That There Was Not A Single Hypothetical Negotiation Resulting In A Single Royalty Rate Is Contrary To Federal Circuit Law**

Dr. Vellturo opines that the parties to the hypothetical negotiation would be Cavium and Alacritech only, not Dell or any of Cavium's other customers at a different level of the supply chain. Ex. 1 (Vellturo Rpt.) ¶ 53. Dr. Vellturo reached this conclusion without engaging in a factual assessment to determine whether Cavium's customers would have had factual reasons why they would have wanted a separate hypothetical negotiation from Cavium. Ex. 2 (Vellturo Dep.) at 34:4-10, 36:12-18. Instead, Dr. Vellturo simply assumed, in part based on an understanding from counsel, that because Cavium is an accused infringer Cavium is negotiating on behalf of itself alone. Ex. 1 (Vellturo Rpt.) ¶ 53; Ex. 2 (Vellturo Dep.) at 35:5-36:8. Dr. Vellturo also criticizes Mr. Gunderson's opinion that there would be a single hypothetical negotiation between Alacritech and Defendants that resulted in Defendants and Alacritech agreeing to the same royalty rate. *See* Ex. 1 (Vellturo Rpt.) ¶¶ 54-55. Dr. Vellturo's opinions that there would not be a single hypothetical negotiation resulting in a single royalty rate for suppliers and manufacturers at different levels of the supply chain are contrary to Federal Circuit law and should be excluded.

In *California Institute of Technology v. Broadcom Limited*, 25 F.4th (2022), "Caltech alleged infringement by certain Broadcom WiFi chips and Apple products incorporating those chips, including smartphones, tablets, and computers." *Id.* at 981-82. Caltech's damages experts "opined that Caltech would have engaged in two simultaneous hypothetical negotiations, one with Broadcom at the "chip level" and one with Apple at the "device level." *Id.* at 993. The Federal

8

Circuit vacated the jury's damages award and remanded for a new trial on damages, *id.* at 995. The Federal Circuit held that the "mere fact" that two different defendants separately infringe "alone does not support treating the same [infringing product] differently at different stages in the supply chain . . . ." *Id.* at 993-94. Furthermore, the Federal Circuit rejected Caltech's argument—that the separate royalty rates were proper because "the reasonable royalty inquiry focuses on the amount of value that the patent technology adds to a product." The Federal Circuit stated that this "value" argument ignores established precedent and "in the absence of a compelling showing otherwise, a higher royalty is not available for the same device at a different point in the supply chain." *Id.* Finally, *Broadcom* addressed successive infringers stating that, "a reasonable royalty is not to be separately calculated against each successive device." *Id.* Based on *Broadcom*, this Court has found a "multiple royalty rate damages theory" that determines a different royalty rate at different points in the supply chain to be "untenable." *Arigna v. Nissan Motor Co.*, No. 2:22-cv-00126-JRG-RSP, Dkt. 141 at 5 (E.D. Tex. Aug. 3, 2022).

Dr. Vellturo's opinion is contrary to this controlling law. First, Mr. Vellturo's opinion assumes Mr. Gunderson must making a compelling showing that there would be a single hypothetical negotiation with a single royalty rate rather than the other way around. But under *Broadcom*, it is Dr. Vellturo who must make a compelling showing that a different royalty rate and different hypothetical negotiations were available for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* at 994. He has not done so. *See* Ex. 1 (Vellturo Rpt.) ¶¶ 53-55. Indeed, Dr. Vellturo admitted he did not do *any* such analysis or factual investigation. Ex. 2 (Vellturo Dep.) at 36:12-18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

Instead, Dr. Vellturo's opinion does exactly what the Federal Circuit has said is not sufficient, he concludes that Cavium and the other Defendants being "separate infringers" is sufficient to assume they would engage in separate negotiations resulting in separate royalty rates. *See* Ex. 1 (Vellturo Rpt.) ¶¶ 53, 55. Requiring a single royalty rate for multiple defendants along the supply chain means all factors relevant to the accused product at different levels in the supply chain are included in the royalty rate. That counsels for a single hypothetical negotiation for the Defendants along that supply chain.

Dr. Vellturo should be precluded from testifying that there was not a single hypothetical negotiation or a single royalty rate.

## IV.   CONCLUSION

For the foregoing reasons, Dr. Vellturo should be precluded from offering any opinions or testimony at trial regarding (1) Mr. Gunderson's 2017 Original Report, (2) Alacritech common stock valuation, and (3) that there was not a single hypothetical negotiation or a single royalty rate.

| | |
|---|---|
| Dated: June 23, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>*/s/ Brian E. Mack w/permission Claire Henry*<br>joepaunovich@quinnemanuel.com<br>California State Bar No. 228222<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Brian E. Mack<br>brianmack@quinnemanuel.com<br>California State Bar No. 275086<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor |

San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

T. John Ward, Jr.
Texas State Bar No. 00794818
*jw@wsfirm.com*
Claire Abernathy Henry
Texas State Bar No. 24053063
*claire@wsfirm.com*
WARD & SMITH LAW FIRM
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff Alacritech, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on June 23, 2023, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

/s/ Brian E. Mack w/permission Claire Henry
Brian E. Mack

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies pursuant to Local Rule CV-7(i) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  On June 21, 2023, counsel for Alacritech and counsel for Defendants met and conferred via videoconference regarding the instant motion, but no agreement could be reached and discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ Brian E. Mack w/permission Claire Henry
Brian E. Mack