IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ALACRITECH, INC., | |
| *Plaintiff*, | |
| v. | |
| CENTURYLINK, INC., *et al.*, | 2:16-cv-00693-RWS-RSP (LEAD CASE) |
| WISTRON CORPORATION, *et al.*, | 2:16-cv-00692-RWS-RSP |
| DELL INC., | 2:16-cv-00695-RWS-RSP |
| *Defendants*, | |
| and | JURY TRIAL DEMANDED |
| INTEL CORPORATION, *et al.*, | |
| *Intervenors*. | |

**PLAINTIFF ALACRITECH INC.'S MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF W. CHRISTOPHER BAKEWELL**

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD............................................................................................................2

III. ARGUMENT .........................................................................................................................2

    A. Mr. Bakewell's Opinions Regarding Mr. Gunderson's 2017 Report, Which Has Been Superseded And Entirely Replaced By His 2023 Report, Should Be Excluded..................................................................................................2

    B. Mr. Bakewell's Opinion About An Alacritech Stock Valuation Should Be Excluded ...........................................................................................................5

    C. Mr. Bakewell's Opinion That There Was Not A Single Hypothetical Negotiation Resulting In A Single Royalty Rate Is Improper and Contrary To Federal Circuit Law....................................................................................8

    D. Mr. Bakewell Should Be Precluded From Testifying About Dell's Companywide Patent Portfolio and Industry Awards That Are Unrelated To The Accused Products .....................................................................................10

IV. CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Arigna v. Nissan Motor Co.*,
 No. 2:22-cv-00126-JRG-RSP, Dkt. 141 (E.D. Tex. Aug. 3, 2022) ............................................9

*California Inst. of Tech. v. Broadcom Ltd.*,
 25 F.4th 976 (2022) ..........................................................................................................1, 4, 8, 9

*Ericsson Inc. et al v. TCL Comm. Tech. Holdings Ltd. et al.*,
 2:15-cv-00011-RSP, Dkt. 377 (E.D. Tex. Nov. 29, 2017) .........................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
 694 F.3d 51 (Fed. Cir. 2012) ....................................................................................................10

*Packet Intel. LLC v. NetScout Sys., Inc.*,
 No. 2:16-CV-147-JRG, 2017 WL 11631146 (E.D. Tex. Sept. 29, 2017) .................................3

*Realtime Data, LLC v. Actian Corp.*,
 No. 6:15-CV-463-RWS-JDL, 2017 WL 11662045 (E.D. Tex. May 4, 2017) ..........................3

*Solas OLED Ltd. v. Samsung Display Co., Ltd.*,
 2:19-cv-00152-JRG, Dkt. 279 (E.D. Tex. Sept. 30, 2020) ........................................................3

*Watkins v. Telsmith, Inc.*,
 121 F.3d 984 (5th Cir. 1997) .....................................................................................................2

### Rules

Fed. R. Evid. 402 ..............................................................................................................................2

Fed. R. Evid. 403 .........................................................................................................................2, 3

# EXHIBITS[1]

1. Supplemental Rebuttal Expert Report of W. Christopher Bakewell, dated May 12, 2023

2. Rebuttal Expert Report of W. Christopher Bakewell, dated November 20, 2017

3. Excerpts of Amended Second Supplemental Expert Report of Lance E. Gunderson, dated June 6, 2023

4. Valuation Report for Alacritech, Inc., dated June 29, 2010 (ALA07643162)

5. Email chain between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and Esther Lee (Alacritech), dated September 14, 2009 (ALA07912514)

6. Excerpts of Transcript of Deposition of W. Christopher Bakewell, dated June 19, 2023

---

[1] All exhibits herein refer to the Exhibits to the Declaration of Brian Mack.

I.    **INTRODUCTION**

Defendant Dell Inc.'s damages expert, W. Christopher Bakewell, renders a number of unreliable, legally unsupported, or irrelevant opinions in his expert report that should be excluded from trial.

*First*, Mr. Bakewell's opinions regarding Mr. Gunderson's 2017 original report should be excluded.  Mr. Gunderson's 2017 report has been superseded and entirely replaced by a 2023 report, following a six-year stay, narrowing of the case, and clarification of damages law by the Federal Circuit.  Mr. Bakewell's opinions would improperly inject into the trial evidence regarding patents, technology, and accused products that are no longer asserted in the case and necessitate that the jury be subjected to a comparison between the facts, claims, and law governing the case in 2017 and now.  Presentations at trial should be limited to opinions relevant to the claims as they are framed in 2023.

*Second*, the Court should exclude Mr. Bakewell's opinion that a valuation of Alacritech's common stock supposedly shows Alacritech's entire patent portfolio was valued at no more than ▆▆▆▆▆ and should therefore serve as a ceiling on Alacritech's damages.  The document does not contain a valuation of Alacritech's patent portfolio, and Mr. Bakewell's attempt to derive one and compare it to the damages analysis in this case is unreliable and misleading.

*Third*, Mr. Bakewell should be precluded from testifying there was not a single hypothetical negotiation or a single royalty rate for Defendants at different levels of the supply chain.  Mr. Bakewell's failure to make a compelling showing this is the case renders his opinion inadmissible under *California Institute of Technology v. Broadcom Limited*, 25 F.4th 976 (2022).

*Finally*, Mr. Bakewell should be precluded from testifying about Dell's large patent portfolio or industry awards, both of which are unrelated to the accused products and thus

1

irrelevant and prejudicial.

## II. LEGAL STANDARD

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997); *see also* Fed. R. Evid. 402 (irrelevant evidence is inadmissible). The Court may also exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403.

## III. ARGUMENT

### A. Mr. Bakewell's Opinions Regarding Mr. Gunderson's 2017 Report, Which Has Been Superseded And Entirely Replaced By His 2023 Report, Should Be Excluded

Mr. Bakewell opines that "Mr. Gunderson does not sufficiently account for the changed circumstances of this case (and in turn, the hypothetical license)" by critiquing Mr. Gunderson's 2023 report largely, if not solely, on the basis of how it compares to his superseded 2017 report. Ex. 1 ¶ 115. For example, Mr. Bakewell opines that Mr. Gunderson's royalty rate is arbitrary because Mr. Gunderson has allegedly not explained why the rate in his operative report is lower than the rate in his original report. *E.g.*, *id.* ¶¶ 13, 109, 117–119. Mr. Bakewell also opines that Mr. Gunderson's royalty rate is unreasonable because of what it implies about the comparative value of other patents that were covered by the royalty rate in Mr. Gunderson's original report but are no longer in this case. *E.g.*, *id.* ¶¶ 117-119. Mr. Bakewell's opinions regarding Mr. Gunderson's original report are irrelevant and should be excluded. *See* Fed. R. Evid. 402. Mr. Gunderson's opinions properly considered the facts and law as they exist in 2023. To the extent Mr. Bakewell's opinions have any probative value, they should be excluded because the minimal

probative value is outweighed by a risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403.

Mr. Bakewell's testimony would improperly inject into the trial evidence regarding patents, technology, and accused products that are no longer in the case. The Court routinely excludes such evidence. *See, e.g.*, *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, 2:19-cv-00152-JRG, Dkt. 279 at 2 (E.D. Tex. Sept. 30, 2020) (excluding "[e]vidence of no-longer asserted claims, products, and/or non-asserted infringement theories"); *Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-147-JRG, 2017 WL 11631146, at *3-5 (E.D. Tex. Sept. 29, 2017) (striking expert opinions that "relate to patents that are no longer part of this case" and precluding "evidence or argument relating to patents or claims [Plaintiff] has dropped"); *Ericsson Inc. et al v. TCL Comm. Tech. Holdings Ltd. et al.*, 2:15-cv-00011-RSP, Dkt. 377, at 3 (E.D. Tex. Nov. 29, 2017) ("[Defendant] may not present evidence or argument that a patent that was once asserted is no longer asserted."); *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 WL 11662045, at *1 (E.D. Tex. May 4, 2017) ("exclud[ing] evidence of never-asserted patents, no-longer-asserted patents, dropped patent claims, dropped or never-accused products, and/or non-asserted infringement theories"). It should do likewise here.

Mr. Gunderson issued a supplemental report in 2023 that entirely superseded and replaced his original report. Ex. 3 (Gunderson Rpt.) ¶¶ 2-3. Accordingly, Mr. Bakewell has no need to refer to Mr. Gunderson's 2017 report in providing his rebuttal testimony, as all of Mr. Gunderson's current opinions are contained in his 2023 report. Any comparison of Mr. Gunderson's prior damages analysis to his current damages analysis would lead to a lengthy side-show about the state of the case as it was six years ago, but no longer is, including presenting evidence regarding the three patents that are no longer asserted in the case, the technology they taught, and the accused

products that infringed them, all of which are now irrelevant. Mr. Gunderson's royalty rate is lower in his 2023 report than in his 2017 report, but to explain the magnitude of the rate change would necessitate a lengthy discussion of the facts that changed in the intervening time.

Testimony regarding Mr. Gunderson's original 2017 report would also require a confusing and time-consuming explanation to the jury about the state of the law in 2017 as compared to 2023. As Mr. Gunderson states in his 2023 supplemental report, he modified his opinions in his supplemental report not only in connection with the outcome of the IPR proceedings and additional facts provided in the case since 2017, but also due to Federal Circuit decisions over the past six years. *See* Ex. 3 (Gunderson Rpt.) ¶ 3. Alacritech will be unfairly prejudiced if Defendants are permitted to present testimony criticizing Mr. Gunderson for how he modified his opinions, including his royalty rate, between 2017 and 2023, but the jury is not instructed on the change in the law between 2017 and 2023 that provides the basis for Mr. Gunderson's modifications to his analysis. Most notably, in 2022, the Federal Circuit held that "in the absence of a compelling showing otherwise, a higher royalty is not available for the same device at a different point in the supply chain." *California Inst. of Tech. v. Broadcom Ltd.*, 25 4th at 994. It then vacated the jury's damages award and remanded for a new trial on damages after finding Caltech's damages experts did not offer a factual basis to conclude Broadcom (who manufactured chips) and Apple (who purchased those chips from Broadcom and incorporated them into its products) would have been willing to engage in separate negotiations leading to different royalty rates for the same chips. *Id.* at 994-95. Such law is undeniably relevant to this case where there are two supplier defendants (Intel and Cavium) who sell Network Interface Components in various forms (NICs) to manufacturers (Dell, Wiwynn, and Wistron) who incorporate those NICs into larger products that infringe the patents-in-suit. If Mr. Bakewell is permitted to testify that Mr. Gunderson's current

4

opinions are inconsistent relying on Mr. Gunderson's 2017 report, Alacritech will have to explain to the jury how the law has changed between 2017 and today. Even if this were an appropriate exercise (it is not), a high danger of jury confusion would exist. And of course, such an exercise would be a complete waste of jury time.

Mr. Bakewell's opinions regarding Mr. Gunderson's original 2017 report should be excluded because they are irrelevant. To the extent the Court finds it has any probative value, it should be excluded because any such minimal relevance is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

### B. Mr. Bakewell's Opinion About An Alacritech Stock Valuation Should Be Excluded

The Court should also exclude Mr. Bakewell's opinion that a valuation of Alacritech's common stock supposedly shows Alacritech's entire patent portfolio was valued at no more than ▮▮▮▮▮▮ and should therefore serve as a ceiling on Alacritech's damages. *See* Ex. 1 ¶ 55 & n.94; Ex. 2 ¶¶ 273-276. It does nothing of the sort. **Notably, at the time the report was prepared, two of the three patents-in-suit, the '880 and '948 patents, had not issued yet.** *Compare* Ex. 4 at 1 (Valuation Report dated June 29, 2010), *with* Ex. 1 ¶ 31 (showing issue dates of 2012 and 2014 for '880 and '948 patents). Mr. Bakewell's opinion should be excluded as irrelevant, unreliable, and misleading.

*First and foremost*, there is no valuation of Alacritech's patent portfolio contained in the valuation report. *See* Ex. 4. The valuation was performed by a third-party, ▮▮▮▮▮▮▮▮▮▮, whom Alacritech engaged for the purpose of complying with the Internal Revenue Code in connection with a stock option. Ex. 5. ▮▮▮▮▮▮▮▮▮ did not directly value Alacritech's patent portfolio. Ex. 4.

5

*Second*, Mr. Bakewell's inference of a valuation of the three patents-in-suit from ▮▮▮▮▮'s perfunctory valuation of Alacritech's common stock is unreliable. Mr. Bakewell manufactured the supposed ▮▮▮▮▮ of Alacritech's patent portfolio by subtracting Alacritech's total cash assets from the liquidation value of Alacritech preferred and common stock estimated by ▮▮▮▮▮, assuming that the value of Alacritech's patent portfolio, and the value of the three patents-in-suit, were included in the liquidation value of Alacritech's stock. *See* Ex. 2 ¶¶ 275-27 & n.459. Mr. Bakewell has identified no support for this unreliable assumption.

▮▮▮▮▮ did not have access to information necessary to conduct a valuation of the three patents in suit. There is no evidence ▮▮▮▮▮ would have even known of the existence of the inventions in two of the three patents-in-suit. The information ▮▮▮▮▮ received about Alacritech's patent portfolio was limited to a list of Alacritech's issued patents, but **at the time of the report was done, two of the three patents-in-suit, the '880 and '948 patents, had not yet issued**. *See* Ex. 5 at '515 (email from ▮▮▮▮▮ requesting a list of information to perform the valuation); *compare* Ex. 4 at 1 (Valuation Report dated June 29, 2010), *with* Ex. 1 ¶ 31 (showing issue dates of 2012 and 2014 for '880 and '948 patents).

Furthermore, ▮▮▮▮▮ did not have any of the confidential information produced in the course of this litigation (including Defendants' and Intervenors' sales information) that forms the basis for the damages calculations presented the expert reports in this case. The ▮▮▮▮▮ valuation was performed six years before Alacritech even filed the patent infringement claims in this case. Ex. 4; Ex. 5. ▮▮▮▮▮ therefore did not know that Defendants, such as Dell, were infringing the patents-in-suit. ▮▮▮▮▮ did not have Dell's financial data produced in this litigation and therefore did not know the number of infringing sales made using the RSC technology taught by the patents-in-suit. Likewise, neither Alacritech nor ▮▮▮▮▮

6

████████ had access to Defendants' and Intervenors' technical documentation or other materials that bear on the strength of Alacritech's claims. ████████ could not begin to estimate the size or scale of Alacritech's damages claim against Defendants or Intervenors for the patents-in-suit and include it in its stock valuation. Even if ████████ had attempted to value Alacritech's patents, which it never purported to do, such valuation would lack any comparability to the reasonable royalty calculation performed by Mr. Bakewell and Mr. Gunderson, Alacritech's damages expert.

Even if ████████ did assess monetizing the three patents-in-suit (and again, there is no evidence it did), any such assessment would have been both highly speculative and heavily discounted. Litigation is both risky and expensive. At the time of the valuation, the trial in this action was **thirteen years off**. From the time Alacritech filed a lawsuit to the time it gets any enforceable judgment could well be 10 years. Simply put, ████████ could not reliably predict in 2010, six years before litigation was filed, the value of Alacritech's claim for the patents-in-suit. Even if ████████ had evaluated the value of the three patents-in-suit in its report, monetizing them has required weathering a lot of uncertainty, outlaying a lot of cash, and waiting over 7 years for the opportunity to receive money, and therefore any valuation would be highly discounted. Regardless, there is no evidence ████████ attempted to model the outcome of the current patent infringement litigation—which would not even be filed for six years—as part of its valuation for Alacritech's common stock.

While Mr. Bakewell would like to imply that ████████ concluded that Alacritech's patents have no value, there is simply no evidence ████████ engaged in any modeling regarding monetizing the three patents-in-suit, two of which had not yet issued, as part of a common stock valuation. Mr. Bakewell's unreliable testimony on the valuation would unfairly

7

prejudice Alacritech by baselessly suggesting to the jury that ▮▮▮▮▮ concluded the value of the patents-in-suit was minimal. Additionally, if Mr. Bakewell's testimony were admitted, Alacritech would be forced to waste trial time explaining to the jury the reason Alacritech conducted a common stock valuation, Alacritech's lack of relevant information at the time of the valuation, and the discount applied to risky and expensive litigation when valuing patents, all of which risks juror confusion.

Mr. Bakewell's testimony regarding the 2010 valuation should be excluded.

### C. Mr. Bakewell's Opinion That There Was Not A Single Hypothetical Negotiation Resulting In A Single Royalty Rate Is Improper and Contrary To Federal Circuit Law

In his reports, Mr. Bakewell assumed a hypothetical negotiation between only Alacritech and Dell. Ex. 1 ¶ 34. In doing so, Mr. Bakewell also stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 39. During his deposition, however, Mr. Bakewell insisted that what he really meant was that although these scenarios may practically be the same, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 at 139:6-9. To the extent that Mr. Bakewell opines, or intends to opine, that these "slight differences" render a hypothetical negotiation between Alacritech and Dell a more appropriate method for determining a reasonable royalty than a single hypothetical negotiation between Alacritech and all Defendants, Mr. Bakewell's opinion is contrary to Federal Circuit law and should be excluded.

In *California Institute of Technology v. Broadcom Limited*, "Caltech alleged infringement by certain Broadcom WiFi chips and Apple products incorporating those chips, including smartphones, tablets, and computers." 25 F.4th at 981-82. Caltech's damages experts "opined that Caltech would have engaged in two simultaneous hypothetical negotiations, one with

8

Broadcom at the 'chip level' and one with Apple at the 'device level.'" *Id.* at 993. The Federal Circuit vacated the jury's damages award and remanded for a new trial on damages. *Id.* at 995. The Federal Circuit held that the "mere fact" that two different defendants separately infringe "alone does not support treating the same [infringing product] differently at different stages in the supply chain." *Id.* at 993-94. Furthermore, the Federal Circuit rejected Caltech's argument—that the separate royalty rates were proper because "the reasonable royalty inquiry focuses on the amount of value that the patent technology adds to a product." *Id.* The Federal Circuit stated that this "value" argument ignores established precedent and "in the absence of a compelling showing otherwise, a higher royalty is not available for the same device at a different point in the supply chain." *Id.* Finally, *Broadcom* addressed successive infringers stating that, "a reasonable royalty is not to be separately calculated against each successive infringer." *Id.* (citation omitted). Based on *Broadcom*, this Court has found a "multiple royalty rate damages theory" that determines a different royalty rate at different points in the supply chain to be "untenable." *Arigna v. Nissan Motor Co.*, No. 2:22-cv-00126-JRG-RSP, Dkt. 141 at 5 (E.D. Tex. Aug. 3, 2022).

Any testimony from Mr. Bakewell that considering a single hypothetical negotiation between Alacritech and all Defendants would be improper, or less appropriate than separate hypothetical negotiations, is contrary to this controlling law. Such testimony would be proper only if Mr. Bakewell made a compelling showing that a different royalty rate and different hypothetical negotiations were available for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ that infringe the patents-in-suit. *See California Inst. of Tech. v. Broadcom*, 25 F.4th at 994. He has not done so. Instead, Mr. Bakewell opines only that there are "some slight differences" between a hypothetical negotiation between Alacritech and all Defendants and one

9

between Alacritech and Dell alone, but "they [would], basically, be the same." *See* Ex. 6 at 139:13-15. This falls far short of the compelling showing needed to justify separate hypothetical negotiations under the facts of this case. Requiring a single royalty rate for multiple defendants along the supply chain means all factors relevant to the accused product at different levels in the supply chain are included in the royalty rate. That counsels for a single hypothetical negotiation for the Defendants along that supply chain.

Mr. Bakewell should be precluded from testifying that there was not a single hypothetical negotiation or a single royalty rate or that there should be a separate hypothetical negotiation between Alacritech and Dell.

### D. Mr. Bakewell Should Be Precluded From Testifying About Dell's Companywide Patent Portfolio and Industry Awards That Are Unrelated To The Accused Products

In considering apportioning profit credited to the invention as distinguished from non-patented elements under *Georgia-Pacific* factor 13, Mr. Bakewell discusses Dell's portfolio "of nearly ▬ U.S. patents" and numerous industry awards. *See* Ex. 1 ¶¶ 90-91. Neither is tied to Dell's accused products, nor even the type of technology at issue in this case. Mr. Bakewell should be precluded from testifying regarding these irrelevant, companywide numbers that risk unfair prejudice, confusion of the issues, and misleading the jury. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (improper to admit top-line numbers, which have no demonstrated correlation to the value of the patented feature).

Dell's entire patent portfolio is unrelated to its accused products or the technology at issue in this case. Mr. Bakewell has made no effort to establish which if any of these patents are practiced by the accused products. Nor has he even suggested that any of these patents are related to RSC functionality. The same is true of Mr. Bakewell's reference to Dell's numerous awards.

10

Mr. Bakewell has failed to show that any relate to the accused products, let alone to their RSC functionality.

Mr. Bakewell's testimony is irrelevant, and therefore inadmissible. It furthermore risks confusing or misleading the jury that—contrary to the law—they need to apportion profit between the patents-in-suit and Dell's unrelated patent portfolio and technologies. For this additional reason, it should be excluded.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Bakewell should be precluded from offering any opinions or testimony at trial regarding (1) Mr. Gunderson's 2017 Original Report, (2) the 2010 Alacritech common stock valuation, (3) that there was not a single hypothetical negotiation or a single royalty rate; and (4) Dell's companywide patent portfolio and industry awards.

| | |
|---|---|
| Dated:  June 23, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>*/s/ Brian E. Mack w/permission Claire Henry*<br>*joepaunovich@quinnemanuel.com*<br>California State Bar No. 228222<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone:  (213) 443-3000<br>Facsimile:  (213) 443-3100<br><br>Brian E. Mack<br>*brianmack@quinnemanuel.com*<br>California State Bar No. 275086<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone:  (415) 875-6600<br>Facsimile:  (415) 875-6700<br><br>T. John Ward, Jr.<br>Texas State Bar No. 00794818 |

*jw@wsfirm.com*
Claire Abernathy Henry
Texas State Bar No. 24053063
*claire@wsfirm.com*
WARD & SMITH LAW FIRM
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff Alacritech, Inc.*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on June 23, 2023, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

/s/ Brian E. Mack w/permission Claire Henry
Brian E. Mack

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies pursuant to Local Rule CV-7(i) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). On June 21, 2023, counsel for Alacritech and counsel for Defendants met and conferred via videoconference regarding the instant motion, but no agreement could be reached and discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ Brian E. Mack w/permission Claire Henry
Brian E. Mack