# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ALACRITECH, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CENTURYLINK, INC., *et al.*,<br><br>WISTRON CORPORATION, *et al..*,<br><br>DELL INC.,<br><br>*Defendants*,<br><br>and<br><br>INTEL CORPORATION, *et al.*,<br><br>*Intervenors*. | Case No. 2:16-cv-00693-RWS-RSP (LEAD CASE)<br><br>Case No. 2:16-cv-00692-RWS-RSP<br><br>Case No. 2:16-cv-00695-RWS-RSP<br><br><br>JURY TRIAL DEMANDED |

## ALACRITECH'S MOTIONS *IN LIMINE*
(Case 2:16-cv-00695)

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | MIL NO. 1: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING ALLEGED COPYING OR DERIVATION | 1 |
| II. | MIL NO. 2: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING DROPPED INVALIDITY DEFENSES INVOLVING INTEL RSC AND INTEL "ZERO COPY" SYSTEMS | 2 |
| III. | MIL NO. 3: TO PRECLUDE EVIDENCE OR ARGUMENT CRITICIZING ALACRITECH'S INFRINGEMENT ANALYSIS OF POST-STAY PRODUCTS DUE TO LACK OF SOURCE CODE OR TECHNICAL DISCOVERY | 4 |
| IV. | MIL NO. 4: TO PRECLUDE EVIDENCE OR ARGUMENT CHARACTERIZING THE ASSERTED PATENTS AS COVERING OR CLAIMING ONLY STATEFUL OFFLOADS SUCH AS TOE | 5 |
| V. | MIL NO. 5: TO PRECLUDE EVIDENCE OR ARGUMENT THAT ALACRITECH WAS REQUIRED TO NOTIFY DEFENDANTS BEFORE FILING SUIT OR WAITED TOO LONG TO FILE SUIT | 7 |
| VI. | MIL NO. 6: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING THE SIZE, SCOPE OR SIGNIFICANCE OF DEFENDANTS' PATENT AND LICENSE PORTFOLIOS AND COMPANYWIDE R&D EXPENDITURE | 8 |
| VII. | MIL NO. 7: TO PRECLUDE EVIDENCE OR ARGUMENT IMPLYING THAT A PARTY OBTAINED ADVICE OR OPINION OF COUNSEL | 9 |
| VIII. | MIL NO. 8: TO PRECLUDE EVIDENCE OR ARGUMENT REFERRING TO MR. GUNDERSON'S 2017 REPORT | 11 |
| IX. | MIL NO. 9: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING ALACRITECH'S PATENTS ALLEGEDLY BEING ASSIGNED A VALUE AS PART OF A COMMON STOCK VALUATION | 12 |

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allergan Sales, LLC v. UCB, Inc.*,
  No. 2:15-CV-01001-JRG-RSP, 2016 WL 9276265 (E.D. Tex. Nov. 7, 2016) .........................4

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996)...........................................................................................9

*Broadcom Corp. v. Qualcomm, Inc.*,
  543 F.3d 683 (Fed. Cir. 2008)....................................................................................10, 11

*Elbit Systems Land and C4I Ltd. v. Hughes Network Systems, LLC*,
  No. 2:15-CV-00037-RWS-RSP, 2017 WL 11658860 (E.D. Tex. July 25, 2017)..................8

*EVM Sys., LLC v. Rex Med., L.P.*,
  No. 6:13-CV-184, 2015 WL 11089476 (E.D. Tex. June 10, 2015) .........................................6

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  No. 6:13-CV-366-JDL, 2014 WL 6467782 (E.D. Tex. Nov. 17, 2014)..................................11

*Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.*,
  62 F.3d 1512 (Fed. Cir. 1995) ...............................................................................................8

*Intellectual Ventures I v. T-Mobile*,
  No. 2:17-cv-577-JRG, Dkt. 294 (E.D. Tex. Jan. 8, 2019) .......................................................6

*Realtime Data, LLC v. Actian Corp.*,
  No. 6:15-CV-463-RWS-JDL, 2017 WL 11662045 (E.D. Tex. May 4, 2017) ........................9

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
  No. 2:07-CV-250, 2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) ...........................................11

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
  580 U.S. 328 (2017)................................................................................................................8

*Solas OLED, LTD, v. Samsung Display Co., LTD*,
  No. 2:19-cv-00152-JRG, Dkt. 279 (E.D. Tex. Sept. 30, 2020) ...............................................9

*SynQor v. Vicor*,
  No. 2:14-cv-287-RWS-JBB, 2022 WL 7219272 (E.D. Tex. Oct. 7, 2022).....................10, 11

*TecSec v. Adobe Inc.*,
  No. 1:10-CV-115, 2018 WL 11388472 (E.D. Va. Nov. 21, 2018) .......................................11

**Rules**

Fed. R. Evid. 401 ...................................................................................................................4

Fed. R. Evid. 402 ..........................................................................................................4, 9, 12

Fed. R. Evid. 403 ...................................................................................................2, 4, 8, 12, 13

Local Rule CV-5(a)................................................................................................................15

Local Rule CV-7(i) ................................................................................................................15

Local Rule CV-7(h) ...............................................................................................................15

Local Patent Rule 3-7.............................................................................................................10

███████████████████████████████████████

## TABLE OF EXHIBITS

**Exhibit**                                 **Document**

1. Appendix B to the October 23, 2017 Report of Alacritech's Expert Dr. Kevin C. Almeroth Concerning Defendants' Infringement

2. Appendix A to the October 23, 2017 Report of Alacritech's Expert Dr. Kevin C. Almeroth Concerning Defendants' Infringement

3. ███████████████████████████████████████████████████

Plaintiff Alacritech, Inc. ("Alacritech") respectfully requests that the Court grant its motions *in limine* identified below.

I. **MIL NO. 1: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING ALLEGED COPYING OR DERIVATION**

Defendants should be precluded from presenting evidence or argument regarding any alleged "copying" or derivation of the claimed invention from another, such as from Intel, Microsoft, or Lucent.  *See* Dkt. 626 at 4-5 (Alacritech's Motion to Exclude).  Defendants have already agreed not to present this defense at trial.  *See* Dkt. 696 at 2-3 ("Intel has already offered to stipulate that Dr. Wicker will not offer those particular derivation opinions (*see* Dkt. 626-3 [Wicker Rpt.] ¶¶ 743-747) at trial, thus mooting any legitimate objection….").  Permitting Defendants to suggest that Alacritech somehow copied or derived the claimed inventions from another would therefore be legally irrelevant and highly prejudicial.  Fed. R. Evid. 403.

For example,  Not only is this statement false and highly inflammatory, it is no longer relevant given that Defendants have dropped the "Intel Zero Copy" system as a prior art reference (*see* Dkt. 642 at 4-5), resulting in no Intel prior art remaining in the case.  There is therefore no reason for Defendants to argue or even suggest to the jury that

---

[1] These statements have no merit and are irrelevant because defendants are no longer asserting a derivation defense.  Defendants should therefore be precluded from making any of these arguments.

1

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The only conceivable purpose to make any of these suggestions would be to prejudice the jury unfairly into thinking that Alacritech is not the true inventor of the claimed technology—which is a spurious suggestion—and is thus not entitled to any damages (or is entitled to less damages) for infringement of the claimed inventions.

II.   **MIL NO. 2: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING DROPPED INVALIDITY DEFENSES INVOLVING INTEL RSC AND INTEL "ZERO COPY" SYSTEMS**

Defendants should be precluded from offering evidence or argument related to dropped invalidity defenses, including Intel's alleged prior art offloading systems (including the "Intel RSC" and "Intel Prior Art Zero Copy" systems described in Dr. Wicker's expert report) because Defendants are no longer pursuing *any* Intel prior art patents or systems as prior art references. Evidence regarding dropped prior art defenses and unelected prior art is already precluded by agreed MILs 1 and 4. *See* Dkt. 796 at 1 (Agreed MIL Nos. 1 and 4, precluding "evidence, testimony, or argument regarding…dropped claims *or defenses*" and "prior art that is not disclosed in a specific combination or set forth in any party's expert report or invalidity contentions") (emphasis added); *see also* Dkt. 642 at 5 (stating that "Intel and Cavium will not rely on the Connery or Intel 'Zero Copy' systems at trial as invalidating prior art under Sections 102 and/or 103"); Dkt. 647 at 3 (same); Dkt. 643 at 5 (stating that "Dell will not rely on the Intel 'Zero Copy' at trial as prior art invalidating claim 41 of the '880 patent"); Dkt. 644 at 1 (same). Because Defendants have now withdrawn the alleged Intel "Zero Copy" system—the only elected Intel prior art reference—no expert opinion will be offered by Defendants that any Intel patent or Intel system invalidates any of the asserted claims. *See* Dkt. 696 at 8-9 ("Therefore, the motion [to

2

exclude the expert opinions and testimony of Dr. Stephen B. Wicker] should be denied as moot as to both the Connery System and Intel Zero Copy System. Alacritech's motion is also moot as to Dell and the Intel Zero Copy System given Dell's representation that 'Dell does not intend to rely on the Intel Zero Copy prior art at trial as invalidating prior art.'") (citing Dkts. 642, 644) (internal citations omitted). Defendants' withdrawal of the alleged Intel prior art patents and systems eliminates any purported relevance of such patents and systems such that reference to any alleged prior invention by Intel should be excluded. Fed. R. Evid. 401, 402.

Nonetheless, it appears that Defendants intend to rely on multiple exhibits related to Intel's alleged prior invention—despite withdrawing all Intel prior art as invalidating references—including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and expert testimony related to the same as "state of the art" evidence and "to provide factual underpinnings relevant to the development of accused products." Dkt. 644 at 11; *see also* Dkt. 642 at 5 (same). But any claimed relevance as to the "state of the art" or "development of the accused products" is substantially outweighed by the risk of confusing or misleading the jury into believing that Intel was a prior inventor or independently developed any of the claimed technology before Alacritech. Fed. R. Evid. 403; *see also Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-CV-01001-JRG-RSP, 2016 WL 9276265, at *1 (E.D. Tex. Nov. 7, 2016) (granting a motion *in limine* to "exclude evidence or argument of alleged prior invention" where the defendant no longer asserted the defense and "any relevance to the design and development details . . . [was] substantially outweighed by the risk of confusing or misleading the jury into believing that [the defendant] was a prior inventor"). Without any Intel prior art remaining in the case, Defendants should be precluded from presenting any evidence to the jury regarding Intel's alleged conception, reduction to practice, or development of

3

network offloading technology that the jury might conflate with the claimed technology invented by Alacritech. The only purpose of such evidence would be to wrongly imply that Intel had independently developed part of the claimed technology or that Intel should not have to pay damages for infringing Alacritech's patents because Intel is practicing its own technology—both legally irrelevant and flawed suggestions. Thus, Defendants should be precluded from introducing evidence at trial that Intel was involved in the invention of the claimed technology or any related network offloading technology that the jury might conflate with the claimed technology, such as the now withdrawn Intel RSC and Intel Zero Copy systems.

### III. MIL NO. 3: TO PRECLUDE EVIDENCE OR ARGUMENT CRITICIZING ALACRITECH'S INFRINGEMENT ANALYSIS OF POST-STAY PRODUCTS DUE TO LACK OF SOURCE CODE OR TECHNICAL DISCOVERY

The accused products all implement RSC or LRO. During the five years this case was stayed, Defendants released hundreds of additional products that also implement RSC/LRO.

---

[2] Defendant Dell does not manufacture the accused network interface components and systems-on-a-chip, but does incorporate those products in its own products using the default settings. Dkt. 406, ¶ 6.

4

██████████████████████████████████████████████████████

██████████████████████████████████████ Defendants should thus be precluded from criticizing Alacritech's supposed failure to analyze new products for which Defendants did not provide any technical documentation or source code ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

## IV. MIL NO. 4: TO PRECLUDE EVIDENCE OR ARGUMENT CHARACTERIZING THE ASSERTED PATENTS AS COVERING OR CLAIMING ONLY STATEFUL OFFLOADS SUCH AS TOE

During claim construction, Defendants urged the Court to construe the patents-in-suit to be limited to Alacritech's TCP Offload Engine ("TOE") commercial product. Dkt. 633 at 1-2, 4-6; Dkt. 718 at 2. The Court properly rejected Defendants' efforts, construing "fast-path processing" to allow for some—a little—network and transport layer processing, and construing "context" as simply "information summarizing various features of the connection." *Id.*; *see also* Dkt. 362 at 19-23, 29-31. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ and as Defendants' efforts to read such

---

3 ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████

5

limitations into the claims failed at *Markman*, they should not be permitted to present those arguments to the jury. *EVM Sys., LLC v. Rex Med., L.P.*, No. 6:13-CV-184, 2015 WL 11089476, at *2 (E.D. Tex. June 10, 2015); *Intellectual Ventures I v. T-Mobile*, No. 2:17-cv-577-JRG, Dkt. 294 at 3 (E.D. Tex. Jan. 8, 2019).

Alacritech raised this issue as a *Daubert* motion as well. Dkt. 633 at 4-6, 8; Dkt. 699 at 5-6, 10-12; Dkt. 718 at 2, 4-5; Dkt. 748 at 1-2, 4-5. Intel did not event attempt to substantively address the Court's ruling on "context," instead noting that the term does not appear in the remaining claims. Dkt. 699 at 6 n.2. But this merely highlights the problem with Defendants' efforts to compare their products to Alacritech's TOE products. If the claims do not require a context, it is irrelevant whether or not Defendants' products supposedly use a non-TOE context. Dkt. 633 at 5; *Id.* Ex. 1, ¶ 174. As set forth more fully in Alacritech's *Daubert* motion, Defendants should be limited to noninfringement arguments based on the language of the claims, not based on distinctions between commercial products.

Regarding "fast-path processing," Intel did not dispute that Defendants' now rejected construction attempted to limit Alacritech's patents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 718 at 2; Dkt. 748 at 1-3. Instead, Intel argued that its ▮▮▮▮▮▮▮▮ was somehow consistent with the Court's claim construction order rejecting that theory, pointing to the Court's observation that the "on the response" limitation of claim 1 of the '205 patent would have been rendered superfluous by Defendants' proposed construction of "fast-path processing." Dkt. 699 at 11. But as Alacritech replied, Defendants' proposal would have rendered *any* subsequent restriction on network- or transport-layer processing superfluous, and the Court explicitly rejected interpreting the "fast-path processing" claims in the

6

manner Intel intends to present to the jury. Dkt. 718 at 1-2, 4-5. Intel's sur-reply does not and cannot address either of these points, and merely repeats the arguments Alacritech showed were faulty. Dkt. 748 at 4-5. Nor was Intel able to dispute that it had read the "on the response" language out of '205 claim 1 entirely.[4] Dkt. 718 at 4-5.

V.  **MIL NO. 5: TO PRECLUDE EVIDENCE OR ARGUMENT THAT ALACRITECH WAS REQUIRED TO NOTIFY DEFENDANTS BEFORE FILING SUIT OR WAITED TOO LONG TO FILE SUIT**

Defendants should be precluded from presenting evidence or argument suggesting that Alacritech was required to notify Defendants before filing suit or that it intentionally delayed filing suit. First, there is no legal requirement that a patentee provide advance notice of suit.[5] *See* 35 U.S. 271(a); *Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) ("Infringement is, and should remain, a strict liability offense.") (*rev'd on other grounds*). Indeed, there is ample evidence in the record that each of Dell, Intel, and Cavium already knew of Alacritech (and its patent portfolio) for years prior to the commencement of this action. *See* Dkt. 640 at 1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 1 (Almeroth App. B), ¶¶ 122-25 (Cavium's pre-suit knowledge); Ex. 2 (Almeroth App. A), ¶¶ 158-59 (Intel's pre-suit knowledge).

---

[4] Intel instead presented a red herring by asserting that Dr. Heegard's theory accounts for the "on the response" language because requiring that the host perform *all* network- and transport-layer processing necessarily includes having the host perform such processing "on the response." Dkt. 748 n.5. But the fact that "on the response" is necessarily accounted for merely proves that Intel has read the language out of the claim. Under Intel's reading, "on the response" does not affect claim scope at all. Dkt. 633 at 8; *id.*, Ex. 3 at 36:16–37:9.

[5] Alacritech is only seeking to preclude any suggestion that it was legally required to notify defendants before brining suit, and is not seeking to preclude evidence of notice/knowledge of the asserted patents in connection with marking, indirect infringement, or willfulness allegations.

7

Defendants would like to suggest that Alacritech was legally required to notify each of Defendants before filing suit—a legally irrelevant and highly prejudicial suggestion.[6]  Fed. R. Evid. 403.

Similarly, the timing of the filing of Alacritech's complaint is irrelevant to any issue before the jury.  Defendants intend to argue that Alacritech sat on its rights and only filed suit after infringement damages had accrued for several years.  But laches is no longer a defense to patent infringement, and Alacritech can sue for acts of infringement occurring at any time within the preceding six years of filing suit.  *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 580 U.S. 328, 346 (2017).  To suggest otherwise to the jury would be legally erroneous and highly prejudicial.  Fed. R. Evid. 403; *Elbit Systems Land and C4I Ltd. v. Hughes Network Systems, LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 WL 11658860, *2 (E.D. Tex. July 25, 2017) ("Defendant will not…present evidence of argument that Plaintiffs are estopped or undeserving of damages because of Plaintiffs' delay in filing suit.").

VI. **MIL NO. 6: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING THE SIZE, SCOPE OR SIGNIFICANCE OF DEFENDANTS' PATENT AND LICENSE PORTFOLIOS AND COMPANYWIDE R&D EXPENDITURE**

Alacritech moved to exclude opinions by Defendants' damages experts regarding the size, scope, and significance of Defendants' respective patent and patent license portfolios and R&D expenditure.  *See* Dkts. 638, 641, 714, 716.  Alacritech now moves to preclude all evidence or argument regarding the same thing.

---

[6]  Moreover, Intel and Cavium voluntarily intervened in the present action—meaning they were notified prior to suit.  Voluntary intervenors should not be permitted to argue that they should have been notified before being sued since Alacritech's infringement allegations were compulsory counterclaims in response to intervenors' complaints in intervention.

8

Evidence or argument regarding the ▮ size and scope of the patent and patent license portfolios, and R&D expenditure, of a multinational corporation whose ▮ ▮ and any minimal probative value is outweighed by a risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 402, 403; *see also* Dkt. 638 at 11-12; Dkt. 714 at 5. These numbers are unrelated to the Accused Products or technology at issue and would serve to improperly suggest to the jury that Defendants could not, or would not, have infringed Alacritech's patents ▮ ▮ Further, such evidence risks confusing or misleading the jury by, for example, leading the jury to mistakenly believe that ▮ ▮ Exclusion is warranted in such circumstances. *See Solas OLED, LTD, v. Samsung Display Co., LTD*, No. 2:19-cv-00152-JRG, Dkt. 279 at 3 (E.D. Tex. Sept. 30, 2020) (granting motion in limine as to "[e]vidence and argument based on Defendants' patents"); *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 WL 11662045, at *1 (E.D. Tex. May 4, 2017) (granting motion in limine "as to any evidence or argument of [Defendant's] patents as a defense to infringement or invalidity"); *see also Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (finding ownership of a patent covering similar technology to the patent at issue was irrelevant, as "[t]he existence of one's own patent does not constitute a defense to infringement of someone else's patent").

**VII.   MIL NO. 7:  TO PRECLUDE EVIDENCE OR ARGUMENT IMPLYING THAT A PARTY OBTAINED ADVICE OR OPINION OF COUNSEL**

Defendants were required to comply with Local Patent Rule 3-7 by August 25, 2017 (Dkt. 264) and produce any opinion of counsel it intended to rely on as a defense to willful infringement.

*See* L.P.R. 3-7(b) ("A party opposing a claim of patent infringement who does not comply with the requirements of this P.R. 3-7 shall not be permitted to rely on an opinion of counsel as part of a defense absent a stipulation of all parties or by order of the Court, which shall be entered only upon a showing of good cause."). Since Defendants failed to timely produce any opinion of counsel and/or declined to waive privilege over such documents, they should be precluded at trial from suggesting to the jury that they had a good-faith belief in the alleged non-infringement of the Accused Products or alleged invalidity of the Asserted Patents based on the advice of or input from counsel. *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008) (district court properly excluded the fact that defendant obtained opinions of counsel because defendant decided not to waive privilege); *SynQor v. Vicor*, No. 2:14-cv-287-RWS-JBB, 2022 WL 7219272, at *1 (E.D. Tex. Oct. 7, 2022) ("Given [the accused infringer]'s decision to make no disclosure pursuant to Patent Rule 3-7, [the accused infringer] is precluded from arguing or suggesting to the jury that, based on advice or input from counsel, it had a good faith belief in non-infringement or invalidity….").

However, Alacritech should be allowed to argue to the jury that Defendants' failure to obtain an opinion of counsel is one factor relevant to establishing willfulness. Indeed, the Federal Circuit and this Court, among others, have expressly allowed the jury to consider the failure to procure an opinion of counsel as probative to the willfulness inquiry. *See, e.g.*, *Broadcom*, 543 F.3d at 699 ("[We] further hold that the failure to procure such an opinion may be probative of intent in this context."); *SynQor*, 2022 WL 7219272, at *1 (determining that the patentee "is permitted to introduce evidence or arguments regarding the fact that [the accused infringer] is not relying on an opinion of counsel at trial"); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366-JDL, 2014 WL 6467782, at *2 (E.D. Tex. Nov. 17, 2014) (finding that the patentee "is

permitted to introduce evidence or arguments regarding the absence of an opinion of counsel at trial"); *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:07-CV-250, 2009 WL 8725107, at *4 (E.D. Tex. Oct. 8, 2009) (same); *see also TecSec v. Adobe Inc.*, No. 1:10-CV-115, 2018 WL 11388472, at *8 (E.D. Va. Nov. 21, 2018) (observing that "the Federal Circuit has also held that the failure to obtain the advice of counsel is a relevant factor to consider in analyzing…willfulness").

## VIII. MIL NO. 8:  TO PRECLUDE EVIDENCE OR ARGUMENT REFERRING TO MR. GUNDERSON'S 2017 REPORT

Alacritech moved to exclude opinions by Defendants' damages experts regarding Mr. Gunderson's 2017 report, which has been entirely replaced by his 2023 report. *See* Dkts. 638, 639, 641. Similarly, Alacritech moves to preclude all evidence or argument referring to Mr. Gunderson's 2017 report.  It is clear Defendants intend to argue Mr. Gunderson failed to account for the changed scope of the case since his initial report. *See, e.g.*, Dkt. 638 at 2. Defendants seek to compare Mr. Gunderson's opinions regarding the six patents at issue in the case at the time of his 2017 report with his opinions in his 2023 report regarding the three patents in the case now. Defendants should not be permitted to so argue, as it would require Alacritech to explain to the jury how the law and posture of the case changed in the intervening six years.

If the Court grants Alacritech's *Daubert* motions on this ground, Defendants should not be permitted to evade that ruling by cross-examining Mr. Gunderson about changes between the two reports. Defendants refused to so stipulate, necessitating this motion. But even if the Court denies Alacritech's *Daubert* motions on this issue, such evidence or argument should be excluded because it is irrelevant and any minimal probative value is outweighed by a risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 402, 403; *see also* Dkt. 638 at 3-5. This argument by Defendants would improperly interject evidence regarding patents, technology, and

11

accused products that are no longer asserted. The Court routinely excludes such evidence. *See* Dkt. 638 at 3. It should do likewise here, consistent with the parties' agreement that "[t]he parties shall be precluded from introducing evidence, testimony, or argument regarding . . . dropped claims or defenses." Dkt. 796, Agreed MIL No. 1. Such cross-examination would also be inappropriate, unduly prejudicial, and create multiple sideshow issues because the necessary rebuttal to the cross would require discussing changes in damages law, the IPRs, and similarities and differences between RSC and LSO (the technology no longer at-issue). Dkt. 638 at 3-5.

IX. **MIL NO. 9: TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING ALACRITECH'S PATENTS ALLEGEDLY BEING ASSIGNED A VALUE AS PART OF A COMMON STOCK VALUATION**

Alacritech moved to exclude opinions by Defendants' damages experts that Alacritech's patents were assigned a value as part of a valuation of Alacritech's common stock. *See* Dkts. 638, 639, 641. Similarly, Alacritech moves to preclude all evidence and argument regarding that valuation. There was no valuation of Alacritech's patent portfolio contained in the report authored by a third party called ▮▮▮▮▮. *See* Ex. 3 (Valuation Report). Defendants' damages experts admitted this. Dkt. 638 at 5-6. At the time the report was prepared, two of the three patents-in-suit, the '880 and '948 patents, had not issued. *Id.* at 5. Defendants' valuation of the patents-in-suit from a perfunctory valuation of Alacritech's common stock is misleadingly manufactured ▮▮▮▮▮ *Id.* at 6. Even if ▮▮▮▮▮ had attempted to value Alacritech's patents, which it never purported to do, such valuation would lack any comparability to ▮▮▮▮▮ performed by the parties' damages experts. *Id.* at 7. Moreover, even if ▮▮▮▮▮ had assessed monetizing the three patents-in-suit (and again, it did not), any such assessment would have been both highly speculative and heavily discounted. ▮▮▮▮▮

12

could not have reliably predicted in ▇▇▇ before litigation was even filed, the value of Alacritech's claim for the patents-in-suit.

The valuation of Alacritech's common stock for tax purposes in connection with a stock option is inadmissible because it is irrelevant to any issue in this case: it does not make any fact at issue more or less probable. Even if the Court deemed it marginally relevant (and it is not), its relevance is outweighed by the dangers of unfair prejudice to Alacritech and misleading the jury. Fed. R. Evid. 403. While Defendants would like to imply ▇▇▇ concluded that Alacritech's patents have little value, there is simply no evidence that ▇▇▇ engaged in any modeling monetizing the three patents-in-suit, two of which had not yet issued. Baseless argument to the jury that ▇▇▇ concluded a value of the patents-in-suit would unfairly prejudice Alacritech. If admitted, Alacritech would be forced to waste trial time explaining to the jury the reason Alacritech conducted a common stock valuation, the lack of relevant information at the time of the valuation, and the discount one would apply to risky and expensive litigation when valuing patents, all of which risk juror confusion and waste time.

|  |  |
|---|---|
| Dated: August 18, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

/s/ Brian E. Mack
joepaunovich@quinnemanuel.com
California State Bar No. 228222
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian E. Mack
brianmack@quinnemanuel.com
California State Bar No. 275086
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

T. John Ward, Jr.
Texas State Bar No. 00794818
jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
claire@wsfirm.com
WARD & SMITH LAW FIRM
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff Alacritech, Inc.*

██████████████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on August 18, 2023, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

*/s/ Brian E. Mack*
Brian E. Mack

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies pursuant to Local Rule CV-7(i) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). On August 14 and 15, 2023, counsel for Alacritech and counsel for Defendants met and conferred via videoconference regarding the instant motion, but no agreement could be reached and discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Brian E. Mack*
Brian E. Mack

████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

*/s/ Brian E. Mack*
Brian E. Mack
