IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ALACRITECH INC., § § *Plaintiff*, § § v. § § CENTURYLINK, INC. *et al*, § § *Defendants*. § | § § § § § CIVIL ACTION NO. 2:16-CV-00693-RWS-RSP § (LEAD CASE) § § § § |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Intel Corporation and Dell, Inc.'s (collectively, "Defendants") Motion for Partial Summary Judgment of No Direct Infringement ("Motion'). **Dkt. No. 610**. For the following reasons, the Motion should be **DENIED**.

**I.    BACKGROUND**

On June 30, 2016, Plaintiff Alacritech Inc. filed suit against Defendants CenturyLink, Inc., Tier 3, Inc., Savvis Communications Corp., CenturyLink Communications LLC, Cyxtera Communications, LLC, Winston Corporation, Wiwynn Corporation, SMS InfoComm Corporation, and Dell Inc. alleging certain server products and methods infringe eight of Alacritech's patents.[1] Intel Corporation intervened in this case on November 21, 2016, and Cavium, Inc. intervened on February 14, 2017, both asserting that their products were implicated in the infringement allegations. Dkt. No. 84 (Intel); Dkt. No. 127 (Cavium).

This case proceeded through discovery and was stayed pending disposition of *inter partes* review (IPR) proceedings that had been instituted by the Patent Trial and Appeal Board. Dkt.

---

[1] Defendants Winston Corporation, Wiwynn Corporation, and SMS InfoComm Corporation were consolidated for pretrial from Case No. 2:16-CV-692-RWS-RSP, and Defendant Dell Inc. was consolidated for pretrial from Case No. 2:16-CV-695-RWS-RSP.

No. 451. The PTAB invalidated multiple claims challenged in IPRs, Alacritech appealed that decision, and the Court continued the stay pending resolution of the Federal Circuit appeal. Dkt. No. 482. In 2022, following the appeal proceedings, Alacritech moved to lift the stay and proceed with its case on the surviving patents and claims.

The Court lifted the stay and entered Docket Control Orders for the respective cases. *See* Dkt. No. 786 (setting February 20, 2024 trial date for certain defendants in the 2:16-CV-693 and 2:16-CV-692 cases); 2:16-CV-00695-RWS-RSP, Dkt. No. 19 (setting October 16, 2023 trial date for Dell). Now, Alacritech asserts claim 1 of U.S. Patent No. 7,124,205 (the "'205 Patent"), claims 17 and 22 of U.S. Patent No. 8,805,948 (the "'948 Patent"), and claim 41 of U.S. Patent No. 8,131,880 (the "'880 Patent") (collectively, "Asserted Patents") against Defendant Dell Inc. and Intervenor Intel Corporation of the '695 Member Case, and Defendants Winstron Corporation, Wiwynn Corporation, SMS InfoComm Corporation of the '692 Member Case.[2] *See* Dkt. No. 522 at 1.

Alacritech alleges that Defendants directly infringe claim 1 of the '205 Patent and claims 17 and 22 or the '948 Patent (collectively, the "Contested Claims"). Dkt. No. 816 (Joint Pretrial Order) at 4.

With respect to Intel, Alacritech accuses three groups of Intel products of infringing the Contested Claims: (1) ethernet controllers and adapters; (2) system-on-a-chip (SoC) products; and (3) stipulated products. Motion Ex. 1 (Dr. Almeroth Infringement Report – Appendix A) at ¶¶ 7–8, 12; Dkt. 553 (Stipulation Regarding Intel Products) ¶¶ 1–3.

As for Dell, Alacritech accuses two groups of Dell products of infringing the Contested Claims: (1) ethernet controllers and adapters; and (2) server and storage products sold without an

---

[2] The other defendants and intervenor Cavium are no longer in the case or will soon be dismissed.

operating system. Motion Ex. 15 (Dr. Almeroth Infringement Report – Appendix C) ¶¶ 2–6, 21–25.

Defendants move for partial summary judgment alleging that Alacritech fails to provide any evidence that the accused Intel and Dell products practice the limitations identified below (collectively, "Disputed Limitations").

### A. The '205 Patent

Claim 1 of the '205 Patent is an independent claim that recites:

> 1. ***An apparatus*** comprising:
> ***a host computer having a protocol stack*** and a destination memory, the protocol stack ***including a session layer portion***, the session layer portion being for processing a session layer protocol; and
> ***a network interface device coupled to the host computer***, the network interface device receiving from outside the apparatus a response to a solicited read command, the solicited read command being of the session layer protocol, performing fast-path processing on the response such that a data portion of the response is placed into the destination memory without the protocol stack of the host computer performing any network layer processing or any transport layer processing on the response.

Dkt. No. 1-2 ('205 Patent) at Claim 1 (disputed limitations emphasized above).

### B. The '948 Patent

Claim 17 of the '948 Patent is an independent claim that recites:

> 17. ***An apparatus*** for network communication, the apparatus comprising:
> ***a host computer running a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer***, the protocol stack adapted to establish a TCP connection for an application layer running above the TCP layer, the TCP connection being defined by source and destination IP addresses and source and destination TCP ports;
> ***a network interface that is connected to the host computer*** by an input/output bus, the network interface adapted to parse the headers of received packets to determine whether the headers have the IP addresses and TCP ports that define the TCP connection and to check whether the packets have certain exception conditions, including whether the packets are IP fragmented, have a FIN flag set, or are out of order, the network interface having logic that directs any of the received packets that have the exception conditions to the protocol stack for processing, and directs the received packets that do not have any of the exception conditions to have their headers removed and

> their payload data stored together in a buffer of the host computer, such that the payload data is stored in the buffer in order and without any TCP header stored between the payload data that came from different packets of the received packets.

Dkt. No. 1-8 ('948 Patent) at Claim 17 (disputed limitations emphasized above). Claim 22 of the '948 Patent is a dependent claim that recites:

> 22. **The apparatus of claim 17**, wherein the exception conditions include having a SYN flag set.

*Id.* at Claim 22 (disputed limitations emphasized above). Consequently, dependent claim 22 also requires each of the disputed limitations of claim 17.

## II.     LAW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case if that party bears the burden of proof on that issue. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. *Liberty Lobby*, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for

trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific facts which meet his burden of proof. *Id.* "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy*, 44 F.2d at 312 (citing *Liberty Lobby*, 477 U.S. at 247).

### III.   ANALYSIS

Defendants argue that summary judgment is warranted because Alacritech failed to identify any evidence that (1) Intel itself has not done anything that would meet the Disputed Limitations, and (2) Dell itself has sold or offered for sale anything that would meet the Disputed Limitations with respect to (a) its ethernet controllers and adapters sold without a host, and (b) its server and storage products sold without an operating system. The Court finds that genuine disputes of material fact exist.

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention" during the term of the patent directly infringes the patent. 35 U.S.C. § 271(a); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). To prove direct infringement, "a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (citing *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) and *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim….")).

Allegations directed to making, using, selling, offering for sale, or importing less than the complete claimed invention are insufficient to prove direct infringement. *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1345 (Fed. Cir. 2019) ("The question … is whether 'all of the elements of the claim . . . [are] present in the accused system[s]' allegedly sold." (citing *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001))); *Synchronoss Techs., Inc. v. Dropbox, Inc*, 987 F.3d 1358, 1368 (Fed. Cir. 2021) ("[O]ne may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." (citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) (finding no direct infringement where a party "did not offer to sell the entire invention as claimed in the patent"))).

"[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (citations omitted).

### A. Intel

Defendants argue that Intel is entitled to summary judgment that it does not directly infringe claim 1 of the '205 Patent or claims 17 or 22 of the '948 Patent because there is no evidence that Intel's (1) ethernet controllers and adapters; (2) system-on-a-chip (SoC) products; or (3) stipulated products practice every limitation of those claims.

First, Defendants argue that Alacritech provides no evidence that the accused ethernet controllers and adapters are a "host computer [having/running] a protocol stack," as required by claim 1 of the '205 Patent and claims 17 and 22 of the '948 Patent. According to Defendants, Alacritech admits that these products "depend on a host computer having a protocol stack" and are "designed to function with" or "designed for use with a host computer running a protocol stack." Motion Ex. 1 (Dr. Almeroth Infringement Report) at ¶¶ 12, 86; Motion Exs. 2, 5–9 (Relevant initial disclosures).

Second, Defendants argue that Alacritech provides no evidence that the accused SoC products meet the claim requirements for the claimed "host computer" that includes "a protocol stack . . . including a session layer portion," as required by claim 1 of the '205 Patent, or "a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer," as required by claims 17 and 22 of the '948 Patent. Further, Defendants argue that Alacritech offers no evidence that the accused SoC products "hav[e] a protocol stack . . . including a session layer portion" or "run[] a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer."

Third, Defendants argue that Alacritech provides no evidence that any of the stipulated products was "connected to" or "coupled to" a "host computer having a protocol stack . . . including a session layer portion" or "running a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer."

Here, Dr. Almeroth offers opinions that all of the accused Intel product families use the same implementation of RSC. Dkt. No. 628 ("Response") Ex. A (Dr. Almeroth Infringement Report) at ¶ 8. Dr. Alermoth offers element-by-element infringement analysis as to the Intel products. *Id.* at ¶¶ 11–17. He also opines that the Intel ethernet controllers and adapters, SoC products, and stipulated products directly infringe claim 1 the '205 Patent because Intel (1) uses the products "by installing the accused RSC products onto its own computers, both for testing purposes and for its own internal use," *id.* at ¶ 26, (2) asserts control and direction over its partners, customers, and other users who collectively infringe the claim, *id.* at ¶ 27, and (3) works in concert with server manufacturers such as Dell to ensure interoperability of Intel's NICs with its OEM customer servers, *id.* at ¶ 28. Dr. Almeroth offers similar opinions as to the Intel products directly infringing claims 17 and 22 of the '948 Patent. *Id.* at ¶¶ 85–96.

7

Defendants argue that Alacritech must offer evidence identifying what the tests were, where they occurred, and when they occurred for the "use" theory to survive summary judgment. Dkt. No. 671 ("Reply") at 1. Alacritech cites evidence from Intel's infringement expert, deposition testimony and documentation from Intel's corporate representative, Intel responses to Requests for Admission, and deposition testimony from additional Intel witnesses. Response Ex. F (Dr. Heegard Non-infringement Report) at ¶¶ 631–32; Response Ex. D (McLaughlin 10/11/17 Dep. Tr) at 8:14–83:17; Response Ex. E (RSC – LRO Test Case) at 88814DOC030024–31; Reply Ex. J (McLaughlin 10/11/17 Dep. Tr) at 28:17–31:12, 37:18–24 (specifying driver testing is carried out by Intel in the United States), 89:7–10. Based on this evidence alone, a reasonable jury could find that Intel's testing for functionality before selling the accused products includes every element required by the Contested Claims. Therefore, a jury could find that this constitutes an infringing use.

Defendants' cited cases on this point are not persuasive because the evidence indicates—and at a minimum supports an inference—that Intel's products are tested in the same environment in which they will be used by customers, including all the recited claim elements. Consequently, the testing involves more than "only components of the [patented] combination," as was done in *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364,1366 (Fed. Cir. 2001). Additionally, Alacritech does not concede that there are multiple non-infringing ways to test Intel's products. And Alacritech's evidence goes beyond "generally testing" without knowing whether that testing was completed in an infringing or non-infringing mode. Consequently, this case is also unlike *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 612 F.Supp.3d 508, 416–17 (D. Del. 2020).

As an additional independent reason, Intel provides operating system drivers that allow its controllers and adapters to function with that operating system to perform every element of the claimed RSC/LRO functionality within a host computer. In a similar context, the Federal Circuit held that to "use" a system for purposes of direct infringement, "a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). That case similarly involved the use of a system claim that includes elements in the possession of more than one actor. *Id.* at 1283-84. And the Federal Circuit explicitly stated that the district court erred by "holding that in order to 'use' a system under § 271(a), a party must exercise physical or direct control over each individual element of the system." *Id.* at 1284. In order to "put the system into service," an end user must be using all portions of the claimed invention. *Id.* Notably, "[i]t did not matter that the user did not have physical control over the relays, the user made them work for their patented purpose, and thus 'used' every element of the system by putting every element collectively into service." *Id.*

Likewise, here, it does not matter that Intel does not have physical control over the end-user's device. If Intel, through its hardware and software on end user devices, can operate an end-user's device and in doing so meet all of the limitations of the claims, direct infringement by Intel can occur. *GREE, Inc. v. Supercell Oy*, No. 219-CV-00070-JRG-RSP, 2020 WL 4931398, at *4 (E.D. Tex. July 18, 2020), *report and recommendation adopted*, No. 219-CV-00070-JRG-RSP, 2020 WL 4922154 (E.D. Tex. Aug. 21, 2020). For at least this additional independent reason, genuine disputes of material fact exist as to whether Intel's products directly infringe, which precludes summary judgment.

9

### B. Dell

Defendants argue that that Dell is entitled to partial summary judgment that it does not directly infringe claim 1 of the '205 Patent or claims 17 or 22 of the '948 Patent based on (1) Dell's sales or offers for sale of its ethernet controllers, adapter, and other products sold without a host computer, and (2) Dell's servers, storage products, and other products sold without any operating system.

First, Defendants argue that Dell's ethernet controller and adapter products sold as "non-tied peripherals" do not include a "host computer [having/running] a protocol stack," as required by claim 1 of the '205 Patent or claims 17 or 22 of the '948 Patent.

Second, Defendants concede that Dell sells servers and storage products with operating systems installed. Nevertheless, Defendants contends that the servers and storage products it sells without an operating system do not "[have/run] a protocol stack," as required by claim 1 of the '205 Patent or claims 17 or 22 of the '948 Patent.

Here, Dr. Almeroth offers opinions that the accused Dell products directly infringe claim 1 of the '205 Patent. Response Ex. C (Dr. Almeroth Infringement Report) at ¶ 16. He also opines that Dell's accused products directly infringe claims 17 and 22 of the '948 Patent. *Id.* at ¶ 19. Dr. Almeroth offers opinions based on (1) Dell's website offering the ability to customize the non-tied peripherals and Dell server and storage products, (2) testimony from Dell's corporate representative that the non-tied peripheral products ship with operating system drivers, (3) evidence that Dell implements the network interface devices without modification into the accused products, which it makes, sells, offers for sale, and imports into the United States, and (4) Dell selling and offering for sale customized servers that may contain the accused Intel network interface cards.. *Id.* at ¶¶ 10, 14, 28, 33, 40, 41; Response Ex. I (Kelly. 8/31/17 Dep. Tr.) at 42:21–43:6, 111:6–22. Dr. Almeroth opines that the inclusion of operating system drivers on the accused

10

non-tied peripheral products means that those products include software that runs on the host computer and directs the operating system to use the non-tied peripheral products to perform every element of the claimed RSC/LRO functionality. Additionally, Dell stipulated that since June 2010, it used and uses each of the Dell system-level products in the United States with at least one of the corresponding adapter-level products, and has used those system-level products with the system software it enables. Based on this evidence alone, a reasonable jury could find that Intel's testing for functionality before selling the accused products includes every element required by the Contested Claims.

In sum, Alacritech offers evidence that creates genuine disputes of material fact as to direct infringement of Dell's ethernet controllers and adapter products sold as non-tied peripherals, and the servers and storage products without operating systems pre-installed.

As an additional independent reason, and for similar reasons previously discussed, it does not matter that Dell does not have physical control over the end-user's device. If Dell, through its hardware and software on end user devices, can operate an end-user's device and in doing so meet all of the limitations of the claims, direct infringement by Dell can occur. *Centillion*, 631 F.3d at 1284; *GREE, Inc. v. Supercell Oy*, No. 219-CV-00070-JRG-RSP, 2020 WL 4931398, at *4 (E.D. Tex. July 18, 2020), *report and recommendation adopted*, No. 219-CV-00070-JRG-RSP, 2020 WL 4922154 (E.D. Tex. Aug. 21, 2020). For at least this additional independent reason, genuine disputes of material fact exist as to whether Dell's products directly infringe, which precludes summary judgment.

### IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Partial Summary Judgment of No Willful Infringement and No Indirect Infringement (Dkt. No. 604) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by not later than October 9, 2023** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 2nd day of October, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE