IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ALACRITECH INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-00693-RWS-RSP |
| | § | (LEAD CASE) |
| CENTURYLINK, INC. *et al*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM ORDER

Before the Court are two motions: (1) Alacritech Inc.'s *Daubert* Motion to Exclude Opinions and Testimony of Dr. Chris Heegard (**Dkt. No. 633**), and (2) Alacritech Inc.'s *Daubert* Motion to Exclude Opinions and Testimony of Dr. Mark Jones (**Dkt. No. 701**). For the following reasons, the Motion as to Dr. Heegard (**Dkt. No. 633**) is **GRANTED IN PART**, and the Motion as to Dr. Jones (**Dkt. No. 671**) is **DENIED**.

## I.     BACKGROUND

On June 30, 2016, Plaintiff Alacritech Inc. filed suit against Defendants CenturyLink, Inc., Tier 3, Inc., Savvis Communications Corp., CenturyLink Communications LLC, Cyxtera Communications, LLC, Winston Corporation, Wiwynn Corporation, SMS InfoComm Corporation, and Dell Inc. alleging certain server products and methods infringe eight of Alacritech's patents.[1] Intel Corporation intervened in this case on November 21, 2016, and Cavium, Inc. intervened on February 14, 2017, both asserting that their products were implicated in the infringement allegations. Dkt. No. 84 (Intel); Dkt. No. 127 (Cavium).

---

[1] Defendants Winston Corporation, Wiwynn Corporation, and SMS InfoComm Corporation were consolidated for pretrial from Case No. 2:16-CV-692-RWS-RSP, and Defendant Dell Inc. was consolidated for pretrial from Case No. 2:16-CV-695-RWS-RSP.

This case proceeded through discovery and was stayed pending disposition of *inter partes* review (IPR) proceedings that had been instituted by the Patent Trial and Appeal Board. Dkt. No. 451. The PTAB invalidated multiple claims challenged in IPRs, Alacritech appealed that decision, and the Court continued the stay pending resolution of the Federal Circuit appeal. Dkt. No. 482. In 2022, following the appeal proceedings, Alacritech moved to lift the stay and proceed with its case on the surviving patents and claims.

The Court lifted the stay and entered Docket Control Orders for the respective cases. *See* Dkt. No. 786 (setting February 20, 2024 trial date for certain defendants in the 2:16-CV-693 and 2:16-CV-692 cases); 2:16-CV-00695-RWS-RSP, Dkt. No. 19 (setting October 16, 2023 trial date for Dell). Now, Alacritech asserts claim 1 of U.S. Patent No. 7,124,205 (the "'205 Patent"), claims 17 and 22 of U.S. Patent No. 8,805,948 (the "'948 Patent"), and claim 41 of U.S. Patent No. 8,131,880 (the "'880 Patent") (collectively, "Asserted Patents") against Defendant Dell Inc. and Intervenor Intel Corporation of the '695 Member Case, and Defendants Winstron Corporation, Wiwynn Corporation, SMS InfoComm Corporation of the '692 Member Case.[2] *See* Dkt. No. 522 at 1.

Alacritech's *Daubert* motions involve the claim language of the Asserted Patents so the relevant claims have been reproduced for reference with added limitation labels.

### A. The '205 Patent

Claim 1 of the '205 Patent is an independent claim that has been reproduced below with added limitation labels and recites:

> 1. An apparatus comprising:
> 1[a]: a host computer having a protocol stack and a destination memory, the protocol stack including a session layer portion, the session layer portion being for processing a session layer protocol; and

---

[2] The other defendants and intervenor Cavium are no longer in the case or will soon be dismissed.

1[b]: a network interface device coupled to the host computer, the network interface device receiving from outside the apparatus a response to a solicited read command, the solicited read command being of the session layer protocol, performing fast-path processing on the response such that a data portion of the response is placed into the destination memory without the protocol stack of the host computer performing any network layer processing or any transport layer processing on the response.

Dkt. No. 1-2 ('205 Patent) at Claim 1.

## B. The '880 Patent

Claim 41 of the '880 Patent is an independent claim that has been reproduced below with added limitation labels and recites:

41. An apparatus for transferring a packet to a host computer system, comprising:

41[a]: a traffic classifier, disposed in a network interface for the host computer system, configured to classify a first packet received from a network by a communication flow that includes said first packet;

41[b]: a packet memory, disposed in the network interface, configured to store said first packet;

41[c]: a packet batching module, disposed in the network interface, configured to determine whether another packet in said packet memory belongs to said communication flow;

41[d]: a flow re-assembler, disposed in the network interface, configured to re-assemble a data portion of said first packet with a data portion of a second packet in said communication flow; and

41[e]: a processor, disposed in the network interface, that maintains a TCP connection for the communication flow, the TCP connection stored as a control block on the network interface.

Dkt. No. 1-7 ('880 Patent) at Claim 41.

## C. The '948 Patent

Claim 17 of the '948 Patent is an independent claim that has been reproduced below with added limitation labels and recites:

17. An apparatus for network communication, the apparatus comprising:

17[a]: a host computer running a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer, the protocol stack adapted to establish a TCP connection for an application layer running above the TCP layer, the TCP connection being defined by source and destination IP addresses and source and destination TCP ports;

3

17[b]: a network interface that is connected to the host computer by an input/output bus, the network interface adapted to parse the headers of received packets to determine whether the headers have the IP addresses and TCP ports that define the TCP connection and to check whether the packets have certain exception conditions, including whether the packets are IP fragmented, have a FIN flag set, or are out of order, the network interface having logic that directs any of the received packets that have the exception conditions to the protocol stack for processing, and directs the received packets that do not have any of the exception conditions to have their headers removed and their payload data stored together in a buffer of the host computer, such that the payload data is stored in the buffer in order and without any TCP header stored between the payload data that came from different packets of the received packets.

Dkt. No. 1-8 ('948 Patent) at Claim 17.

## II.    LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Even if testimony is reliable, it may still be excluded if it relies on information that violates the rules. Rule 26(a) requires that a "party must, without awaiting a discovery request, provide to the other parties…a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." FED. R. CIV. P. 26. "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Since a district court has "broad discretion" in imposing a sanction pursuant to Rule 37, a district court's decision "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013); *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294-95, 296-97 (5th Cir. 2016) (holding that Rules 26 and 37 operate jointly to create a "federal discovery scheme" that assigns "broad discretion" to district courts with respect to "their control of timing and sanctions for noncompliance").

District courts consider at least four factors when determining whether to exclude expert evidence that was not timely disclosed: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing the [information]; and (4) the availability of a continuance to cure such prejudice." *Majestic Oil, Inc.*, No. 21-20542, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (brackets in original) (quoting *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020)). A party's failure to provide *any* justification for its untimely disclosure weighs heavily in

favor of striking the disclosure, and may even be sufficient standing alone to support exclusion. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012) (affirming district court's exclusion of an expert's new affidavit purporting to supplement the original report with new methodology because the proffering party gave no justification for untimeliness); *Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 370 (5th Cir. 2014) (collecting cases affirming district court exclusions where the party offered no justification for untimeliness).

### III.   ALACRITECH'S *DAUBERT* MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DR. CHRIS HEEGARD (DKT. NO. 633)

#### A.  Background Facts

Intel retained Dr. Chris Heegard as its non-infringement expert. Dr. Heegard prepared a non-infringement report in 2017 ("Dr. Heegard's Original Report") and a supplemental report earlier this year ("Dr. Heegard's Supplemental Report") to address Alacritech's new infringement allegations and additional developments since the case was stayed in 2017.

For purposes of this motion, Dr. Heegard offers opinions that can be categorized into four groups: (1) opinions comparing Alacritech's TOE technology and Intel's RSC technology; (2) non-infringement opinions based on the accused products employing a "ring buffer;" (3) non-infringement opinions regarding claim 1 of the '205 Patent; and (4) non-infringement opinions regarding claim 41 of the '880 Patent.

#### B.  Analysis

Alacritech argues that certain of Dr. Heegard's opinions should be excluded because (1) he improperly compares Alacritech's commercial products to Intel's accused products (2) his opinions that the accused RSC products do not infringe because they employ a "ring buffer" are improper, (3) Dr. Heegard ignores critical language in claim 1 of the '205 Patent, and (4) he

improperly applies a "use limitation" to apparatus claim 41 of the '880 Patent. Motion, Dkt. No. 633 at 3–11.

> i.   Dr. Heegard's Opinions about TOE and RSC are Not Helpful for Non-infringement

First, Alacritech argues that Dr. Heegard's opinions as to the differences between Alacritech's TOE technology and Intel's RSC technology will confuse the jury and should be excluded. Motion, Dkt. No. 633 at 3–4 (citing 633-3 (Dr. Heegard's Original Report) at §§ X.B.1, XI.B.2.e, XVI.B.5.e; Dkt. No. 633-4 (Dr. Heegard's Supplemental Report) at §§ X.B.1, XI.B.2.e., XVI.B.5.e).

Intel responds that the general technological context is relevant to understand the parties' positions on infringement. Response, Dkt. No. 699 at 1. Intel also argues that the differences between Alacritech's TOE technology and Intel's RSC technology relate to numerous other issues in the case, including facts relevant to rebut willful infringement, damages claims, and the state of the prior art at the time of the alleged invention. *Id.*

"Whether an accused device infringes requires a two-step analysis—the court first 'determines the scope and meaning of the patent claims asserted, and *then the properly construed claims are compared to the allegedly infringing device*.'" *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1335 (Fed. Cir. 2022) (emphasis added) (quoting *CommScope Technologies LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1295 (Fed. Cir. 2021)).

Here, Dr. Heegard's non-infringement report includes the relevant limitation-by-limitation analysis in Sections XVIII.E, XVIII.F, XVIII.G. His report also includes multiple sections that compare Alacritech's TOE products to Intel's accused RSC products. A large amount of material regarding the state of the art and the technological differences between Alacritech's TOE and Intel's RSC comes directly from Intel's invalidity expert, Dr. Stephen Wicker.

Dr. Heegard's opinions comparing Alacritech's TOE products to Intel's accused products do not involve comparing the asserted claims to the accused products. Therefore, those opinions will not help the jury understand whether the accused products include each and every limitation recited in the asserted claims. FED. R. EVID. 702. And any marginal probative value that testimony has is substantially outweighed by a danger of confusing the issues and misleading the jury. FED. R. EVID. 403.

  ii. <u>Dr. Heegard's "Ring Buffer" Opinions are Proper</u>

Second, Alacritech argues that Dr. Heegard's "ring buffer" non-infringement opinions should be excluded because they were not timely disclosed, and they contradict the Court's claim construction regarding "destination memory." Motion, Dkt. No. 633 at 6–7 (citing § XVI.D.1 of Dr. Heegard's Original Report).

Intel responds that Dr. Heegard's non-infringement opinions directed to the "ring buffer" were timely and in his original report, and that Dr. Heegard's "ring buffer" opinions do not relate to claims that include the "destination memory" term. Response, Dkt. No. 699 at 6–9.

Here, Alacritech's argument about timeliness is without merit. Except for cases arising under 21 U.S.C. § 355 (Hatch-Waxman Act), the Patent Local Rules do not require Defendants to provide non-infringement contentions detailing every basis for its non-infringement defense. P.R. 3-8. Instead, the details as to non-infringement defenses typically come from the non-infringement expert. Additionally, Alacritech moved to compel contention interrogatory responses from Defendant Cavium—not even Intel—and the Court denied that request. Dkt. No. 699-4. Further, Alacritech acknowledges that Dr. Heegard's "ring buffer" opinions were contained in his original report.

Alacritech's argument about Dr. Heegard's "ring buffer" opinions conflicting with the Court's claim construction order also fails. With respect to the asserted claims, the "destination

8

memory" term only appears in claim 1 of the '205 Patent. Dr. Heegard's "ring buffer" opinions pertain to claims 17 and 22 of the '948 Patent and claim 41 of the '880 Patent—none of which include the "destination memory term."

      iii.   Dr. Heegard Properly Applies the "On the response" Language in Claim 1 of the '205 Patent

Third, Alacritech argues that Dr. Heegard's opinions read the "on the response" language out of the claim and improperly advance an argument the Court already rejected during claim construction. Motion, Dkt. No. 633 at 7–8 (citing § XVI.B.3.h of Dr. Heegard's Original Report; Dkt. No. 362 ("Claim Construction Order") at 23).

Intel responds that Dr. Heegard's opinion properly acknowledges and applies the Court's construction. Response, Dkt. No. 699 at 9–12.

Claim 1 of the '205 Patent has been reproduced below with added limitation labels (emphasis added in italics):

> 1. An apparatus comprising:
> 1[a]: a host computer having a protocol stack and a destination memory, the protocol stack including a session layer portion, the session layer portion being for processing a session layer protocol; and
> 1[b]: a network interface device coupled to the host computer, the network interface device receiving from outside the apparatus a response to a solicited read command, the solicited read command being of the session layer protocol, performing *fast-path processing on the response* such that a data portion of the response is placed into the destination memory *without the protocol stack of the host computer performing any network layer processing or any transport layer processing on the response*.

Dkt. No. 1-2 ('205 Patent) at Claim 1. The Court construed the term "fast-path processing" to mean "a mode of operation in which the protocol stack of the host computer performs little or no network layer or transport layer processing." Claim Construction Order at 23.

Dr. Heegard opines that "no fast-path processing can occur *if the protocol stack of the host computer* performs more than a little network layer processing or more than a little transport layer

processing." Dkt. No. 699-1 (Dr. Heegard's Original Report) at ¶ 640 (emphasis added). Dr. Heegard then explains that Intel's products do not meet that requirement because the host performs network and transport layer processing "for every single byte received using RSC," including on the response. *Id.* at ¶¶ 642–47, 1064–66, 1068. Dr. Heegard opines that, with respect to the accused products, the host necessarily performs network and transport layer processing on the response because it performs network and transport layer processing on *all* data received by the host. *Id.* at ¶ 1068. Dr. Heegard also directly addresses the "on the response" language. *Id.* at ¶ 1066.

During claim construction of the "fast path processing" term, the Court addressed two issues: (1) whether the host CPU may perform a "little" network layer or transport layer processing in the "fast-path processing;" and (2) whether it is reasonably certain what it means for the host to perform "little" or "substantially no" or "significant" network layer or transport layer processing. Notably, neither of those issues address Dr. Heegard's non-infringing position at issue regarding claim 1 of the '205 Patent.

Accordingly, Dr. Heegard's non-infringement opinions properly address the claim limitations as construed by the Court, including the "on the response" language.

   iv. <u>Dr. Heegard Will Not Improperly Apply a Use Limitation to Claim 41 of the '880 Patent</u>

Finally, Alacritech argues that Dr. Heegard improperly opines that the preamble is limiting and the recitation "for the host computer system" requires a host computer system, whereas Alacritech argues that preamble describes a non-limiting intended use. Motion, Dkt. No. 633 at 9–11 (citing Dkt. No. 633-3 (Dr. Heegard's Original Report) at ¶ 662.

Intel responds that the parties agree that each limitation of claim 41 of the '880 Patent must be "disposed in [a/the] network interface," and Dr. Heegard will not argue to the contrary at trial.

Response, Dkt. No. 699 at 12. Intel also represents that Dr. Heegard will not argue that the preamble of claim 41 of the '880 Patent is limiting. *Id.*

According to Intel, this issue is now moot. Alacritech disagrees. Claim 41 of the '880 Patent is an independent claim that has been reproduced below with added limitation labels and recites (emphasis added in italics):

> 41. An apparatus for transferring a packet to a host computer system, comprising:
>
> 41[a]: a traffic classifier, disposed in a network interface *for the host computer system*, configured to classify a first packet received from a network by a communication flow that includes said first packet;
>
> 41[b]: a packet memory, disposed in the network interface, configured to store said first packet;
>
> 41[c]: a packet batching module, disposed in the network interface, configured to determine whether another packet in said packet memory belongs to said communication flow;
>
> 41[d]: a flow re-assembler, disposed in the network interface, configured to re-assemble a data portion of said first packet with a data portion of a second packet in said communication flow; and
>
> 41[e]: a processor, disposed in the network interface, that maintains a TCP connection for the communication flow, the TCP connection stored as a control block on the network interface.

Dkt. No. 1-7 ('880 Patent) at Claim 41.

Since there no longer appears to be a dispute as to this issue, the Court holds that (1) Dr. Heegard is precluded from offering opinions that claim 41 of the '880 Patent requires the use of a host computer to infringe.

### C. Conclusion

For the reasons above, Alacritech's *Daubert* Motion to Exclude Opinions and Testimony of Dr. Chris Heegard (**Dkt. No. 633**) is **GRANTED IN PART** such that Dr. Heegard (1) is precluded from offering opinions or testimony comparing Alacritech's TOE products to Intel's accused RSC products, and (2) is precluded from offering opinions or testimony that claim 41 of the '880 Patent requires the use of a host computer to infringe. This ruling does not strike

paragraphs or sections of Dr. Heegard's reports, but merely precludes his opinions and testimony regarding the identified subjects. The motion is otherwise **DENIED**.

## IV.     ALACRITECH INC.'S *DAUBERT* MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DR. MARK JONES (DKT. NO. 701)

### A.  Background Facts

Dell retained Dr. Mark Jones as its non-infringement expert. Dr. Jones has multiple reports in this case, including an October 23, 2017 report on the scope of licenses (Dkt. No. 701-3), a November 20, 2017 non-infringement report (Dkt. No. 701-4), and a supplemental non-infringement report on May 5, 2023 (Dkt. No. 701-5).

In his supplemental report served in 2023, Dr. Jones includes supplemental non-infringement analysis in response to supplemental infringement analysis from Alacritech's infringement expert, Dr. Almeroth.

### B.  Analysis

Alacritech argues that certain of Dr. Jones's opinions should be excluded because (1) his supplemental opinions are untimely, (2) his non-infringement theory for claim 1 of the '205 Patent violates the Court's Claim Construction Order, and (3) he improperly imports limitations into claim 41 of the '880 Patent, and claim 17 of the '948 Patent. Motion, Dkt. No. 701 at 3–6, 9–15.[3] The Court disagrees on all grounds.

####            i.   The Opinions Within Dr. Jones's Supplemental Report are Timely and Permitted

First, Alacritech argues that Dr. Jones's supplemental opinions are untimely because (1) they go beyond what Dell timely disclosed as its theories during fact discovery and (2) they go beyond the scope of his original report.

---

[3] Sections IV.A.2 and IV.B of the motion (Dkt. No. 701 at 6–9) are now moot. *See* Dkt. No. 838 at 2.

Dell responds that Dr. Jones's supplemental opinions are timely because Dell timely disclosed every theory that Alacritech now seeks to exclude as a basis for non-infringement during discovery. Response, Dkt. No. 771 at 8–10. Dell also responds that the supplemental analysis contained in Dr. Jones's report is to rebut the supplemental analysis in Dr. Alermoth's April 14, 2023 supplemental report. *Id.* at 1–4.

Here, Alacritech's argument that Dell goes beyond its timely disclosed theories fails. During discovery, Dell responded to Alacritech's contention interrogatories. Dkt. No. 701-9. With respect to the '205 Patent, Dell identified its non-infringement positions as to the "host computer" (*id.* at 29–30, 65), "a network interface device coupled to the host computer" (*id.* at 65), and the "performing fast-path processing" limitations (*id.* at 30, 35). As for the '880 Patent, Dell identified its non-infringement positions with respect to the "configured to re-assemble a data portion of said first packet with a data portion of a second packet in said communication flow" (*id.* at 40-41), "traffic classifier" (*id.* at 40), "a packet memory" (*id.*); and "a flow re-assembler" (*id.* at 40, 71) limitations. And for the '948 Patent, Dell timely identified its non-infringement positions as to the "host computer" (*id.* at 29-30, 72), "a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer, the protocol stack adapted to establish a TCP connection for an application layer running above the TCP layer, the TCP connection being defined by source and destination IP addresses and source and destination TCP ports" (*id.* 38, 72), "a network interface that is connected to the host computer… [to check whether the packets have certain exception conditions]" (*id.* at 38), and "the network interface having logic [that directs any of the received packets]" (*id.*) limitations, as well as claim 22.

Alacritech's argument that Dr. Jones's opinions should be excluded for going beyond his original report is unpersuasive. Alacritech's 2017 infringement report of Dr. Almeroth

demonstrates that Alacritech was aware of Dell's non-infringement theories contained in Dr. Jones's report. Further, Alacritech concedes that it already deposed Dr. Jones on what it contends are "the new non-infringement theories," but does not demonstrate that those depositions are insufficient to cure any actual prejudice. Motion, Dkt. No. 701 at 10–11. The Court finds no rules violation or lack of reliability that warrants excluding the opinions contained in Dr. Jones's supplemental report.

      ii.   <u>Dr. Jones's Non-infringement Opinions as to Claim 1 of the '205 Patent Do Not Conflict with the Court's Claim Construction</u>

Second, Alacritech argues that Dr. Jones's non-infringement theory of claim 1 of the '205 Patent violates the Court's Claim Construction Order with respect to the term "fast-path processing." Motion, Dkt. No. 701 at 11–13.

Dell argues that the dispute actually concerns whether or not the accused products perform fast-path processing "on the response," which is a factual disagreement between the experts. Response, Dkt. No. 771 at 10–13.

As an initial matter, the Court notes that Dell indicated this part of the motion was moot, but Alacritech protested. Dkt. No. 838 at 2. Yet, Alacritech's argument appears entirely centered around Dell's Mellanox-based products that are no longer in the case. Motion, Dkt. No. 701 at 11 ('Dr. Jones's non-infringement theory for claim 1 of the '205 patent *for the Dell Mellanox-Based Accused Products* conflates "the response" with "the received frame that results from a LRO session.") (emphasis added).

Nevertheless, Alacritech's argument fails to demonstrate that this dispute concerns claim construction rather than a fact dispute regarding distinctions between accused products. As previously discussed, the Court construed the term "fast-path processing" to mean "a mode of operation in which the host computer performs more than a little network layer or transport layer

processing." Dkt. No. 362 at 23. Instead of arguing about "fast-path processing," Alacritech attempts to redefine the term "on the response" to support its view that this is truly a claim construction issue rather than an issue of fact with regard to the accused products. Motion, Dkt. No. 701 at 12 ("all that is requires is that 'the porotocol stack of the host computer …' that is 'on the response,' *i.e., the incoming data packets received by the Mellanox NICs or Controllers*.") (emphasis added). The Court is not persuaded. To the extent any issue remains, Alacritech presents nothing more than a dispute between experts regarding whether the accused products include every element recited in the claims.

### iii.   Dr. Jones does Not Improperly Import His Own Limitations into the Claims

Finally, Alacritech argues that Dr. Jones improperly imports his own limitations into claim 41 of the '880 Patent and claim 17 of the '948 Patent. Motion, Dkt. No. 701 at 14–15.

Again, the Court notes that Dell indicated this portion of the motion as moot, but Alacritech protested. Dkt. No. 838 at 2. Dkt. No. 701-6 (Dr. Jones June 9, 2023 Non-infringement Report) at ¶¶ 210–216 (Section F(2)(b): "Dr. Almeroth alleges that *Dell's Mellanox-Based Accused Products* including 'a packet batching module …" and Section F(2)(c) (identifying and responding to ¶ 96 of Dr. Almeroth's report concerning Mellanox Accused Products)); *id.* at ¶¶ 262–275 ("Third, the Dell Mellanox-Based Accused Products do not practice the limitation 'the network interface having logic that …"). Nevertheless, since Alacritech maintains the issues, the Court addresses them.

### a.   Alacritech's Position Contradicts the Plain and Ordinary Meaning of Claim 41 of the '880 Patent and is Precluded

With respect to claim 41 of the '880 Patent, Alacritech and Dell confirm in their briefing that this dispute concerns the scope of the claim, rather than a factual dispute regarding the accused products.

Claim 41 of the '880 Patent is an independent claim that has been reproduced below with added limitation labels (disputed limitation italicized below):

41. An apparatus for transferring a packet to a host computer system, comprising:

41[a]: a traffic classifier, disposed in a network interface for the host computer system, configured to classify a first packet received from a network by a communication flow that includes said first packet;

41[b]: a packet memory, disposed in the network interface, configured to store said first packet;

41[c]: *a packet batching module, disposed in the network interface, configured to determine whether another packet in said packet memory belongs to said communication flow;*

41[d]: a flow re-assembler, disposed in the network interface, configured to re-assemble a data portion of said first packet with a data portion of a second packet in said communication flow; and

41[e]: a processor, disposed in the network interface, that maintains a TCP connection for the communication flow, the TCP connection stored as a control block on the network interface.

Dkt. No. 1-7 ('880 Patent) at Claim 41. Alacritech contends Dr. Jones's non-infringement opinions as to the 41[c] limitation are "predicated on his interpretation of the claim to require that a packet must still be stored in the packet memory when the 'packet batching module' determines whether another packet belongs to the same communication flow." *Id.* at 14. According to Alacritech, "there is no limitation in claim 41—temporal or otherwise—that requires packets of a communication flow to be stored in the packet memory when the 'packet batching module' determines whether another packet belongs to the same communication flow." *Id.* Alacritech continues, "[a]ll that is required is that the *prior* packet have *previously been stored* in the same packet memory." *Id.* (emphasis added). Alacritech confirms its position in its reply, which states, "all claim 41 requires is that the same packet memory be used to store a prior packet that belongs to the same communication flow." Reply, Dkt. No. 790 at 5.

Dell responds that Alacritech's *Daubert* motion is an improper attempt to broaden the claim scope in light of unfavorable evidence. Response, Dkt. No. 771 at 13. Dell argues that Alacritech's

current understanding of claim 41 is "a packet batching module … configured to determine whether another packet in said packet memory [**or any packet that ever previously existed in said packet memory**] belongs to said communication flow." *Id.* Dell confirms its position in its sur-reply. Sur-reply, Dkt. No. 793 at 5.

Neither party raised this term during claim construction. Nevertheless, the dispute concerns the scope of limitation 41[c]. The Court therefore must resolve the dispute. *See O2 Micro Int'l Ltd. v. Beyond Innovation tech. Co.*, 521, F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

A claim term is generally given the ordinary and customary meaning that the claim term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.,* as of the effective filing date of the patent application. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*) (citations omitted). In fact, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.,* 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips,* 415 F.3d at 1312–13).

Since limitation 41[c] was not at issue during claim construction, it has its plain and ordinary meaning. The Court need not depart from that because Alacritech's proposed interpretation contradicts the plain and ordinary meaning of the limitation. Limitation 41[c] requires that "a packet batching module" be "configured to determine whether another packet in said packet memory belongs to said communication flow." Notably, the "packet batching module" makes that determination based on "whether another packet is in said packet memory," not based on "whether another packet is *or was* in said packet memory," as Alacritech contends. Thus, to foreclose on Alacritech's improper attempt to broaden the meaning of limitation 41[c] beyond its

the plain and ordinary meaning, limitation 41[c] temporally requires that "a packet batching module" be "configured to determine whether another packet" *currently* in said packet memory "belongs to said communication flow."

Accordingly, Dr. Jones's opinions are consistent with the plain and ordinary meaning of limitation 41[c]. Alacritech is precluded from introducing testimony that includes its improper "prior packet" or "previously having been stored" understanding of what the claim 41 of the '880 Patent requires.

        b. <u>Alacritech's Position Contradicts the Plain and Ordinary Meaning of Claim 17 of the '948 Patent and is Precluded</u>

With respect to claim 17 of the '948 Patent, Alacritech and Dell confirm in their briefing that this dispute concerns the scope of the claim, rather than a factual dispute regarding the accused products.

Claim 17 of the '948 Patent is an independent claim that has been reproduced below with added limitation labels and recites ("Disputed Limitation" italicized below):

> 17. An apparatus for network communication, the apparatus comprising:
> 17[a]: a host computer running a protocol stack including an Internet Protocol (IP) layer and a Transmission Control Protocol (TCP) layer, the protocol stack adapted to establish a TCP connection for an application layer running above the TCP layer, the TCP connection being defined by source and destination IP addresses and source and destination TCP ports;
> 17[b]: a network interface that is connected to the host computer by an input/output bus, the network interface adapted to parse the headers of received packets to determine whether the headers have the IP addresses and TCP ports that define the TCP connection and to check whether the packets have certain exception conditions, including whether the packets are IP fragmented, have a FIN flag set, or are out of order, *the network interface having logic that directs any of the received packets that have the exception conditions to the protocol stack for processing, and directs the received packets that do not have any of the exception conditions to have their headers removed and their payload data stored together in a buffer of the host computer*, such that the payload data is stored in the buffer in order and without any TCP header stored between the payload data that came from different packets of the received packets.

Dkt. No. 1-8 ('948 Patent) at Claim 17. Alacritech argues that Dr. Jones's opinions as to the Disputed Limitation are "predicated on the non-existent limitation that the claim requires 'two paths that cover all situations: (1) a path for "packets that have the exception conditions" and (2) a path for "packets that do not have any of the exception conditions.' " Motion, Dkt. No. 701 at 15. Alacritech argues that claim 17 only requires the "network interface" to have "logic" to direct such packets accordingly, which it contends that Dr. Jones does not dispute. *Id.*

Dell responds that claim 17 explicitly requires (1) "logic that directs ***any*** of the received packets that have the exception conditions to the protocol stack" and (2) "logic that … directs the received packets that do not have ***any*** of the exception conditions to have their headers removed and their payload data stored together in a buffer of the host computer." Response, Dkt. No. 771 at 14 (emphasis in original). Dell contends that those two situations account for all received packets—those that have exception conditions and those that do not. *Id.* Dell argues that Dr. Jones identified circumstances in which received packets do not fall into either one of these two categories and concluded that the products do not infringe because the claimed "logic" cannot be present. *Id.*

Neither party raised this issue during claim construction. Nevertheless, the issue is whether the Disputed Limitation requires "at least one" or "all" received packets "that do not have any of the exception conditions to have their headers removed and their payload data stored together in a buffer of the host computer." Alacritech contends that the claims only require "at least one," whereas Dell contends that the requirement applies to "all" received packets. *See* Dkt. No. 701-6 (Dr. Jones June 9, 2023 Non-infringement Report) at ¶ 264 (Dr. Jones criticizing Dr. Almeroth's report because it "argues that the claim requires only that *at least one packet without an exception have its header removed*.") (emphasis added). The Court therefore must resolve the dispute. *See*

19

*O2 Micro Int'l Ltd. v. Beyond Innovation tech. Co.*, 521, F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

Since the Disputed Limitation was not at issue during claim construction, it has its plain and ordinary meaning. The Court need not depart from that because Alacritech's proposed interpretation contradicts the plain and ordinary meaning of the Disputed Limitation. As Dell correctly identifies, "the network interface has logic" that (1) "directs any of the received packets that have the exception conditions to the protocol stack for processing," and (2) "directs the received packets that do not have any of the exception conditions to have their headers removed and their payload data stored together in a buffer of the host computer." The surrounding claim language makes clear that the claimed logic of the network interface directs *all* received packets depending on whether the received packets (1) have exception conditions or (2) do not have exception conditions. Consequently, Dr. Jones's opinions that the accused products include received packets do not fall into either one of these two categories, and his conclusion that the products do not infringe because the claimed "logic" cannot be present, are consistent with the plain and ordinary meaning of the Disputed Limitation.

Accordingly, Dr. Jones's opinions are consistent with the meaning of the Disputed Limitation. Alacritech is precluded from introducing testimony that improperly expands the scope of the plain and ordinary meaning of the claims to only require that "at least one packet without an exception have its header removed."

### C.  Conclusion

For the reasons above, Alacritech's *Daubert* Motion to Exclude Opinions and Testimony of Dr. Mark Jones (**Dkt. No. 701**) is hereby **DENIED**. Alacritech is further precluded from

offering testimony that contradicts the plain and ordinary meaning of claim 41 of the '880 Patent and claim 17 of the '948 Patent as indicated above.

**SIGNED this 9th day of October, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE