## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ALACRITECH INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-00693-RWS-RSP |
| | § | (LEAD CASE) |
| CENTURYLINK, INC. *et al*, | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM ORDER</u>

Alacritech recently filed a motion to supplement Mr. Gunderson's damages report (Dkt. No. 833), which the Court **GRANTED** at the September 28, 2023 Pretrial Conference. Before the Court is Intel Corporation and Dell Inc.'s ("Defendants") *Daubert* Motion to Exclude Testimony of Plaintiff Alacritech, Inc.'s Damages Expert Lance Gunderson (**Dkt. No. 860**) based on that recent supplemental report. For the following reasons, the motion is **DENIED**.

## I.       BACKGROUND

On June 30, 2016, Plaintiff Alacritech Inc. filed suit against CenturyLink, Inc., Tier 3, Inc., Savvis Communications Corp., CenturyLink Communications LLC, Cyxtera Communications, LLC, Winston Corporation, Wiwynn Corporation, SMS InfoComm Corporation, and Dell Inc. alleging certain server products and methods infringe eight of Alacritech's patents.[1] Intel Corporation intervened in this case on November 21, 2016, and Cavium, Inc. intervened on February 14, 2017, both asserting that their products were implicated in the infringement allegations. Dkt. No. 84 (Intel); Dkt. No. 127 (Cavium).

---

[1] Winston Corporation, Wiwynn Corporation, and SMS InfoComm Corporation were consolidated for pretrial from Case No. 2:16-CV-692-RWS-RSP, and Defendant Dell Inc. was consolidated for pretrial from Case No. 2:16-CV-695-RWS-RSP.

1

This case proceeded through discovery and was stayed pending disposition of *inter partes* review (IPR) proceedings that had been instituted by the Patent Trial and Appeal Board. Dkt. No. 451. The PTAB invalidated multiple claims challenged in IPRs, Alacritech appealed that decision, and the Court continued the stay pending resolution of the Federal Circuit appeal. Dkt. No. 482. In 2022, following the appeal proceedings, Alacritech moved to lift the stay and proceed with its case on the surviving patents and claims.

The Court lifted the stay and entered Docket Control Orders for the respective cases. *See* Dkt. No. 786 (setting February 20, 2024 trial date for certain defendants in the 2:16-CV-693 and 2:16-CV-692 cases); 2:16-CV-00695-RWS-RSP, Dkt. No. 19 (setting October 16, 2023 trial date for Dell). Now, Alacritech asserts claim 1 of U.S. Patent No. 7,124,205 (the "'205 Patent"), claims 17 and 22 of U.S. Patent No. 8,805,948 (the "'948 Patent"), and claim 41 of U.S. Patent No. 8,131,880 (the "'880 Patent") (collectively, "Asserted Patents") against Defendant Dell Inc. and Intervenor Intel Corporation of the '695 Member Case, and defendants Winstron Corporation, Wiwynn Corporation, SMS InfoComm Corporation of the '692 Member Case.[2] *See* Dkt. No. 522 at 1.

## II.    LAW

In a suit for patent infringement, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. An assessment of the reasonable royalty generally involves opinions by expert witnesses.

---

[2] The other defendants and intervenor Cavium are no longer in the case or will soon be dismissed.

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## III.   ANALYSIS

Alacritech retained Lance Gunderson as its damages expert. After the stay was lifted, Mr. Gunderson served a supplemental damages report on June 23, 2023. Since then, Alacritech has entered into settlement and license agreements with defendant Cavium, non-party NVIDIA (collectively, "Recent Agreements"), and former defendant CenturyLink. The Recent Agreements

3

include (1) a covenant not to sue for the Asserted Patents, (2) a settlement of litigation, (3) a covenant not to sue for additional non-asserted patents, and (4) a release covering additional non-asserted patents. To account for how these events affect a reasonable royalty, Mr. Gunderson has another supplemental report, dated September 20, 2023. *See* Dkt. No. 833-2 (Mr. Gunderson 9/20/23 Supplemental Report).

In his September 20, 2023 Supplemental Report, Mr. Gunderson opines that the Recent Agreements are both technologically and economically comparable to the hypothetical negotiation because they grant the right to use the specific patented technology at issue in the products accused in this case. *Id.* at ¶¶ 21, 24, 26. He also opines that the primary driver of value is the Asserted Patents and right to use the Asserted Patents based on the timing of those settlement agreements relative to the imminent trial date. *Id.* at ¶¶ 4, 24.

Mr. Gunderson explains that the Cavium agreement supports the ▮ royalty rate estimate from his earlier report. *Id.* at ¶¶ 12, 19.

He also opines that the NVIDIA agreement supports a larger implied royalty applicable to Intel, which falls within the range of his previous reasonable royalty calculation. *Id.* at ¶ 20. To arrive at that conclusion, he applies a market share adjustment based on Intel and NVIDIA's accused sales relative to the settlement payment.

Defendants seek to exclude Mr. Gunderson's damages opinions as allegedly failing to satisfy the reliability requirements of Rule 702 and *Daubert*. Motion, Dkt. No.860 at 1. Defendants argue that Mr. Gunderson's damages opinions are unreliable because (1) he calculates damages from the Recent Agreements without accounting for how any covered non-asserted patents affect the payments in those agreements, (2) he fails to apportion the non-accused features, and (3) he

fails to demonstrate that the Recent Agreements are economically and technically comparable as required by Federal Circuit law. *Id.* at 1–2.

### A. Mr. Gunderson Adequately Addresses the Other Patents in the Recent Agreements

First, Defendants argue that Mr. Gunderson violates apportionment law by failing to account for the non-asserted patents covered by the Recent Agreements. Motion, Dkt. No. 860 at 9 (citing *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022) (holding expert's opinions were unreliable where he failed to address the extent to which five of the six patents contributed to the royalty rate in a comparable license, while still opining that excluding those five patents would have only resulted in a 25% discount); *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1328–29 (Fed. Cir. 2014) (holding expert's opinion should have been excluded for failure to apportion value of non-patented technology); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (holding expert's opinions were unreliable because he arbitrarily reduced the royalty rate by 2/3 "based on vague qualitative notions of the relative importance" of the technology at issue)). According to Defendants, Mr. Gunderson attributed the full amount of the Recent Agreements solely to the Asserted Patents without attributing any value to the rights regarding the non-asserted patents thereby running afoul of apportionment law. *Id.* at 10.

In response, Alacritech represents that Mr. Gunderson (1) does not use new methodologies in his supplemental report, and (2) uses the Recent Agreements to confirm the reasonableness of the royalties he previously calculated in his principal report that were already apportioned. Response, Dkt. No. 867 at 5–6.

The Federal Circuit has held "that when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020) (collecting

cases). "That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment,'" which "effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1040–41. "Use of actual past licenses and negotiations to inform the hypothetical negotiation does not 'require[ ] identity of circumstances.'" *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1301 (Fed. Cir. 2019) (quoting *Virnetx, Inc v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)).

The Court is not persuaded that Mr. Gunderson's analysis is inconsistent with Federal Circuit authority because he addresses the non-asserted patents. In his September 20, 2023 Supplemental Report, Mr. Gunderson opines that "[t]he primary driver of the value of the Alacritech-Cavium Settlement Agreement appears to be the right to use the inventions in the patents at issue claimed by Alacritech in this litigation given that the agreement settled the lawsuit asserting the three patents at issue on the eve of trial." Dkt. No. 833-2 (Mr. Gunderson 9/20/23 Supplemental Report) at ¶ 24. He goes on to explain, in his opinion, why the Asserted Patents account for effectively all of the material value for the Cavium agreement, including that other patents are now expired, there are no additional asserted claims against Cavium, and the release itself. *Id.* He also offers similar opinions and explanations for the NVIDIA agreement. *Id.* at ¶ 26.

Further, *Apple* is distinguishable because, here, Mr. Gunderson addresses the extent to which the non-asserted patents contribute to the royalty rate, and he opines they contribute nothing. 25 F.4th at 973.

Consequently, Mr. Gunderson's damages opinions adequately address the other patents included in the Patent Licenses in accordance with apportionment law, and his methodology is sufficiently tied to the facts of the case. *Summit 6*, 802 F.3d at 1296 ("But where the methodology

6

is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder."). The inquiry into the correctness of Mr. Gunderson's analysis regarding the non-asserted patents can be properly explored through vigorous cross-examination and presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

### B. Mr. Gunderson's Use of Intel's Sales and Revenues in the Recent Agreements is Not Improper

Second, Defendants argue that (1) Mr. Gunderson calculates an effective royalty rate and per-unit royalty rate for Cavium without proper apportionment, and (2) Mr. Gunderson fails to apportion because he determines a product sale multiplier by comparing all of Intel's accused sales to NVIDIA's unit sales to three of NVIDIA's customers. Motion, Dkt. No. 860 at 10–11.

Alacritech responds that Mr. Gunderson relies on built-in apportionment based on his analysis that the Recent Agreements reflect a built-in apportionment. Response, Dkt. No. 867 at 9–10.

The Court is not persuaded that Mr. Gunderson's analysis is inconsistent with Federal Circuit authority. In his September 20, 2023 Supplemental Report, Mr. Gunderson opines that the Recent Agreements are both technologically and economically comparable to the hypothetical negotiation because they grant the right to use the specific patented technology at issue in the products accused in this case. Dkt. No. 833-2 (Mr. Gunderson 9/20/23 Supplemental Report) at ¶¶ 21, 24, 26. For technological comparability, Mr. Gunderson opines that the technology at issue in the Recent Agreements involve "the same types of NICs alleged to incorporate the same patented RSC technology at issue in this case," covered by the asserted claims. *Id.* at ¶¶ 24, 26. For economic comparability, Mr. Gunderson opines that both Cavium and NVIDIA operate as product sellers with respect to the accused products and Defendants also operate as product sellers

with respect to the accused products. Mr. Gunderson also explains that the payments under the Recent Agreements compensate only for the value of similar products to the claimed RSC at issue in this case.

Consequently, Mr. Gunderson has provided an adequate basis to rely on the built-in apportionment of the Recent Agreements. *Vectura*, 981 F.3d at 1040–41. His opinions are also sufficiently tied to the facts of the case to clear the reliability hurdle. *Summit 6*, 802 F.3d at 1296. The inquiry into the correctness of Mr. Gunderson's analysis can be properly explored through vigorous cross-examination and presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

### C. Mr. Gunderson Adequately Explains the Comparability of the Recent Agreements

Finally, Defendants argue that Mr. Gunderson fails to show that the Recent Agreements are sufficiently comparable to a hypothetical license to the Asserted Patents to justify reliance on them. Motion, Dkt. No. 860 at 13–15. Alacritech responds that Mr. Gunderson explains the economic and technical comparability of the Recent Agreements. Response, Dkt. No. 867 at 10–14.

Here, as previously discussed in Section II(B), Mr. Gunderson explains why, in his opinion, the Recent Licenses are both economically and technically comparable to the RSC technology at issue in this case. Further, the Court has already analyzed Mr. Gunderson's original report and determined that he provides an adequate basis to rely on a built-in apportionment for the previous license agreements. Mr. Gunderson's original report also includes a full *Georgia-Pacific* analysis, and he discusses the consistent value and technical benefits of RSC from 2009 through the present when he addresses factors 9 and 10. Dkt. No. 867-3 (Mr. Gunderson's 6/23/23 Supplemental Report) at ¶¶ 409–96, 503.

Defendants cite cases as to the age of license agreements in a changing technological and financial landscape. *Odetics Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77; *LaserDynamics*, 694 F.3d at 80

But those cases do not establish a *per se* rule against relying on agreements well after the hypothetical negotiation date. *Compare Odetics*, 185 F.3d 1259, 1276–77 (holding the district court did not abuse its discretion by excluding licenses entered into four and five years after the date of first infringement due to "the age of the license agreements, in the context of the changing technology and 'financial landscape' at issue) *with LaserDynamics*, 694 F.3d at 78 (holding district court abused its direction by admitting the BenQ settlement agreement into evidence because the BenQ license was executecd shortly before a trial in which BenQ would have been subject to numerous harsh sanctions imposed on it by the district court, and it further involved a lump sum six times higher than the next highest amount paid for a license to the patents-in-suit).

Here, neither Cavium nor NVIDIA were subject to harsh sanctions and nothing establishes their license agreements were significantly above the terms of any others. Mr. Gunderson explains the effect of the passage of time on RSC technology and cites evidence directly from Defendants to establish that comparability.

Consequently, Mr. Gunderson has provided adequate support for the economic and technical comparability of the Recent Agreements to avoid their exclusion. In his June 2023 report, he offers opinions accounting for the differences in date from execution to the date of first infringement, and the changing and technological landscape. His opinions are also sufficiently tied to the facts of the case to clear the reliability hurdle. *Summit 6*, 802 F.3d at 1296. The inquiry into the correctness of Mr. Gunderson's analysis can be properly explored through vigorous cross-examination and presentation of contrary evidence.  *Daubert*, 509 U.S. at 596.

## IV.  CONCLUSION

For the reasons above, Defendants' *Daubert* Motion to Exclude Testimony of Alacritech's

Damages Expert Lance Gunderson (**Dkt. No. 860**) is hereby **DENIED**.

**SIGNED this 12th day of October, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE